**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

*Counsel for Defendants HP Inc., Dion J.*
*Weisler, Catherine A. Lesjak, Enrique Lores*,
*and Richard Bailey*

*Additional counsel on signature page*

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
MATTHEW J. DOLAN, SBN 291150
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com
mdolan@sidley.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, *Individually and on Behalf of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> HP INC., et al., <br><br> Defendants. | Case No. 4:20-cv-07835-JSW <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  October 22, 2021 <br> Time: 9:00 a.m. <br> Location:  Courtroom 5, 2nd Floor <br> Judge:  Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ............................................................................................ vi

I. PRELIMINARY STATEMENT ........................................................................................2

II. BACKGROUND..............................................................................................................5

III. ARGUMENT...................................................................................................................7

      A.     The Complaint Should Be Dismissed With Prejudice Because Plaintiff's Claims Are Time-Barred And Plaintiff Lacks Standing ...........................................................8

           1.     The Statute Of Limitations Bars Plaintiff's Claims..................................................8

           2.     Statements Made Before April 21, 2016 Are Barred By The Statute Of Repose....9

           3.     Plaintiff Lacks Standing To Bring Any Claim Not Barred By the Statutes of Limitations and Repose...............................................................................................10

      B.     The Complaint Lacks Particularized Facts Pleading the Essential Elements of A Securities Fraud Claim..........................................................................................11

           1.     Plaintiff Fails To Plead Falsity With Particularity.................................................11

            2.     Messrs. Lores and Bailey Should Be Dismissed Because They Did Not Make Any Challenged Statement .....................................................................................16

           3.     Plaintiff Fails To Plead Scienter With the Rigor Required Under the PSLRA .....17

           4.     Plaintiff Fails To Plead Loss Causation With Particularity...................................22

           5.     Plaintiff Fails To State A Section 20(a) Claim ......................................................24

IV. CONCLUSION...............................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorosa v. AOL Time Warner Inc.*,
409 F. App'x 412 (2d Cir. 2011) ........................................................................................8

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ..........................................................................24

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................................11

*Betz v. Trainer Wortham & Co.*,
829 F. Supp. 2d 860 (N.D. Cal. 2011) .................................................................................9

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020)..............................................................................................23

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..................................................................................11, 14, 15

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015)........................................................................................17, 20

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................................13

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ..............................................................................................15

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................................................13

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ............................................................................................15

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016).............................................................................................10

*In re ECOtality, Inc. Sec. Litig.*,
2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ..................................................................21

*Elec. Workers Pension Fund v. HP Inc.*,
2021 WL 1056549 (N.D. Cal. Mar. 19, 2021)..............................................................12, 19

*Fialkov v. Microsoft Corp.*,
72 F. Supp. 3d 1220 (W.D. Wash. 2014)............................................................................15

*Freidus v. Barclays Bank PLC*,
734 F.3d 132 (2d Cir. 2013)..................................................................................................8

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ..............................................................................22

ii

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ............................................................................14, 17, 19, 20

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................................10

*In re Immersion Corp. Sec. Litig.*,
  2011 WL 871650 (N.D. Cal. Mar. 11, 2011)....................................................................23

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)......................................................................................................vi, 16

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) .........................................................................................10

*In re Juniper Networks, Inc. Sec. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) .......................................................................vi, 10

*Kelly v. Elec. Arts, Inc.*,
  71 F. Supp. 3d 1061 (N.D. Cal. 2014) .............................................................................11

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) .........................................................................................23

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ........................................................................................7, 23

*In re Maxim Integrated Prod., Inc., Derivative Litig.*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) .............................................................................9

*McGovney v. Aerohive Networks, Inc.*,
  2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ...................................................................15

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)...........................................................................................vi, 2, 8, 9

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ..........................................................................11, 17, 23, 24

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .......................................................................................23

*Munoz v. Ashcroft*,
  339 F.3d 950 (9th Cir. 2003) .............................................................................................9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
  730 F.3d 1111 (9th Cir. 2013) .........................................................................................23

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ..............................................................................17, 19, 24

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*In re Obalon Therapeutics, Inc.*,
  2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ................................................................8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................................7, 17, 23

*Paciga v. Invuity Inc.*,
  2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ...............................................................21

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .............................................................................13, 18, 21

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) .......................................................................................22

*Rabkin v. Lion Biotechnologies, Inc.*,
  2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ..................................................................21

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) .........................................................................................11

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) .............................................................................18, 19, 21

*Shurkin v. Golden State Vintners Inc.*,
  471 F. Supp. 2d 998 (N.D. Cal. 2006) .................................................................vi, 2, 10

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ......................................................................11, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................17, 22

*Veal v. LendingClub Corporation*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) ...........................................................................22

*In re Verifone Sec. Litig.*,
  2016 WL 1213666 (N.D. Cal. Mar. 29, 2016)................................................................24

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .....................................................................................19, 21

*West v. eHealth, Inc.*,
  2016 WL 948116 (N.D. Cal. Mar. 14, 2016)..................................................................16

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ..................................................................................12, 13

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .........................................................................4, 17, 20, 21

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

**Statutes**

15 U.S.C. §78u-4(b)(1) ...............................................................................................................7

15 U.S.C. §78u-4(b)(2) ..........................................................................................................7, 17

15 U.S.C. §78u-5(i)(1)(A)-(D)...................................................................................................12

15 U.S.C. §78u-5(c)(1)(A)(i)-(B)(i)............................................................................................12

28 U.S.C. §1658(b) ......................................................................................................vi, 2, 8, 9

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

**SUMMARY OF ARGUMENT**

Plaintiff's Complaint should be dismissed for multiple, independent reasons, discussed below and summarized for convenience in Appendix A.

*First*, the two-year statute of limitations, 28 U.S.C. § 1658(b), bars the claims in this action because a "reasonably diligent plaintiff" would have discovered the facts giving rise to this action no later than June 21, 2016 when Defendants allegedly "*revealed* what [they] had been misrepresenting and concealing during the Class Period." Complaint, ¶ 70; *see Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). Plaintiff filed its Complaint in 2021, well after the statute of limitations had run.

*Second*, the five-year statute of repose, 28 U.S.C. § 1658(b), bars Plaintiff's claims challenging statements made before April 21, 2016—when most of the alleged misstatements in this case occurred. *See In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008).

*Third*, Plaintiff lacks standing to challenge any statements made in 2016 because Plaintiff sold all of its HP shares by the end of 2015. *See Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1024 (N.D. Cal. 2006). Thus, the Complaint should be dismissed in full because it contains no alleged misstatements that Plaintiff has standing to challenge (statements made before November 24, 2015) *and* that were made within the statute of repose period (April 21, 2016 and after).

*Fourth*, the Complaint should be dismissed for failure to plead a claim with the particularity required under the PSLRA. Plaintiff fails to plead facts demonstrating that statements about HP's channel inventory levels and revenue declines were rendered false or misleading by the failure to disclose sales practices that Plaintiff asserts were the primary reason for HP's declining revenues and increasing inventory. Nor does Plaintiff allege that two Defendants (Mr. Lores and Mr. Bailey) made any of the challenged statements. S*ee Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141-42 (2011). Plaintiff fails to plead particularized facts demonstrating scienter. A settlement between HP and the SEC, for example, does not help Plaintiff plead scienter because the SEC expressly acknowledged that HP's "principal executive officers who were responsible for the company's disclosures" only "learned of the [sales practices] . . . quarters after the actual conduct had taken place." Compl., Ex. A ¶ 49. Plaintiff also fails to plead loss causation because there are no facts establishing that Plaintiff's losses resulted from any "corrective disclosure" that corrected any prior misstatement.

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the U.S. District Court for the Northern District of California, Oakland Courthouse, Courtroom 5, located at 1301 Clay Street, Oakland, CA 94612, Defendants HP Inc. ("HP" or the "Company"), Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey (the "Individual Defendants") (HP and the Individual Defendants, together, "Defendants"), through their undersigned counsel, will, and hereby do, move to dismiss the Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 37, the "Compl.") pursuant to Fed. R. Civ. P. 12(b)(1), (6).  This Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Lissa Percopo filed concurrently herewith, the accompanying Request for Judicial Notice, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

Defendants seek dismissal of the Complaint with prejudice (1) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) because Lead Plaintiff ("Plaintiff") fails to plead violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Fed. R. Civ. P. 9(b), and (2) pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiff lacks Article III standing to assert claims based on alleged misstatements not barred by the applicable statute of repose.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff's claims should be dismissed with prejudice because (1) they are time-barred by the statute of limitations and/or statute of repose, and (2) Plaintiff lacks standing to challenge any statement not barred by the statute of repose.

2. Whether Plaintiff's claims under Section 10(b) of the Exchange Act and Rule 10b-5 should be dismissed for failure to plead that (1) any challenged statement was false or misleading, (2) any Defendant acted with scienter, (3) Plaintiff suffered any loss caused by any allegedly false or misleading statement, and/or (4) Messrs. Lores and Bailey made any challenged statement.

3.      Whether Plaintiff's claims under Section 20(a) of the Exchange Act should be dismissed for failure to plead a primary violation of the Exchange Act.

## I.      PRELIMINARY STATEMENT

This is an unusual securities class action.  Plaintiff, a former HP shareholder who was the *only* Lead Plaintiff applicant in this case, claims that HP committed securities fraud more than five years ago in connection with the Company's Supplies business—the part of the business in which HP sells ink and toner.  Plaintiff alleges that statements made by HP in 2015 and 2016 about rising inventory levels and declining revenues violated the federal securities laws.  Plaintiff does not claim that HP falsely reported its inventory levels.  Nor does Plaintiff contend that the revenue HP recorded based on its sale of Supplies inventory was fraudulent or overstated.  Plaintiff claims instead that HP's statements about its inventory and gross margins were fraudulent because HP did not disclose sales practices that supposedly led to the increased inventory levels and declining margins reported by HP, and because HP only reported inventory levels with respect to its direct distributors, not sub-distributors.  According to Plaintiff, the "fraud" was "revealed" and "admitted" by Defendants in 2016 when HP announced that it would lower inventory levels as part of a shift in the Company's business strategy.  Compl., ¶ 70 & ¶ 69 n.8.

Plaintiff did not file its Complaint in 2016 when the Company supposedly revealed and admitted the alleged fraud.  Plaintiff waited nearly five years before filing its Complaint.  As a result of this delay, all of Plaintiff's claims are barred under the two-year statute of limitations, and almost all of its claims are separately barred under the five-year statute of repose.  28 U.S.C. § 1658(b); *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).  Even if the Court looked past the statute of limitations bar, and applied only the five-year statute of repose, the only claims that remain are based on a handful of statements made between April 21, 2016 and June 21, 2016.  However, Plaintiff lacks standing to assert any claims based on any statements made during this eight-week period because it sold all of its HP shares well before this time—by December 30, 2015.  ECF No. 20-2 at 3; *see Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1024 (N.D. Cal. 2006).  Based on these threshold, incurable deficiencies, the Complaint should be dismissed with prejudice.  And it's not a close call.

If the Court considers Plaintiff's substantive allegations—and there is no reason to do so given the threshold grounds for dismissal—the Complaint fares no better because Plaintiff fails to plead any claim

Gibson, Dunn &
Crutcher LLP

for securities fraud with the particularity required under the PSLRA.

*The Complaint Fails to Plead a False or Misleading Statement.*  Plaintiff alleges that Defendants' statements were misleading because they failed to disclose that some HP employees were aggressively discounting ink and toner products and, in one of HP's geographic regions, were selling to third parties that resold into other regions at a discount.  Plaintiff's claim is that these sales practices were the "primary" cause of HP's declining revenues and increasing inventory in 2015 and the first half of 2016.  Compl. ¶ 116(a).  But missing from the Complaint are any facts supporting Plaintiff's conclusion that these sales practices—as opposed to increased competition from competitors offering cheaper ink and toner products—were primarily responsible for driving HP's inventory higher and revenue lower.

Plaintiff fares no better with its claim that HP misled the market by disclosing whether its inventory levels were within the target range based on HP's sale of ink and toner to its Tier 1 distributors, without including inventory held by sub-distributors to whom HP did not sell products.  As Plaintiff acknowledges, HP booked revenue based on its sale of inventory to Tier 1 distributors and had little visibility as to that inventory as it moved down the chain.  And Plaintiff nowhere explains why it would have been more accurate to disclose inventory levels using "incomplete data" for lower tiers in which HP had a "lack of visibility" instead of only reporting data for Tier 1, where HP actually sold ink and toner.  Compl., Ex. A ¶¶ 15, 48.  None of the challenged statements are supported by factual allegations demonstrating that they were false or misleading at the time they were made.

*The Complaint Fails to Plead Facts Giving Rise to a Strong Inference of Scienter.*  Plaintiff's scienter allegations are even more deficient.  Under the PSLRA, Plaintiff is required to plead particularized facts establishing a "strong inference" that each Defendant knew or was deliberately reckless in not knowing that the challenged statements were false.  Unlike many securities class action complaints, the Complaint contains no allegations drawn from confidential witnesses who claim the Individual Defendants had access to information indicating that their public statements were untrue.  Nor does Plaintiff point to documents or reports provided to the Individual Defendants that show they must have known their challenged statements were false.  Without these factual allegations, Plaintiff is left with the empty claim that merely because the Supplies business was important to HP, the Individual Defendants must have known that the challenged statements about HP's inventory levels were false or misleading.

Gibson, Dunn &
Crutcher LLP

This is nowhere near sufficient to plead scienter under the "core operations" doctrine in this Circuit. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009).

Plaintiff also attempts to plead scienter by relying on a settlement HP reached with the Securities and Exchange Commission in 2020, but this strategy also fails given what the SEC alleged (and did not allege). *See* Compl., Ex. A (the "SEC Settlement"). In the SEC Settlement, the SEC did not claim that HP committed securities fraud. Nor did the SEC allege that HP reported false inventory levels or improperly recorded revenue. And in an allegation that directly undercuts any inference of scienter, the SEC affirmatively acknowledged in the Settlement that HP's executive officers responsible for HP's public statements did not know about the practices that supposedly drove the increased inventory until "quarters after the actual conduct had taken place." SEC Settlement, ¶ 49. The SEC Settlement, in which HP paid $6 million and did not admit any of the SEC's allegations, does not help Plaintiff plead scienter.

*The Complaint Fails to Plead Loss Causation.* The Complaint should be dismissed on the independent ground that Plaintiff fails to plead loss causation—or that the revelation of fraud corrected a specific prior misstatement, causing Plaintiff's losses. Plaintiff claims that four "corrective disclosures" in 2015 and 2016 led to a decline in HP's stock price. But Plaintiff makes no effort to show that these disclosures corrected a prior misstatement, as opposed to revealing disappointing financial results. Plaintiff's loss causation theory as to the key alleged corrective disclosure on June 21, 2016 also is illogical. Plaintiff claims that the fraud was "revealed" when HP announced that it would lower the inventory level in its distribution channel as it transitioned to a new business model. But this theory ignores what HP announced just one month earlier, with no stock price decline whatsoever: that HP lowered inventory by $250 million. It defies common sense that HP's announcement in May of an inventory reduction had no effect at all, but when HP made a similar announcement the following month as part of a change in its business model, it supposedly revealed a fraud, corrected a prior misstatement, and caused an investor loss.

For all these reasons, the motion to dismiss should be granted and the Complaint should be dismissed.

## II. BACKGROUND[1]

***The Company and the Print Supplies Business.*** HP is "a leading American technology company" that "manufactures and sells personal computers, printers and printer supplies." SEC Settlement, ¶¶ 5-6. HP was formed in 2015 when the Hewlett-Packard Company split into two, with the new HP to focus on the legacy printer and computer businesses. *Id.* ¶ 6. HP operates through three geographic regions: (1) the Americas, (2) Asia Pacific and Japan ("APJ"), and (3) Europe Middle East Africa ("EMEA"). *Id.* ¶ 7. One of HP's three business lines is Printing, which in turn is comprised of three business units, including Supplies. *Id.* ¶ 6. The Supplies unit—which "sells supplies for use in HP printers, including ink and toner"—is the focus of this action. *Id.*

Before and during the Class Period (which runs from November 6, 2015 to June 21, 2016), HP operated its Supplies business using a "push model." SEC Settlement ¶ 11. Under the push strategy, HP offered discounts to incentivize distributors to purchase ink and toner, and then "use[d] a combination of marketing spend and discounts . . . to promote the movement of inventory through the channel to end users." *Id.* ¶¶ 11, 16. There could be multiple "tiers" of distributors between HP and the end user. HP sold ink and toner products to Tier 1 distributors, who either sold to consumers or to resellers ("Tier 2") that, in turn, did the same down the chain. *Id.* ¶ 12. HP recognized revenue based on sales to Tier 1 distributors, and "HP had no continuing obligations" after that because HP's "sales [to Tier 1 partners] were not contingent on the eventual sales on to the Tier 2 partner or end user." *Id.*

In the years preceding the Class Period, revenue in HP's Supplies had declined, "consistent with the overall secular decline of printing." *Id.* ¶ 8. Supplies channel inventory levels—that is, "inventory sold by HP to its distribution channel that has not yet been sold to end users," *id.* ¶ 1, n.2—"were elevated" in light of increased competition from resellers of ink and toner products that were less expensive than HP Supplies products. *See* Compl. ¶ 4. HP monitored its inventory levels using a "Weeks of Supply (WOS)" metric. SEC Settlement ¶ 13. HP would set a target WOS range, and try to sell within the range and not above the inventory "ceiling." *Id.*

---

[1] By summarizing Plaintiff's allegations here, Defendants do not concede the allegations are true. Citations in the form of "¶ __" or "¶¶ __" refer to the paragraphs of the Complaint. Citations to "Ex. __" refer to the exhibits to the Declaration of Lissa Percopo, filed concurrently herewith. Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

***The Challenged Sales Practices.***  Plaintiff alleges that during the Class Period, HP employees "offer[ed] extraordinary discounts to induce channel partners to purchase" supplies. Compl., ¶ 5. Plaintiff also alleges that HP employees in APJ sold "supplies to channel partners at steep discounts who then sold those supplies outside of their assigned territories," a practice known as "gray marketing." *Id.*; SEC Settlement, ¶ 24.  Plaintiff does not allege facts concerning the scope or scale of these practices, but claims that these practices resulted in lower-margin sales and increased inventory levels.  Compl., ¶ 5.

***HP Lowers Inventory and Reports Declining Revenues.***  HP's Supplies business faced several challenges during the Class Period.  During a November 24, 2015 earnings call, HP reported that it "expected to have several tough quarters" where "[s]upplies revenue will continue to be under pressure." Ex. 4, at 8, 12.  HP explained that the "most significant factor" accounting for declining revenues was competition from sellers of ink and toner at lower costs than HP-branded Supplies products.  *Id.* at 9.  HP also reported that its channel inventory levels were above its target range.  *Id.* at 11.  On the next earnings call, dated February 24, 2016, HP reported that these challenges—increased competition and higher channel inventory—continued to persist, leading to further declining revenues.  Ex. 5, at 3, 6.

On May 25, 2016, HP announced that the Company reduced its channel inventory by approximately $250 million.  Ex. 6, at 5, 8, 16; *see also* ¶ 149(a).  HP's stock price did not decline after this disclosure.

On June 21, 2016, HP announced it would change its business model, shifting from the "push" model, which focused on "promoting supplies at high frequency and high discount levels" and had encountered more challenges as the market changed, to a "pull" model strategy of selling Supplies into the market in a manner "driven by market demand."  Ex. 9, at 2.  As part of this switch to a new business model, HP announced it planned to "reduce tier 1 and tier 2 supplies channel inventory levels during Q3 and Q4 [2016]" by $450 million.  *Id.* at 3-4; *see also id.* at 6.  HP explained that "[t]his action is expected to help reduce disruption by minimizing unofficial channels, eliminating grey marketing activity and ultimately allowing for less price variability" by allowing HP to "focus more on selling through the value of our brand . . . and less through promotions and pricing."  *Id.* at 2.  HP anticipated that going forward it would "have higher revenue as a result of not having to discount as much."  *Id.* at 9.  Plaintiff alleges that HP's stock price declined after this call.  ¶ 208.

*The SEC Settlement.*  More than four years after HP announced its switch from a push to a pull model, HP agreed to a settlement with the Securities and Exchange Commission ("SEC").  SEC Settlement at 1.  In the Settlement, dated September 30, 2020, the SEC alleged that from November 2015 to June 2016, some HP regional managers sold excess inventory at steep discounts (often at the end of a fiscal quarter) or sold to distributors who then resold the products outside their assigned geographic region.  *See id.* ¶ 2.  The SEC alleged that these sales practices increased the Company's quarterly revenues, but eroded profit margins, led to price instability, and increased Supplies inventory held by distributors.  *See id.* ¶ 1.  The SEC did not allege that HP engaged in improper accounting, misstated any financial metric, needed to restate its financials, or committed securities fraud.  Instead, the SEC alleged that HP violated non-fraud based provisions of the securities laws by not disclosing these sales practices as trends, which the SEC alleged presented a misleading picture of HP's business in 2015-2016.  *Id.* ¶ 39.  The SEC also did not allege that the Individual Defendants in this case (or any other senior officer) engaged in misconduct.  To the contrary, the SEC concluded HP's "principal executive officers who were responsible for the company's disclosures" only "learned of the [sales practices] . . . after the actual conduct had taken place."  *Id.* ¶ 49; *see also id.* ¶ 48 (HP's controls did not bring these practices to the attention of "HP executives responsible for the company's disclosures").  To reach a settlement—in which HP did not admit the SEC's allegations—HP agreed to pay a fine of $6 million.  *Id.* at 1, 11.

## III.    ARGUMENT

Plaintiff's Complaint should be dismissed because the claims are time-barred under the two-year statute of limitations and the five-year statute of repose.  The Complaint also should be dismissed on standing grounds, as Plaintiff sold all of its HP shares before the stock drop that Plaintiff claims gives rise to damages.  Finally, the Complaint should be dismissed because Plaintiff fails to plead facts, with the particularity required by the PSLRA and FRCP 9(b), establishing (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) on which Plaintiff relied; (5) economic loss; and (6) loss causation.  *Loos v. Immersion Corp.*, 762 F.3d 880, 886-87 (9th Cir. 2014); 15 U.S.C. § 78u-4(b)(1)-(2); *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

**A.    The Complaint Should Be Dismissed With Prejudice Because Plaintiff's Claims Are Time-Barred And Plaintiff Lacks Standing**

**1.    The Statute Of Limitations Bars Plaintiff's Claims**

Plaintiff's claims are barred by the statute of limitations, which requires that a securities fraud claim be brought within "2 years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b).  "Discovery" of the facts "as used in [§ 1658(b)] encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).

Plaintiff's own allegations establish that a "reasonably diligent plaintiff" could have discovered the facts giving rise to this action *five years* ago.  Plaintiff alleges that "[c]omments during the June 21, 2016 investor call **revealed** what Defendants had been misrepresenting and concealing during the Class Period."  ¶ 70.  Specifically, Plaintiff alleges that "Defendant Weisler admitted on the June 21, 2016 call" that HP had experienced "'grey marketing activity,'" and that "Defendant Lesjak admitted" that HP was no longer going "'to discount as much as we've been discounting.'"  ¶ 69, n.8.  These "revelations" and "admissions" are the core factual allegations on which Plaintiff bases its securities fraud claim.  ¶ 5.

Plaintiff also claims the putative class suffered losses in 2015 and 2016 when "information concealed by Defendants' misleading statements was **revealed to the market** . . . through partial disclosures that revealed **the nature** and effect of Defendants' alleged conduct."  ¶ 200.  These "corrective" disclosures, according to Plaintiff, occurred on November 24, 2015, January 7, 2016, February 24, 2016, and June 21, 2016 (¶¶ 203-08)—all more than two years ago and most more than five years before Plaintiff filed the Complaint.  "The corrective disclosure date is the same as the . . . date on which the claim should have been discovered through reasonable diligence."  *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013) (Section 11 claim was time-barred); *see also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011) (same); *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *12 (S.D. Cal. Sept. 25, 2019) (same).  Because the basic facts necessary to plead an actionable misstatement were—according to Plaintiff's own pleading—available to shareholders in 2015 and 2016, the two-year statute of limitations had long expired by the time Plaintiff filed the Complaint in April 2021.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

Plaintiff's allegations also show that it could have discovered five years ago the facts that Plaintiff now claims establish scienter. Plaintiff grounds its scienter theory on so-called "admissions" by the Individual Defendants of their "detailed involvement in overseeing the Supplies business." ¶ 150. But again, all of these statements were made "[l]eading into and throughout the Class Period"—meaning in 2015 and 2016. ¶¶ 150-54, 157-59, 161-63, 167-70, 172, 174-78, 180-82, 185, 187-88. Plaintiff also alleges that Sarbanes-Oxley certifications signed by certain Individual Defendants support an inference of scienter, but again, these certifications were signed and filed in 2015 and 2016. ¶¶ 190-91. All of this publicly available information constitutes "facts a reasonably diligent plaintiff would have known" no later than June 21, 2016—the last day of the Class Period in this case. *See Merck*, 559 U.S. at 648. Because the operative "facts" underlying Plaintiff's securities fraud claims could have been discovered through reasonable diligence nearly five years before Plaintiff filed the Complaint, the claims are time-barred under the two-year statute of limitations.

### 2. Statements Made Before April 21, 2016 Are Barred By The Statute Of Repose

The five-year statute of repose separately bars Plaintiff's securities fraud claims based on Defendants' statements made before April 21, 2016. 28 U.S.C. § 1658(b) (a "private right of action" for a violation of the Exchange Act "that involves a claim of fraud" must be brought no later than "5 years after such violation"). Section 1658(b) is "an unqualified bar on actions instituted '5 years after such violation,' giving defendants total repose after five years." *Merck*, 559 U.S. at 650; *see also In re Maxim Integrated Prod., Inc., Derivative Litig.*, 574 F. Supp. 2d 1046, 1071 & n.7 (N.D. Cal. 2008) (Section 1658(b) "serves as a statute of repose"—"a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation.") (quoting *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003)). The statute may not be avoided with respect to allegedly false "representations made prior to the five-year statute of limitations period under a theory of continuing wrong" because "[e]ach false representation may constitute a separate violation of § 10(b)" and "the five-year period begins to run with respect to each violation when it occurs." *Maxim*, 574 F. Supp. 2d at 1071; *see also Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 864 (N.D. Cal. 2011) (collecting cases for same proposition).

Plaintiff filed its Complaint on April 21, 2021. ECF No. 37. Thus, any claims based on statements

made before April 21, 2016 are barred by the five-year statute of repose. *See* ¶¶ 95, 98-100, 102, 105-07, 109, 120, 122-23, 125-26, 136-37, 140.[2]   Plaintiff's claims based on alleged misstatements pre-dating April 21, 2016 must be dismissed. *See, e.g.*, *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008).

### 3. Plaintiff Lacks Standing To Bring Any Claim Not Barred By the Statutes of Limitations and Repose

Even if Plaintiff's claim based on the handful of challenged statements post-dating April 21, 2016 were not barred by the two-year statute of limitations, *see* ¶¶ 112-13, 115, 128-30, 141-45, 147, Plaintiff lacks standing to bring any claim based on statements made in this eight week period. According to the certification filed by Plaintiff in this action, Plaintiff purchased its HP shares no later than November 24, 2015 and sold all of its HP shares by December 30, 2015. ECF No. 20-2 at 3; *see also* ECF No. 20-3 (Plaintiff's alleged losses occurred in 2015).

In *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998 (N.D. Cal. 2006), the court dismissed a Section 10(b) claim for lack of Article III standing in the identical situation. The court held that plaintiff lacked "standing to assert claims for misrepresentations or omissions that occurred after" he sold all of his shares because he "cannot show that he was harmed by the misrepresentations and omissions" made after that date. *Id.* at 1024; *see Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020) ("To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision."). The same is true here. Plaintiff lacks standing to bring a claim based on statements that occurred in 2016—after Plaintiff had sold all of its HP shares. In fact, Plaintiff cannot state a claim as to any statement made after November 24, 2015, the date of its last purchase, because (1) none of those statements are alleged to have been corrected (causing an injury) until after Plaintiff sold its HP shares, ¶¶ 199-208, and (2) securities fraud is only actionable if it occurred *before* a plaintiff purchased shares. *See Hanon v. Dataproducts Corp.*, 976

---

[2]   The repose period is measured from when Plaintiff filed the operative complaint, *not* November 5, 2020, when a different HP shareholder filed the first complaint in this action. ECF No. 1. *See Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 412 (2d Cir. 2016) (lead plaintiff's claims time barred even though original securities class action complaint filed by a different plaintiff was timely filed).

F.2d 497, 501 (9th Cir. 1992) ("allegedly fraudulent acts which occur after a plaintiff's purchase of stock cannot form the basis of a section 10(b) claim because the acts were not performed in connection with the purchase or sale of securities"); *Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) ("[s]tatements issued after a plaintiff's purchase of stock cannot form the basis of a Section 10(b) or Rule 10b-5 claim because the statements could not have affected the plaintiff's decision to purchase stock."); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1008 (N.D. Cal. 2017) (same).[3]

\*     \*     \*

Plaintiff's claims should be dismissed on these threshold grounds alone. Because these statute of limitations and standing deficiencies cannot be cured, this action should be dismissed with prejudice. If, however, the Court were to consider the sufficiency of Plaintiff's allegations, the Complaint should be dismissed for failure to state a claim as well, as discussed below.

**B.      The Complaint Lacks Particularized Facts Pleading the Essential Elements of A Securities Fraud Claim**

**1.      Plaintiff Fails To Plead Falsity With Particularity**

Plaintiff fails to plead with the required particularized facts that any of the challenged statements in the Complaint were false or misleading. Under the PSLRA, Plaintiff is required to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Statements are misleading only if they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). "Thus, as long as [any] omissions do not make the actual statements misleading, a company is not required to disclose" other facts "even if investors would consider the omitted information significant." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir.

---

3      The only alleged misstatements that supposedly were made before Plaintiff purchased its HP shares allegedly were "incorporated by reference" into HP's November 5, 2015 8-K. ¶ 95. But the 8-K says no such thing. These challenged statements actually appear in a 10-Q filed by Hewlett-Packard Company before the Class Period. *Compare* Ex. 2, at Ex. 99.2 p.1, *with* Ex. 3, at 68, 70, 74, 80. The November 5, 2015 8-K did *not* incorporate separate, pre-Class Period statements.

Gibson, Dunn & Crutcher LLP

2012).  Plaintiff's allegations fail under these standards.

a.    **The Supplies Revenue Statements Are Protected Forward-Looking Statements**

Plaintiff claims that "Defendants' Class Period statements that the Supplies business was 'on track' to stabilize by the end of FY 2017" were misleading "[d]ue to the undisclosed pull-in scheme."  ¶¶ 133, 149(a).  As the Ninth Circuit recently confirmed, statements that a company is "'on track' to achieve [its] goal[s] . . . are [] forward-looking statements" immunized from liability under the PSLRA safe harbor. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021).  Additionally, Defendants' statements regarding their expectation that Supplies revenue would "stabilize by the end of 2017," ¶¶ 136, 140-43, 147-48, are "projection[s] of revenues" and statements "of future economic performance" that fall squarely within the PSLRA safe harbor.  15 U.S.C. § 78u-5(i)(1)(A)-(D).  These forward-looking statements are not actionable unless Plaintiff can show *both* that Defendants made the statements with "actual knowledge" that they were false, *and* that the statements were not "accompanied by meaningful cautionary statements."  15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i).  Plaintiff fails to make either showing.

Plaintiff nowhere pleads that Defendants made their statements that HP was "on track" to stabilize revenue with actual knowledge they were false.  Nor could Plaintiff do so, given Plaintiff's acknowledgement that HP *did* stabilize supplies revenue in 2017.  ¶ 149(b); *see also Elec. Workers Pension Fund v. HP Inc.*, 2021 WL 1056549, at *5 (N.D. Cal. Mar. 19, 2021) (noting that HP "achiev[ed] stabilization one quarter earlier than expected in 2017").  Plaintiff alleges that the projections were false because of the alleged "pull-in scheme"—*i.e.*, that certain HP employees engaged in accelerated discounting and gray marketing practices.  ¶ 149(a), (b).  But even the SEC Settlement that forms the basis for Plaintiff's Complaint alleges that Defendants *did not* learn about these challenged practices until "quarters after the actual conduct had taken place."  SEC Settlement ¶ 49.  Plaintiff fails to plead any *facts* that Defendants knew any statement was false at the time it was made.

In any event, each of the challenged statements was accompanied by meaningful cautionary

Gibson, Dunn & Crutcher LLP

language.[4] Cautionary language is "meaningful" if it "identif[ies] important factors that could cause actual results to differ materially from those in the forward-looking statement." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). HP's cautionary language identified the relevant risks associated with "[s]uccessfully managing the interaction of our direct and indirect channel efforts"— including the risk of "distribution channel conflicts" and "pricing challenges" that could lead to "excess or obsolete inventory"—and warned that a "failure to implement the most advantageous balance" in its distribution channels "could adversely affect [HP's] revenue and gross margins." Ex. 1, at 22-23. HP also warned investors that *all* forward-looking statements "involve risks, uncertainties, and assumptions" and "[i]f the risks or uncertainties ever materialize or the assumptions prove incorrect, the results of HP . . . may differ materially from those expressed or implied by such forward-looking statements and assumptions." *Id.* at 3. This language is more than sufficient. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (approving less detailed warning). The "on track" and stabilization statements are squarely protected forward-looking statements. *See Tesla*, 985 F.3d at 1192.

> **b.      The Complaint Fails To Plead Particularized Facts Demonstrating That Statements About Supplies Pricing and Margins Were Misleading**

Plaintiff also challenges statements that the "primary factors" accounting for declining margins were "unfavorable currency impacts" and a "competitive pricing environment." ¶¶ 95, 98-100, 102, 105-07, 109, 112-13, 115. According to Plaintiff, these statements were false because the decline in margins "was primarily due to HP's undisclosed pull-in scheme, not currency or competitive pricing issues." ¶ 116(a). But there is not a single factual allegation in the Complaint that supports this conclusory assertion.

Because Plaintiff lacks actual facts to support its theory of fraud, Plaintiff invents them. For example, Plaintiff creates a chart purporting to show a correlation between HP's declining profit margins and "$700 million of low-margin sales" allegedly caused by the "[p]ull-in scheme." *Id.* ¶ 116(b). But Plaintiff's chart simply assumes that the entire $700 million inventory reduction announced during the

---

[4]      Ex. 5, at 1; Ex. 7, at 4; Ex. 6, at 1; Ex. 8, at 16. These statements referred back to the cautionary language in HP's SEC filings, which is all that is required. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1062 (N.D. Cal. 2012).

Gibson, Dunn & Crutcher LLP

Class Period—comprised of a $250 million inventory rebalancing and a separate $450 million investment as part of the business model change, *supra* at 6—is attributable to the challenged sales practices. Not only is there no factual allegation in the Complaint that supports Plaintiff's conclusion, this theory also is contradicted by what Defendants actually said—that HP reduced $450 million of inventory in connection with its decision to adopt a new business model in which HP would lower the inventory ranges and ceilings for its Supplies business. *Supra* at 6.

Plaintiff's "estimate" of the impact pull-ins and gray marketing had on margins is even more specious. ¶¶ 116(e), 193-98. In an attempt to demonstrate that the challenged sales practices were the "primary" cause of declining margins, Plaintiff purports to model the financial impact of these practices using five different "scenarios." ¶ 197. These scenarios, however, all rest on unsupported assumptions, not facts. Plaintiff admits, for example, that it does not know how many pull-in sales occurred or the discounts used for those sales, so it "*[e]stimated* pull-in sales as a % of Supplies sales" to which it "applied an *estimated* discount of 30%" to every sale. ¶¶ 196-97. These estimates are simply made up by Plaintiff. Each of Plaintiff's scenarios also *assumes* that HP had $700 million of "excess channel inventory build-up," ¶ 193, but as Defendants explained at the time, if HP had continued operating under the push model, "then *the channel inventory levels were at the right levels*." Ex. 9, at 6. Each scenario also *assumes* that all of this allegedly "excess channel inventory" built up during the Class Period. ¶ 193. But HP stated it had elevated inventory levels *before* the Class Period, and was "still slightly above target weeks of supply range for supplies" in November 2015. Ex. 4, at 9, 11.

Plaintiff is left only with the SEC's conclusory allegation that pull-ins and gray marketing had a "material impact" on HP's decline in gross margin. ¶ 116(c)-(d) (quoting SEC Settlement ¶¶ 39, 43). This untested, wholly conclusory allegation fails to establish that these sales practices were the "primary" cause of declining margins. But even more fundamentally, "legal conclusions" in an SEC settlement cannot serve as a substitute for the "particularized facts" Plaintiff must plead under the PSLRA. *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008).

Finally, to the extent Plaintiff alleges that these statements were misleading by failing to disclose *all* reasons for declining margins, that claim fails too. The securities laws do not impose a duty to make disclosures "complete." *Brody*, 280 F.3d at 1006. For example, if a company "disclosed problems"

affecting its sales volumes, its statements are not rendered misleading by omission of "additional" factors affecting sales. *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *10-13 (N.D. Cal. Aug. 7, 2019) (company need not disclose "weak product launch" when it disclosed "slower pace of order volume"). HP had no obligation to disclose *all* reasons for declining margins merely because it disclosed the *primary* reasons—unfavorable currency impacts and a competitive pricing environment. For the same reason, Plaintiff's allegation that statements about "revenue growth in APJ" were misleading because they omitted that the "growth was due to the pull-in scheme" also fails to plead a misstatement. ¶¶ 137-38, 144-45, 149(c). Defendants' bare statement that HP experienced revenue growth—which Plaintiff does not contend was false—did not create an obligation to list every reason for the growth. *See Brody*, 280 F.3d at 1006; *McGovney*, 2019 WL 8137143, at *10-13.

c.    **Plaintiff Fails To Plead Specific Facts Demonstrating That The Statements About Supplies Channel Inventory Were Misleading**

Plaintiff's attempt to plead a false statement about HP's Supplies channel inventory also fails. Plaintiff claims that statements made in 2015 and early 2016 that HP was "slightly above target weeks of supply range for supplies" were misleading because HP later announced in May 2016 that it had reduced inventory by $250 million. ¶¶ 120-30, 132. But HP's reduction of inventory is *consistent* with Defendants' statements that inventory levels were *above* the target levels, so there was nothing misleading about those statements. *See Brody*, 280 F.3d at 1006 (statements are misleading only if they "affirmatively create an impression of a state of affairs that *differs* in a material way from the one that actually exists"). Nor does Plaintiff plead facts showing that HP had $250 million in excess inventory at the time the challenged statements were made—or at any other point before HP made that announcement at the end of May 2016. The Complaint thus lacks the necessary "allegations that [the] statements were false when made," *Cooper v. Pickett*, 137 F.3d 616, 626 (9th Cir. 1997), and instead impermissibly pleads "fraud by hindsight"—the very practice Congress "put an end to" when it "enacted the PSLRA," *In re Daou Sys., Inc.*, 411 F.3d 1006, 1021 (9th Cir. 2005). *See also Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014) (plaintiffs' failure to plead that Microsoft "should have regarded its then-held inventory as worrisomely large" at the time the statements were made rendered their complaint "a classic example of impermissible fraud by hindsight"), *aff'd*, 692 F. App'x 491 (9th Cir. 2017).

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

Plaintiff's claim that the June 2016 announcement that HP was reducing inventory by $450 million rendered misleading earlier statements that inventory was "within our targeted ranges" likewise is fraud by hindsight. ¶¶ 128-30, 132, 142, 149. This claim fails for an additional reason as well. HP announced that it was reducing inventory by $450 million in the second half of 2016 because it adopted a *new business model* that required less inventory, not because it believed it had excess inventory. *Supra* at 6. As Defendants stated at the time, if HP had continued under the old business model, "then the channel inventory levels were at the right levels." Ex. 9, at 6. Plaintiff does not contend this statement was false.

Plaintiff also claims that HP's statements about its inventory levels were misleading because HP reported channel inventory levels for the Tier 1 distributors—the distributors to whom HP actually sold products—and did not include downstream sub-distributors below that tier. ¶ 132(b), (c). But as Plaintiff alleges from the SEC Settlement, "HP did not report to the market Tier 2 channel inventory" because "HP did not receive channel inventory data from all of its Tier 2 channel partners, and thus only estimated its Tier 2 channel inventory following the end of quarters using incomplete data." SEC Settlement ¶ 15; *see id.* ¶ 48 ("HP's lack of visibility into channel inventory levels below Tier 1 left it without meaningful insight into its overall channel health"). Plaintiff pleads no facts demonstrating that it would have been more accurate to disclose inventory levels using "incomplete data" for downstream tiers in which HP had a "lack of visibility" instead of only reporting data for Tier 1, *i.e.*, the distributors to whom HP actually sold ink and toner. *See West v. eHealth, Inc.*, 2016 WL 948116, at *6 (N.D. Cal. Mar. 14, 2016) ("[I]t is implausible" that defendant "could have avoided misleading their investors by disclosing more information about a metric that defendants could not accurately measure.").

### 2. Messrs. Lores and Bailey Should Be Dismissed Because They Did Not Make Any Challenged Statement

The Section 10(b) claim against Messrs. Lores and Bailey fails for the additional reason that Plaintiff fails to plead that either of these defendants made any of the statements challenged in the Complaint. A defendant can only be held liable under Section 10(b) if he or she "make[s]" a challenged statement. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement." *Id.* at 142. None of the alleged misstatements in the Complaint are alleged to have been made by Mr.

Gibson, Dunn & Crutcher LLP

Lores or Mr. Bailey, *see* Compl. Section VII, and Plaintiff does not allege that either of these defendants had "ultimate authority" over any challenged statement. Mr. Lores and Mr. Bailey should be dismissed from this action for this reason alone. *See Solarcity*, 274 F. Supp. 3d at 1007 (dismissing executive because "Plaintiffs make no allegations that [he] had any actual authority over what was and was not included in the shareholder letters and Forms 10–Q that Plaintiffs challenge").

### 3.    Plaintiff Fails To Plead Scienter With the Rigor Required Under the PSLRA

The Complaint also should be dismissed because Plaintiff fails to plead particularized facts creating a "strong inference" that any Defendant made false or misleading statements "either intentionally or with deliberate recklessness," as required by the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). "[R]ecklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Plaintiff must plead the requisite state of mind "with respect to those individuals who actually made the false statements," *Glazer Capital*, 549 F.3d at 745 (9th Cir. 2008), or, with respect to HP, "[t]he scienter of [its] senior controlling officers"—Mr. Weisler or Ms. Lesjak. *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015); *see also Apollo*, 774 F.3d at 607 (plaintiff must "allege scienter with respect to each of the individual defendants"). Even then, a strong inference of scienter exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "In reviewing a complaint under this standard, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Metzler*, 540 F.3d at 1061.

Plaintiff comes nowhere close to meeting this strict pleading burden. Plaintiff fails to allege *any* particularized facts that Defendants knew about the challenged sales practices, let alone that these practices were the primary cause of HP's declining margins and excess inventory. The Complaint should be dismissed on this independent basis.

### a.    The SEC Settlement Fatally Undermines Plaintiff's Attempt to Plead Scienter

Plaintiff's scienter theory fails at the outset. Even though Plaintiff bases its claims on the

Gibson, Dunn & Crutcher LLP

allegations in the SEC Settlement (*e.g.*, ¶¶ 73-89), Plaintiff ignores that the SEC did not assert that Defendants acted with scienter and instead concluded that they did not: "HP's principal financial officers and principal executive officers who were responsible for the company's disclosures learned of the [gray marketing and pull-ins] conduct in connection with HP's planned shift from a push to a pull model *quarters after the actual conduct had taken place*." SEC Settlement ¶ 49. The Complaint also ignores the SEC's allegation that "HP's disclosure process lacked sufficient interaction with operational personnel who reasonably would have been expected to recognize that the known trends attributable to the pull-ins and A-Business were absent from HP's disclosures." *Id.* ¶ 48. These allegations that HP's senior-most officers did *not* know of the challenged sales practices at the time of the alleged misstatements are fatal to Plaintiff's claim that the Individual Defendants knew or were deliberately reckless in not knowing that any of the challenged statements were false at the time they were made.

The SEC Settlement also undercuts Plaintiff's allegation that Defendants "knew of, but omitted, the existence of significant Tier 2 inventory." ¶ 189. The SEC alleged that "HP did not receive channel inventory data from all of its Tier 2 channel partners, and thus only estimated its Tier 2 channel inventory following the end of quarters using *incomplete data*." SEC Settlement ¶ 15; *see id.* ¶ 48 ("HP's *lack of visibility* into channel inventory levels below Tier 1 left it without meaningful insight into its overall channel health"). Plaintiff pleads no facts demonstrating that the Individual Defendants knew the Tier 2 channel inventory data (the SEC alleges it was *not* known), or that their failure to include this data in the Company's calculation of channel inventory was false or misleading. At bottom, the Complaint fails to plead particularized facts showing that the accurate reporting of Tier 1 inventory levels was somehow intentionally or recklessly fraudulent.

### b.    Plaintiff Fails To Plead Scienter Under The Core Operations Theory

Plaintiff's scienter theory rests on the "core operations" doctrine. This is "a scienter theory that infers that facts critical to a business's 'core operations' . . . are known to a company's key officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783-84 (9th Cir. 2008). "Proof [of scienter] under this theory is not easy," *Intuitive Surgical*, 759 F.3d at 1062, and it is an "*exceedingly rare* category of cases in which the core operations inference, without more, is sufficient under the PSLRA." *S. Ferry*, 542 F.3d at 785 n.3. The *only* time that scienter may be inferred under the core operations theory by itself, without

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

additional particularized allegations of "actual access to the disputed information," is "in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786.  Plaintiff's allegations fail to plead scienter under this difficult standard.

Plaintiff fails to allege particularized facts that any Defendant had "actual access to the disputed information" about the gray marketing (which HP policy prohibited, ¶ 50) and aggressive discounting practices that allegedly rendered the challenged statements misleading—and, again, the SEC Settlement concluded they did not.  Plaintiff points to so-called admissions by Mr. Weisler and Ms. Lesjak about their (i) "detailed involvement in monitoring" the Supplies business, ¶¶ 156-57; (ii) "significant experience monitoring Supplies channel inventory," ¶¶ 179-83; and (iii) "use" of the Four Box Model, ¶¶ 171-78. These generic allegations do not permit a "strong inference" that Defendants had access to information about the specific sales practices by line-level employees challenged in the Complaint.  *E.g.*, *NVIDIA*, 768 F.3d at 1064 (requiring "specific information" about the fraud to be conveyed to management).  In fact, Judge Illston already held in the *Electrical Workers* case that senior officer awareness of the Four Box Model fails to establish scienter under the core operations doctrine even with respect to statements about the model itself.  2021 WL 1056549, at *6.  Because Plaintiff's allegations are no different than the vague allegations of a "'hands-on' management style" that the Ninth Circuit has repeatedly rejected, Plaintiff fails to plead scienter.  *Glazer Capital*, 549 F.3d at 746; *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (rejecting core operations allegations that executives had "hands-on style and general accounting acumen" but were not "involved in accounting decisions as minute as the calculation").

Unable to adequately allege that Mr. Weisler acted with scienter, Plaintiff resorts to repeatedly misquoting him.  Plaintiff quotes Mr. Weisler as saying "***we know exactly how much inventory we have.***" ¶ 7 (emphasis added by Plaintiff); ¶ 167 (same).  As an initial matter, this statement was not made during the putative class period.  But, more importantly, the sentence does not end with "have."  It continues to say "how much inventory we have ***in consumer, in commercial.***"  *See* Ex. 10 at 41.  Plaintiff elides that Mr. Weisler was referring to consumer and commercial inventory, not Supplies inventory.  Indeed, the full quote actually shows that he was contrasting Personal Systems inventory with Supplies inventory. *See id.* at 41-42.  Plaintiff has failed to adequately plead scienter as to Mr. Weisler and cannot save its

claims by misquoting him.

Plaintiff likewise strains to attempt to plead scienter for Mr. Bailey and Mr. Lores by alleging that "greater than customary discount levels . . . were approved by the region heads, such as Defendant Bailey," ¶ 156, and that Mr. Lores "acknowledged it was his responsibility to monitor Tier 1 and Tier 2 channel inventory," *id.* ¶¶ 170, 187. Mr. Lores' so-called acknowledgement is nothing of the sort, as the language quoted in those very paragraphs makes clear. *See id.* ¶¶ 170, 187. More fundamentally, neither Mr. Bailey nor Mr. Lores is alleged to have made any challenged statement, and neither is alleged to have been a "senior controlling officer" whose scienter can be imputed to HP, so their alleged knowledge is irrelevant. *See ChinaCast*, 809 F.3d at 476; *Glazer Capital*, 549 F.3d at 745. And even if Mr. Bailey did know about certain "greater than customary discount[s]," that does not show that he knew those discounting practices were the *primary* reason for declining margins—as required to establish knowledge of falsity under Plaintiff's theory of the case. *Supra* at 13.

Plaintiff fares no better with its allegations that Ms. Lesjak, who was the CFO and in charge of HP's finance team, "spent significant time performing detailed operational reviews," ¶ 163, that HP's finance team—but *not* the Individual Defendants—"monitored channel inventory levels using weekly 'flash' reports," ¶ 166, and that Ms. Lesjak paid attention to inventory levels, ¶ 169.[5] The Ninth Circuit routinely rejects such unspecific allegations as insufficient to plead scienter. For example, in *Zucco*, the Ninth Circuit held that "allegations that senior management . . . closely reviewed the accounting numbers generated . . . each quarter . . . and that top executives had several meetings in which they discussed quarterly inventory numbers" were insufficient to plead scienter under the core operations theory because "[a]llegations that . . . management had access to the purportedly manipulated quarterly accounting numbers, or that the management analyzed the inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated." 552 F.3d at 1000-01; *see also Intuitive Surgical*, 759 F.3d at 1063 ("Mere access to reports containing undisclosed sales data is

---

5    Plaintiff also gives the back of the hand to Ms. Lesjak's repeated cautionary statements that the business "remained challenged," ¶ 107, and that inventory levels were above the targeted range. ¶ 123. Highlighting the weakness of its claim, Plaintiff even goes so far as to erroneously attribute statements made by others, *e.g.* a non-defendant, to Ms. Lesjak. *Compare* ¶¶ 157, 174, *with* Ex. 4 at 19.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

insufficient to establish a strong inference of scienter."); *Webb*, 884 F.3d at 857 ("generalized access" to reports is insufficient to invoke the core operations theory).[6]

These allegations fail for an additional reason. Plaintiff does not allege that the operational reviews or weekly flash reports contained information that would have alerted any Individual Defendant to the challenged sales practices or that they were the "primary" reason for increased channel inventory. The Complaint lacks any factual allegations of "specific negative information garnered" by the Defendants from reports or reviews that would contradict the statements that Plaintiff alleges are misleading. *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019). In these circumstances, courts routinely decline to apply the core operations theory. *Id.*; *see also, e.g.*, *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *11 (N.D. Cal. Sept. 16, 2014) (access to reports insufficient to show defendants "possessed any contradictory information to which [d]efendants could be exposed.").

Plaintiff also fails to plead facts showing that this is one of the "rare" cases where "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *S. Ferry*, 542 F.3d at 786. Again, the allegations in the SEC Settlement that Plaintiff expressly incorporates negates any inference—let alone the "strong inference" required—that the gray marketing and pull-ins practices *by line-level employees* were "so obvious" that HP's senior-most executives knew about them. *See Zucco*, 552 F.3d at 991, 1001. These sales practices allegedly were concentrated in a single region (APJ), and in one of three business units (Supplies) of the Company's Printing business segment—which in turn is just one of three business lines operated by HP—a company that had billions of dollars in revenue and tens of thousands of employees across the globe. SEC Settlement ¶¶ 6, 24; Ex. 1, at 17, 57. This is nothing like the "rare" case where the core operations theory succeeds, such as where a CEO is "in charge of financial reporting, accounting, and billing" in a company that "never employed more than fourteen employees." *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *12 (N.D. Cal. Feb. 15, 2018).

Plaintiff's bare allegations that the Supplies business is important to HP does not permit an

---

6    For similar reasons, Plaintiff's bare allegations that Mr. Weisler's and Ms. Lesjak's Sarbanes-Oxley certifications support scienter fail. ¶¶ 190-91. "Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter.'" *Zucco*, 552 F.3d at 1004.

Gibson, Dunn & Crutcher LLP

inference that Defendants knew *everything* about that business. *See, e.g.*, ¶ 152 (it's "'all about supplies'"), ¶ 185. "[I]t does not automatically follow from the 'core nature' of HP's . . . printer business . . . that each Individual Defendant was immediately aware of" every detail about that business—like the challenged sales practices in this action. *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1078 (C.D. Cal. 2012); *Veal v. LendingClub Corporation,* 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) ("'[o]rigination fees' may be one of LendingClub's main revenue sources, but that fact does not make every piece of information within the Company that relates to those fees critical to the business's core operations."). Thus, the Complaint fails to plead specific facts demonstrating that it would be absurd to suggest the Individual Defendants were unaware that their statements were false or misleading.[7]

### c. Plaintiff's Failure To Allege Motive To Lie Undermines Any Inference Of Scienter

Plaintiff simply does not allege any plausible theory of scienter, never mind one that is more compelling than the competing, non-fraudulent inference. *Tellabs*, 551 U.S. at 324. Defendants were frank about the challenges facing the Supplies business, and when they needed to make adjustments to inventory or change business strategy, they disclosed it. The Complaint also fails to identify any plausible motive of any Individual Defendant to engage in fraud. As the Ninth Circuit recently stated, "if the complaint fails to plead a plausible motive for the allegedly fraudulent action,  the  plaintiff  will face a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021). This "substantial hurdle" is present here and Plaintiff offers no allegations that enable it to clear it.

### 4. Plaintiff Fails To Plead Loss Causation With Particularity

The Complaint should be dismissed for the independent reason that Plaintiff fails to plead loss causation. To adequately plead loss causation—the causal connection between a misrepresentation and a loss—with the requisite particularity, a plaintiff "must demonstrate that an economic loss was caused by

---

[7]    The "[i]llustrative analyses of the quarterly impact of the pull-in scheme conducted by Lead Plaintiff" that purportedly illustrate the "magnitude of the pull-in scheme" are baseless and cannot be used to invoke the core operations doctrine. ¶¶ 192-98. As already explained, these "analyses" are nothing more than speculation, based on assumptions and "estimates" invented by Plaintiff, not factual allegations. *See supra* at 14. The Court should reject these allegations out of hand.

22

Gibson, Dunn & Crutcher LLP

the defendant's misrepresentations, rather than some intervening event" or "other fact." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-10 (9th Cir. 2016). In other words, a plaintiff must trace its claimed loss back to "the very facts about which the defendant lied." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013). This requires a plaintiff to plead particularized facts establishing that "after purchasing her shares and before selling . . . (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). Under this "corrective disclosure" theory, *see id.* at 789-90, a plaintiff must "specify which of the Defendants' statements were made untrue" by the corrective disclosures, *Apollo Grp.*, 774 F.3d at 608.

Plaintiff fails to meet this pleading burden. Plaintiff contends that disclosures on November 24, 2015, January 7, 2016, February 24, 2016, and June 21, 2016 "corrected the market price" for HP's stock, but Plaintiff does not identify a single challenged statement that was "corrected" by these disclosures. ¶¶ 202-206, 208. In other words, Plaintiff asks the Court to assume that *every* challenged statement was corrected without explaining why. This pleading failure alone warrants dismissal.

Plaintiff also does not plead facts, as required, demonstrating that the stock drops were caused by fraud. For the November 24, 2015 and February 24, 2016 declines, Plaintiff only asserts that HP announced "disappointing operating profit and gross margins." ¶¶ 203, 206. And for January 7, 2016, Plaintiff only alleges that an analyst changed its recommendation regarding purchasing HP stock because of the Company's "stagnated growth." ¶ 205. But pleading loss causation under a corrective disclosure theory requires allegations that the market "learned of and reacted to th[e] fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally." *Metzler*, 540 F.3d at 1063; *see also Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) (generally "mere repackaging of already-public information by an analyst . . . is simply insufficient to constitute a corrective disclosure."); *Loos*, 762 F.3d at 890 (approving of "the Eleventh Circuit's reasoning" in *Meyer*). Courts in this Circuit routinely dismiss securities fraud claims where, like here, the "far more plausible reason" for a stock drop is disappointing financial results. *Id.* at 1065; *see also In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *8 (N.D. Cal. Mar. 11, 2011) (plaintiff "fail[ed] to plead facts sufficient to . . . show any decline in stock price was caused by the alleged fraud rather than a typical market reaction to disappointing financial reports"); *In re*

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

*Verifone Sec. Litig.*, 2016 WL 1213666, at \*9 (N.D. Cal. Mar. 29, 2016) ("poor performance" more plausible than theory "that Defendants engaged in fraudulent misconduct which led to lower revenues").

Plaintiff's loss causation theory regarding the stock drop on June 21, 2016 also is deficient because the Complaint identifies the very "intervening event" that undermines Plaintiff's theory of loss causation: HP's announcement of "a complete overhaul of HP's Printing sales model." ¶ 208.  Plaintiff alleges this stock drop occurred because HP disclosed it "would reduce Supplies channel inventory by $450 million" with a corresponding reduction in revenue. *Id.*  While Plaintiff asks the Court to *assume* that the alleged fraud caused this inventory reduction, Plaintiff ignores that Defendants repeatedly disclosed that inventory was being reduced as part of the new sales model—and that inventory levels would have been appropriate if HP continued under the old model.  Ex. 9, at 3-4, 6.

Plaintiff's conclusory assertion that the market understood HP's announcement about inventory reduction as a "coded message revealing the fraud" suffers from another problem. *See Metzler*, 540 F.3d at 1064.  When HP reduced its inventory by $250 million in May 2016, ¶¶ 131-132(a), *HP's stock price did not decline*.  Plaintiff nonetheless claims that when HP announced a month later that it was reducing inventory by another $450 million, that announcement somehow revealed the "fraud."  This plain inconsistency only underscores that Plaintiff has failed to plead specific facts establishing loss causation, or that the revelation of the "truth" caused a loss by correcting a specific prior misstatement.[8]

### 5.    Plaintiff Fails To State A Section 20(a) Claim

Because Plaintiff fails to plead a primary violation of the securities laws under Section 10(b), its derivative claim under Section 20(a) should also be dismissed. *NVIDIA*, 768 F.3d at 1052.[9]

### IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint

---

[8]    To the extent Plaintiff purports to assert a scheme liability claim pursuant to Rule 10b-5(a) or (c), ¶ 222, that claim fails for all of the foregoing reasons because Plaintiff does not allege any fraudulent conduct independent of the supposed misstatements challenged in the Complaint.

[9]    Even if Plaintiff had adequately pleaded a Section 10(b) claim (it has not), the Section 20(a) claim still should be dismissed because Plaintiff only pleads conclusory allegations of control. ¶ 226.  In particular, Plaintiff's failure to allege that Mr. Bailey or Mr. Lores were controlling officers of HP, *supra* at 20, warrants dismissal of the claim against them. *See Bao v. Solarcity Corp.*, 2016 WL 54133, at \*9 (N.D. Cal. Jan. 5, 2016) (allegations that part of "senior leadership team" insufficient).

Gibson, Dunn & Crutcher LLP

with prejudice.

Dated:  June 21, 2021

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
MATTHEW J. DOLAN, SBN 291150
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com
mdolan@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler,
Catherine A. Lesjak, Enrique Lores, and Richard Bailey*

By: */s/ Steven Schatz*
**WILSON SONSINI GOODRICH & ROSATI**
STEVEN SCHATZ, SBN 118356
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: 650.320.4856
SSchatz@wsgr.com

KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Telephone: 415.947.2065
khenderson@wsgr.com

*Counsel for Defendant Catherine A. Lesjak*

### ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: June 21, 2021

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ

Gibson, Dunn & Crutcher LLP

26