**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

*Counsel for Defendants HP Inc., Dion J.
Weisler, Catherine A. Lesjak, Enrique Lores,
and Richard Bailey*

*Additional counsel on signature page*

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
MATTHEW J. DOLAN, SBN 291150
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200
sbrody@sidley.com
mdolan@sidley.com

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, *Individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>HP INC., et al.,<br><br>Defendants. | Case No. 4:20-cv-07835-JSW<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Date: January 14, 2022<br>Time: 9:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...........................................................................................1

II. ARGUMENT ......................................................................................................................4

    A.    Plaintiff's Claims Are Time-Barred And Plaintiff Lacks Standing..................................4

        1.    The Statute Of Limitations Bars Plaintiff's Claims................................4

        2.    The Statute Of Repose And Plaintiff's Lack Of Injury Together Bar Its Claim .....4

    B.    The Complaint Also Should Be Dismissed For Failure To Plead Securities Fraud ...........8

        1.    Plaintiff Fails To Plead Falsity With Particularity..................................8

        2.    Plaintiff All But Concedes It Has No Claim Against Messrs. Lores And Bailey ...................................................................................................11

        3.    Plaintiff Fails To Plead Scienter With Particularity ...............................12

        4.    Plaintiff Fails To Plead Loss Causation With Particularity...................17

        5.    Plaintiff Does Not Allege A Securities Fraud Scheme Independent of Misstatements ........................................................................................19

        6.    Plaintiff Fails To State A Section 20(a) Claim ......................................20

III. CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002)......................................................................................17

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ................................................................................16, 20

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020)...........................................................9

*Azar v. Yelp, Inc.*
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ....................................................9, 16

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ..................................................................................17

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*,
137 S. Ct. 2042 (2017)......................................................................................1, 5, 6

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ..................................................................................15

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018) ...........................................................6, 7

*DeKalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016).................................................................................5, 6

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
36 F. Supp. 3d 279 (S.D.N.Y. 2014)........................................................................6

*Elec. Workers Pension Fund v. HP Inc.*,
2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ...................................1, 2, 4, 10, 13, 14

*Est. of Saunders v. Comm'r*,
745 F.3d 953 (9th Cir. 2014) ..................................................................................19

*Fialkov v. Microsoft Corp.*,
692 F. App'x 491 (9th Cir. 2017) ...........................................................................10

*Fialkov v. Microsoft Corp.*,
72 F. Supp. 3d 1220 (W.D. Wash. 2014)................................................................10

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013) ..........................................................17

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
2020 WL 1244936 (N.D. Cal. Mar. 16, 2020).........................................................9

*Irving Firemen's Relief & Ret. Fund v.Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021) ..................................................................................18

ii

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ...........................................................................................7

*Klein v. Qlik Techs., Inc.*,
   906 F.3d 215 (2d Cir. 2018)...............................................................................................6

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .........................................................................................17

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)......................................................................................................19

*Martin v. Altisource Residential Corp.*,
   2019 WL 2762923 (D.V.I. July 2, 2019) ...........................................................................6

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
   881 F.3d 750 (9th Cir. 2018).....................................................................................17, 18

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   78 F. Supp. 3d 1215 (N.D. Cal. 2015) .............................................................................16

*New Mexico State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011) ...................................................................................15, 16

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
   730 F.3d 1111 (9th Cir. 2013) .........................................................................................18

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ...................................................................................14, 16

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019).................................................................................16

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ...........................................................................................12

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004).................................................................................................7

*Police & Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013).................................................................................................6

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) .........................................................................................17

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .........................................................................................15

*In re Rackable Sys., Inc. Sec. Litig.*,
   2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ....................................................................16

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ...........................................................................................17

*S. Ferry LP, # 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ..................................................................................3, 14, 15

iii

Gibson, Dunn &
Crutcher LLP

*S. Ferry LP #2 v. Killinger*,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009)......................................................................15

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020) .........................................................................16

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) .........................................................9, 11, 15, 17

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ..........................................................................................11

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
   2007 WL 760535 (N.D. Cal. Mar. 9, 2007).....................................................................9

*Smith v. NetApp, Inc.*,
   2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) .................................................................16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).....................................................................................................7

*In re Teva Sec. Litig.*,
   512 F. Supp. 3d 321 (D. Conn. 2021) ............................................................................19

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 7260479 (N.D. Cal. Dec. 10, 2020)................................................................15

*In re WageWorks, Inc. Sec. Litig.*,
   2020 WL 2896547 (N.D. Cal. June 1, 2020)..................................................................19

*West v. eHealth, Inc.*,
   2016 WL 948116 (N.D. Cal. Mar. 14, 2016)..................................................................11

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) .....................................................................................2, 8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................................14, 17

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i)..............................................................................8

28 U.S.C. § 1658(b) ....................................................................................................4, 5

## I.   PRELIMINARY STATEMENT

The Opposition Brief confirms that Plaintiff has no credible response to the incurable timeliness and standing deficiencies of the Complaint, and no particularized facts that plead falsity, scienter, or loss causation with the rigor required under the PSLRA and Rule 9(b).  The Complaint should be dismissed with prejudice.

Plaintiff has pleaded itself out of Court by admitting that the facts Defendants supposedly had been "misrepresenting and concealing" about HP's Supplies business were "revealed" in June 2016.  The two-year statute of limitations therefore expired in 2018, well before this litigation began.   Plaintiff's contention that the statute of limitations was somehow tolled because Defendants' scienter was first revealed by a 2020 SEC Settlement is baseless.  Far from revealing Defendants' scienter, the SEC Settlement alleges that Defendants *did not know* of the allegedly improper sales practices that supposedly made their statements false.  In fact, Judge Illston recently dismissed with prejudice a securities class action that tried and failed to plead scienter based on the same SEC Settlement.  *See Elec. Workers Pension Fund v. HP Inc.*, 2021 WL 4199273 (N.D. Cal. Sept. 15, 2021).

In any event, Plaintiff's tolling argument is unavailing because there can be no serious debate that the five-year statute of repose ends this case.  The Supreme Court has explicitly rejected Plaintiff's contention here—that the statute of repose may be tolled by the filing of a separate class action complaint by another member of the putative class.  *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*, 137 S. Ct. 2042, 2051-52 (2017) ("*Calpers*") ("[T]he *American Pipe* tolling rule does not apply to the . . . statute of repose").  Because it is undisputed that Plaintiff sold its HP shares more than five years before appearing in this case, Plaintiff does not have standing to challenge the few statements that were within the repose period when the Complaint was filed (those dated after April 21, 2016).  Thus, any claim Plaintiff has standing to bring is time-barred by the statute of limitations, the statute of repose, or both—and because this defect cannot be cured, the Complaint should be dismissed with prejudice.

Independently, the Complaint also should be dismissed on the merits because Plaintiff fails to plead the essential elements of its 10b-5 claim.

***Falsity.***  In the Opposition, Plaintiff does not back away from its "kitchen-sink" theory of falsity, challenging dozens of statements about HP's Supplies business made over six years ago, and claiming

that they were all somehow proven to be false in light of the June 2016 disclosure that HP was reducing inventory in its distribution channel in connection with a change to its business model.  But Plaintiff's arguments cannot withstand scrutiny.  For example, Plaintiff does not contend *any* statement made by Messrs. Lores or Bailey was false or misleading.  And Plaintiff offers no serious response to Defendants' argument that statements about HP's revenue being "on track" are protected forward-looking statements under the Ninth Circuit's recent *Tesla* decision.  *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021).  Plaintiff's reliance on distinguishable district court cases that precede *Tesla* does not alter this conclusion.

Plaintiff also fails to address the deficiencies of its claim that HP misled the market by attributing disappointing earnings and margins in its Print segment to increased competition and currency fluctuations.  Opening Brief ("OB") at 13-14.  Instead, Plaintiff merely continues to assert, based only on speculation and fabricated data (but no facts), that alleged sales practices Plaintiff labels a "pull in scheme" were the "primary" cause of HP's problems in 2015 and 2016.  ¶ 116(a); *see* Opp. at 9.  Plaintiff fails to demonstrate that Defendants' explanation of the major reasons for the slowdown in the Supplies business in 2015 and 2016 was materially misleading, and certainly the data invented by Plaintiff does not remedy this pleading deficiency.

Defendants also showed, and Plaintiff's Opposition fails to refute, there are no particularized facts alleged demonstrating it was misleading for HP to report inventory ceilings based on HP's sales to its direct distributors (Tier 1), as opposed to sub-distributors in the downstream channel to whom HP did not sell products (Tier 2 and below).  Indeed, in *Electrical Workers*—which was predicated on the same SEC Settlement that is the linchpin of Plaintiff's case—Judge Illston rejected this very argument.  2021 WL 4199273, at *5.

***Scienter.***  As Defendants established, Plaintiff's scienter allegations fail under any theory.  OB at 17-22.  The Complaint pleads no facts—from internal meetings, reports, memoranda, emails, confidential witnesses, or admissions—demonstrating any Individual Defendant was aware of (much less condoned) the challenged sales practices before 2016, knew these practices were hurting HP by causing unsustainable increases in Supplies inventory in the distribution network, and decided nonetheless to withhold this information from investors.

Gibson, Dunn &
Crutcher LLP

Faced with a lack of any particularized facts, Plaintiff asks the Court to infer scienter from the SEC Settlement. Plaintiff, however, has no credible explanation for the most relevant SEC allegation: that HP's "principal executive officers who were responsible for the company's disclosures" only "learned of the [sales practices] . . . quarters after the actual conduct had taken place." SEC Settlement ¶ 49. Plaintiff ties itself in knots trying to explain away this allegation—claiming, incredibly, that the SEC's reference to "senior executive" and "senior finance" officers must not have included the Company's CEO and CFO. Opp. at 17. The simple fact is that the SEC Settlement squarely defeats any inference of scienter by acknowledging that HP's senior officers did not know of the allegedly improper sales practices at the time they occurred.

As Defendants also showed, Plaintiff fares no better trying to infer scienter under the "core operations" doctrine. There are no facts showing the Individual Defendants knew or had actual access to specific information about HP's sales practices that showed statements were false or misleading, as required to plead scienter under the "core operations" doctrine. Particularly in light of the SEC Settlement's conclusion that HP's senior officers did *not* know about the challenged sales practices, Plaintiff fails and cannot hope to show that this is one of the "exceedingly rare" cases where it would be "absurd to suggest" that the Individual Defendants knew of or recklessly disregarded these problems at the time of the alleged misstatements. *See S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 785 n.3, 786 (9th Cir. 2008).

***Loss Causation.*** The Opposition concedes that Plaintiff fails to allege facts in support of the corrective disclosure theory pleaded in the Complaint. Plaintiff chose its path to pleading loss causation—claiming that the alleged misstatements were corrected when "information concealed by Defendants' misleading statements was revealed to the market" by four disclosures during the Class Period, ¶ 200—so Plaintiff's assertion that there are many ways to plead loss causation is beside the point. Opp. at 17-18. What is missing from the Complaint are *facts* demonstrating the purported corrective disclosures provided *new* information *correcting* a prior misstatement. The absence of these facts requires dismissal on the separate ground that Plaintiff has failed to plead loss causation.

## II.      ARGUMENT

### A.      Plaintiff's Claims Are Time-Barred And Plaintiff Lacks Standing

#### 1.      The Statute Of Limitations Bars Plaintiff's Claims

Plaintiff's *own allegations* establish the two-year statute of limitations began to run in 2016, expired in 2018, and therefore bars this action.  OB at 8-9.  Plaintiff admitted in the Complaint that "[c]omments during the June 21, 2016 investor call *revealed* what Defendants had been misrepresenting and concealing during the Class Period."  ¶ 70.  Plaintiff offers no credible argument for why its claims are not barred under the two-year statute of limitations given its own admission in the Complaint that the alleged misrepresentations were known in 2016.  ¶¶ 69 n.8, 70.

The Complaint also belies Plaintiff's argument that it could not have pleaded scienter until the announcement of the SEC Settlement in 2020.  Opp. at 19-21.  If anything, the SEC Settlement *negates* any inference of scienter—as Judge Illston recently held in dismissing a separate securities class action that also relied on the SEC Settlement.  *See Elec. Workers*, 2021 WL 4199273, at *6-7.  The SEC never claimed that HP or its senior officers acted with scienter.  To the contrary, the SEC confirmed that no senior HP officer became aware of the challenged business practices until "quarters after the actual conduct had taken place."  SEC Settlement ¶ 49; *see* OB at 18, 7.  Accordingly, the SEC Settlement cannot resurrect Plaintiff's time-barred claims about statements made in 2015 and 2016.

#### 2.      The Statute Of Repose And Plaintiff's Lack Of Injury Together Bar Its Claim

There is no dispute that Plaintiff sold out of HP stock in 2015, *see* ECF Nos. 20-2 & 20-3, and did not appear in this case until 2021, *see* ECF No. 19.  Plaintiff may only challenge alleged misconduct that occurred during the five-year period before it filed its Complaint in April 2021.  28 U.S.C. § 1658(b).  Plaintiff's own filings, therefore, confirm it has no standing to challenge statements not already barred by the statute of repose when the Complaint was filed.  The Complaint must be dismissed with prejudice for this reason alone.

***Statute of Repose.***  As Defendants showed, because Plaintiff filed its Complaint in April 2021— more than five years after nearly all of the challenged statements in this case—Plaintiff's securities fraud claim based on statements made before April 2016 are absolutely barred by the five-year statute of repose.

Gibson, Dunn &
Crutcher LLP

28 U.S.C. § 1658(b); OB at 9-10.  Plaintiff's only argument is that the statute of repose stopped running when a different HP shareholder—York County—filed its action in November 2020, even though Plaintiff was not a party to that complaint and did not even appear until January 2021 (ECF No. 19).  Opp. at 21-22.  But York County and its separate complaint have nothing to do with the question presented by Defendants' Motion:  whether *Plaintiff's* claims in *its* Complaint are barred.  York County is not a party to Plaintiff's Complaint, *see* ¶ 15, and Plaintiff's argument that York County's own claims bear on the statute of repose analysis is wrong.[1]

At bottom, Plaintiff's argument is that, under *American Pipe*, the York County complaint tolled the statute of repose applicable to Plaintiff's claims.  The Supreme Court has made clear, however, that while equitable tolling may apply to toll statutes of limitations, "the *American Pipe* tolling rule does not apply to the . . . statute of repose" because "[t]he purpose and effect of a statute of repose [] is to override customary tolling rules arising from the equitable powers of courts."  *Calpers*, 137 S. Ct. at 2051-52.  Under this binding precedent, the statute of repose most certainly was not tolled by the York County complaint.

It makes no difference that Plaintiff filed its Complaint in the same "action" as York County, Opp. at 21, and Plaintiff is simply wrong that applying the statute of repose "would frustrate the purpose of the PSLRA," *id.* at 22.  The Second Circuit rejected nearly identical arguments in *DeKalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016).  There, the first securities class action complaint was filed by plaintiff Bricklayers on September 30, 2010, just before the repose period expired on October 2, 2010.  *Id.* at 399.  Plaintiff DeKalb appeared and filed a lead plaintiff motion in that same "action" in December 2010 and was appointed co-lead plaintiff with Bricklayers.  *Id.*  The district court later dismissed Bricklayers for lack of standing, and dismissed DeKalb because it had not appeared or filed a complaint before the repose period expired.  *Id.* at 400.  The Second Circuit affirmed the dismissal, rejecting the same arguments that Plaintiff raises here.  *Id.* at 412-14.  The fact that Bricklayers' claims were timely did not make DeKalb's claims timely, and "[n]othing about th[e] [PSLRA's] language even

---

[1] Plaintiff acknowledges that its claims and York County's claims are not the same, stating that "York County's complaint has never been adjudicated."  Opp. at 22 n.22.  In any event, York County's trading history demonstrates it lacks standing and has no claim.  *See* ECF No. 1 at 26; *see also infra* at 7 n.4.

Gibson, Dunn &
Crutcher LLP

1    remotely suggests that the PSLRA was intended to toll the applicable statutes of repose for the 60 days

2    during which a member of the purported class may file a lead-plaintiff motion, and we have been unable

3    to locate any authority that even arguably supports this notion."  *Id.* at 413.[2]

4         Other cases have reached a similar conclusion.  In *De Vito v. Liquid Holdings Group, Inc.*, despite

5    a timely-filed complaint within the repose period, the court held that the claims of a new plaintiff

6    "belatedly added to the original class action [complaint] by amendment" after the repose period were time

7    barred.   2018 WL 6891832, at *18, 21-22 (D.N.J. Dec. 31, 2018) (plaintiff cannot "serve as a lead

8    plaintiff" "[b]ecause [it] was time-barred from raising any individual claims at the time of [its] entry into

9    this case and because [it] was not yet a member of a certified class.").   Similarly, in *Police & Fire

10   Retirement System of City of Detroit v. IndyMac MBS, Inc.*, the Second Circuit held that new plaintiffs

11   could not intervene in a timely filed case once the statute of repose had run.   721 F.3d 95, 109 (2d Cir.

12   2013).

13        The bottom line is that Plaintiff's claims based on statements made more than five years before

14   Plaintiff filed its Complaint are barred under the statute of repose, and the earlier-filed York County

15   complaint has no bearing on the repose period.[3]

16        ***Plaintiff's Lack of Standing.***  Plaintiff does not dispute that it lacks standing to challenge the

17   alleged misstatements made in 2016 because Plaintiff was no longer an HP shareholder at that time, having

18   sold all its shares in 2015.  OB at 10-11.  And because the statute of repose (not to mention the statute of

19

20   _____

21   [2] Plaintiff's argument that *DeKalb* is distinguishable because the original plaintiff lacked standing is
     wrong.  Opp. at 22 n.23.  That was mentioned in dicta addressing DeKalb's "relation back" argument,

22   which the Second Circuit held had "no bearing" on DeKalb's failure to appear in the case until the lead
     plaintiff process after the repose period had run.  817 F.3d at 412-13.  The district court opinion affirmed

23   by the Second Circuit makes this clear because it did not even mention this standing argument.  *Dekalb
     Cty. Pension Fund v. Transocean Ltd.*, 36 F. Supp. 3d 279, 282 (S.D.N.Y. 2014).  Plaintiff also is wrong

24   that *Klein v. Qlik Techs., Inc.* somehow limits *DeKalb*'s holding, as *Klein* is not even about the statute of
     repose.  906 F.3d 215, 218 (2d Cir. 2018).

25
     [3] The only post-*Calpers* repose case cited by Plaintiff, *Martin v. Altisource Residential Corp.*, 2019 WL

26   2762923 (D.V.I. July 2, 2019), Opp. at 21, is distinguishable and wrong on the law.  Unlike here, the new
     plaintiff in *Martin* was added by amendment to a timely-filed complaint.  2019 WL 2762923, at *6.  More

27   importantly, the *Martin* court ignored that a motion to be added as a named plaintiff must be made "*prior*
     to the running of the repose period."  Brief for Washington Legal Foundation as Amicus Curiae at 11

28   (*cited with approval* in *Calpers* at 2054).

limitations) bars Plaintiff from challenging any statement made in 2015 when Plaintiff still held shares, Plaintiff lacks standing to challenge any statements not time barred. *Id.* Together, the statute of repose and Plaintiff's lack of standing require dismissal of this action.

"[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016); *see also De Vito*, 2018 WL 6891832, at *22 ("It is only *as a named plaintiff, asserting its own live cause of action*, that the [] Plaintiff could represent the absent class members.") (emphasis in original). While Plaintiff contends that it need only establish standing as to *some* claims at the pleading stage (Opp. at 23-24), here, Plaintiff has *no* claim because the only statements Plaintiff arguably has standing to challenge are time barred. The Complaint must be dismissed because Plaintiff has suffered no redressable injury from *any* of the alleged misstatements. *See Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020) ("To have standing under Article III, a plaintiff must have (1) a concrete and particularized *injury* that (2) is caused by the challenged conduct and (3) is likely *redressable* by a favorable judicial decision."); *see also P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004) (misconduct barred by the statute of repose is "a wrong for which the law affords no redress").[4]

* * * * *

Because there is no overlap between the time when Plaintiff held HP shares and alleged misstatements within the five-year repose period, Plaintiff's claims should be dismissed with prejudice.

---

[4] Plaintiff also does not dispute that (1) securities fraud is only actionable if it occurred before a plaintiff purchased shares, and (2) the *only* alleged misstatements made before Plaintiff purchased HP shares were those referenced in HP's November 5, 2015 Form 8-K. OB at 10-11 & n.3; *see* Opp. at 23 n.24. This is fatal to Plaintiff's claim because these challenged statements actually were made in a Form 10-Q filed in September 2015 (*not* in the November 2015 8-K) and therefore were time barred in September 2020. *See* OB at 11 n.3.

Gibson, Dunn & Crutcher LLP

**B.** **The Complaint Also Should Be Dismissed For Failure To Plead Securities Fraud**

**1.** **Plaintiff Fails To Plead Falsity With Particularity**

**a.** **The Statements About Supplies Revenue Are Protected Forward-Looking Statements**

Under binding Ninth Circuit precedent, statements that HP was "on track" to stabilize Supplies revenue by the end of FY 2017 are forward-looking statements, protected from liability under the PSLRA safe harbor. OB at 12; *see Tesla*, 985 F.3d at 1192 (holding that statements that business was "on track" to meet car production goals were protected forward-looking statements). Relying on district court decisions pre-dating the Ninth Circuit's *Tesla* decision, Plaintiff makes the conclusory assertion that Defendants' statements "were tied to . . . intermediate circumstances." Opp. at 11. But the statements cited by Plaintiff—like HP's forecasting model "would suggest that we are on track to [revenue] stabilization by the end of '17" (¶ 142)—are nothing like the "specific, concrete circumstances that have already occurred" that may take "on track" statements outside the safe harbor. *Tesla*, 985 F.3d at 1192; *see* Opp. at 10-11.

These forward-looking statements are not actionable under the PSLRA safe harbor unless Plaintiff can show *both* that Defendants made the statements with "actual knowledge" that they were false *and* that the statements were not "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i). The Opposition does not even address actual knowledge of falsity, so Plaintiff's claims fail on that basis alone. Opp. at 10-11. Plaintiff's only argument is that HP's cautionary language was insufficient because "Defendants knew that the risk that HP could have excess inventory had already materialized." Opp. at 11 n.9. But there are no particularized facts pleaded demonstrating that Defendants believed HP had excess inventory when the challenged statements were made. *See also infra* at 10 (Plaintiff alleges impermissible fraud by hindsight). The Supplies revenue statements are protected under the PSLRA safe harbor.

**b.** **The Statements About Supplies Pricing And Margins Were Not Misleading**

The Complaint fails to plead specific facts supporting Plaintiff's allegation that gray marketing and pull-ins, as opposed to increased competition and currency issues, were the "primary" cause of

8

Gibson, Dunn & Crutcher LLP

declining margins. *See* OB at 13. Plaintiff has no response to this argument, so it makes the baseless claim that Defendants are creating a factual dispute about the Complaint's lack of facts. Opp. at 9 n.5. This is not a factual dispute; it is a pleading failure.

As Defendants showed in the Opening Brief, Plaintiff's falsity theory rests on baseless assumptions and fabricated data, not well-pled facts. While Plaintiff claims that it "quantified" the "negative impacts on margins" from gray marketing and pull-ins, and contends that these practices had a "material" impact on margins (Opp. at 9), Plaintiff does not deny that that the alleged "quantification" is Plaintiff's own assumptions about pull-in sales volume and hypothetical discount levels for those sales. OB at 13-14. Defendants are not "quibbl[ing]" with Plaintiff's calculations (Opp. at 9); rather, Defendants have simply pointed out that these are not based on actual data, they are made up by Plaintiff's counsel— which this Court should not credit. *See Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 2020 WL 1244936, at *9 (N.D. Cal. Mar. 16, 2020) (dismissing claim where "Plaintiffs fail to describe [their] assumptions and analysis with sufficient particularity to establish a probability that [their] conclusions are reliable."); *In re Silicon Storage Tech., Inc. Sec. Litig.*, 2007 WL 760535, at *17 (N.D. Cal. Mar. 9, 2007) ("plaintiffs fail to provide particularized information" regarding assumptions in their calculations).[5]

Plaintiff fares no better with respect to statements of growth in the APJ region. OB at 15. Plaintiff argues it was misleading for Defendants to report revenue growth without disclosing the reasons for the growth (*i.e.*, the supposed pull-in scheme). Opp. at 9-10. But Plaintiff's own case law demonstrates this argument is wrong. "General descriptions of historical results have generally been found not to require disclosure of adverse factors" because such descriptions "do not represent anything about the causes of that performance . . . ." *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *10 (N.D. Cal. June 2, 2020). The only statements Plaintiff points to are "[g]eneral descriptions of historical results" that do not characterize the growth and say nothing about the causes of that growth. *See* Opp. at 9 (citing ¶¶ 137-38 ("we delivered constant currency revenue growth in APJ" and reporting financial results), ¶¶ 144-45

---

[5] *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017), cited by Plaintiff, concerned allegations based on an analyst report, not unsupported assumptions invented by Plaintiff's counsel. *See id.* at 1141. And *Azar v. Yelp, Inc.* 2018 WL 6182756, at *11 (N.D. Cal. Nov. 27, 2018) (Opp. at 8) is inapposite because Defendants did not say that competition and currency issues were "one-off aberrations" like in *Azar*; Defendants said they were an ongoing concern. *See* ¶¶ 95, 98-100, 102, 105-07, 109, 112-13, 115.

(similar statement)).   Not explaining the purported reasons for growth do not make these generic statements false or misleading.

### c.   The Statements About Supplies Channel Inventory Were Not Misleading

Plaintiff argues that HP's statements about its channel inventory ceilings and ranges must have been misleading because HP later adjusted inventory levels.  OB at 15-16.  This is classic fraud by hindsight.  Plaintiff has no meaningful response, and fails to address *Fialkov v. Microsoft Corporation*, where the court dismissed substantially similar claims for failure to plead that the company "should have regarded its then-held inventory as worrisomely large."  72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014), *aff'd*, 692 F. App'x 491 (9th Cir. 2017).  Plaintiff's *belief* that HP must have had too much inventory at the time of the challenged statements says nothing about whether HP was operating within its ceilings and ranges at the time.  Opp. at 7.  Plaintiff's fraud by hindsight theory should be rejected.

Plaintiff fares no better by copying the SEC allegation that HP's channel inventory statements were misleading because they only reported inventory levels with HP's "Tier 1" direct distributors and not downstream "Tier 2" sub-distributors that were not in privity with HP.  Opp. at 6-7.  Judge Illston rejected this same theory last month when she dismissed *Electrical Workers*, which also relied on the SEC Settlement.  *See* 2021 WL 4199273, at *5.  Judge Illston concluded it was not misleading for HP to describe its channel inventory using only Tier 1 data because the "downstream channel ecosystem [*i.e.,* Tiers 2 and higher] refers to the channels of third parties—*not HP's own channel*."  *Id.* at 8.  She also noted that HP never provided "concrete" projections or methods of calculation regarding channel inventory levels and ceilings, and merely disclosed whether the unquantified levels were within the unquantified ceilings.  *Id.*  The statements at issue here are not false or misleading for the same reasons. *See* ¶ 132(b), (c) (HP sold supplies to Tier 1 only); ¶¶ 128-30, 132, 142, 149 (providing information about inventory as compared to HP's set "ranges").  Plaintiff argues that reporting on Tier 1 "only told part of the story," Opp. at 7, but ignores that the SEC Settlement confirms that HP recognized revenue when it sold to Tier 1 distributors and "had no continuing obligations" after that.  SEC Settlement ¶ 12.  Plaintiff also does not even attempt to explain how HP could have reported channel inventory levels for tiers other than Tier 1, when it did not sell directly to those third parties and did not have reliable information about

the inventory they held.  *See* OB at 16; SEC Settlement ¶¶ 15, 48.[6]  "[I]t is implausible" that Defendants "could have avoided misleading their investors by disclosing more information about a metric that defendants could not accurately measure."  *West v. eHealth, Inc.*, 2016 WL 948116, at *6 (N.D. Cal. Mar. 14, 2016).[7]  For all these reasons, Plaintiff fails to plead an actionable misstatement concerning HP's inventory levels in 2015 and 2016.

### 2.   Plaintiff All But Concedes It Has No Claim Against Messrs. Lores And Bailey

Plaintiff concedes it does not allege a single statement made by Messrs. Lores and Bailey was false or misleading, Opp. at 5, so its Rule 10b-5(b) claim against them necessarily fails, OB at 16-17.  Plaintiff nonetheless argues that Messrs. Lores and Bailey are liable as scheme defendants under Rule 10b-5(a) and (c).  Opp. at 5.  Plaintiff is wrong.  As discussed below (*infra* at 19), Plaintiff does not allege any securities fraud scheme separate and apart from the alleged misstatements.  Plaintiff's failure to allege that Messrs. Lores and Bailey made any challenged statement therefore dooms its claims against them.

In fact, Plaintiff makes virtually no allegations regarding Messrs. Lores or Bailey *at all*, ignoring that this Circuit requires factual allegations containing "great detail" to adequately plead a claim under the PSLRA.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  The Opposition's only references to Mr. Lores are that he "monitored" supplies inventory and attended a meeting with analysts (where no statements made by Lores are challenged as false).  Opp. at 4, 11-13, 25.  And the only mention of Mr. Bailey is that he supposedly had to approve discounts.  Opp. at 3, 8, 25; ¶¶ 52, 55, 62, 156, 166.

---

[6] Plaintiff's bald suggestion that Ms. Lesjak, as opposed to lower-level members of HP's vast Finance team, "set channel inventory ceilings and quantified inventory in Tier 1 and Tier 2 channels according to 'a pretty robust process'" is wholly unsubstantiated and implausible.  Opp. at 3 (citing ¶¶ 64, 188).  Plaintiff also misquotes Ms. Lesjak out of context, ignoring that she stated that Tier 2 information was "spottier" and only that the overall monitoring process *by her team*, which was necessarily focused on HP's direct distributors (not sub-distributors), was "pretty robust."  ¶ 188.

[7] Plaintiff's suggestion that *eHealth* cuts the other way is wrong.  Opp. at 7.  The language Plaintiff cites was expressly an "alternative" analysis that did not affect the court's finding that the inability to measure a metric meant that its omission was not misleading.  2016 WL 948116, at *6.  And this case is readily distinguishable from *Shenwick*, where Twitter allegedly misled investors by reporting growth in user engagement based on one metric but failed to disclose the company's "primary user engagement metric," which "was flat or declining."  282 F. Supp. 3d at 1135-40.  Here, HP disclosed its primary and only reliable metric for channel inventory: sales to Tier 1 distributors.

That is it.  Plaintiff does not even attempt to explain how such allegations demonstrate, let alone with particularity, that Messrs. Lores and Bailey orchestrated any scheme to commit securities fraud.  Nor do Plaintiff's conclusory allegations show what specific information Messrs. Lores or Bailey knew or when, so Plaintiff does not plead a strong inference of scienter.  Messrs. Lores and Bailey should have no part in this case and—like the other Defendants—should be dismissed.

### 3.     Plaintiff Fails To Plead Scienter With Particularity

As the Opposition Brief makes clear, Plaintiff impermissibly resorts to "group pleading" of scienter, making no attempt—as required—to "allege scienter with respect to *each* of the individual defendants." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).  Plaintiff is required to plead particularized facts showing that each of the Individual Defendants knew about or deliberately disregarded specific information showing the existence of the challenged sales practices, and that these practices were adversely impacting HP's Supplies business in a manner that rendered the challenged statements false.  OB at 17.  The Complaint fails to reference a single confidential witness, internal HP meeting, report, memo, email, or admission, so there are no facts pleaded demonstrating that any of the Individual Defendants knew of these adverse facts, or deliberately disregarded them, much less knew that any of their statements were misleading as a result.  Plaintiff's Opposition relies instead on baseless assumptions about what the Defendants must have known, the importance of the Supplies business to HP, and the SEC Settlement—which actually strongly *undercuts* any inference of scienter.  These arguments fall well short of the particularized facts supporting a strong inference of scienter required under the PSLRA and Rule 9(b).

### a.     The SEC's Allegations Doom Plaintiff's Claim

Plaintiff's scienter argument fails out the gate because the SEC Settlement—which serves as the foundation for the Complaint—acknowledges that HP's senior officers did *not* know about the alleged steep discounting and gray marketing activity at the time it occurred.  OB at 17-18; *see* SEC Settlement ¶ 49 ("HP's principal financial officers and principal executive officers who were responsible for the company's disclosures learned of the [gray marketing and pull-ins] conduct in connection with HP's planned shift from a push to a pull model quarters after the actual conduct had taken place.").  In *Electrical Workers,* Judge Illston found that "the SEC Order . . . does not establish a strong inference of scienter"

and instead doomed plaintiff's claims.  2021 WL 4199273, at *6.  Judge Illston reached this conclusion because the "SEC [Settlement] involves undisclosed discounts offered by certain HP sales managers—*not Individual Defendants*," and the "SEC [Settlement] found HP executives did not learn of the HP sales managers' conduct until after the conduct occurred."  *Id.*  Here, Plaintiff attempts to plead scienter based on the very same SEC Settlement.  As in *Electrical Workers,* these allegations fail to support, and instead negate, any inference of scienter.

Plaintiff tries, but fails, to avoid this conclusion.  For example, although the Complaint alleges that the Individual Defendants had the "power and authority to control the contents of the Company's reports to the SEC," ¶ 21, Plaintiff now suggests that "HP's principal financial officers and principal executive officers who were responsible for the company's disclosures" did not include the Individual Defendants.  Opp. at 17.  This position is absurd.

Plaintiff also tries to argue that the SEC's allegation that HP executives learned about the challenged sales conduct "quarters after" it occurred supports an inference of Class Period knowledge because that conduct occurred "in early 2015"—before the Class Period.  Opp. at 17.  But this argument is contradicted by Plaintiff's allegations that the alleged pull-in scheme began in "mid-2015" (¶ 74) and continued into 2016 *during* the Class Period (*e.g.*, ¶¶ 77-78, 83).

Plaintiff also has no response to the SEC's allegation that HP's senior officers lacked visibility into inventory levels below Tier 1—as Ms. Lesjak disclosed (Tier 2 is "spottier").  ¶ 188; OB at 18.  So Plaintiff leaps to the conclusion that Defendants had to know their channel inventory statements were misleading because they knew it only included Tier 1 data.  Opp. at 11.  But even assuming Defendants knew the reported inventory ceilings were based on Tier 1 data, that says nothing about whether Defendants knew their channel inventory statements were *misleading* by not including inventory held in tiers below HP's Tier 1 distribution partners.[8]  Plaintiff offers no explanation for why Defendants would think it was misleading to omit discussion of "*incomplete* data" about Tier 2 and below, SEC Settlement ¶ 15, especially when HP "had no continuing obligations" beyond Tier 1, *id.* ¶ 12.  For all these reasons,

---

[8] Plaintiff's argument about channel inventory tellingly ignores Mr. Weisler.  Opp. at 11-12.  This is likely because Plaintiff's allegations merely allege that Mr. Weisler was a diligent CEO and certainly not that he acted with scienter or knew that statements concerning channel inventory were misleading because they did not include inventory held below HP's Tier 1 partners.

Gibson, Dunn & Crutcher LLP

the SEC Settlement does not help Plaintiff's scienter argument.

### b. Plaintiff's Core Operations Allegations Do Not Plead Scienter

Plaintiff makes several overlapping arguments about scienter, but all of them boil down to an argument that scienter should be inferred under the core operations doctrine.  According to Plaintiff, because Supplies was important to HP, Defendants must have known about the purported pull-in scheme and that their statements were misleading.  Opp. at 12-15.  Because here, as in *Electrical Workers*, no particularized factual allegations support this theory, it must be rejected.  *See* 2021 WL 4199273, at *7.

Plaintiff does not seriously contest the absence of any factual allegation in the Complaint demonstrating that any of the Individual Defendants had "actual access to the disputed information" about steep discounting and gray marketing activity.  OB at 19 (quoting *S. Ferry*, 542 F.3d at 786).  Plaintiff merely *concludes* that "Defendants had actual access to disputed information," but points to nothing more than general allegations that Defendants had access to the Supplies business results, inventory levels, and a revenue forecasting model.  Opp. at 11-13.[9]  These allegations are insufficient because they do not show access to "specific information . . . *related to the fraud*."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014).  For example, in *NVIDIA*, the Ninth Circuit held that access to information about "chip failures" was not the same as access to information about "the root cause of [the failures] or NVIDIA's liability" as required to plead scienter.  *Id.* at 1064.  Plaintiff's "access" allegations are even more deficient.  Whether certain Individual Defendants allegedly had access to financials and business results says nothing about whether they had access to the "disputed information" at issue:  that certain HP employees engaged in aggressive discounting and gray marketing, and that those practices were adversely affecting the Supplies business in a manner that made the challenged statements false.  *See* OB at 19-20; *see, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000-01 (9th Cir. 2009) ("[a]llegations that . . . management had access to the purportedly manipulated quarterly accounting numbers, or that the

---

[9] Defendants pointed out that Plaintiff misquoted Mr. Weisler in an attempt to bolster its core operations allegations in the Complaint, OB at 19.  Unable to defend its original allegations or adequately plead Mr. Weisler's scienter, Plaintiff now claims he said "we continue to strategically monitor Supplies pricing . . . . It's obviously something that we track very closely."  Opp. at 12 (quoting ¶ 158).  But there are more than ***seven*** pages of transcript between the first half of that quote and the second, and the "tracking" was referring to *competitors'* pricing, not HP's.  *See* Percopo Decl., Ex. 5 at 4, 12.

Gibson, Dunn &
Crutcher LLP

management analyzed the inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated."); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 7260479, at *14 (N.D. Cal. Dec. 10, 2020) (rejecting argument that "regular reporting on . . . revenue-generation of [ad product] creates a strong inference that [defendants] had knowledge of the declines in revenue and *reasons* for such declines").[10]

What is missing are facts showing that Defendants were aware of problematic information. Because Plaintiff does not allege "actual access to the disputed information," Plaintiff can *only* plead scienter under the core operations doctrine by establishing that this is one of the "*rare* circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *S. Ferry*, 542 F.3d at 786. Plaintiff claims "it would be absurd to suggest that [the Individual Defendants] were unaware of a widespread scheme devastating the business they oversaw and that provided the 'vast majority' of HP's total operating profit." Opp. at 14.[11] But, again, Plaintiff points to no facts to support this conclusory theory—and it is directly contradicted by the SEC's findings after years of investigation.

At most, Plaintiff points to the allegation that there was $700 million of excess inventory during the Class Period. Opp. at 15. But as Plaintiff's own authority states, "magnitude alone is not sufficient to support a finding of scienter." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1100 (9th Cir. 2011). Plaintiff also ignores Defendants' arguments that the Complaint (i) *assumes* without factual support that all of this inventory built up during the Class Period, and (ii) fails to account for HP's real time explanation that $450 million of this amount was not excessive if HP had continued under its old business model. OB at 13-14, 16. And even crediting Plaintiff's speculative allegation, $700 million

---

[10] Plaintiff's cases about access to data are easily distinguishable. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1138, 1145-46 (9th Cir. 2017) (defendants allegedly "were aware in real time" of specific information that was "inconsistent" with their statements); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009) ("actual knowledge" of false statements pleaded); *Shenwick*, 282 F. Supp. 3d at 1146-47 (defendants' admissions that DAU was key metric permitted inference of scienter about DAU numbers).

[11] Plaintiff does not dispute that neither Mr. Bailey nor Mr. Lores are alleged to have been "senior controlling officers," so allegations of scienter as to them cannot be imputed to HP. OB at 20; *see In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015).

is *less than 3%* of HP's net revenue in just the first six months of the eight month Class Period.  Percopo Decl., Ex. 5 at 4 (Q1 net revenue of $12.2 billion); *id.*, Ex. 6 at 4 (Q2 net revenue of $11.6 billion).  This is nothing like the "magnitude" cases cited by Plaintiff.  *See Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (inventory drawdown amounted to 35% of company's revenue); *Ernst & Young*, 641 F.3d at 1100 ("questionable option grants" accounted for $569 million of $2.2 billion restatement).[12]

Courts routinely reject the theory Plaintiff advances here—that it would be absurd to suggest HP senior officers were unaware of the information alleged—in situations where there were far more particularized allegations supporting an inference of knowledge by the individual defendants.  For example, in *NVIDIA*, the Ninth Circuit held that it was not "absurd" to claim that NVIDIA's management were unaware of the root cause of product failures or their potential liability for the company even though the "nature of the problem concerned [NVIDIA's] flagship product and was cause for concern to [NVIDIA's] two largest customers." 768 F.3d at 1064 (alterations in original).  In *Smith v. NetApp, Inc.*, the court held that it was not "absurd" to suggest that the company's top officers were unaware of "delayed and canceled orders" from customers, even though the company "reli[ed] on a small number of very large customers." 2021 WL 1233354, at *1, 8 (N.D. Cal. Feb. 1, 2021); *see also In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 199703, at *10 (N.D. Cal. Jan. 13, 2010) (not absurd to suggest that defendants were unaware of inventory and financial issues even though "'management' held 'daily management meetings' and reviewed '[] reports'" from financials tracking system).

For all these reasons, Plaintiff fails to plead scienter under the core operations doctrine.

### c.     Plaintiff's Remaining Scienter Allegations Fail

Plaintiff's secondary arguments about temporal proximity, SOX certifications, and motive do not move the needle on scienter.  Opp. at 15-16.  None of these theories are sufficient by themselves to plead

---

[12] Plaintiff's other core operations cases also are distinguishable.  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (Google CEO allegedly read memo containing information directly contradicting public statements); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226-27 (N.D. Cal. 2015) (plausible inference that company knew its "largest distributor" was a related party because "they shared an office"); *Azar*, 2018 WL 6182756, at *21 (scienter about advertiser "churn" inferred based on defendants' statements and stock sales); *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1133-34 (N.D. Cal. 2020) (scienter inferred from confidential witness statements).

Gibson, Dunn &
Crutcher LLP

scienter.  *See Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) ("temporal proximity of the statements, in and of itself, is insufficient" to plead scienter); *Zucco*, 552 F.3d at 1003 ("Sarbanes–Oxley certifications are not sufficient, without more, to raise a strong inference of scienter."); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) (allegations of "mere 'motive and opportunity' . . . fail to meet the PSLRA's heightened pleading requirements.").   And Plaintiff never explains how these help plead scienter.  For example, Plaintiff merely offers the non sequitur that SOX certifications support scienter because the Supplies business was important to HP.  Opp. at 15-16.

Plaintiff's "motive" argument fails for an additional reason.  Plaintiff argues that the Defendants' desire that the Supplies business succeed is sufficient to establish a motive to defraud, Opp. at 16, but the Ninth Circuit has explicitly held that such "routine business objectives, without more, cannot normally be alleged to be motivations for fraud."  *Lipton*, 284 F.3d at 1038.[13]   And Plaintiff's motive argument is undermined by the fact that HP disclosed the problems facing its business, including that inventory levels were greater than desired.  OB at 6, 22.  Without any well-pleaded motive to commit fraud, Plaintiff "face[s] a substantial hurdle in establishing scienter."  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021).  The Opposition confirms that the Complaint does not clear that hurdle.

### 4.      Plaintiff Fails To Plead Loss Causation With Particularity

As Defendants demonstrated in their Motion, Plaintiff's "corrective disclosure" theory of loss causation fails because Plaintiff does not identify any statement that was rendered false by the alleged disclosures.  OB at 23.  Plaintiff does not dispute this, and instead argues that loss causation can be pleaded in an "infinite variety of ways."  Opp. at 18 (quoting *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 752-53 (9th Cir. 2018)).  This is beside the point because Plaintiff specifically chose one of these ways:  a corrective disclosure theory.  ¶ 200.  As a result, Plaintiff must plead with particularity that the alleged corrective disclosures "revealed to the market that at least some of [defendant's] alleged misstatements were false."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020); *see also*

---

[13] Plaintiff's motive cases are easily distinguishable.  *See Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *21 (C.D. Cal. May 8, 2013) (language quoted by Plaintiff not among the "allegations [that] persuade[d] the Court"); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83-84 (1st Cir. 2002) (executives would lose jobs if did not hit targets); *Shenwick*, 282 F. Supp. 3d at 1149 (executives wanted to "live up to [] overly optimistic *promises*").

*First Solar Inc.*, 881 F.3d at 754 ("When plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory.").  Because Plaintiff does not even plead in the Complaint or argue in the Opposition how the disclosures corrected earlier untrue statements, Plaintiff has failed to plead loss causation.

Rather than point to well-pleaded facts *connecting* any of the alleged corrective disclosures and an alleged misstatement, Plaintiff asks the Court to *assume* that every challenged disclosure caused its losses. *See* Opp. at 17.  That is not a viable loss causation theory.  *See Irving Firemen's Relief & Ret. Fund v.Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (rejecting "loss causation theory [that] lumps together . . . alleged misstatements").  Plaintiff's challenge to the channel inventory statements exemplifies why. Plaintiff claims these statements are false for two *distinct* reasons:  the alleged pull-in scheme, and "separately," the omission of inventory data below Tier 1 from HP's inventory metric. Opp. at 6.  But Plaintiff's loss causation theory is based only on the alleged pull-in scheme (Opp. at 17-18)—there is nothing in the Complaint permitting an inference that Plaintiff's "separate[]" theory of falsity about the inventory metric caused its losses.  By lumping together all the alleged misstatements—despite the fact that they are alleged to be false for different reasons—Plaintiff fails to plead with particularity "that it was the very facts about which the defendant lied which caused its injuries."  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).

This failure to plead a plausible loss causation theory is compounded by what Plaintiff identifies as the corrective disclosures:  (1) disappointing financial results on November 24, 2015, ¶ 203; (2) an analyst opinion downgrading HP stock on January 7, 2016, ¶ 205; (3) disappointing financial results on February 24, 2016, ¶ 206; and (4) the announcement of a new business model requiring an investment by the company on June 21, 2016, ¶ 208.  Nothing about these are even alleged to have "corrected" a prior misstatement.  And given that Plaintiff fails to plead that the alleged pull-in scheme was driving declining margins—instead of competition and currency issues as disclosed (*supra* at 8-9)—Plaintiff's conclusory assertion that the disappointing financial news was the result of fraud is both conclusory and implausible.

Gibson, Dunn &
Crutcher LLP

*See* OB at 23-24.[14]

### 5.   Plaintiff Does Not Allege A Securities Fraud Scheme Independent of Misstatements

Plaintiff's argument that Defendants failed to contest its scheme liability "claim" is baseless. Opp. at 4-5; OB at 24 n.8. The Complaint includes a single count for violation of Section 10(b) and Rule 10b-5 that, like the rest of the Complaint, focuses on allegedly "false statements" by Defendants. ¶ 221. The count does not even mention the word "scheme" except in its recitation of the subsections of Rule 10b-5. ¶ 222. There also is no separate conduct alleged that would constitute a "scheme" under subsections (a) or (c) of Rule 10b-5, such as pleading that Defendants knowingly disseminated a false statement to investors. *Compare Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019). While Plaintiff labels the sales practices that purportedly rendered the challenged statements misleading a "pull in scheme," Plaintiff does not even try to explain how those practices amounted to a *securities fraud* scheme separate and apart from the alleged misstatements. *See, e.g.*, ¶¶ 2, 6, 49; *see also* Opp. at 4-5. That is not surprising because the SEC Settlement from which Plaintiff copied its allegations does not even mention the word "scheme," Compl. Ex. A, and the Individual Defendants are not alleged to have engaged in the challenged sales practices by lower level employees, *supra* at 12-13. Courts "routinely reject" attempts like Plaintiff's to "bypass the elements necessary to impose misstatement liability . . . by labeling the alleged misconduct a scheme." *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 336 (D. Conn. 2021). Out of an abundance of caution, given Plaintiff's citation to all of the subsections of Rule 10b-5 in count 1, Defendants informed the Court in a footnote that the Complaint did not plead a scheme claim—which was appropriate given the Complaint's focus on misstatements.[15] Regardless of the label, Plaintiff's *only* theory of fraud is based

---

[14] Plaintiff's allegations are nothing like *In re WageWorks, Inc. Securities Litigation* where the company "cooked the books," the fraud was revealed when the outside auditor refused to certify its financial statements, and the market reacted to specific revelations of misstated revenue not merely WageWorks's poor performance. 2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020) (cited in Opp. at 18).

[15] Ironically, Plaintiff relies on a *footnote* from *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) to claim that Defendants should have made this point in the body rather than a footnote of their brief. Plaintiff is wrong, and regardless, the issue has been briefed and was not waived.

on alleged misstatements, and that theory fails for all of the reasons explained above and in the Motion.[16]

### 6. Plaintiff Fails To State A Section 20(a) Claim

Because Plaintiff fails to plead a primary violation of the securities laws under Section 10(b), the Section 20(a) claim should be dismissed. OB at 24. Additionally, Plaintiff's vague allegations that the Individual Defendants controlled HP are insufficient, *id.* at 24 n.9, particularly as to Messrs. Lores and Bailey who—unlike in the cases cited by Plaintiff—are not alleged to have made any challenged statement or signed any challenged SEC filing. *Compare* Opp. at 25.

### III. CONCLUSION

For the foregoing reasons and the reasons stated in the Motion, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:  October 4, 2021

GIBSON, DUNN & CRUTCHER LLP

*/s/ Brian M. Lutz*
BRIAN M. LUTZ SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3770
Facsimile:  202.530.9528
lpercopo@gibsondunn.com

SIDLEY AUSTIN LLP
SARA B. BRODY, SBN 130222
MATTHEW J. DOLAN, SBN 291150
555 California Street, Suite 2000
San Francisco, CA 94104

---

[16] *In re Alphabet, Inc. Sec. Litig.* cannot salvage Plaintiff's claim.  1 F.4th 687, 709 (9th Cir. 2021).  The Ninth Circuit held that misstatement and scheme theories sometimes overlap; it did not hold that a plaintiff may avoid dismissal by calling the conduct underlying its misstatement claim a "scheme."

Telephone:  415.772.1200
sbrody@sidley.com
mdolan@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler,*
*Catherine A. Lesjak, Enrique Lores, and Richard Bailey*

By: */s/ Steven Schatz*
**WILSON SONSINI GOODRICH & ROSATI**
STEVEN SCHATZ, SBN 118356
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  650.320.4856
SSchatz@wsgr.com

KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101
Telephone: 415.947.2065
khenderson@wsgr.com

*Counsel for Defendant Catherine A. Lesjak*

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: October 4, 2021                **GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ