UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HP INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-07835-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Re: Dkt. No. 45 |

Now before the Court is the motion to dismiss the consolidated complaint filed by Defendants HP, Inc. ("HP"), Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey (individually, "Individual Defendants; collectively, "Defendants").  The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  The Court HEREBY GRANTS the motion to dismiss without leave to amend.

## BACKGROUND

Plaintiff is a former HP shareholder who claims, on behalf of a purported class, that HP committed securities fraud in connection with the company's supplies business for ink and toner. On November 1, 2015, immediately before the start of the class period, HP split from Hewlett-Packard Company.  Plaintiff designates the Class Period from November 6, 2015, to June 21, 2016, and allege that in the months prior to this period, supplies revenues for HP declined for

United States District Court
Northern District of California

1  multiple quarters in a row and channel inventory was elevated. (Dkt. No. 37, Consolidated

2  Complaint ("Compl.") at ¶ 4.) Plaintiff alleges that in the months leading up to and during the

3  Class Period, Defendants made repeated public assurances about the health and prospects of the

4  supplies business while concealing the truth about decline in revenues and elevated channel

5  inventory levels. (*Id.* at ¶¶ 4, 5.)

6         Plaintiff alleges that during the Class Period, Defendants continued to represent to

7  investors that HP was delivering on their promises regarding the supplies market. But Plaintiff

8  alleges that, in truth, Defendants hid ballooning channel inventory and engaged in schemes that

9  eroded HP's efforts to stabilize supplies – gray marketing and accelerations or pull-ins. (*Id.* at ¶¶

10  49-50.) Gray marketing is the practice of selling supplies to channel partners at steep discounts

11  who then sell those supplies outside of their assigned territories. (*Id.* at ¶ 50.) Accelerations or

12  pull-ins are sales made pursuant to enormous discounts. (*Id.* at ¶ 5.) Both of these practices were

13  forbidden by HP as they erode profit margins, cannibalize sales in other regions, and lead to

14  channel inventory build-up. (*Id.* at ¶¶ 50, 54, 81-82.)

15         Plaintiff contends that Defendants engaged in these forbidden practices while

16  simultaneously representing that the channel inventory and supplies sales were within healthy

17  ranges. Plaintiff further argues that "[w]hen the effects of the pull-in scheme and the true extent of

18  the channel inventory problems could no longer be concealed, investors were blindsided with a

19  series of negative disclosures proximately caused by the pull-in scheme. Beginning in November

20  2015 and continuing through the end of the Class Period, Defendants announced disappointing

21  margins and revenue and recognized the need to clear out $700 million in excess Supplies channel

22  inventory, resulting in a corresponding reduction of $700 million in Supplies revenue. Through

23  these partial disclosures, the truth was slowly revealed regarding the dire impact of the pull-in

24  scheme on HP's most important metrics, causing HP's stock price to decline and investors to

25  suffer significant monetary damage." (*Id.* at ¶ 9.)

26         Lastly, Plaintiff alleges that "Defendants' scheme was confirmed by the SEC.

27  Specifically, on September 30, 2020, the SEC issued a cease and desist order finding that HP

28  violated federal securities laws." (*Id.* at ¶ 10.)

**ANALYSIS**

**A.     Applicable Legal Standards.**

      **1.     Motion to Dismiss under Rule 12(b)(6).**

      A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

      Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

      **2.     Leave to Amend.**

      In general, if the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).  If after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend.  *Cato v. United States*, 70 F.3d 1103, 1105-06 (9th Cir. 1995)

**B.     Statute of Limitations Bars Plaintiff's Claims.**

      A securities fraud claim must be brought within "2 years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b).  "Discovery" of the facts "as used in [§ 1658(b)]

encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). "The corrective disclosure date is the same as the . . . date on which the claim should have been discovered through reasonable diligence." *Freidus v. Barclays Bank PLC*, 734 F.2d 132, 138 (2d Cir. 2013). "A reasonably diligent plaintiff" has not discovered the facts until he can plead those facts "with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Reickborn v. Jeffries LLC*, 81 F. Supp. 3d 902, 915 (N.D. Cal. 2015).

In the complaint, Plaintiff alleges that the alleged actionable misstatements by Defendants were available to shareholders in 2015 and 2016. Plaintiff bases its scienter theory on admissions by Individual Defendants of their "detailed involvement in overseeing the Supplies business." (Compl. at ¶ 150.) All of these statements were made "[l]eading into and throughout the Class Period" which was during 2015 and 2016. (*Id.* at ¶¶ 150-54, 157-59, 161-63, 167-70, 172, 174-78, 180-82, 185, 187-88.) Plaintiff also alleges scienter based in part on Sarbanes-Oxley certifications which were signed and filed in 2015 and 2016. (*Id.* at ¶¶ 190-91.)

Plaintiff further alleges that HP's gross margins and printing operating profit margins were so material to its overall financial result, that the metrics were "closely tracked by analysts and investors. Indeed, because the Supplies business represented almost the entire profit of the Company, even small changes in Supplies profit margins had material impacts on HP's overall financial results." (*Id.* at ¶ 116(f).) When the value of their stock declined, Plaintiff alleges that both investors and analysts were closely tracking the profit margins and past representations. It was at this time that such investors and analysts would have become aware of the former conduct at HP in their supplies business and the resulting effects on the market.

Further, Plaintiff alleges that "Defendants concealed that HP had $700 million in excess channel inventory, which Defendants ultimately recognized when they took a $250 million channel inventory reduction on May 25, 2016 and a $450 million inventory reduction less than one month later, on June 21, 2016. These dramatic reductions confirm that Supplies channel inventory was not within targeted ranges and not reducing during the Class Period." (*Id.* at ¶ 132(a).) By Plaintiff's own allegations, the sudden reduction of inventory and resulting change in

United States District Court
Northern District of California

stock value was revealed in 2016.

Lastly, Plaintiff alleges that "Defendants were eventually forced to admit the material revenue impacts of the [pull-in] scheme when they disclosed massive Supplies revenue reductions of $250 million in Q2 2016 and $450 millions for Q3 and Q4 2016. Defendants' statements that Supplies revenue was 'on track' to stabilize despite the concealed pull-in scheme were materially misleading." (*Id.* at ¶ 149(a).) Plaintiff further alleges that "Defendants later admitted that when the Supplies revenue trajectory finally did 'stabilize' more than a year after the end of the Class Period, the 'stabilization' occurred only 'after adjustments for supplies sales model change' in Q3 and Q4 2016." (*Id.* at ¶ 149(b).) These later admissions, according to Plaintiff, indicated the falsity of the earlier representations. However, the later admissions were in 2016, well beyond the two-year statute of limitations.

All of these representations were publicly disclosed and premised upon publicly available information. Accordingly, the Court finds that the information that forms the basis for Plaintiff's allegations constitutes "facts a reasonably diligent plaintiff would have known" by the end of the Class Period or just thereafter. *See Merck*, 559 U.S. at 648. Because the operative facts underlying Plaintiff's security claims could reasonably have been discovered nearly five years before the filing of the complaint in this matter, the claims are time-barred under the two-year statute of limitations.

**C.    Leave to Amend.**

"A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). When evaluating whether to allow an amended complaint, "[t]he court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether" an amended complaint "plausibly suggests an entitlement to relief." *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (quoting *Cole v. Sunnyvale*, No. C-08-05017-RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)); *see also Ryabyshchuk v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2011 WL 5976239, at *4 (S.D. Cal. Nov. 28, 2011) ("[T]he

1   Court can utilize allegations in prior versions of the complaint *to judge the plausibility* of the

2   allegations in the amended complaint.").

3        Here, the Court cannot conceive facts that Plaintiff could plead to avoid the application of

4   the two-year statute of limitations without directly contradicting the facts as alleged previously.

5   Accordingly, the Court GRANTS the motion to dismiss on statute of limitations grounds, and

6   without leave to amend.[1]

7   **CONCLUSION**

8        For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss without

9   leave to amend.  A separate judgment shall issue and the Clerk shall close the file.

10

11        **IT IS SO ORDERED.**

12   Dated: March 3, 2022

13   _____

14   JEFFREY S. WHITE
     United States District Judge

15

---

[1] In addition, the statements allegedly made after Plaintiff sold all of its HP shares are also barred as Plaintiff lacks standing to challenge those statements and the Court lacks subject-matter jurisdiction to consider them.  *Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1024 (N.D. Cal. 2006).  Plaintiff lacks "standing to assert claims for misrepresentations or omissions that occurred after" selling shares because it "cannot show that [it] was harmed by the misrepresentations or omissions" made after that date.  *Id.*