**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200
sbrody@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler, Catherine A. Lesjak, Enrique Lores*, *and Richard Bailey*

*Additional counsel on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND,<br><br>Plaintiff,<br><br>v.<br><br>HP INC., et al.,<br><br>Defendants. | Case No. 4:20-cv-07835-JSW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................2

II. BACKGROUND .............................................................................................................5

III. ARGUMENT ..................................................................................................................7

    A.    Plaintiff Lacks Standing to Assert Any Claim that Is Not Barred By The Statute of Repose .............................................................................................................7

        1.    Statements Made Before April 21, 2016 Are Barred By The Statute of Repose.....8

        2.    Plaintiff Lacks Standing To Challenge The Remaining Statements........................9

        3.    York County's Complaint Did Not Toll The Statute of Repose.............................9

        4.    York County's Original Complaint Was Itself Time-Barred ...............................12

    B.    The Complaint Lacks Particularized Facts Pleading The Elements Of A Securities Fraud Claim .........................................................................................13

        1.    As An Initial Matter, The Court Should Dismiss The Claims Against Messrs. Lores And Bailey, Who Did Not Make Any Challenged Statement ....................13

        2.    Plaintiff Fails To Plead Falsity With Particularity.................................................14

        3.    Plaintiff Fails To Plead Particularized Facts Creating the Required Strong, Cogent, And Compelling Inference Of Scienter.....................................................20

        4.    Plaintiff Fails To Plead Loss Causation With Particularity ..................................25

        5.    Plaintiff Fails To State A Section 20(a) Claim .......................................................26

IV. CONCLUSION..............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Securities Litigation*
    1 F.4th 687 (9th Cir. 2021) ...................................................................................................19

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) .............................................................................................................10

*In re Apple Inc. Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) .......................................................................17

*Bao v. Solarcity Corp.*,
    2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ............................................................................27

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .............................................................................................................14

*Betz v. Trainer Wortham & Co.*,
    829 F. Supp. 2d 860 (N.D. Cal. 2011) ..............................................................................8, 13

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ...............................................................................................25

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ...........................................................................................14, 18

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    582 U.S. 497 (2017).................................................................................2, 3, 8, 10, 12

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018).........................................................................................................11

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ....................................................................17

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) .............................................................................................15

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) .............................................................................................18

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018).........................................................................12

*DeKalb Cnty. Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016)..............................................................................................3, 11

*In re ECOtality, Inc. Sec. Litig.*,
    2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ...................................................................23

*Elec. Workers Pension Fund v. HP Inc.*,
    2021 WL 1056549 (N.D. Cal. Mar. 19, 2021) ...............................................................15, 22

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Fialkov v. Microsoft Corp.*,
    72 F. Supp. 3d 1220 (W.D. Wash. 2014), *aff'd*, 692 F. App'x 491 (9th Cir. 2017)........................18

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012) ...........................................................................................24

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ..........................................................................................17, 20, 22

*Hanon v. Dataproducts, Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..............................................................................................................9

*Hoang v. ContextLogic, Inc.*,
    No. 5:21-cv-03930, slip op. (N.D. Cal. Mar. 10, 2023)...................................................................17

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    793 F. Supp. 2d 637 (S.D.N.Y. 2011)...............................................................................................12

*Integrated Media Resources, LLC v. Morley*,
    2023 WL 407535 (2d Cir. Jan. 26, 2023) ...........................................................................................8

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
    2020 WL 1244936 (N.D. Cal. Mar. 16, 2020)...................................................................................17

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ............................................................................................................26

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)...........................................................................................................................14

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ......................................................................................................12

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ..........................................................................................................10

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ..........................................................................................................25

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019).......................................................................................................................19

*Malhotra v. Equitable Life Assurance Soc'y*,
    364 F. Supp. 2d 299 (E.D.N.Y. 2005) ..............................................................................................13

*Markewich v. Adikes*,
    422 F. Supp. 1144 (E.D.N.Y. 1976) .................................................................................................13

*In re Maxim Integrated Prod., Inc., Derivative Litig.*,
    574 F. Supp. 2d 1046 (N.D. Cal. 2008).............................................................................................8

Gibson, Dunn & Crutcher LLP

iii

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)...............................................................................................8

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .......................................................14, 17, 20, 26

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ...............................................................................26

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ...........................................................................17, 26

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) .............................................................................25

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) .....................................................................20, 22, 27

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    2023 WL 3781645 (N.D. Tex. June 2, 2023) ......................................................10

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ...............................................................................25

*Paciga v. Invuity Inc.*,
    2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ...................................................23

*Palm Harbor Special Fire & Rescue Dist. Firefighters Pen. Plan v. First Solar Inc.*,
    2023 WL 4161355 (D. Ariz. June 23, 2023) .......................................................26

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)...........................................................................3, 11, 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ......................................................16, 17, 21, 23

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) .............................................................................24

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) .........................................................................14, 17

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .........................................................................21, 23

*Sec. & Exch. Com'n v. Rio Tinto
    plc*, 41 F.4th 47 (2d Cir. 2022)...........................................................................19

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
    2007 WL 760535 (N.D. Cal. Mar. 9, 2007)........................................................17

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*In re Solarcity Corp. Sec Litig*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) .......................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................................20, 24

*Veal v. LendingClub Corporation*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .....................................................................................24

*In re Warnaco Grp., Inc. Sec. Litig.*,
388 F. Supp. 2d 307 (S.D.N.Y. 2005), *aff'd sub nom. Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) .........................................................................................13

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) .............................................................................................22, 23

*West v. eHealth, Inc.*,
2016 WL 948116 (N.D. Cal. Mar. 14, 2016) .........................................................................19

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007) ......................................................................................................9

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .................................................................................................14

*Yan v. ReWalk Robotics Ltd.*,
973 F.3d 22 (1st Cir. 2020) ........................................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ..............................................................................4, 20, 23, 24

**Statutes**

15 U.S.C. § 78u-4(b)(1) .................................................................................................................14

15 U.S.C. § 78u-4(b)(2) .................................................................................................................20

15 U.S.C. § 78u-5(i)(1)(A)-(D) ....................................................................................................15

15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i) ...........................................................................................15

28 U.S.C. § 1658(b) .........................................................................................................................8

**Regulations**

17 C.F.R. § 240.12b-23(b) (2008-2019) .....................................................................................13

**Other Authorities**

Brief for the Washington Legal Foundation as Amicus Curiae Supporting Respondents,
2017 WL 1434786 (U.S. Apr. 5, 2017) .....................................................................................10

v

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

Oral Argument at 2:31-3:04, *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*,
65 F.4th 459 (9th Cir. 2023), *available at*
https://www.ca9.uscourts.gov/media/video/?20230206/22-15501................................................2, 9

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants HP Inc. ("HP" or the "Company"), Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey (the "Individual Defendants") (HP and the Individual Defendants, together, "Defendants"), through their undersigned counsel, hereby move to dismiss the Consolidated Complaint for Violation of the Federal Securities Laws (ECF 37, the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1), (6).  This Motion is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Lissa Percopo filed concurrently herewith, the accompanying Request for Judicial Notice, the complete files and records in this action, and additional material and arguments the Court may consider in connection with any hearing it sets, *see* ECF 67.

Defendants seek dismissal of the Complaint with prejudice because (1) all claims relating to Defendants' alleged statements made before April 21, 2016 are barred by the five-year statute of repose, (2) Plaintiff lacks standing to bring any claims *not* barred by the statute of repose (i.e., claims relating to Defendants' alleged statements made after April 21, 2016), and (3) Plaintiff fails to plead violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Fed. R. Civ. P. 9(b).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the five-year statute of repose applicable to Plaintiff's claims bars Plaintiff from challenging statements made more than five years before Plaintiff filed its complaint on April 21, 2021.

2.      Whether Plaintiff lacks Article III standing and/or the ability to bring any claim challenging statements *not* barred by the statute of repose where Plaintiff completed its purchases and sales of HP stock before those statements were made.

3.      Whether the Court should dismiss Plaintiff's claims for failure to plead that (1) any challenged statement was materially false or misleading, (2) any Defendant made any challenged statement with the intent to defraud investors, and/or (3) Plaintiff suffered any loss caused by any allegedly false or misleading statement.

4.      Whether the Court should dismiss Plaintiff's claims against Messrs. Lores and Bailey, who

Gibson, Dunn & Crutcher LLP

did not make any challenged statement.

5.    Whether the Court should dismiss Plaintiff's Section 20(a) claim for failure to plead a primary violation of the securities laws.

## I.    PRELIMINARY STATEMENT

Maryland Electrical Pension Fund ("Plaintiff"), the only plaintiff in this action, waited more than five years after the so-called "fraud" to assert its claim under the federal securities laws.  This long delay bars Plaintiff's claims, as this Court recognized in granting Defendants' previous motion to dismiss.  On appeal, the Ninth Circuit gave Plaintiff the benefit of the doubt with respect to the discoverability of the alleged fraud for purposes of the running of the statute of limitations—which, importantly, can be tolled when a stock purchaser cannot discover the facts necessary to plead its claim within the two-year limitations period.  The Ninth Circuit specifically declined to pass judgment on the statute of repose, which imposes an absolute five-year bar.  Unlike the statute of limitations, the statute of repose starts to run as soon as the alleged misconduct occurs, and it cannot be tolled.

In its previous ruling, this Court did not reach the statute of repose.  But it did conclude—correctly—that Plaintiff "lacks standing to challenge [the] statements" made "after Plaintiff sold all of its HP shares" in late 2015. ECF 58, at 6 n.1.  Plaintiff has since conceded it does not have individual standing to challenge these statements.  Oral Argument at 2:31-3:04, *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*, 65 F.4th 459 (9th Cir. 2023), *available at* https://www.ca9.uscourts.gov/media/video/ ?20230206/22-15501, & ECF 66, at 9.  Thus, the only statements that Plaintiff could conceivably challenge are those made earlier in 2015—and those statements are barred by the statute of repose.

Between the operation of the statute of repose and Plaintiff's lack of standing, Plaintiff's claims fail as to all statements challenged in this case.  The Court therefore need not reach the adequacy of the Complaint's allegations.  But if it does, it should dismiss the Complaint because Plaintiff fails to plead falsity, scienter, and loss causation.  The Ninth Circuit did not reach these issues either.

***The Complaint Is Barred by the Statute of Repose and Plaintiff Lacks Standing.***  Plaintiff's claims are subject to an "absolute" five-year statute of repose. *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) (hereinafter "*CalPERS*").  Because the statute of repose cannot be tolled, its application is straightforward.  For each alleged misstatement, the only question the Court need answer

Gibson, Dunn &
Crutcher LLP

is whether Plaintiff brought its claims more than five years after the statement was made. If so, the statute of repose bars the claim. Plaintiff filed its Complaint on April 21, 2021. *See* ECF 37. That means Plaintiff can challenge only statements made after April 21, 2016. While Plaintiff purports to challenge statements on three dates after April 21, 2016, this Court correctly concluded that Plaintiff lacks standing to challenge them. Plaintiff made its final transaction and completely sold out of HP's stock in December 2015. ECF 58, at 6 n.1; ECF 66, at 6, 9. On appeal, Plaintiff conceded that it lacks individual standing for the 2016 statements. *Infra* at 9. Thus, for every challenged statement either the statute of repose has run or Plaintiff lacks individual standing (or both).

Plaintiff contends that the filing of a separate complaint by a different HP shareholder—York County—turns its untimely claim into a timely one. But York County's complaint is irrelevant to the statute of repose. A putative class action complaint like York County's does not toll the statute of repose for other class members. *CalPERS*, 582 U.S. at 511-13. This is true even when a purportedly timely complaint (like Plaintiff claims York County's was) and the later untimely complaint (like Plaintiff's) are filed in the same action and on the same docket. *DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) (hereinafter, "*DeKalb*"); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) (hereinafter, "*IndyMac*"). Regardless, York County's Complaint was untimely too.

***Plaintiff Fails to Plead a False or Misleading Statement.*** Plaintiff alleges that in 2015 and 2016, some HP employees aggressively discounted ink and toner products, and that in one of HP's geographic regions, employees sold discounted products to third parties who resold them into other regions. Plaintiff then contends that the omission of these alleged facts rendered HP's statements misleading. But missing from the Complaint are any facts showing a link between the challenged statements and the allegedly omitted information. Plaintiff challenges HP's statements about inventory and revenue, but pleads no facts showing those statements were false or that the sales practices—as opposed to increased competition from companies offering cheaper ink and toner products—impacted HP's inventory or revenue in a manner that rendered the statements misleading.

Plaintiff also contends that HP misled the market by reporting levels of inventory held by the first-tier distributors to whom HP sold; according to Plaintiff, HP should have reported inventory held by sub-

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

distributors to whom HP did not sell products. But the undisputed fact is that HP lacked visibility into inventory levels below the first tier and had only incomplete data about inventory held by sub-distributors with whom it had no contractual relationship. That fact is alleged in a Securities and Exchange Commission ("SEC") settlement agreement on which Plaintiff draws heavily. ECF 37-1 (the "SEC Settlement") ¶¶ 15, 48. Plaintiff does not and cannot explain why investors would have been better served had HP reported the incomplete data.

*Plaintiff Fails to Plead Scienter.* Plaintiff's scienter allegations also are deficient. The Complaint contains no allegations drawn from confidential witnesses, and identifies no documents, reports or any information suggesting that the Individual Defendants believed their statements were false or misleading, or intended to deceive investors. Plaintiff simply contends that because the Supplies business was important to HP, the Individual Defendants *must have* known about the alleged sales practices, and *must have* further concluded that the challenged statements about HP's inventory levels were false or misleading. This is nowhere near sufficient to plead scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009).

Plaintiff's citations to the 2020 SEC Settlement do nothing to advance its scienter allegations. The SEC did not allege that HP committed securities fraud. To the contrary, the SEC stated explicitly that the executive officers responsible for HP's public statements did *not* know about the discounting practices at issue until "quarters after the actual conduct had taken place." SEC Settlement ¶ 49. In short, the SEC Settlement—pursuant to which HP paid a $6 million fine to resolve a years-long investigation by the SEC—*undercuts* any inference of scienter.

*Plaintiff Fails to Plead Loss Causation.* The Complaint finally fails on the independent ground that Plaintiff has not pled loss causation. Plaintiff makes no effort to show how four so-called "corrective" disclosures in 2015 and 2016 corrected any prior misstatement, as opposed to simply reporting disappointing business results. Merely saying the words "loss causation" and pointing to a stock price decline is not enough to plead this element of a securities fraud claim. The Court can and should dismiss the Complaint on all of these grounds.

## II.    BACKGROUND[1]

***The Company and the Print Supplies Business.***  HP is "a leading American technology company" that "manufactures and sells personal computers, printers and printer supplies."  SEC Settlement ¶¶ 5-6.  HP was formed in 2015 when the Hewlett-Packard Company split into two, with the new HP to carry on the legacy printer and computer businesses.  *Id.* ¶ 6.  HP operates through three geographic regions: (1) the Americas, (2) Asia Pacific and Japan ("APJ"), and (3) Europe Middle East Africa.  *Id.* ¶ 7.  One of HP's three business lines is Printing, which in turn comprises three business units, including Supplies.  *Id.* ¶ 6.  The Supplies unit—which "sells supplies for use in HP printers, including ink and toner"—is the focus of this action.  *Id.*

Before and during the putative Class Period (November 6, 2015 to June 21, 2016), HP operated its Supplies business using a "push model."  SEC Settlement ¶ 11.  Under this model, HP offered discounts to incentivize distributors to purchase ink and toner, and then "use[d] a combination of marketing spend and discounts . . . to promote the movement of inventory through the channel to end users."  *Id.* ¶¶ 11, 16.  Multiple "tiers" of distributors sold HP's products to end users.  HP sold ink and toner products to "Tier 1" distributors, who sold either to consumers or to resellers ("Tier 2").  The Tier 2 resellers in turn sold product down the chain.  *Id.* ¶ 12.  HP recognized revenue based on sales to Tier 1 distributors, and "had no continuing obligations" after that because HP's "sales [to Tier 1 partners] were not contingent on the eventual sales on to the Tier 2 partner or end user."  *Id.*

In the years preceding the putative Class Period, revenue in HP's Supplies had declined, "consistent with the overall secular decline of printing."  *Id.* ¶ 8.  Levels of Supplies channel inventory— that is, "inventory sold by HP to its distribution channel that has not yet been sold to end users," *id.* ¶ 1 n.2—"were elevated" as a result of increased competition from companies offering ink and toner products at lower prices.  *See* ¶ 4.

***The Challenged Sales Practices.***  Plaintiff alleges that during the putative Class Period, HP employees "offer[ed] extraordinary discounts to induce channel partners to purchase" supplies.  ¶ 5.

---

[1]    By summarizing Plaintiff's allegations, Defendants do not concede the allegations are true.  Citations in the form of "¶ __" refer to the paragraphs of the Complaint.  Citations to "Ex. __" refer to the exhibits to the Declaration of Lissa Percopo, filed concurrently herewith.  Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

Plaintiff also alleges that HP employees in APJ sold "supplies to channel partners at steep discounts who then sold those supplies outside of their assigned territories," a practice known as "gray marketing." *Id.*; SEC Settlement ¶ 24. Plaintiff does not allege facts specifying the scope or scale of these practices, but claims that the practices resulted in lower-margin sales and increased inventory levels. ¶ 5.

**HP Lowers Inventory and Reports Declining Revenues.** HP's Supplies business faced several challenges during the Class Period. During a November 24, 2015 earnings call, HP reported that it "expected to have several tough quarters" and that "[s]upplies revenue will continue to be under pressure." Ex. 4, at 8, 12. HP explained that the "most significant factor" accounting for declining revenues was competition from sellers of ink and toner at lower costs than HP-branded Supplies products. *Id.* at 9. HP also reported that its channel inventory levels were above its target range. *Id.* at 11. During its next earnings call, on February 24, 2016, HP reported that these challenges—increased competition and higher channel inventory—had persisted, leading to further declining revenues. Ex. 5, at 3, 6.

On May 25, 2016, HP announced that it would hold back $250 million of print supplies that it otherwise would have sold to Tier 1 distributors to reduce the Supplies inventory in HP's sales channel. Ex. 6, at 5, 8, 16; *see also* ¶ 149(a). HP's stock price did not decline after this disclosure.

On June 21, 2016, HP announced that in response to market changes, it was shifting from its previous "push" business model—which focused on "promoting supplies at high frequency and high discount levels"—to a "pull" model, in which it would sell Supplies in a manner "driven by market demand." Ex. 9, at 2. As part of this transition, HP reported that it planned to "reduce tier 1 and tier 2 supplies channel inventory levels during Q3 and Q4 [2016]" by $450 million. *Id.* at 4-5; *see also id.* at 6. HP explained that "[t]his action is expected to help reduce disruption by minimizing unofficial channels, eliminating grey marketing activity and ultimately allowing for less price variability"; HP would "focus more on selling through the value of our brand . . . and less through promotions and pricing." *Id.* at 2. HP anticipated that going forward it would "have higher revenue as a result of not having to discount as much." *Id.* at 9. Plaintiff alleges that HP's stock price declined after this announcement. ¶ 208.

**The SEC Settlement.** More than four years after HP announced its switch from a push to a pull model, HP agreed to the SEC Settlement. In the agreement, dated September 30, 2020, the SEC alleged that between November 2015 and June 2016, some HP regional managers sold excess inventory at steep

discounts or sold Supplies to distributors who then resold the products outside their assigned geographic region. SEC Settlement ¶¶ 1-2. The SEC alleged that these sales practices increased the Company's quarterly revenues, but also eroded profit margins, led to price instability, and increased Supplies inventory held by distributors. *See id.* ¶ 1. The SEC did not allege HP engaged in improper accounting, misstated any financial metric, needed to restate its financials, or committed securities fraud. Instead, the SEC alleged that HP violated non-fraud based provisions of the securities laws by not disclosing these sales practices as trends. *Id.* ¶ 39. The SEC also did not allege that the Individual Defendants in this case (or any senior officer) engaged in misconduct. To the contrary, the SEC concluded HP's "principal executive officers who were responsible for the company's disclosures" only "learned of the [sales practices] . . . after the actual conduct had taken place," and that HP's controls did not bring these practices to the attention of "HP executives responsible for the company's disclosures." *Id.* at ¶¶ 48-49. To reach a settlement—in which HP did not admit the SEC's allegations—HP agreed to pay a fine of $6 million. *Id.* at 1, 11.

*Procedural History*. Plaintiff filed the Complaint (its first in this action) on April 21, 2021. Plaintiff is the only plaintiff named in the Complaint. Defendants first moved to dismiss the Complaint on June 21, 2021. ECF 45. On March 3, 2022, this Court granted that motion on the ground that Plaintiff's claim was barred by the two-year statute of limitations. ECF 58, 59. The Court also noted that Plaintiff did not have standing to challenge any statement made in 2016. ECF 58, at 6 n.1. On April 11, 2023, the Ninth Circuit reversed solely on the discoverability of the alleged fraud for purposes of the running of the statute of limitations and remanded for consideration of Defendants' other dismissal arguments. *York Cnty.*, 65 F.4th at 465, 468. The Ninth Circuit based its analysis on the April 21, 2021 Complaint, not the earlier complaint filed by York County, *see id.* at 466-67, and "express[ed] no opinion" on Defendants' arguments regarding Plaintiff's "standing as lead plaintiff, the statute of repose or the adequacy of [Plaintiff's] complaint," "leav[ing] them for the district court to address in the first instance." *Id.* at 468.

## III.    ARGUMENT

### A.    Plaintiff Lacks Standing to Assert Any Claim that Is Not Barred By The Statute of Repose

Plaintiff challenges statements on nine dates between November 5, 2015 and June 3, 2016.

Gibson, Dunn & Crutcher LLP

Plaintiff's attack on statements made on the first six dates is barred by the statute of repose. Plaintiff's attack on statements on the remaining three dates—as well as five others—is barred for lack of standing:

| Date of Challenged Statement | Barred by Statute of Repose | Plaintiff Lacks Individual Standing |
|---|---|---|
| Nov. 5, 2015 | X | |
| Nov. 24, 2015 | X | X |
| Dec. 16, 2015 | X | X |
| Feb. 24, 2016 | X | X |
| Mar. 1, 2016 | X | X |
| Mar. 3, 2016 | X | X |
| May 25, 2016 | | X |
| June 1, 2016 | | X |
| June 3, 2016 | | X |

*See* ¶¶ 95-100, 102, 105-07, 109, 112-13, 115, 120, 122-23, 125-26, 128-30, 136-37, 140-45, 147 (setting forth challenged statements); *see also Integrated Media Resources, LLC v. Morley*, 2023 WL 407535, at *1 (2d Cir. Jan. 26, 2023) (affirming dismissal of securities fraud action where statements before plaintiff's stock purchase were barred by the statute of repose and plaintiff could not bring a claim for those after).

**1.    Statements Made Before April 21, 2016 Are Barred By The Statute of Repose**

Plaintiff's challenge to statements made before April 21, 2016 is time-barred. A "private right of action" for a violation of the Exchange Act "that involves a claim of fraud" must be brought no later than "5 years after such violation." 28 U.S.C. § 1658(b). Because "[e]ach false statement may constitute a separate violation of § 10(b)," "the five-year period begins to run with respect to each violation when it occurs." *In re Maxim Integrated Prod., Inc., Derivative Litig.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008); *see also Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 864 (N.D. Cal. 2011) (collecting cases for same proposition). This five-year statute of repose is "an *unqualified bar*" that "giv[es] defendants total repose after five years." *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010); *see also CalPERS*, 582 U.S. at 507 (statutes of repose "create an *absolute bar* on a defendant's temporal liability"). A plaintiff may therefore challenge only those statements made within the five-year period before it filed its complaint.

The critical date in this case is April 21, 2016—five years before Plaintiff filed its Complaint on April 21, 2021. ECF 37. As illustrated above, that disposes of Plaintiff's challenge to the statements made on the six dates before April 21, 2016. This "critical date" aligns with the "critical date" applied by

8

the Ninth Circuit for the statute of limitations analysis—two years before Plaintiff filed its Complaint. *York Cnty.*, 65 F.4th at 466-67.

### 2.    Plaintiff Lacks Standing To Challenge The Remaining Statements

Plaintiff's challenge to the remaining statements—on three dates after April 21, 2016—is foreclosed for a different reason.  Plaintiff lacks standing to challenge these statements.  Plaintiff last purchased HP stock on November 24, 2015, and sold all of its HP stock by December 30, 2015.  *See* ECF 37; ECF 20-2 & 20-3 (confirming all of Plaintiff's purchases and sales of HP stock occurred in 2015). This Court correctly noted in its previous ruling that Plaintiff lacks standing to challenge any statement made in 2016.  ECF 58, at 6 n.1.  Before the Ninth Circuit, Plaintiff conceded that it lacks individual standing as to these statements.  Oral Argument at 2:31-3:04, *York Cnty.*, 65 F.4th 459, *available at* https://www.ca9.uscourts.gov/media/video/?20230206/22-15501, & ECF 66, at 9 (conceding Plaintiff lacks "individual standing" to challenge any statement made in 2016).  That concession is warranted by law.  *Winer Family Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (Section 10(b) plaintiff has standing to assert only those "claims based on activity prior to the date [it] purchased its stock"); *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 35-36 (1st Cir. 2020) (same).  In addition to its lack of standing, Plaintiff necessarily cannot plead multiple elements of its claim for these 2016 statements made after it was no longer a stockholder (i.e., reliance on the statement, a purchase in connection with the statement, or a loss caused by a statement).  *See also Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 501 (9th Cir. 1992) ("allegedly fraudulent acts which occur after a plaintiff's purchase of stock cannot form the basis of a section 10(b) claim").  At that point in time, Plaintiff was no different than a person that had *never* purchased shares of HP, and thus simply cannot bring a claim.

### 3.    York County's Complaint Did Not Toll The Statute of Repose

In an effort to avoid its statute of repose problem, Plaintiff argued on appeal that the filing of a different complaint, by York County on November 5, 2020, rendered its time-barred claims timely.  ECF 1. The Ninth Circuit did not rule on repose issues, but noted that determining whether "the relevant filing date is when York County—not [Plaintiff]—filed its complaint . . . is *vital* to determining whether [Plaintiff's] complaint is barred by the statute of repose." *York Cnty.*, 65 F.4th at 466, n.3.  The answer to this vital question is clear under Supreme Court and circuit-level precedent.  Plaintiff *cannot* use York

County's filing date to rescue its untimely claims.[2]

More specifically, York County's complaint did not toll the statute of repose for Plaintiff's claims because the Supreme Court has held that the statute of repose, unlike the statute of limitations, cannot be tolled. *CalPERS*, 582 U.S. at 511. "The purpose of a statute of repose is to create an absolute bar on a defendant's temporal liability," and "[i]n light of the purpose of a statute of repose, the provision is in general not subject to tolling." *Id.* at 507 (internal quotation marks omitted).[3]

The fact that York County's original complaint and Plaintiff's operative complaint were *putative* class actions does not impact the analysis. When no class has been certified, no "class" claims exist. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020, 1023 (9th Cir. 2003) (where a putative "class's sole named plaintiff has no cognizable claim," the "suit must be dismissed"); *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 2023 WL 3781645 (N.D. Tex. June 2, 2023) (dismissing entire action where the sole named plaintiff in putative class action did not have standing to bring remaining claims). York County's filing cannot redeem the untimeliness of Plaintiff's Complaint.[4]

---

[2] Plaintiff cannot explain how York County's complaint, which did not name Mr. Lores or Mr. Bailey, could possibly have impacted the timeliness of its claims against them.

[3] The original class action plaintiff in *CalPERS* timely alleged violations of Section 11 of the Securities Act, which is subject to a three-year statute of repose. *Id.* at 503. Petitioner CalPERS filed a separate complaint against the same defendants after the statute of repose claims had run. The latter action was transferred and consolidated into the original action. CalPERS argued its claims were "timely because that 3-year period was tolled during the pendency of the class-action filing" pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *Id.* The Supreme Court rejected CalPERS' argument, holding that a repose period, unlike a limitations period, cannot be tolled. The Court also rejected the argument that the class action complaint "brought" the claims of every putative class member within the meaning of 15 U.S.C. § 77m (setting three year statute of repose in Securities Act cases). *Id.* at 513-14. As the Court explained, *American Pipe* tolling would be unnecessary if filing a class action complaint in itself makes all putative class members' claims timely. *Id.* at 514-15.

[4] While *CalPERS* forecloses putative class members with *untimely* claims from piggybacking onto a timely-filed complaint, the decision does not prevent those same class members from acting before their claims are untimely. Putative class members can and should preserve their claims by taking action *before* the repose period has run. They may do so through timely "motion[s] to intervene or request[s] to be included as a named plaintiff in the class-action complaint." 582 U.S. at 513 (citing with approval the amicus curiae brief of the Washington Legal Foundation); *see* Brief for the Washington Legal Foundation as Amicus Curiae Supporting Respondents, 2017 WL 1434786, at *6-14 (U.S. Apr. 5, 2017) (arguing that investors who want to preserve their claims must act *before* the statute of repose expires). The Supreme Court reiterated this rule in *China Agritech, Inc. v. Resh*, explaining that unnamed members of a putative class must file "protective *individual* claims" before "the statute of repose [is] about to run out," and that

Gibson, Dunn & Crutcher LLP

The Second Circuit Court has twice affirmed dismissal under the statute of repose on facts closely analogous to the facts here. *DeKalb*, 817 F.3d 393 (2d Cir. 2016); *IndyMac*, 721 F.3d 95 (2d Cir. 2013). In both *Dekalb* and *IndyMac*, as in this case, plaintiffs who filed claims after the repose period had run argued that their claims nevertheless were timely because they had asserted those claims in a pending timely-filed action commenced by a different plaintiff. The Second Circuit rejected the argument in both cases.

Specifically, in *DeKalb*, plaintiff Bricklayers timely filed a class action complaint on September 30, 2010, just before the repose period expired on October 2, 2010. 817 F.3d at 399. Over two months later, Plaintiff DeKalb then appeared and filed a lead plaintiff motion in that same "action." DeKalb was appointed co-lead plaintiff with Bricklayers. *Id*. The district court later dismissed Bricklayers for lack of standing and dismissed DeKalb because its claim was untimely. *Id*. at 400. The Second Circuit affirmed, holding that Bricklayers' timely-filed complaint did not rescue DeKalb's untimely one, and that the fact that both plaintiffs sought to represent a class made no difference. *Id.* 412-14. The *DeKalb* court also soundly rejected an argument previously raised by Plaintiff here—that the PSLRA's lead plaintiff provisions toll the statute of repose. The court held that "[n]othing about th[e] [PSLRA's] language even remotely suggests that the PSLRA was intended to toll the applicable statutes of repose for the 60 days during which a member of the purported class may file a lead-plaintiff motion, and we have been unable to locate any authority that even arguably supports this notion." *Id.* at 413.

In *IndyMac*, plaintiff Detroit timely filed a putative class action challenging multiple securities offerings. A different plaintiff, Wyoming, filed a separate complaint. The two actions were consolidated and Wyoming was appointed lead plaintiff. In a consolidated amended complaint, only Wyoming was named as a plaintiff. *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 641 (S.D.N.Y. 2011). The district court subsequently dismissed several of Wyoming's claims for lack of standing, and other members of the putative class—including the original named plaintiff, Detroit—sought to intervene to bring the dismissed claims. *Id.* at 641-42. The court denied the motions to intervene because the claims the intervenors sought to assert were time-barred. *Id.* at 643-45. The Second Circuit affirmed, concluding

---

"if the statute of repose expired . . . there would be no further opportunity to assert class claims." 138 S. Ct. 1800, 1810 (2018).

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

that even where a putative class action complaint is timely filed, members of the putative class who seek to bring claims in that timely-filed action may not do so if their claims have expired under the statute of repose. *IndyMac*, 721 F.3d at 101 (rejecting putative class members' attempts to intervene and "circumvent [the] statute of repose by invoking *American Pipe* [tolling] or Rule 15(c) [relation back]").

Thus, under *DeKalb* and *IndyMac*, as under the analysis in *CalPERS*, the fact that Plaintiff asserted claims in the pending *York County* action does not make its untimely claims timely. *See also De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *22 (D.N.J. Dec. 31, 2018) (plaintiff who was added by amendment to a timely-filed complaint after the repose period expired "could not belatedly join the action . . . asserting a claim that was already nullified by the passage of time."); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 153-54 (S.D.N.Y. 2017) ("Because Harris was time-barred from raising any individual claims at the time of her entry into this case and because she was not yet a member of a certified class, she should not have been permitted to serve as a lead plaintiff.").

### 4. York County's Original Complaint Was Itself Time-Barred

York County's claims are also time-barred in their own right. York County's trading history, like Plaintiff's, restricts the alleged misstatements it could challenge. York County bought HP shares on a single date: November 9, 2015. ECF 1, at 26. That means York County cannot challenge any statement made after that date. *See supra* at 9. The *only* alleged misstatements York County theoretically could challenge, therefore, are the statements in HP's November 5, 2015 Form 8-K. Ex. 2. Plaintiff asserts that in the Form 8-K, HP made several representations, including attributing negative performance "primarily to competitive pricing pressures in Printing." *Supra* at 8 (table); ¶ 95.

This is not true. None of the language Plaintiff quotes appears in the November 5, 2015 Form 8-K. ¶ 95. The quoted language appears only in Hewlett Packard's Form 10-Q, which was filed on September 8, 2015. Ex. 3, at 68, 70, 74, 80. And any challenge to the language in the Form 10-Q is time barred because September 8, 2015 is more than five years before York County filed its complaint on November 5, 2020. ECF 1.

Plaintiff claims the September 8, 2015 statement nevertheless is in play because it was "incorporated by reference" into HP's November 5, 2015 Form 8-K. *See* ¶ 95. Not so. The Form 8-K merely advised investors that the "unaudited pro forma consolidated condensed financial statements and

the accompanying notes should be read *in conjunction with*" HP's September 8, 2015 Form 10-Q. Ex. 2, at Ex. 99.2.[5]

If Plaintiff were correct that the September 8, 2015 statement is incorporated by reference in the November 5 Form 8-K—which *does* fall within the repose period for York County's complaint—this would only create a new repose problem for Plaintiff. "The statute of repose begins to run on the date of the *first* misrepresentation." *Betz*, 829 F. Supp. at 864. Only a "new and materially different" statement "start[s] the statute of repose anew." *Malhotra v. Equitable Life Assurance Soc'y*, 364 F. Supp. 2d 299, 306 (E.D.N.Y. 2005). Under Plaintiff's logic that the November 5, 2015 Form 8-K included the representations in the September 8, 2015 Form 10-Q, the statute of repose began running on September 8, 2015. The purported reappearance of the statement on November 5, 2015 would not restart the repose period.

York County's complaint thus suffers from the same defects as Plaintiff's. York County lacks standing as to every statement after November 9, 2015. This leaves only the November 5, 2015 statement, which does not contain the September 8, 2015 language on which Plaintiff relies—and which would not avoid the statute of repose bar even if it did. The untimeliness of York County's November 5, 2020 complaint dooms Plaintiff's effort to piggyback its even later April 16, 2021 claims onto York County's complaint.

**B.    The Complaint Lacks Particularized Facts Pleading The Elements Of A Securities Fraud Claim**

**1.    As An Initial Matter, The Court Should Dismiss The Claims Against Messrs. Lores And Bailey, Who Did Not Make Any Challenged Statement**

The Section 10(b) claim against Messrs. Lores and Bailey fails at the outset because Plaintiff does

---

[5]    Referring to earlier SEC filings does not incorporate such filings by reference. *See, e.g.*, *In re Warnaco Grp., Inc. Sec. Litig.*, 388 F. Supp. 2d 307, 313 n.2 (S.D.N.Y. 2005) (referring to audited annual financial statements "for further information" does not incorporate them by reference), *aff'd sub nom. Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007); *Markewich v. Adikes*, 422 F. Supp. 1144, 1147 (E.D.N.Y. 1976) ("Absent a specific declaration of incorporation, a mere mention of the annual report does not incorporate it by reference."); 17 C.F.R. § 240.12b-23(b) (2008-2019) (SEC filing incorporates by reference a separate document only if the SEC filing contains "[a]n express statement that the specified matter is incorporated by reference").

Gibson, Dunn & Crutcher LLP

not and cannot allege that either defendant made any challenged statement. Only the "maker" of a statement can be held liable under Section 10(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement." *Id.* at 142. Plaintiff does not allege that Mr. Lores or Mr. Bailey made or had ultimate authority over any challenged statement. That is dispositive under *Janus*. *See, e.g.*, *In re Solarcity Corp. Sec Litig*, 274 F. Supp. 3d 972, 1007 (N.D. Cal. 2017) (dismissing claim against executive because "Plaintiffs make no allegations that [he] had any actual authority over what was and was not included in the shareholder letters and Forms 10-Q that Plaintiffs challenge").

### 2.     Plaintiff Fails To Plead Falsity With Particularity

Plaintiff fails to plead with the required particularized facts that any challenged statement was materially false or misleading. Under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008); 15 U.S.C. § 78u-4(b)(1). Statements are misleading only if they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). "Thus, as long as [any] omissions do not make the actual statements misleading, a company is not required to disclose" other facts "even if investors would consider the omitted information significant." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). Plaintiff's allegations fail under these standards.

### a.     The Supplies Revenue Statements Are Protected Forward-Looking Statements

Plaintiff claims that "Defendants' Class Period statements that the Supplies business was 'on track' to stabilize by the end of FY 2017" were misleading "[d]ue to the undisclosed pull-in scheme." ¶¶ 133, 149(a). Statements that a company is "'on track' to achieve [its] goal[s] . . . are [] forward-looking statements" immunized from liability under the PSLRA safe harbors. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). Similarly, Defendants' statements that they expected Supplies revenue to "stabilize by the end of 2017," ¶¶ 136, 140-43, 147-48, are "projection[s] of revenues" and statements "of

Gibson, Dunn & Crutcher LLP

future economic performance" that fall squarely within the PSLRA safe harbors. 15 U.S.C. § 78u-5(i)(1)(A)-(D). These forward-looking statements are not actionable unless Plaintiff can show *both* that Defendants made the statements with "actual knowledge" that they were false, *and* that the statements were not "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i). Plaintiff fails to make either showing.

***Actual Knowledge.*** Plaintiff nowhere pleads facts showing that Defendants knew that HP was purportedly *not* "on track" to stabilize revenue. To the contrary, Plaintiff acknowledges that HP *did* stabilize supplies revenue in 2017. ¶ 149(b); *see also Elec. Workers Pension Fund v. HP Inc.*, 2021 WL 1056549, at *5 (N.D. Cal. Mar. 19, 2021) (noting that HP "achiev[ed] stabilization one quarter earlier than expected in 2017"). Plaintiff alleges that the projections were nevertheless false because of the alleged "pull-in scheme"—*i.e.*, that certain HP employees engaged in accelerated discounting and gray marketing practices. ¶ 149(a), (b). But Defendants did not have actual knowledge of the supposed scheme. In the SEC Settlement on which this action largely is based, the agency asserted, after a multi-year investigation, that Defendants *did not* learn about these challenged practices until "quarters after the actual conduct had taken place." SEC Settlement ¶ 49. Plaintiff pleads no contrary facts.

***Meaningful Cautionary Language.*** The challenged statements also come within the second safe harbor. Each was identified as forward-looking and accompanied by meaningful cautionary language—that is, language "identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). HP identified the relevant risks associated with "[s]uccessfully managing the interaction of our direct and indirect channel efforts"—including the risk of "distribution channel conflicts" and "pricing challenges" that could lead to "excess or obsolete inventory."[6] HP also warned that a "failure to implement the most advantageous balance" in its distribution channels "could adversely affect [HP's] revenue and gross margins." Ex. 1, at 22-23. And HP cautioned that *all* forward-looking statements "involve risks, uncertainties, and assumptions," and that if those "risks or uncertainties ever materialize or the assumptions prove incorrect," results may "differ materially." *Id.* at 3. This language is more than

---

[6]    HP provided or incorporated this language in connection with each of the challenged statements, and identified the statements as forward-looking. Ex. 5, at 1; Ex. 6, at 1; Ex. 7, at 4; Ex. 8, at 1.

Gibson, Dunn & Crutcher LLP

15

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

sufficient. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (approving less detailed warning).

              **b.**       **The Complaint Fails To Plead Particularized Facts Demonstrating That Statements About Supplies Pricing and Margins Were False or Misleading**

Plaintiff next challenges statements that the "primary factors" causing declining margins were "unfavorable currency impacts" and a "competitive pricing environment." ¶¶ 95, 98-100, 102, 105-07, 109, 112-13, 115. According to Plaintiff, these statements were false because the decline in margins "was primarily due to HP's undisclosed pull-in scheme, not currency or competitive pricing issues." ¶ 116(a). But the Complaint lacks any factual allegations supporting this conclusory assertion.

Because Plaintiff offers no confidential witnesses, internal reports, or other facts to support its assertions, it instead offers invented facts. Plaintiff creates a chart purporting to show a correlation between HP's declining profit margins and "$700 million of low-margin sales" allegedly caused by the "[p]ull-in scheme." ¶ 116(b). But the chart depends on the *assumption* that the entire $700 million of inventory reductions announced in May and June 2016 is attributable to the challenged sales practices. That assumption is contradicted by undisputed facts. Of the $700 million reduction, $450 million was associated with HP's decision to shift from a push to a pull model, which involved lowering the inventory ranges and ceilings for its Supplies business. *Supra* at 6.

Plaintiff's "estimate" of the impact pull-ins and gray marketing had on margins is even more specious. ¶¶ 116(e), 193-98. To demonstrate that the challenged sales practices were the "primary" cause of declining margins, Plaintiff purports to model the financial impact of these practices using five different "scenarios." ¶ 197. These scenarios too rest on unsupported assumptions, not facts. Plaintiff admits, for example, that it does not know the number of pull-in sales or the size of discounts, and has therefore "*[e]stimated* pull-in sales as a % of Supplies sales," and then "applied an *estimated* discount of 30%" to every sale. ¶¶ 196-97. These estimates are simply made up. Plaintiff also *assumes* in each scenario that HP had $700 million of "excess channel inventory build-up" at the time of the challenged statements, ¶ 193. But as Defendants explained in June 2016, "*the channel inventory levels were the right levels*" under the push model; HP reduced the levels only because it was shifting to the pull model. Ex. 9, at 6. Again, Plaintiff offers no contrary facts.

Gibson, Dunn & Crutcher LLP

16

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Section 10(b) plaintiffs cannot plead falsity based on assumption when they fail to "establish a probability that their conclusions are reliable." *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 2020 WL 1244936, at *9 (N.D. Cal. Mar. 16, 2020); *see also In re Silicon Storage Tech., Inc. Sec. Litig.*, 2007 WL 760535, at *17 (N.D. Cal. Mar. 9, 2007) ("plaintiffs fail to provide particularized information" regarding assumptions in their calculations). Plaintiff thus "cannot evade the PSLRA's exacting pleading standards" by means of "assertions about falsity based on questionable assumptions and unexplained reasoning." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022).

Plaintiff is left with the SEC's unexplained allegation that pull-ins and gray marketing had a "material impact" on HP's decline in gross margin. ¶ 116(c)-(e) (quoting SEC Settlement ¶¶ 39, 43). "[L]egal conclusions" in an SEC settlement cannot serve as a substitute for the "particularized facts" required by the PSLRA. *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). In any event, the SEC's reference to a "*material*" impact does not support Plaintiff's assertion that sales practices were the "*primary*" cause of declining margins.

Finally, HP had no obligation to disclose *all* reasons for declining margins merely because it disclosed the *primary* reasons—unfavorable currency impacts and a competitive pricing environment. The Ninth Circuit has "expressly declined to require a rule of completeness for securities disclosures." *Intuitive Surgical*, 759 F.3d at 1061; *accord Rigel Pharm.*, 697 F.3d at 880 n.8 (Rule 10b-5 does not prohibit "statements that are incomplete"). A statement of the factors that "primarily" caused certain business challenges does not mean that those were the "only" factors. *Hoang v. ContextLogic, Inc.*, No. 5:21-cv-03930, slip op. at 30 (N.D. Cal. Mar. 10, 2023) (ECF 98).

The same logic disposes of Plaintiff's allegation that statements about "revenue growth in APJ" were misleading because HP did not attribute that growth to the pull-in scheme. ¶¶ 137-38, 144-45, 149(c). "General descriptions of historical results have generally been found not to require disclosure of adverse factors" because such descriptions "do not represent anything about the causes of that performance . . . ." *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *10 (N.D. Cal. June 2, 2020); *see also Metzler*, 540 F.3d at 1070 ("[T]his Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud."); *City of Sunrise Firefighters' Pension*

Gibson, Dunn & Crutcher LLP

*Fund v. Oracle Corp.*, 2019 WL 6877195, at \*12 (N.D. Cal. Dec. 17, 2019) (sales figures not rendered misleading by failure to disclose that growth was purportedly driven by fraud). Defendants' bare statement that HP experienced revenue growth—which Plaintiff does not dispute—did not create an obligation to list every reason for the growth.

      c.      **Plaintiff Fails To Plead Specific Facts Demonstrating That The Statements About Supplies Channel Inventory Were False Or Misleading**

Plaintiff attacks statements from 2015 and early 2016 that the amount of HP inventory sold to distributors and available for purchase by consumers was "slightly above" the target range set by the Company. Plaintiff claims that this was misleading because HP later announced in May 2016 that it had reduced inventory by $250 million. ¶¶ 120-30, 132. But HP's reduction of inventory is *consistent* with Defendants' statements that inventory levels were above the target levels; there was nothing misleading about the challenged statements. *See Brody*, 280 F.3d at 1006 (statements are misleading only if they "affirmatively create an impression of a state of affairs that *differs* in a material way from the one that actually exists"). Nor does Plaintiff plead facts showing that HP had $250 million in excess inventory when it made the challenged statements—or at any other point before HP reported reduction at the end of May 2016. The Complaint thus lacks the necessary allegations that the statements were false when made and instead impermissibly pleads "fraud by hindsight"—the very practice Congress "put an end to" when it "enacted the PSLRA." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1021 (9th Cir. 2005); *see also Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014) (plaintiffs' failure to plead that Microsoft's inventory level was "worrisomely large" *when the challenged statements were made* rendered their complaint "a classic example of impermissible fraud by hindsight"), *aff'd*, 692 F. App'x 491 (9th Cir. 2017).

HP's announcement in June 2016 that it was reducing inventory by $450 million similarly does not contradict earlier statements that inventory was "within our targeted ranges" at the time the statements were made. ¶¶ 128-30, 132, 142, 149. HP explained that it was reducing inventory by $450 million in the second half of 2016 because its *new business model* required less inventory—not because inventory had previously been excessive. *Supra* at 6. As Defendants stated, the inventory was at "the right levels" for the push model—a statement Plaintiff does not contend was false. Ex. 9, at 6.

Gibson, Dunn & Crutcher LLP

18

Plaintiff also claims that HP's statements about its inventory levels were misleading because HP reported channel inventory levels for the Tier 1 distributors—to whom HP actually sold products—but not for downstream sub-distributors below that tier. ¶ 132(b), (c). But as the SEC acknowledged in the settlement on which Plaintiff relies, HP "lack[ed] visibility into channel inventory levels below Tier 1," for which it had only "incomplete data." SEC Settlement ¶¶ 15, 48. Plaintiff pleads no facts suggesting that investors would have been better served by reports based on incomplete data from an area in which HP lacked visibility. That too is fatal. *West v. eHealth, Inc.*, 2016 WL 948116, at *6 (N.D. Cal. Mar. 14, 2016) ("[I]t is implausible" that defendant "could have avoided misleading their investors by disclosing more information about a metric that defendants could not accurately measure.").

### d.    Plaintiff Fails to Plead a Scheme Claim

Plaintiff cannot save its defective allegations of falsity by invoking scheme liability. The Complaint includes a single claim for violation of Section 10(b) and Rule 10b-5, in which Plaintiff refers only to allegedly "false statements," and not to any "scheme." ¶¶ 221-22. Nor does Plaintiff allege any conduct on which a "scheme" claim could be based under subsections (a) or (c) of Rule 10b-5. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019) (identifying the "scheme" as the dissemination of false statements by someone who did not make the statements). "[M]isstatements and omissions alone are not enough for scheme liability"; rather, a plaintiff must allege "*something extra* that makes a violation a scheme." *Sec. & Exch. Com'n v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022). Plaintiff labels the alleged sales practices a "pull in scheme," *see*, *e.g.*, ¶¶ 2, 6, 49; ECF 50, at 4-5, but that is entirely distinct from a scheme to defraud investors.[7] Plaintiff has not alleged a scheme, and its claim therefore fails if it cannot identify a materially false or misleading statement with the required specificity. And because any purported scheme claim is premised entirely on the alleged misstatements, it must be dismissed based on the statute of repose and standing arguments discussed above.

---

[7]    Plaintiff has previously cited *In re Alphabet, Inc. Securities Litigation* 1 F.4th 687 (9th Cir. 2021). ECF 50, at 5, 14. The Ninth Circuit held in *Alphabet* only that that misstatement and scheme theories sometimes overlap; it did not hold that a plaintiff may avoid dismissal of a false statement claim simply by labeling the conduct underlying its misstatement claim a "scheme."

Gibson, Dunn & Crutcher LLP

19

### 3. Plaintiff Fails To Plead Particularized Facts Creating the Required Strong, Cogent, And Compelling Inference Of Scienter

Plaintiff also fails to plead particularized facts creating the required "strong inference" that any Defendant made false or misleading statements "either intentionally or with deliberate recklessness." *See* 15 U.S.C. § 78u-4(b)(2); *Zucco Partners*, 552 F.3d at 991. "[R]ecklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Plaintiff must plead the requisite state of mind "with respect to those individuals who actually made the false statements." *Glazer Capital*, 549 F.3d at 745. An inference of scienter is "strong" under the PSLRA "only if a reasonable person" would deem it "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "In reviewing a complaint under this standard, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Metzler*, 540 F.3d at 1061.

Plaintiff comes nowhere close to meeting this strict pleading burden. Plaintiff fails to allege any particularized facts that Defendants knew about the challenged sales practices in the first place. Plaintiff similarly fails to show that these practices were the primary cause of HP's declining margins and excess inventory, that Defendants knew this to be the case, or that Defendants omitted information about the practices in a deliberate effort to deceive investors.

#### a. The SEC Settlement Fatally Undermines Plaintiff's Attempt To Plead Scienter

Plaintiff refers to the SEC Settlement throughout the Complaint, but ignores the SEC's most relevant allegation, which negates any inference of scienter: "HP's principal financial officers and principal executive officers who were responsible for the company's disclosures learned of the [gray marketing and pull-ins] conduct in connection with HP's planned shift from a push to a pull model *quarters after the actual conduct had taken place*." SEC Settlement ¶ 49. Plaintiff also ignores the SEC's allegation that as a result of a shortfall in controls, the lower-level "operational personnel" who "would have been expected to recognize . . . the known trends attributable to the pull-ins and A-Business" did not provide that information "to the HP executives responsible for the company's disclosures" (*i.e.*, the

Gibson, Dunn & Crutcher LLP

Defendants). *Id.* ¶ 48. The SEC's allegation that HP's senior-most officers did *not* know of the challenged sales practices at the time of the alleged misstatements wholly undermines Plaintiff's effort to create a strong inference of scienter. Based on the SEC's allegations, the clearest and most cogent inference by far is that Defendants made the challenged statements in good faith.

The same is true of other allegations Plaintiff mines from the SEC Settlement. Plaintiff claims that the Individual Defendants "monitored channel-inventory levels," ¶ 166 (citing SEC Settlement ¶¶ 14, 17), and that "HP's worldwide executives demanded that regional managers remain within their WOS ranges while still delivering sales and operating profit targets," ¶¶ 58, 83 (citing SEC Settlement ¶ 30). Plaintiff's monitoring allegation is part and parcel of its "core operations" theory, which fails for the reasons stated below, *infra* at 21-24. The allegation that HP executives set sales and operating profit targets in no way supports the inference that they knew about the particular sales practices in which lower-level employees allegedly engaged—which, again, the SEC Settlement alleges was *not* the case.

The Ninth Circuit, as noted, did not reach scienter, and its analysis of the statute of limitations does not support Plaintiff's scienter allegations either. The Ninth Circuit concluded that Plaintiff had "plausibly alleged that the SEC [Settlement] provided facts and context without which it could not have otherwise pleaded scienter," and therefore that the two-year statute of limitations did not begin to run until after the settlement was released to the public. *York Cnty.*, 65 F.4th at 468. But the court did not hold or suggest that with the SEC Settlement in hand, Plaintiff was able to satisfy its pleading burden. The Court expressly "decline[d] to rule" regarding "the adequacy of [Plaintiff's] complaint," including whether Plaintiff had pled a strong inference of scienter based on the SEC Settlement or otherwise. *Id.*

> **b.  Plaintiff Fails To Plead Scienter Under The Core Operations Theory**

Plaintiff cannot clear the scienter bar by means of the "core operations" theory. "Proof [of scienter] under this theory is not easy," *Intuitive Surgical*, 759 F.3d at 1062, and it is an "*exceedingly rare* category of cases in which the core operations inference, without more, is sufficient under the PSLRA." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). The theory permits an inference of scienter in the absence of particularized allegations of "*actual access* to the disputed information" only in those "rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786.

Gibson, Dunn &
Crutcher LLP

Plaintiff cannot satisfy this demanding standard. Plaintiff plainly does not allege particularized facts that any Defendant had "actual access to the disputed information" about the challenged sales practices, let alone that those practices rendered the challenged statements misleading. The SEC's allegations, again, show that Defendants did *not* have such access. *Supra* at 7; *see also* ¶ 50 (HP policy prohibited gray marketing).

Plaintiff points to purported "admissions" by Mr. Weisler and Ms. Lesjak concerning their (i) "detailed involvement in monitoring" the Supplies business, ¶¶ 156-58; (ii) "significant experience monitoring Supplies channel inventory," ¶¶ 179-83; and (iii) "use" of the Four Box Model, ¶¶ 171-78. These generic allegations do not show actual access to information that contradicts any statement, and do not permit a "strong inference" that Defendants knew about specific sales practices used by line-level employees. *E.g.*, *NVIDIA*, 768 F.3d at 1064 (plaintiff must show that "specific information" about the alleged fraud was conveyed to management). With respect to the Four Box Model in particular, Judge Illston held in the *Electrical Workers* case that an executive's familiarity with the model does *not* establish scienter under the core operations doctrine, even as to statements about the model itself. 2021 WL 1056549, at *6. Plaintiff's allegations are no more than vague allegations of a "'hands-on' management style," which the Ninth Circuit has repeatedly held are insufficient. *Glazer Capital*, 549 F.3d at 746; *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (allegation that executives had "hands-on style and general accounting acumen" does not support a strong inference of scienter).

Plaintiff's allegations about purported "admissions" also fail because Plaintiff misrepresents what Defendants said. Plaintiff quotes Mr. Weisler as saying, after the putative class period, "***we know exactly how much inventory we have.***" ¶ 7 (emphasis added by Plaintiff); ¶ 167 (same). Plaintiff misleadingly fails to quote the sentence in its entirety. Mr. Weisler said "we know exactly how much inventory we have **in consumer, in commercial.**" *See* Ex. 10, at 41. "Consumer" and "commercial" are distinct from Supplies inventory; Mr. Weisler was discussing the "PC Business." *See id.* at 41-42 (explaining that PC inventory is only good for a short period of time and contrasting that with Supplies inventory). There was no "admission" here. Plaintiff's failure to adequately plead scienter as to Mr. Weisler cannot be saved by misquoting him.

Plaintiff's allegations that Ms. Lesjak, HP's CFO, "spent significant time performing detailed

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

operational reviews," ¶ 163, and paid attention to inventory levels, ¶ 169, also fail to show she had access to information about the purported practices within the sales organization. The Ninth Circuit has repeatedly held that such generalized allegations do not support the required cogent and compelling inference of deliberate fraud. In *Zucco*, the Ninth Circuit rejected allegations that senior management "closely reviewed the [quarterly] accounting numbers" and that top executives met and discussed "quarterly inventory numbers"; the court explained that "[a]llegations that . . . management had access to the purportedly manipulated quarterly accounting numbers, or that the management analyzed the inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated." 552 F.3d at 1000-01. Other decisions are similar. *E.g.*, *Intuitive Surgical*, 759 F.3d at 1063 ("Mere access to reports containing undisclosed sales data is insufficient to establish a strong inference of scienter."); *Webb*, 884 F.3d at 857 ("generalized access" to reports is insufficient to invoke the core operations theory).[8]

Other defects abound. Plaintiff alleges that HP's finance team "spent significant time performing detailed operational reviews" and "monitored channel inventory levels using weekly 'flash' reports." ¶ 163. This allegation is tied neither to Ms. Lesjak nor to any other Individual Defendant, but even if it were, Plaintiff does not say *what was in* the operational reviews or weekly flash reports, much less that such information rendered any challenged statement false or misleading. Where a Section 10(b) plaintiff fails to allege the "specific negative information garnered" by defendants that contradicts the challenged statements, the core operations theory does not apply. *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019); *see also, e.g.*, *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *11 n.3 (N.D. Cal. Sept. 16, 2014) (access to reports insufficient to show defendants "possessed any contradictory information to which [d]efendants *could* be exposed.") (emphasis in original).

Plaintiff finally fails to plead facts showing that this is one of the "rare" cases in which "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *S. Ferry*, 542 F.3d at 786. Again, the allegations in the SEC Settlement that Plaintiff expressly incorporates negate any inference—let alone the required "strong inference"—that the

---

[8] Plaintiff also ignores Ms. Lesjak's repeated cautionary statements that the business "remained challenged," ¶ 107, and that inventory levels were above the targeted range, ¶ 123.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

gray marketing and pull-ins practices *by line-level employees* were "so obvious" that HP's senior-most executives knew about them and believed they rendered the challenged statements false or misleading. *See Zucco*, 552 F.3d at 991, 1001.  These sales practices allegedly were concentrated in a single region (APJ), and in one of three business units (Supplies) in one of three business lines (Printing) for a company that had billions of dollars in revenue and tens of thousands of employees across the globe.  SEC Settlement ¶¶ 6, 24; Ex. 1, at 17, 57.  This is nothing like the "rare" case in which the core operations theory succeeds.

Plaintiff's bare allegations that the Supplies business is important to HP does not permit an inference that Defendants knew *everything* about that business.  "[I]t does not automatically follow from the 'core' nature of HP's . . . printer business . . . that each Individual Defendant was immediately aware of" every detail about that business—like the challenged sales practices in this action.  *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1078 (C.D. Cal. 2012); *Veal v. LendingClub Corporation,* 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) ("'Origination fees' may be one of LendingClub's main revenue sources, but that fact does not make every piece of information within the Company that relates to those fees critical to the business's core operations.").  The core operations theory cannot redeem Plaintiff's deficient scienter allegations.[9]

### c.   Plaintiff's Failure To Allege Motive Undermines An Inference Of Scienter

Plaintiff does not allege any plausible theory of scienter, never mind one that is more compelling than the competing, non-fraudulent inference.  *Tellabs*, 551 U.S. at 324.  Defendants were frank about the challenges facing the Supplies business, and when they determined a new business strategy was warranted, they disclosed it.  The Complaint also fails to identify any plausible motive for any Individual Defendant to engage in fraud.  "[I]f the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021).  This "substantial hurdle" is present here and Plaintiff offers

---

[9]   For similar reasons, Plaintiff's bare allegations that Mr. Weisler's and Ms. Lesjak's Sarbanes-Oxley certifications support scienter fail.  ¶¶ 190-91.  "Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter." *Zucco*, 552 F.3d at 1004.

Gibson, Dunn &
Crutcher LLP

no allegations that clear it.[10]

### 4.     Plaintiff Fails To Plead Loss Causation With Particularity

The Court should also dismiss the Complaint for the independent reason that Plaintiff fails to plead loss causation. To plead loss causation—the causal connection between a misrepresentation and a loss—with the requisite particularity, a plaintiff "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event" or "other fact." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-10 (9th Cir. 2016). In other words, a plaintiff must trace its claimed loss back to "the very facts about which the defendant lied." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013). This requires a plaintiff to plead particularized facts establishing that "after purchasing her shares and before selling . . . (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020). Under this "corrective disclosure" theory, *see id.* at 789-90, a plaintiff must "specify which of the Defendants' statements were made untrue" by the corrective disclosures, *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014).

Plaintiff fails to meet this pleading burden. Plaintiff contends that disclosures on November 24, 2015, January 7, 2016, February 24, 2016, and June 21, 2016 "corrected the market price" for HP's stock, but does not identify a single challenged statement that was "corrected" by these disclosures. ¶¶ 202-206, 208. Plaintiff thus asks the Court to assume that *every* challenged statement was corrected without explaining why. That is impermissible. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (rejecting "loss causation theory [that] lumps together . . . alleged misstatements").

Plaintiff also fails to plead required facts demonstrating that any of the four the stock drops was caused by fraud. For the November 24, 2015 and February 24, 2016 declines, Plaintiff asserts only that HP announced "disappointing operating profit and gross margins." ¶¶ 203, 206. For January 7, 2016,

---

[10]     Plaintiff's attempts to allege scienter on the part of Mr. Bailey and Mr. Lores are particularly misguided. They certainly cannot have made any challenged statement with scienter when they did not make any challenged statement *at all*.

DEFENDANTS' MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

Plaintiff alleges only that an analyst changed its purchase recommendation because of HP's "stagnated growth." ¶ 205. But to be "corrective," a disclosure must "expos[e] the alleged falsity" in the prior statements. *Nektar Therapeutics*, 34 F.4th at 839. Merely alleging that purportedly undisclosed "problems" were "a substantial factor" in a company's poor results—the announcement of which led to a drop in stock price—"fails to connect the disclosure [of the poor results] to any previous misstatements or omissions." *Palm Harbor Special Fire & Rescue Dist. Firefighters Pen. Plan v. First Solar Inc.*, 2023 WL 4161355, at *7 (D. Ariz. June 23, 2023). Plaintiff asks the Court to assume a causal connection between the stock decline and the facts about which defendants supposedly "lied," rather than pleading facts to support that connection. That is insufficient. *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); *see also Nektar Therapeutics*, 34 F.4th at 839 (tenuous causal connection between challenged statement and later disappointing results insufficient to plead loss causation).

Finally, Plaintiff's loss causation theory regarding the stock drop on June 21, 2016 is deficient because the Complaint identifies the very "intervening event" that undermines Plaintiff's theory: HP's announcement of "a complete overhaul of HP's Printing sales model." ¶ 208. Plaintiff alleges the stock fell on June 21 because HP disclosed it "would reduce Supplies channel inventory by $450 million" with a corresponding reduction in revenue. *Id.* While Plaintiff asks the Court to *assume* that the alleged fraud caused this inventory reduction, Plaintiff alleges no facts calling into question the reason Defendants provided: HP was reducing inventory because it was adopting a new sales model, and inventory levels were appropriate under the old model. Ex. 9, at 3-4, 6.

Plaintiff's conclusory assertion that the market understood HP's announcement about inventory reduction as a "coded message revealing the fraud" suffers from another problem. *See Metzler*, 540 F.3d at 1064. When HP reduced its inventory by $250 million in May 2016, ¶¶ 131-132(a), *HP's stock price did not decline*. Plaintiff nonetheless claims that when HP announced a month later that it was reducing inventory by another $450 million, that announcement somehow revealed "fraud." This inconsistency underscores Plaintiff's pleading shortfall.

### 5.    Plaintiff Fails To State A Section 20(a) Claim

Because Plaintiff fails to plead a primary violation of the securities laws under Section 10(b), its

Gibson, Dunn &
Crutcher LLP

26

derivative claim under Section 20(a) also fails. *NVIDIA*, 768 F.3d at 1052.[11]

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:  July 21, 2023

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler,
Catherine A. Lesjak, Enrique Lores, and Richard Bailey*

---

[11]  Even if Plaintiff had adequately pleaded a Section 10(b) claim (it has not), the Section 20(a) claim still fails because Plaintiff only pleads conclusory allegations of control.  ¶ 226.  In particular, Plaintiff's failure to allege that Mr. Bailey or Mr. Lores were controlling officers of HP, *supra* at 14, warrants dismissal of the claim against them.  *See Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016) (allegations that Section 20(a) defendants were part of "senior leadership team" insufficient).

Gibson, Dunn &
Crutcher LLP

By: */s/ Katherine Henderson*

KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101
Telephone: 415.947.2065
khenderson@wsgr.com

*Counsel for Defendant Catherine A. Lesjak*

### ATTESTATION (CIVIL LOCAL RULE 5-1(h))

In accordance with Civil Local Rule 5-1(h), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: July 21, 2023

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ

Gibson, Dunn &
Crutcher LLP