**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3770
Facsimile:  202.530.9528
lpercopo@gibsondunn.com

*Counsel for Defendants HP Inc., Dion J.
Weisler, Catherine A. Lesjak, Enrique Lores,
and Richard Bailey*

*Additional counsel on signature page*

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, *Individually and on Behalf of All Others Similarly Situated*,<br><br>        Plaintiff,<br><br>    v.<br><br>HP INC., et al.,<br><br>        Defendants. | Case No. 4:20-cv-07835-JSW<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ....................................................................................................1

II. ARGUMENT ..............................................................................................................................2

      A.     The Statute Of Repose And Plaintiff's Lack Of Injury Together Bar Its Claim .................2

           1.     York County's Complaint Did Not Toll The Statute Of Repose For Plaintiff........3

           2.     Plaintiff Lacks Standing To Challenge Any Statement Within The Repose Period ...............................................................................................................6

           3.     York County Is Not A Party, And Its Complaint Was Time-Barred......................7

      B.     The Complaint Also Should Be Dismissed For Failure To Plead Securities Fraud ...........8

           1.     Plaintiff Has No Claim Against Messrs. Lores And Bailey ...................................8

           2.     Plaintiff Fails To Plead Falsity With Particularity......................................................9

           3.     Plaintiff Fails To Plead Scienter .........................................................................14

           4.     Plaintiff Fails To Plead Loss Causation With Particularity .................................19

           5.     Plaintiff Fails To State A Section 20(a) Claim ....................................................20

III. CONCLUSION..........................................................................................................................20

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002)..................................................................................................18

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ...........................................................................................14, 17

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974)..............................................................................................................4

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ......................................................................11

*Azar v. Yelp, Inc.*,
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ....................................................................18

*Bai v. Tegs Mgmt., LLC*,
   2022 WL 602711 (S.D.N.Y. Mar. 1, 2022) .........................................................................14

*Bao v. Solarcity Corp.*,
   2016 WL 54133 (N.D. Cal. Jan. 2016) ................................................................................20

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ...............................................................................................19

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*,
   582 U.S. 497 (2017)...................................................................................................1, 3, 4, 6

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)...........................................................................................................6

*York Cnty. ex. rel. Cnty. of York Ret. Fund v. HP Inc.*,
   65 F.4th 459 (9th Cir. 2023) ..........................................................................2, 3, 7, 11, 14

*De Vito v. Liquid Holdings Grp., Inc.*,
   2018 WL 6891832 (D.N.J. Dec. 31, 2018)........................................................................4, 6

*DeKalb Cnty. Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016)......................................................................................1, 3, 4, 5

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................................19

*Electrical Workers Pension Fund v. HP Inc.*,
   2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ..............................................................12, 15

*Fialkov v. Microsoft Corp.*,
   72 F. Supp. 3d 1220 (W.D. Wash. 2014)..............................................................................11

*In re FirstEnergy Corp. Sec. Litig.*,
   2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ........................................................................13

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) ..........................................................................13

*Gammel v. Hewlett-Packard Co.*,
  2013 WL 1947525 (C.D. Cal. May 8, 2013) ...............................................................18

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ...............................................................................10, 17

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
  63 F.4th 747 (9th Cir. 2023) .......................................................................................10

*Hogan v. Pilgrim's Pride Corp.*,
  73 F.4th 1150 (10th Cir. 2023) .....................................................................................5

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011).............................................................................7

*In re Infineon Tech. AG Sec. Litig.*,
  2008 WL 11333947 (N.D. Cal. Aug. 13, 2008) .............................................................4

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021) .......................................................................................19

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)..................................................................................................14

*In re Juniper Networks, Inc. Sec. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) .........................................................................4

*Kang v. PayPal Holdings, Inc.*,
  620 F. Supp. 3d 884 (N.D. Cal. 2022) .........................................................................14

*Leber v. Citigroup 401(k) Plan Investment Committee*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ...............................................................................4, 5

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) .......................................................................11

*In re LexinFintech Holdings Ltd. Securities Litigation*,
  2021 WL 5530949 (D. Or. Nov. 24, 2021).....................................................................5

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) .......................................................................................6

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .....................................................................................18

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019)..................................................................................................14

*Malhotra v. Equitable Life Assurance Soc'y*,
  364 F. Supp. 2d 299 (E.D.N.Y. 2005) ...........................................................................8

*Martin v. Altisource Residential Corp.*,
  2019 WL 2762923 (D.V.I. July 2, 2019)........................................................................5

iii

Gibson, Dunn & Crutcher LLP

*In re Marvell Tech. Grp. Ltd. Sec. Litig.*,
2008 WL 4544439 (N.D. Cal. Sept. 29, 2008) ..............................................................................4

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ......................................................................................................6

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
881 F.3d 750 (9th Cir. 2018) ......................................................................................................19

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
78 F. Supp. 3d 1215 (N.D. Cal. 2015) ........................................................................................18

*Murphy v. Precision Castparts Corp.*,
2017 WL 3084274 (D. Or. June 27, 2017) ..................................................................................11

*N.M. State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) ....................................................................................................17

*In re NIO, Inc. Securities Litigation*,
2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)..................................................................................5

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
730 F.3d 1111 (9th Cir. 2013) ....................................................................................................20

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...............................................................................................16, 18

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)............................................................................................17

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) ......................................................................11, 17

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013)..........................................................................................1, 3, 4, 5, 6

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ....................................................................................................19

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ....................................................................................................16

*In re Rackable Sys., Inc. Sec. Litig.*,
2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ...............................................................................18

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ......................................................................................................18

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009)...................................................................................16

*S. Ferry LP, # 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ..........................................................................................2, 15, 17

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ......................................................................................................8

iv

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*,
    12 F.4th 337 (3d Cir. 2021) .......................................................................................................5

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ...................................................................................18

*SEC v. Cotton*,
    2006 WL 6382128 (C.D. Cal. Dec. 21, 2006) .........................................................................13

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ..............................................................10, 12, 16, 18

*Smith v. NetApp, Inc.*,
    2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ...........................................................................18

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 7260479 (N.D. Cal. Dec. 10, 2020) .........................................................................16

*In re WageWorks, Inc. Securities Litigation*,
    2020 WL 2896547 (N.D. Cal. June 1, 2020) ...........................................................................20

*West v. eHealth, Inc.*,
    2016 WL 948116 (N.D. Cal. Mar. 14, 2016) ...........................................................................12

*Weston v. DocuSign, Inc.*,
    2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ...................................................................16, 20

*Wochos v. Tesla*,
    985 F.3d 1180 (9th Cir. 2021) ...................................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................16, 18

**Statutes**

15 U.S.C. § 77m...........................................................................................................................4

15 U.S.C. § 78u-5(c) ....................................................................................................................9

28 U.S.C. § 1658(b) .....................................................................................................................4

## I.    PRELIMINARY STATEMENT

The Opposition confirms that Plaintiff Maryland Electrical has no way around the timeliness and standing deficiencies of the Complaint.  Plaintiff does not dispute that it lacks standing to challenge any alleged misconduct *within* the five-year period before it filed its Complaint.  This concession is fatal because the statute of repose bars Plaintiff from challenging any alleged misconduct *outside* of that five-year period.  The Court should dismiss the Complaint with prejudice for this reason alone.

Plaintiff attempts to circumvent this timing problem by arguing that the timeliness of its claims is determined by the filing of a complaint by a *different* HP shareholder, York County.  This argument fails for two reasons.  *First*, the statute of repose is not tolled by the filing of a class action complaint by another member of the putative class.  *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*, 582 U.S. 497, 507-10 (2017) (hereinafter "*CalPERS*").  The Second Circuit has twice held that this no-tolling rule applies even when a second plaintiff files claims in the same action, with the same case number, as a timely-filed putative class action complaint.  *DeKalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013).  No Court of Appeals has reached a different conclusion, and there is no reason to think the Ninth Circuit would adopt a contrary rule.  A faithful reading of *CalPERS* and these Second Circuit opinions—the only appellate decisions to address this issue—compels dismissal of Plaintiff's time-barred claims with prejudice.  *Second*, even if the York County filing date mattered for repose purposes, York County—just like Plaintiff—lacked standing to challenge any statement not barred by the statute of repose.  Under no circumstances does York County's complaint save Plaintiff's time-barred complaint.

If the Court reaches the merits, it should also dismiss the Complaint because Plaintiff has failed to plead the elements of a Section 10(b) claim.

***Falsity.***  Plaintiff fails to meaningfully respond to Defendants' core falsity arguments, including that the challenged "on track" statements come within the PSLRA's safe harbors.  Nor does Plaintiff show how its fabricated data renders Defendants' statements regarding the "primary" factors affecting the Supplies business misleading.  Plaintiff claims that Defendants misled investors by reporting inventory figures limited to HP's own channel—Tier 1—but Judge Illston rejected exactly the same claim in *Electrical Workers Pension Fund v. HP Inc.*, 2021 WL 4199273, at *5 (N.D. Cal. Sept. 15, 2021).  Finally,

Gibson, Dunn & Crutcher LLP

1

the Opposition confirms that Plaintiff does not plead any scheme apart from the challenged statements.

***Scienter.*** Plaintiff fails to plead facts demonstrating that any Individual Defendant was aware of the challenged sales practices before 2016, believed that those practices were increasing Supplies channel inventory, and decided to withhold this information from investors. In an effort to obscure this pleading shortfall, Plaintiff states repeatedly that the Ninth Circuit ruled in its favor on scienter. That is false. The appellate court specifically *declined* to reach "the adequacy of [Plaintiff's] complaint." *York Cnty. ex. rel. Cnty. of York Ret. Fund v. HP Inc.*, 65 F.4th 459, 468 (9th Cir. 2023). And the SEC Settlement on which Plaintiff relies undermines the required strong inference of deliberate fraud: The SEC concluded that Defendants only "learned of the [sales practices] . . . quarters after the actual conduct had taken place." SEC Settlement ¶ 49. Plaintiff's scienter argument ultimately depends on the narrow core operations inference, but Plaintiff fails to show that this is one of the "exceedingly rare" cases in which it would be "'absurd' to suggest" the Individual Defendants knew of or recklessly disregarded the purported falsity of the challenged statements. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3, 786 (9th Cir. 2008).

***Loss Causation.*** Plaintiff relies on a corrective disclosure theory of loss causation, and therefore must plead facts showing that the challenged statements were corrected at the time of the alleged stock price drop. But Plaintiff all but concedes that it did not allege facts in support of its corrective disclosure theory in the Complaint. That is fatal.

Plaintiff's claims, based on statements and matters that allegedly took place *more than eight years ago*, are both stale and deficient. The Court should dismiss the Complaint with prejudice.

## II.    ARGUMENT

### A.    The Statute Of Repose And Plaintiff's Lack Of Injury Together Bar Its Claim

The parties agree that securities fraud claims must be brought no later than five years after the alleged misconduct. *See infra* at 7 (chart reflecting dates of the challenged statements between November 2015 and June 2016). The parties also agree that Plaintiff lacks standing to bring a single claim for any alleged misconduct that occurred within the five years before Plaintiff filed its Complaint in April 2021. Mot. 7-9. In other words, the parties agree that the Complaint must be dismissed if the timeliness of Plaintiff's claims is measured from the date Plaintiff filed its Complaint. The core dispute is whether the repose period is measured from that date—April 2021—or from November 2020, when York County, a

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

different party, filed a different complaint. *See York Cnty.*, 65 F.4th at 466 n.3 (whether "the relevant filing date is when York County—not [Plaintiff]—filed its complaint . . . is vital to determining whether [Plaintiff's] complaint is barred by the statute of repose"). Under the heavy weight of authority, the answer is that the date of Plaintiff's own filing controls the repose analysis. York County's earlier complaint does not salvage Plaintiff's time-barred claims.

**1.      York County's Complaint Did Not Toll The Statute Of Repose For Plaintiff**

Plaintiff does not contend that the filing of the York County complaint *tolled* the statute of repose on Plaintiff's claims. Nor could it. Mot. 10. The Supreme Court has held unequivocally that the statute of repose poses an "absolute bar" and may not be tolled by the filing of putative class action complaint like York County's. *CalPERS*, 582 U.S. at 507.

Plaintiff attempts to avoid this "absolute bar" by arguing that for *every* complaint filed by *every* plaintiff in an action, "[t]he relevant date for calculating the repose period under §1658 is the date of the first-filed complaint" in that action. Opp. 6. That is an incorrect statement of the law, as the numerous cases discussed in Defendants' Motion make clear. Mot. 11-12. In the only Court of Appeals decisions squarely addressing this issue, the Second Circuit twice held that the statute of repose barred claims asserted in putative class actions by late-filing plaintiffs, even though the original complaints in the same actions were timely. *See DeKalb*, 817 F.3d 393; *IndyMac*, 721 F.3d 95. The fact that the time-barred complaints in those cases were—to use Plaintiff's language (Opp. 6)—"Same-Court, Same-Action Number, Same-Claims, Same-Proposed-Class" complaints as the original putative class action complaints made no difference. The later-filed claims by putative class members were still time barred. Mot. 11-12. Nor does Plaintiff's appointment as lead plaintiff pursuant to the PSLRA change this conclusion. Opp. 9. That was also true in *DeKalb*, and yet the Second Circuit held that the lead plaintiff's complaint was time-barred even though the first-filed complaint in that action was timely. *DeKalb*, 817 F.3d at 412-14. The Supreme Court adopted the Second Circuit's rule in *CalPERS*, noting among other things that the rule was entirely workable. 582 U.S. at 507, 513 ("Petitioner has not offered evidence of any recent influx of protective filings in the Second Circuit, where the rule affirmed here has been the law since 2013.").

Plaintiff's proposed rule also is at odds with *CalPERS*. Plaintiff argues that its action was "'brought not later than . . . 5 years after [Defendants'] violation'" because "York County initiated this

Gibson, Dunn &
Crutcher LLP

3

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

action on November 5, 2020, which was not later than five years after the alleged fraudulent acts." Opp. 6 (quoting 28 U.S.C. § 1658(b)). In *CalPERS*, the Supreme Court rejected a nearly identical argument that "the filing of the [timely] class-action complaint 'brought' [CalPERS'] individual 'action' within the statutory time period" and "made all subsequent actions by putative class members timely." 582 U.S. at 514 (quoting 15 U.S.C. § 77m, the statute of repose for Securities Act claims). In reaching this holding, the Supreme Court pointed out that it had already rejected the argument that "the date on which [a] class action was filed" governs the timeliness of all claims asserted in that case. *Id.* at 515 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)). The rule Plaintiff proposes here—that "the date of the first-filed complaint" controls the repose analysis, Opp. 6—is materially indistinguishable from the rule rejected in both *American Pipe* and *CalPERS*. Because Plaintiff's proposed rule cannot be reconciled with *CalPERS*, the Court should reject it.[1]

Nothing Plaintiff says in its Opposition supports a different outcome. Plaintiff claims that Defendants' authority is "inapt because, unlike the situations in [Defendants'] cases, York County's complaint was never dismissed." Opp. 9 n.6. That is a false distinction. For example, in *Leber v. Citigroup 401(k) Plan Investment Committee*, the plaintiffs with timely claims were not dismissed; to the contrary, they were appointed class representatives. 323 F.R.D. 145, 152, 167 (S.D.N.Y. 2017). More fundamentally, Plaintiff is drawing a distinction without a difference. None of the decisions Defendants cited turned on the status of the first-filed complaint. These on-point decisions all turned on the fact that—as in this case—the second-in-time plaintiff entered the timely-filed action to assert claims *after* the statute of repose had run. *See Dekalb*, 817 F.3d at 412 ("DeKalb therefore had until October 2, 2010 to file its Section 14(a) claim, but it did not appear in the action until December 3, 2010. As a result, DeKalb's claim is time barred."); *IndyMac*, 721 F.3d at 103 (rejecting movants' attempts to intervene in timely-filed action because the "three-year period of repose [] had run on their claims"); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *18 (D.N.J. Dec. 31, 2018) (dismissing claims of plaintiff "added by amendment after the statute of repose had expired" on its claim even though the other named plaintiffs'

---

[1] Plaintiff cites three decisions in support of its argument, but none analyzes the issue presented in this case. *In re Infineon Tech. AG Sec. Litig.*, 2008 WL 11333947, at *2, *4 (N.D. Cal. Aug. 13, 2008); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008); *In re Marvell Tech. Grp. Ltd. Sec. Litig.*, 2008 WL 4544439, at *2, *11 (N.D. Cal. Sept. 29, 2008).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

"first amended complaint" had been filed "within [the] statute of repose"); *Leber*, 323 F.R.D. at 153 (denying motion to add class representative who "was time-barred from raising any individual claims at the time of her entry into this case"). In each of these cases, the court rejected a late-filing plaintiff's effort to inject itself into a timely-filed action. Plaintiff in this case is in the same position (assuming, of course, that York County's complaint was timely). This Court should dismiss the Complaint—Plaintiff's first and only—because Plaintiff filed it after the statute of repose had run.[2]

The appellate cases on which Plaintiff relies are easily distinguishable—and do not conflict with *DeKalb* and *IndyMac*—because the plaintiffs there filed before the expiration of the statute of repose and merely sought to *amend* their own claims later. *See Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1155 n.5 (10th Cir. 2023) (analyzing whether SAC could be filed when "it is undisputed on appeal that the FAC was timely"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 343-44, 352 (3d Cir. 2021) (analyzing whether plaintiff who "brought the action at issue . . . within the repose period" could "amend its own timely filed complaint"). *Orrstown* expressly reconciled its holding with *IndyMac*. 12 F.4th at 352 (analysis turned on the fact that "SEPTA has been a party to the action from the beginning," whereas *IndyMac* involved "members of a putative class—who were not named parties" in the original complaint). Likewise, in *In re NIO, Inc. Securities Litigation*, it was undisputed that the named plaintiff filed his claim within the statute of repose period. 2023 WL 5048615, at *4 (E.D.N.Y. Aug. 8, 2023).[3]

Plaintiff's cursory argument that its claim "relates back" to York County's complaint is equally flawed. *See* Opp. 10, 16 n.13. The Second Circuit squarely rejected the same argument in *IndyMac,* holding that "the Rule 15(c) 'relation back' doctrine" does not permit "members of a putative class, who are not named parties" in the timely-filed complaint—like Plaintiff—to "circumvent [the] statute of

---

[2] As discussed below, York County's complaint, if tested, would not have withstood a motion to dismiss. *Infra* at 7-8. That makes York County's complaint, like the earlier-filed complaint in *DeKalb*, "a nullity." *DeKalb*, 817 F.3d at 412.

[3] Plaintiff's other district court decisions cannot overcome the weight of appellate authority and are distinguishable in any event. In *In re LexinFintech Holdings Ltd. Securities Litigation*, the lead plaintiff appeared and was appointed by the court in November 2020, *before* the statute of repose expired in December 2020. 2021 WL 5530949, at *17 (D. Or. Nov. 24, 2021). And in *Martin v. Altisource Residential Corp.*, the additional plaintiff was added by amendment to a timely-filed complaint. 2019 WL 2762923, at *6 (D.V.I. July 2, 2019). Neither fact is present in this case.

5

Gibson, Dunn & Crutcher LLP

repose." *IndyMac*, 721 F.3d at 101. The cases cited by Plaintiff (Opp. 10) are inapposite because the plaintiffs there sought to amend their own timely-filed complaints.

Plaintiff finally argues that applying clear precedent here would "frustrate the purpose of the PSLRA" lead plaintiff process. Opp. 9-10. That is a red herring. The Supreme Court has made clear that the statute of repose and the PSLRA easily coexist in this circumstance. A would-be lead plaintiff whose claim will expire during the lead plaintiff process can (1) file a "simple motion to intervene or request to be included as a named plaintiff in the class action," *CalPERS*, 582 U.S. at 513; or (2) file "protective individual claims" before "the statute of repose [is] about to run out," *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1810 (2018). Plaintiff—who is represented by the same counsel that filed York County's complaint—elected not to follow this guidance and did nothing to preserve its claim before the statute of repose had run. "[T]he [PSLRA] was . . . certainly not intended to excuse sophisticated parties . . . from being diligent . . . especially when the class is not certified." *IndyMac*, 721 F.3d at 112 (first two alterations in original).

**2. Plaintiff Lacks Standing To Challenge Any Statement Within The Repose Period**

Plaintiff does not dispute that it lacks standing to challenge the only alleged misstatements not barred by the statute of repose—those made on May 25, 2016, June 1, 2016, and June 3, 2016. Mot. 10-11; Opp. 11-15 (conceding Plaintiff lacks "individual standing"). This concession disposes of the entire case because a putative class action "must be dismissed" where the putative "class's sole named plaintiff has no cognizable claim." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020, 1023 (9th Cir. 2003); *see also De Vito*, 2018 WL 6891832, at *22 ("It is only as a named plaintiff, asserting its own live cause of action, that the . . . Plaintiff could represent the absent class members"; "[t]hey cannot sue as named plaintiffs merely on the theory that even if they don't possess a claim, some member of the putative class does."). This is precisely why "Defendants are silent as to *Melendres* and class standing." Opp. 12. By Plaintiff's own admission, "class standing" is irrelevant when Plaintiff has *no* viable claim. *See id.* at 11-12 (acknowledging that class standing, as analyzed in *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015), applies only when Plaintiff has "individual standing to bring a claim"). Because Plaintiff cannot bring a single "cognizable claim," its "suit must be dismissed." *Lierboe*, 350 F.3d at 1020, 1023.

Gibson, Dunn &
Crutcher LLP

### 3.    York County Is Not A Party, And Its Complaint Was Time-Barred

Plaintiff makes the baffling claim that "York County remains the named plaintiff." Opp. 6. The Complaint confirms that is untrue: York County is not listed as a party. ¶¶ 15-21. After filing the initial complaint, York County did not seek appointment as lead plaintiff, instead "abandon[ing] the pursuit of its own claims," and becoming merely a "member of the alleged class." *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 644 (S.D.N.Y. 2011), *aff'd in part sub nom. Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013); *see also* Opp. 10 (arguing York County's complaint was "mooted" and "supersede[d]" by Plaintiff's Complaint).

York County's party status is inconsequential in any event because, as Defendants demonstrated in their Motion and summarize below, York County's complaint also was time-barred as to the sole statement York County arguably had standing to challenge.[4] Mot. 12-13.

| Date of Challenged Statement | Reasons Plaintiff Cannot Bring a Claim | | Reasons York County Cannot Bring a Claim | |
|---|---|---|---|---|
| | Barred by Statute of Repose as of Plaintiff's April 21, 2021 Complaint | Plaintiff Lacks Individual Standing | Barred by Statute of Repose as of York County's November 5, 2020 Complaint | York County Lacks Individual Standing |
| Nov. 5, 2015[5] | X | | X | |
| Nov. 24, 2015 | X | X | | X |
| Dec. 16, 2015 | X | X | | X |
| Feb. 24, 2016 | X | X | | X |
| Mar. 1, 2016 | X | X | | X |
| Mar. 3, 2016 | X | X | | X |
| May 25, 2016 | | X | | X |
| June 1, 2016 | | X | | X |
| June 3, 2016 | | X | | X |

Plaintiff does not dispute that York County had standing to challenge only the statements purportedly made on November 5, 2015. *See* Mot. 12-13; Opp. 10-11. But York County's attack on the November

---

[4] Plaintiff argues that Defendants have waived this argument. Opp. 10. That is baseless. Defendants raised the argument in their first motion to dismiss, ECF 45, at 11 n.3, in reply, ECF 53, at 5 n.1, and on appeal, Appellee's Answering Brief at 39-41, *York Cnty.*, 65 F.4th 459 (No. 22-15501). And contrary to Plaintiff's suggestion, Opp. 10, Defendants have never recognized that York County is a party to Plaintiff's action.

[5] As discussed immediately below, the relevant portion of the statement Plaintiff claims HP made on November 5, 2015 was in reality made by Hewlett Packard on September 8, 2015.

Gibson, Dunn & Crutcher LLP

5, 2015 statements is time barred. The statements Plaintiff challenges do not in fact appear in HP's November 5, 2015 Form 8-K. They appear in a Form 10-Q filed by Hewlett Packard on September 8, 2015, five years and two months before York County filed its complaint. *See* Mot. 12-13, Opp. 10-11; *see also* ¶ 95 (listing challenged statements supposedly made on November 5, 2015). Plaintiff offers no authority contradicting Defendants' arguments that (1) the November 5, 2015 Form 8-K did not incorporate by reference statements from the September 8, 2015 10-Q, *see* Mot. 10-11, and (2) even if the statements were incorporated by reference, repeating language does not restart the statute of repose, because only a "new and materially different" statement "start[s] the statute of repose anew," *see* Mot. 12-13 (citing *Malhotra v. Equitable Life Assurance Soc'y*, 364 F. Supp. 2d 299, 306 (E.D.N.Y. 2005)).[6]

Instead, Plaintiff argues that in paragraph 95 of the Complaint, it challenged not only the statements from the September 2015 Form 10-Q but also HP's pro forma financial results. Opp. 10-11. That is false. Plaintiff challenges *only* the explanatory statements made in the September 8, 2015 10-Q—and nowhere else. *See* ¶ 95 (identifying the "relevant part," which consists exclusively of quotations from the September 8, 2015 10-Q); *see also* ¶ 116 (assuming the pro forma financial results in the November 2015 Form 8-K are *true*, and challenging only the explanation from the September 8, 2015 10-Q). Plaintiff may not challenge statements for the first time in its Opposition. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The statute of repose had run on the statements challenged in paragraph 95—made by Hewlett Packard on September 8, 2015—before York County asserted its claims in November 2020.

* * * * *

Because Plaintiff lacks standing to challenge any alleged misconduct in the five-year repose period, the Court should dismiss the Complaint with prejudice.

**B.    The Complaint Also Should Be Dismissed For Failure To Plead Securities Fraud**

**1.    Plaintiff Has No Claim Against Messrs. Lores And Bailey**

Plaintiff concedes it does not allege that any statement made by Messrs. Lores and Bailey was

---

[6] Contrary to Plaintiff's assertion, *see* Opp. 11, Defendants' authority holding that the five-year repose period runs from each violation (as opposed to the last violation) does not contradict Defendants' authority that repetition of a challenged statement does not restart the repose period. Mot. 13.

Gibson, Dunn & Crutcher LLP

false or misleading, Opp. 16 n.13, so the Rule 10b-5(b) claim against them necessarily fails, Mot. 13-14. Plaintiff argues that Messrs. Lores and Bailey are liable as scheme defendants under Rule 10b-5(a) and (c) and as control persons under Section 20(a). Opp. 16 n.13, 35. Plaintiff is wrong. As discussed below (*infra* at 13-14, 20), Plaintiff fails to allege a securities fraud scheme and fails to plead facts necessary to establish that Messrs. Lores and Bailey were control persons by virtue of their positions at HP.

### 2.    Plaintiff Fails To Plead Falsity With Particularity

#### a.    The PSLRA Safe Harbors Immunize the "On Track" Statements

Under binding Ninth Circuit precedent, statements that HP was "on track" to stabilize Supplies revenue are forward-looking statements, protected under the PSLRA safe harbors. Mot. 14-16; *see Wochos v. Tesla*, 985 F.3d 1180, 1192 (9th Cir. 2021) (holding that statements that business was "on track" to meet car production goals were protected forward-looking statements). Relying on a district court decision pre-dating the Ninth Circuit's *Tesla* decision, Plaintiff argues that Defendants' "on track" statements "gave the impression that, based on the then-existing state of affairs, HP's key business was turning around." Opp. 22-23. But the statements Plaintiff challenges—for example, that HP's forecasting model "would suggest that we are on track to [revenue] stabilization by the end of '17" (¶ 142)—do not concern "specific, concrete circumstances *that have already occurred*." *Tesla*, 985 F.3d at 1192; *see* Opp. 22-23. And only in the latter case do "on track" statements cease to be forward looking. *Id.*

The challenged "on track" statements are therefore not actionable under the PSLRA safe harbors unless (i) Defendants made the statements with "actual knowledge" that they were false, *and* (ii) the statements were not "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i). As to "actual knowledge" of falsity, Plaintiff concludes that "by February 2016" Defendants knew that "stabilization would require drastic measures," but cites no particularized facts supporting that allegation—because none exist. Opp. 23. On cautionary language, Plaintiff says even less. Plaintiff ignores the on-point cautionary language Defendants cited, Mot. 15-16, and does not explain why that language is "insufficient" under Ninth Circuit precedent, *see* Opp. 23. These Supplies revenue statements come within both PSLRA safe harbors.

#### b.    The Supplies Pricing And Margins Statements Were Not Misleading

Plaintiff fails to plead specific facts supporting the allegation that gray marketing and pull-ins, as

9

Gibson, Dunn & Crutcher LLP

opposed to increased competition and currency issues, were the "primary" cause of declining margins. *See* Mot. 16-18. With no substantive response to this argument, Plaintiff falls back on the contention that Defendants are creating a factual dispute. Opp. 21 n.16. Not so. Defendants are identifying an absence of factual support, which is not the same thing as a factual dispute. Rather than facts, Plaintiff offers calculations based on its own assumptions about pull-in sales volume and hypothetical discount levels for those sales. Opp. 21; Mot. 16-17. Under controlling law, such assumptions cannot replace the particularized facts required by the PSLRA. Mot. 17 (citing authorities).[7]

Plaintiff is thus left only with the SEC's unproven and unexplained allegations, Opp. 20-21, which are "not sufficient to meet the pleading requirements of the PSLRA," *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). Plaintiff suggests that *Glazer* supports its reliance on SEC allegations, Opp. 21 n.17, but that is wrong. The *Glazer* court recognized that the *existence* of an SEC settlement and cease-and-desist order contradicted the defendant's legal compliance representation—the statement that the company was "in compliance in all material respects with all laws." 549 F.3d at 742. Plaintiff does not challenge any legal compliance statement by HP. Meanwhile, the *Glazer* court explicitly declined to accept the SEC's underlying allegations as a substitute for the particularized facts plaintiff was required to plead to support its claim. *Id.* at 748-49. Under *Glazer*, Plaintiff may not swap in the SEC's allegations for the particularized facts required by the PSLRA.[8]

---

[7] Plaintiff's authorities are inapposite. *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1141 (N.D. Cal. 2017), concerned allegations based on an analyst report, not unsupported assumptions invented by Plaintiff's counsel. Unlike the defendants in *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *11 (N.D. Cal. Nov. 27, 2018), Defendants here did not say that competition and currency issues were "one-off aberrations." Defendants acknowledged that the relevant issues were an ongoing concern. *See* ¶¶ 95, 98-100, 102, 105-107, 109, 112-113, 115. The challenged statement in *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 770 (9th Cir. 2023), was that a revenue miss was caused "entirely" by specified factors. The challenged statements here are different: HP simply ranked certain factors as "primary." ¶¶ 95, 98-100, 102, 105-107, 109, 112-113, 115.

[8] Plaintiff contends that Defendants "do not make any meaningful argument to dismiss the pricing and operating profit misstatements." Opp. 20 & n.15 (citing ¶¶ 99, 100, 112). This is baffling. Plaintiff alleged that the challenged pricing and profit statements were false for three reasons: (1) because margins purportedly declined, "primarily due to" the alleged pull-in scheme; (2) because Defendants did not disclose that the alleged scheme purportedly "had a material impact on" HP's margins, and (3) because HP's margins were purportedly "material to HP's overall financial results." ¶ 116. Defendants thoroughly addressed all three purported reasons for falsity and showed that Plaintiff failed to provide factual support for any of them. Mot. 16-18. That is, to say the least, a "meaningful argument."

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn & Crutcher LLP

Plaintiff's attack on statements about growth in the APJ region is equally infirm.  Mot. 17-18. Plaintiff argues that because Defendants reported revenue growth, they were also required to attribute that growth to the supposed pull-in scheme.  Opp. 22; ¶¶ 137-138, 144-145.  The law is otherwise: "General descriptions of historical results have generally been found not to require disclosure of adverse factors" because such descriptions "do not represent anything about the causes of that performance . . . ."  *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *10 (N.D. Cal. June 2, 2020).  A company does not commit fraud by making generic statements about growth without at the same time accusing itself of wrongdoing.[9]

### c.      The Channel Inventory Statements Were Not Misleading

Plaintiff argues that HP's statements about its channel inventory ceilings and ranges must have been misleading because HP later adjusted inventory levels.  Opp. 17-19.  This is classic—and impermissible—fraud by hindsight.

Plaintiff's principal response is to suggest that the Ninth Circuit resolved this issue in its favor. Opp. 19.  That suggestion is false.  The Ninth Circuit expressly declined to reach the merits of Plaintiff's allegations.  The appellate court examined scienter—but only as part of a statute of limitations analysis—to determine whether the SEC Settlement provided the basis for scienter allegations Plaintiff could not have made in its absence.  The court did not assess the adequacy of Plaintiff's scienter allegations, and did not address falsity at all.  *York Cnty.*, 65 F.4th at 468.

The Ninth Circuit's decision is therefore irrelevant to the adequacy of Plaintiff's falsity allegations, on the subject of channel inventory and otherwise.  Meanwhile, case law directly addressing challenged statements about inventory shows why Plaintiff's allegations are inadequate.  Plaintiff points to no reason why Defendants "should have regarded [HP's] then-held inventory as worrisomely large" at the time of the challenged statements.  *Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1230 (W.D. Wash. 2014), *aff'd*, 692 F. App'x 491 (9th Cir. 2017); Mot. 18 (discussing *Fialkov*).[10]  Plaintiff's *belief* that HP must

[9] Plaintiff's authorities are not contrary.  The defendants in those cases did more than report financial results.  They also made allegedly misleading comments about the results.  *See In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *10 (N.D. Cal. Aug. 17, 2022); *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *9 (D. Or. June 27, 2017).

[10] Plaintiff attempts to distinguish *Fialkov* with the contention that HP experienced a "known trend of increasing channel inventory."  Opp. 19 n.14.  But the portion of the SEC Settlement Plaintiff cites in

11

Gibson, Dunn & Crutcher LLP

have had too much inventory at the time of the challenged statements says nothing about whether HP was operating within its reported ceilings and ranges at the time. Opp. 17-18.

Plaintiff next copies the SEC's allegation that HP's channel inventory figures were misleading insofar as HP derived those figures solely from its "Tier 1" direct distributors, and not from downstream "Tier 2" sub-distributors with which it was not in privity. Opp. 17-18. This does not establish falsity either. Plaintiff does not explain how HP could have reported channel inventory levels beyond Tier 1 when it lacked reliable inventory data from lower tiers. *See* Mot. 16; SEC Settlement ¶¶ 15, 48; *see also West v. eHealth, Inc.*, 2016 WL 948116, at *6 (N.D. Cal. Mar. 14, 2016).

Plaintiff also suggests, again pulling from the SEC's allegations, that Defendants should have clarified that the term "channel inventory" did not include unreliable data from lower tiers. Opp. 17-18. But Judge Illston rejected the same theory, based on the same SEC allegations, in *Electrical Workers*, 2021 WL 4199273, at *5. Judge Illston concluded there that the "downstream channel ecosystem [*i.e.*, Tiers 2 and higher] refers to the channels of third parties—*not HP's own channel*." *Id.* at *5 (emphasis added). Judge Illston accordingly dismissed the plaintiff's claim that HP misled investors by reporting channel inventory data confined to Tier 1. *Id.* at *5, *10. Defendants were not required to explain that "channel inventory" excludes levels below Tier 1 because it is self-evident that the term refers only to *HP's channel*—which is confined to Tier 1. The same logic disposes of Plaintiff's claim here.[11]

support makes clear that "HP disclosed during quarterly earnings calls . . . that it was slightly above its targeted range." SEC Settlement ¶ 20. Nothing in the SEC's allegations demonstrates that Defendants should have considered the company's inventory to be "worrisomely large" at the time of the challenged statements. Plaintiff also contends that the allegedly improper sales practices caused the $450 million inventory reduction in June 2016 but does not contest Defendants' statements that HP took the reduction in connection with its shift to a pull model, and that if HP had adhered to the earlier push model, inventory would have been at "the right levels." Ex. 9 at 6.

[11] Plaintiff cites *Shenwick* for the proposition that a company that chooses to "tout positive information" must do so in a way that is not misleading. 282 F. Supp. 3d at 1135-40; Opp. 18. However true that proposition may be, Judge Illston's ruling shows why this case is not like *Shenwick*. HP's discussion of channel inventory was not misleading. Plaintiff also cites *eHealth*, arguing that the company there, purportedly in contrast with HP, disclosed the limitations of the data it reported. 2016 WL 948116, at *6; Opp. 18. But as Judge Illston's ruling shows, no further explanation of the channel inventory data was required here.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

#### d.     Plaintiff Does Not Allege A Scheme

Plaintiff cannot salvage its securities fraud claim by recharacterizing it as a "scheme" theory of liability.[12]  Opp. 15.  The Complaint includes a single count for violation of Section 10(b).  In that count, as in the rest of the Complaint, Plaintiff targets solely "false statements."  ¶ 221.  Plaintiff does not use the word "scheme" except in reciting the subsections of Rule 10b-5.  ¶ 222.

But even if Plaintiff had specified that it was asserting a scheme claim, that claim would fail under Rule 12(b)(6).  Plaintiff does not dispute that it must plead deceptive conduct to state a scheme claim. Mot. 19.  Having failed to allege such conduct in the Complaint, Plaintiff contends in its opposition brief that the purported "pull-ins" and "gray marketing" constituted a scheme.  Opp. 15.  Plaintiff of course may not amend the Complaint by means of the Opposition.  And Plaintiff identifies no facts in either the Complaint *or* the Opposition that even remotely suggests that *any Individual Defendant* engaged in "pull-ins" or "gray marketing."  *See* ¶¶ 19-20, 52, 55, 62, 64, 70 & n.8, 156, 170, 187 (alleging only that Mr. Lores monitored inventory and Mr. Bailey approved certain individual discounts).[13]  That entirely disposes of Plaintiff's scheme allegation.  If there could be any doubt on the matter, the SEC stated affirmatively that no HP senior officer was even *aware* of pull-ins or gray marketing while the conduct was purportedly occurring.  SEC Settlement ¶¶ 1-2, 16-19, 21-26, 31, 33, 49.

The contrast between Plaintiff's scheme theory and the precedent it cites is stark.  In each of Plaintiff's cases, the individual defendants were alleged to have personally engaged in unlawful conduct designed to mislead investors.  *See In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 681320, at *13 (S.D. Ohio Mar. 7, 2022) (alleging defendants directly engaged in illegal bribery scheme to mask operational problems); *SEC v. Cotton*, 2006 WL 6382128, at *1 (C.D. Cal. Dec. 21, 2006) (defendant officer fraudulently recognized and reported revenue while concealing conduct from external auditors); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1156 (D. Or. 2015) (alleging officers engaged

---

[12] Contrary to Plaintiff's repeated insistence that Defendants waived this argument, Defendants have briefed the issue in both motions to dismiss, in reply, and on appeal.  *See, e.g.*, ECF 45 at 24 n.8; ECF 53 at 19-20; Mot. 19; Appellee's Answering Brief at 36-37, *York Cnty.*, 65 F.4th 459 (No. 22-15501).

[13] Plaintiff does not mention Mr. Weisler or Ms. Lesjak in connection with its "scheme" argument for good reason.  *See* Opp. 15-16.  Their only alleged conduct is making the challenged statements, generally monitoring inventory, and, for Ms. Lesjak, setting inventory ceilings.

Gibson, Dunn & Crutcher LLP

13

in "pump and dump" insider trading scheme).[14]  Plaintiff makes no such allegations here.  Thus, to the extent there is a scheme claim—and there is not—it is wholly dependent on the alleged misstatements and therefore rises and falls with Plaintiff's claims that those statements were fraudulent.  *See Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022).  Any such scheme claim would also be barred by the statute of repose for the same reasons Plaintiff's misstatements claim is barred.  *See Bai v. Tegs Mgmt., LLC*, 2022 WL 602711 (S.D.N.Y. Mar. 1, 2022) (holding repose period for scheme claim runs from conduct predating investors' transactions).

### 3.    Plaintiff Fails To Plead Scienter

#### a.    The Ninth Circuit Did Not Rule On Whether Plaintiff Adequately Pled A Strong Inference Of Scienter

The Ninth Circuit expressly limited its ruling to the statute of limitations issue and "decline[d] to rule" on any other aspect of the pleading.  Mot. 21.  Plaintiff mischaracterizes the Ninth Circuit's decision and conflates the Ninth Circuit's discussion of scienter in the context of its statute of limitations analysis—in which the question was whether the SEC Settlement provided new information relevant to scienter—with a substantive examination of the adequacy of the scienter allegations.  *See* Opp. 24 & n.21; *supra* at 2, 11.  On the latter subject, the Ninth Circuit "express[ed] no opinion," leaving it to this Court "to address in the first instance" the adequacy of the Complaint.  *York Cnty.*, 65 F.4th at 468.

#### b.    The SEC's Allegations Undermine Plaintiff's Claim

The SEC Settlement—on which Plaintiff bases much of its claim—specifically stated that HP's senior officers did *not* know about the alleged pull-ins and gray marketing activity when they occurred.  Mot. 20-21; *see* SEC Settlement ¶ 49 ("HP's principal financial officers and principal executive officers who were responsible for the company's disclosures learned of the [gray marketing and pull-ins] conduct

---

[14] The Ninth Circuit's *Alphabet* decision is in accord.  The court merely noted there that misstatement and scheme theories sometimes overlap; it did not rule on the sufficiency of the plaintiff's scheme allegations.  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).  Plaintiff asserts that defendants who did not make or have ultimate authority over statements may still face scheme liability based only on the alleged misstatements of others, but the law is otherwise.  In addressing scheme liability for dissemination of a false statement, the Supreme Court in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), expressly recognized the ongoing vitality of the rule set forth by *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), that only the maker of an untrue statement can be held liable for it under the Exchange Act.  *Lorenzo*, 139 S. Ct. at 1099.

Gibson, Dunn & Crutcher LLP

in connection with HP's planned shift from a push to a pull model quarters after the actual conduct had taken place."). In *Electrical Workers*, Judge Illston held that "the SEC [Settlement] . . . does not establish a strong inference of scienter," because the "SEC [Settlement] involves undisclosed discounts offered by certain HP sales managers—*not Individual Defendants*," and the "SEC . . . found HP executives did not learn of the HP sales managers' conduct until after the conduct occurred."  2021 WL 4199273, at *6 (emphasis added).  The same is true in this case.

Plaintiff does not attempt to refute the relevant language in the SEC Settlement.  Instead, Plaintiff again invokes the Ninth Circuit's ruling.  Opp. 24.  This is again misguided.  The Ninth Circuit expressly made no finding on the adequacy of Plaintiff's scienter allegations, based on the SEC Settlement or otherwise.

Plaintiff also has no response to the SEC's allegation that HP's senior officers lacked visibility into inventory levels below Tier 1.  SEC Settlement ¶ 48; Mot. 21.  Plaintiff asserts that because Defendants knew that HP's channel inventory figures included only Tier 1 data, Defendants also must have known that the challenged statements about inventory were misleading.  Opp. 25.  Judge Illston's ruling again shows why that is wrong.  HP's references to its own channel can only sensibly be understood to extend to Tier 1. *See supra* at 12.  The SEC Settlement weighs heavily against any inference of scienter.

c.       **Plaintiff's Core Operations Allegations Do Not Support A Strong Inference Of Scienter**

Plaintiff makes a surprising claim in the Opposition, asserting for the first time in this litigation that Defendants had "actual knowledge" that their statements were false.  Opp. 25-28.  Less surprisingly, Plaintiff cannot support this baseless assertion with facts.  Plaintiff's argument boils down to a core operations theory—that Defendants (1) focused on the Supplies business, (2) allegedly had access to "robust" information about Tier 2 channel inventory, and (3) were aware of the purported effect of the challenged sales practices on inventory levels. *See* Opp. 25-28.  This theory of scienter fails for the same reason Judge Illston rejected it in *Electrical Workers*:  the absence of supporting facts. *See* 2021 WL 4199273, at *7.

Plaintiff pleads no facts demonstrating that any Individual Defendant had "actual access to the disputed information" about pull-ins and gray marketing activity.  Mot. 21-23 (quoting *S. Ferry*, 542 F.3d

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

at 786).[15]  Plaintiff claims instead that Defendants had access to "robust" data regarding Tier 2 inventory, pointing to general allegations of access to Supplies business results, inventory level reports, and a revenue forecasting model.  Opp. 25-27 & n.22.[16]  These allegations are deficient.  Plaintiff must plead facts showing that the data Individual Defendants reviewed revealed "specific information . . . *related to the fraud.*"  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (emphasis added).  Ninth Circuit precedent is clear that Plaintiff's allegations that the Individual Defendants reviewed top-line business results and inventory levels do not permit an inference—let alone a strong inference—that they knew that "pull-ins" and "gray marketing" purportedly *caused* those results and inventory levels.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000-01 (9th Cir. 2009) ("allegations that senior management . . . closely reviewed the accounting numbers" and "analyzed the inventory numbers closely[] do not support the inference that management was in a position to know that such data was being manipulated"); *see also In re Twitter, Inc. Sec. Litig.*, 2020 WL 7260479, at *14 (N.D. Cal. Dec. 10, 2020) (access to results does not permit inference that defendants knew allegedly fraudulent "reasons" for those results).  Any executive will have access to data about a company's business, which is why "access" allegations are virtually meaningless unless specifically connected with the alleged fraud.  Plaintiff fails to plead facts establishing the required connection here.

Next, Plaintiff points to unproven allegations in the SEC Settlement regarding "the known trend of increasing channel inventory and lower margin sales" caused by the challenged sales practices.  Opp.

---

[15] Plaintiff's authorities are distinguishable.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1138, 1145-46 (9th Cir. 2017) (defendants allegedly "were aware in real time" of specific information "inconsistent" with their statements); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009) ("actual knowledge" of false statements pleaded); *Shenwick*, 282 F. Supp. 3d at 1146-47 (defendants' admissions that daily active users was key metric permitted inference of scienter about daily active user numbers); *Weston v. DocuSign, Inc.*, 2023 WL 3000583, at *21 (N.D. Cal. Apr. 18, 2023) (confidential witness reported specific numbers relayed to defendants).

[16] Defendants pointed out that Plaintiff misquoted Mr. Weisler in an attempt to bolster its core operations allegations in the Complaint.  Mot. 22.  Unable to defend its original allegations or adequately plead Mr. Weisler's scienter, Plaintiff now claims that Mr. Weisler said "we continue to strategically monitor Supplies pricing . . . . It's obviously something that we track very closely."  Opp. 27 n.23 (quoting ¶ 158).  Plaintiff's use of ellipses is highly misleading.  More than ***five*** transcript pages separate the first half of that quotation from the second, and the subject of "tracking" in the second half is *competitors'* pricing, not HP's.  *See* Ex. 5, at 4, 10.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

5, 26; ¶¶ 81, 85 (quoting SEC Settlement ¶¶ 20, 42).  Setting aside that these conclusory allegations are insufficient under the PSRLA, *Glazer*, 549 F.3d at 748, the SEC never alleged that *the Individual Defendants* knew about the challenged sales practices.  To the contrary, the SEC alleged that lower-level "operational personnel" carried out the practices—but that HP lacked sufficient controls to ensure that executive officers were made aware of them.  SEC Settlement ¶ 48.

Because Plaintiff does not allege "actual access to the disputed information," Plaintiff can plead scienter under the core operations doctrine only by establishing that this case presents the "*rare* circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *S. Ferry*, 542 F.3d at 786.  Plaintiff parrots the language from *South Ferry*, arguing that "it would be 'absurd' to suggest that [the Individual Defendants] were unaware of a widespread scheme devastating their most critical business."  Opp. 28-29.  But the supporting facts are missing.  That is not surprising given that the SEC Settlement on which Plaintiff so heavily relies concludes the opposite:  that executive officers were *not* aware of pull-ins and gray marketing.  That is a stark contrast from the "rare" cases in which the core operations theory succeeds.

Plaintiff finally points to the allegation that HP invested $700 million to reduce channel inventory at the end of the Class Period.  *See* Opp. 29.  But this does not show that Defendants knew about the challenged sales practices.  As Plaintiff's own authority states, "magnitude alone is not sufficient to support a finding of scienter."  *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1100 (9th Cir. 2011).[17]  In any event, $700 million is *less than 3%* of HP's net revenue in just the first six months of the eight-month Class Period.  Ex. 5 at 4 (Q1 net revenue of $12.2 billion); Ex. 6 at 4 (Q2 net revenue of $11.6 billion).  This is nothing like the "magnitude" cases Plaintiff cites.  *See Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (inventory drawdown amounted to 35% of company's revenue); *Ernst & Young*, 641 F.3d at 1100 ("questionable option grants" accounted for $569 million of $2.2 billion restatement).[18]

---

[17] Contrary to Plaintiff's suggestion, *Plantronics* does not support its core operations argument based on magnitude alone.  Tellingly, the part of the decision omitted by Plaintiff's use of ellipses (Opp. 29) makes clear that the court's core operations findings "t[ook] into account" other allegations—namely, that the defendants "knowingly adopted" the "undisclosed sales practice."  2022 WL 3653333, at *18.

[18] Plaintiff's other core operations cases also are distinguishable.  *Alphabet*, 1 F.4th at 706 (Google CEO

17

Gibson, Dunn & Crutcher LLP

Because Plaintiffs fail to establish that this is the "rare" case warranting an inference of scienter under the core operations doctrine, the Court should reject Plaintiff's core operations argument.[19]

### d.     Plaintiff's Remaining Scienter Allegations Fail

Plaintiff's ancillary arguments about temporal proximity, SOX certifications, and motive do not move the needle on scienter. Opp. 30-31. None of these theories is sufficient. *See Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) ("temporal proximity of the statements, in and of itself, is insufficient" to plead scienter); *Zucco*, 552 F.3d at 1004 ("Sarbanes–Oxley certifications are not sufficient, without more, to raise a strong inference of scienter."); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) (allegations of "mere 'motive and opportunity' . . . fail to meet the PSLRA's heightened pleading requirements"). Nor do these allegations taken together create a strong inference of scienter.

Plaintiff's "motive" argument fails for an additional reason. Plaintiff argues that the Defendants' desire that the Supplies business succeed is sufficient to establish a motive to defraud, Opp. 30, but the Ninth Circuit has explicitly held that such "routine business objectives, without more, cannot normally be alleged to be motivations for fraud," *Lipton*, 284 F.3d at 1038.[20] Because Plaintiff fails to identify a motive

---

allegedly read memo containing information directly contradicting public statements); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226-27 (N.D. Cal. 2015) (plausible inference that company knew its "largest distributor" was a related party because "they shared an office"); *Azar*, 2018 WL 6182756, at *21 (inference of scienter about advertiser "churn" supported by defendants' statements and stock sales); *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1133-34 (N.D. Cal. 2020) (inference of scienter supported by confidential witness statements).

[19] Courts have routinely rejected the core operations theory even when plaintiffs make more particularized allegations than Plaintiff does here. *See, e.g.*, *NVIDIA*, 768 F.3d at 1064 (not "absurd" to assert that management was unaware of the root cause of product failures even where the "nature of the problem concerned [NVIDIA's] flagship product and was cause for concern to [NVIDIA's] two largest customers"); *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *1, *8 (N.D. Cal. Feb. 1, 2021) (not absurd to suggest that the company's top officers were unaware of "delayed and cancelled orders" from customers even though the company "reli[ed] on a small number of very large customers"); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 199703, at *10 (N.D. Cal. Jan. 13, 2010) (not "absurd" to assert defendants were unaware of inventory and financial issues even where "'management' held 'daily management meetings' and reviewed '[] reports'" from financial tracking system).

[20] Plaintiff's motive cases are easily distinguishable. *See Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *21 (C.D. Cal. May 8, 2013) (language quoted by Plaintiff not among the "allegations [that] persuade[d] the Court"); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83-84 (1st Cir. 2002) (executives would lose jobs if did not hit targets); *Shenwick*, 282 F. Supp. 3d at 1149 (executives wanted to "live up to [] overly optimistic *promises*").

---

18

Gibson, Dunn & Crutcher LLP

to commit fraud, Plaintiff "face[s] a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021). Plaintiff has not cleared that hurdle.

### 4.    Plaintiff Fails To Plead Loss Causation With Particularity

Plaintiff's "corrective disclosure" theory of loss causation fails because Plaintiff does not identify any challenged statement that was shown to be false by the alleged corrective disclosures. Mot. 25-26. Plaintiff does not dispute this, instead arguing that loss causation can be pleaded in an "infinite variety of ways." Opp. 33 (quoting *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 752-53 (9th Cir. 2018)). But that "infinite variety" is not available to Plaintiff, who indisputably chose only one way to allege loss causation:  a corrective disclosure theory. ¶ 200. Having elected that theory, Plaintiff must plead with particularity that the alleged corrective disclosures "revealed to the market that at least some of [defendant's] alleged misstatements were false." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020); *see also First Solar*, 881 F.3d at 754 ("When plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory."). Because Plaintiff does not allege (or even argue in the Opposition) how the disclosures corrected earlier untrue statements, Plaintiff has failed to plead loss causation.

Rather than identify well-pleaded facts connecting any of the alleged corrective disclosures with the alleged misstatements, Plaintiff asks the Court to assume that every challenged statement caused its losses. *See* Opp. 33-34. That is not a viable loss causation theory. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (rejecting "loss causation theory [that] lumps together . . . alleged misstatements"). Plaintiff's challenge to the channel inventory statements exemplifies the problem. Plaintiff claims these statements are false in light of the limitation of channel inventory data to Tier 1. Opp. 17. But Plaintiff does not contend it was harmed when the market learned about the omission of inventory data below Tier 1. Indeed, Plaintiff argued to the Ninth Circuit that this information was not disclosed until September 30, 2020—*a date on which Plaintiff alleges no loss. See* App. Br. 11. This concession *disproves* Plaintiff's contention that Defendants' purported omission of channel inventory data below Tier 1 caused its losses. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). At a minimum, the Court should dismiss the Complaint on loss causation grounds as to that theory. And as a logical matter, the Court can and should dismiss the Complaint in its entirety on loss causation grounds.

Gibson, Dunn & Crutcher LLP

By lumping together all alleged misstatements, Plaintiff fails to plead with particularity "that it was the very facts about which the defendant lied which caused its injuries." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).

Plaintiff's failure to plead a plausible loss causation theory is compounded by the substance of the purported corrective disclosures:  (1) disappointing financial results on November 24, 2015, ¶ 203; (2) an analyst opinion downgrading HP stock on January 7, 2016 based on public information, ¶ 205; (3) disappointing financial results on February 24, 2016, ¶ 206; and (4) the announcement of a new business model requiring an investment by the company on June 21, 2016, ¶ 208.  None of these revelations is alleged to have "corrected" a prior misstatement.  Any link between the alleged pull-ins and disappointing financial news is severed by Plaintiff's failure to show that the financial results were driven by the purported practices rather than external factors such as competition and currency issues.  *Supra* at 9-10; *see* Mot. 23-24.[21]  Similarly, Plaintiff still fails to point to any factual allegations connecting HP's announced investment in support of a new business model to the so-called fraud.  Mot. 26; Opp. 34 (calling the connection "clear" but failing to identify any statement corrected by the announcement).

### 5.    Plaintiff Fails To State A Section 20(a) Claim

Because Plaintiff fails to plead a primary violation of the securities laws, the Section 20(a) claim fails.  Mot. 26-27.  Additionally, Plaintiff's vague allegations that the Individual Defendants controlled HP are insufficient, Mot. 27 n.9, particularly as to Messrs. Lores and Bailey who—unlike in the cases cited by Plaintiff—are not alleged to have made or had the power to control any challenged statement, *compare* Opp. 35.  Plaintiff's control allegations amount to Individual Defendants' titles as executives, which is plainly insufficient.  *Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal., Jan 2016).

### III.    CONCLUSION

For the foregoing reasons and the reasons stated in the Motion, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[21] Plaintiff's allegations are nothing like those in *In re WageWorks, Inc. Securities Litigation*, where the company "cooked the books," the auditor refused to certify financial statements, and the market reacted to revelations of misstated revenue.  2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020).  *Weston*, 2023 WL 3000583, also is distinguishable because the plaintiff alleged that the company's misrepresentations about billings were revealed to be false when the company missed its billings projections.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Dated:  September 1, 2023

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3770
Facsimile:  202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler,
Catherine A. Lesjak, Enrique Lores, and Richard Bailey*

By: */s/ Katherine Henderson*
**WILSON SONSINI GOODRICH & ROSATI**
KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101
Telephone: 415.947.2065
khenderson@wsgr.com

*Counsel for Defendant Catherine A. Lesjak*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 4:20-cv-07835-JSW

Gibson, Dunn &
Crutcher LLP

**ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: September 1, 2023                    **GIBSON, DUNN & CRUTCHER LLP**

                                            */s/ Brian M. Lutz*
                                            BRIAN M. LUTZ