**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

*Counsel for Defendants HP Inc., Dion J.*
*Weisler, Catherine A. Lesjak, Enrique Lores,*
*and Richard Bailey*

*Additional counsel on signature page*

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200
sbrody@sidley.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, *Individually and on Behalf of All Others Similarly Situated*,<br><br>        Plaintiff,<br><br>    v.<br><br>HP INC., et al.,<br><br>        Defendants. | Case No. 4:20-cv-07835-JSW<br><br>**STATEMENT OF RECENT DECISION** |

Defendants HP Inc., Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey (collectively, "Defendants"), respectfully submit this Statement of Recent Decision pursuant to Civil Local Rule 7-3(d)(2) to apprise the Court of a recent decision that relates to arguments made in Defendants' Motion to Dismiss the Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 69) and Reply in support of the same (ECF No. 75):

The October 11, 2023 decision in *Habelt v. iRhythm Technologies, Inc.*, Case No. 22-15660 (9th Cir.), dismissing the appeal for lack of standing, is attached to this Statement as Exhibit A.

Dated:  October 12, 2023

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*
BRIAN M. LUTZ SBN 255976
MICHAEL J. KAHN, SBN 303289
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone:  202.887.3770
Facsimile:  202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  415.772.1200
sbrody@sidley.com

*Counsel for Defendants HP Inc., Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey*

By: */s/ Katherine Henderson*
**WILSON SONSINI GOODRICH & ROSATI**
KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101
Telephone: 415.947.2065
khenderson@wsgr.com

*Counsel for Defendant Catherine A. Lesjak*

1

**ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: October 12, 2023                                   **GIBSON, DUNN & CRUTCHER LLP**

                                                          */s/ Brian M. Lutz*
                                                          BRIAN M. LUTZ

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK HABELT, individually and on behalf of all others similarly situated, | No. 22-15660 |
| *Plaintiff-Appellant*,[*] | D.C. No. 3:21-cv-00776-EMC |
| and | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, | OPINION |
| *Plaintiff*, | |
| v. | |
| IRHYTHM TECHNOLOGIES, INC.; KEVIN M. KING; MICHAEL J. COYLE; DOUGLAS J. DEVINE, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

---

[*] The caption's reference to Mark Habelt as "Plaintiff-Appellant" reflects the caption as it appears on the documents with which this appeal was initiated. As explained herein, Habelt is neither a plaintiff in this action nor a proper appellant of the district court order at issue on appeal.

Argued and Submitted July 13, 2023
San Francisco, California

Filed October 11, 2023

Before:  Carlos T. Bea, Mark J. Bennett, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas;
Dissent by Judge Bennett

## SUMMARY[**]

### Securities Fraud / Appellate Jurisdiction

The panel dismissed, for lack of jurisdiction due to appellant's lack of standing, an appeal from the district court's dismissal of a putative securities fraud class action.

Appellant Mark Habelt filed the action, but, pursuant to the procedures of the Private Securities Litigation Reform Act of 1995, the district court appointed Public Employees' Retirement System of Mississippi (PERSM) as lead plaintiff.  PERSM filed a first and then second amended complaint, and the district court dismissed for failure to state a claim.  PERSM did not appeal.

The panel held that Habelt lacked standing to appeal because he was not a party to the action.  Habelt's filing of

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the initial complaint and his listing in the caption of the second amended complaint were insufficient to confer party status upon him. The body of the operative complaint made clear that PERSM was the sole plaintiff, and Habelt's status as a putative class member did not give him standing to appeal. The panel further held that Habelt failed to demonstrate exceptional circumstances conferring upon him standing to appeal as a non-party.

Dissenting, Judge Bennett wrote that he would allow the appeal by Habelt because he was a party, and even if he were not, exceptional circumstances would allow him to appeal as a non-party. On the merits, Judge Bennett would reverse the district court's dismissal as to three alleged misrepresentations by defendants.

---

### COUNSEL

Omar Jafri (argued), Joshua B. Silverman, and Christopher Tourek, Pomerantz LLP, Chicago, Illinois; Jeffrey C. Block, Jacob Walker, and Mark B. Byrne, Block & Leviton LLP, Boston, Massachusetts; Jeremy A. Lieberman, Pomerantz LLP, New York, New York; Jennifer Pafiti, Pomerantz LLP, Los Angeles, California; for Plaintiffs-Appellant.

Ignacio E. Salceda (argued) and Evan L. Seite, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; John B. Kenney, Wilson Sonsini Goodrich & Rosati, Washington, D.C.; for Defendants-Appellees.

**OPINION**

H.A. THOMAS, Circuit Judge:

In early 2021, iRhythm Technologies, Inc.'s (iRhythm) stock price fell after it received a historically low Medicare reimbursement rate for one of its products. Mark Habelt, an investor in iRhythm, filed a putative securities fraud class action against iRhythm and one of its former Chief Executive Officers, alleging that investors were misled during the regulatory process preceding this stock price collapse. Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (PSLRA), the district court appointed Public Employees' Retirement System of Mississippi (PERSM) as the lead plaintiff in the action. PERSM filed a first and then second amended complaint (SAC, the operative pleading) alleging securities fraud claims against iRhythm and additional corporate officers (together, Defendants). Defendants filed a motion to dismiss PERSM's SAC for failure to state a claim. PERSM did not appeal the district court's grant of this motion. Habelt filed a timely notice of appeal.

We now dismiss Habelt's appeal for lack of jurisdiction. Generally, only the parties to a lawsuit, "or those that properly become parties, may appeal an adverse judgment." *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)). Habelt, however, is not a party to the action. And while a non-party may appeal under exceptional circumstances, *see Hilao v. Est. of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004), there are no extraordinary circumstances here that confer upon Habelt standing to appeal as a non-party. Dismissal is therefore required.

## I.

On February 1, 2021, Habelt filed a securities fraud complaint on behalf of himself and a putative class of persons who purchased iRhythm's common stock between August 4, 2020, and January 28, 2021. Pursuant to the PSLRA, three putative class members moved to be appointed lead plaintiff in the suit, including PERSM.[1] After one of the lead plaintiff candidates filed a notice of non-opposition to PERSM's appointment as lead plaintiff and the other withdrew his motion for appointment as lead plaintiff, the district court granted PERSM's motion. Habelt did not make a motion for appointment as lead plaintiff and did not oppose PERSM's motion. And he did not participate in the litigation after PERSM's appointment as lead plaintiff.

As lead plaintiff, PERSM gained "control over aspects of litigation such as discovery, choice of counsel, [and] assertion of legal theories." *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001). On September 24, 2021, PERSM filed the SAC, alleging that Defendants committed violations of the Securities Exchange Act of

---

[1] Before the passage of the PSLRA, "lead plaintiffs in securities litigation cases were often selected by a race to the courthouse." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). With the PSLRA, Congress took "steps to curb abusive securities-fraud lawsuits," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 476 (2013), including by requiring the district court "to select as lead plaintiff the [putative class member] 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). Under this statute, there is a rebuttable presumption that the most adequate plaintiff (1) "has either filed the complaint or made a motion" to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class;" and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

6          HABELT V. IRHYTHM TECHNOLOGIES, INC.

1934, 15 U.S.C. § 78a *et seq*. The caption of the SAC listed Habelt as the "Plaintiff." But the SAC otherwise made no reference to Habelt, to his alleged losses, or to his individual claims, including in a subsection titled "Parties."

In lieu of filing an answer, and before any class was certified in the case, Defendants filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. The district court granted Defendants' motion, dismissed the SAC with prejudice, and, on March 31, 2022, entered judgment in Defendants' favor. PERSM did not appeal the district court's judgment. Habelt, represented by PERSM's counsel and his own additional counsel, filed a timely notice of appeal.

## II.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino*, 484 U.S. at 304; *see* Fed. R. App. P. 3(c)(1) ("The notice of appeal must: (A) specify the party or parties taking the appeal . . . ."). This "standing to appeal" rule echoes—but "is distinct from[—]the requirements of constitutional standing." *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020). "[E]ven if a person has an interest in the outcome of the litigation, unless the person intervenes in the suit or has a statutory right to appeal, the person cannot appeal a suit to which it has not become a party." *United States v. Kovall*, 857 F.3d 1060, 1068 (9th Cir. 2017).

Habelt argues that he is a party to this lawsuit because he filed the initial complaint and is listed in the caption of the SAC. But, as we explain below, these facts do not suffice to confer party status upon him.

"[T]he caption of an action is only the handle to identify it." *Hoffman v. Halden*, 268 F.2d 280, 303 (9th Cir. 1959), *overruled in part on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) (en banc). For that reason, "[a] person or entity can be named in the caption of a complaint without necessarily becoming a party to the action." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009); *see also* 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1321, at 242 (4th ed. 2018) ("[T]he caption is not determinative as to the identity of the parties to the action . . . ."). Indeed, the Federal Rules of Civil Procedure expressly contemplate that the caption of a complaint may be disconnected from the substance of the proceedings. *See, e.g.*, Fed. R. Civ. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original party."); Fed. R. Civ. P. 25(d) ("[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] [t]he officer's successor is automatically substituted as a party . . . but any misnomer not affecting the parties' substantial rights must be disregarded.").

Beyond an individual's mere inclusion in the caption, the more important indication of whether she is a party to the case are the "allegations in the body of the complaint."[2] *Hoffman*, 268 F.2d at 304. It is upon this ground that Habelt's argument falters. While it is true that Habelt filed the initial complaint in this matter, that complaint has now been extinguished. *See Ramirez v. Cnty. of San Bernardino*,

---

[2] That is not to say that the caption of a complaint is not probative of the question whether an individual is a party to the action. *See Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006). But it is not dispositive of that question.

806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." (internal quotation mark and citation omitted)). The body of the operative pleading—the SAC—makes clear that PERSM is the sole plaintiff. The SAC makes mention neither of Habelt nor of his individual claims.

Nor does Habelt's status as a putative class member give him standing to appeal. Although "an unnamed member of a *certified* class may be considered a party for the [particular] purpos[e] of appealing an adverse judgment," the "definition of the term 'party'" does not cover an unnamed class member "*before the class is certified*." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (internal quotation marks omitted and alterations in original) (quoting *Devlin*, 536 U.S. at 7, 16 n.1); *see also Emps.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) ("[B]ecause the class was never certified, Appellants were not parties to the district court action and lack standing to bring this appeal.").

## III.

Habelt also has failed to demonstrate exceptional circumstances that confer upon him standing to appeal as a non-party. A non-party may have standing to appeal when she, "(1) . . . though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Hilao*, 393 F.3d at 992 (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002)). "[W]hether a nonparty has the ability to appeal is a jurisdictional question." *Volkhoff*, 945 F.3d at 1241.

We have allowed non-parties to appeal only "when they were significantly involved in the district court

proceedings." *Id*. at 1241–42. Habelt's participation in this case does not meet that high bar. His involvement in the matter below "all but ceased with the filing of the" initial complaint. *Id*. at 1242. He did not apply to be appointed lead plaintiff, challenge PERSM's motion for appointment as lead plaintiff, or otherwise participate in the suit after PERSM's appointment. *Cf. S.E.C. v. Wencke*, 783 F.2d 829, 834–35 (9th Cir. 1986) (holding that non-party appellant had standing to appeal when he made a special appearance, filed briefs, and was treated by the district court "as if he were a party"); *Keith v. Volpe*, 118 F.3d 1386, 1391 (9th Cir. 1997) (considering non-party appellant's participation in oral argument).

Nor do the equities favor our hearing Habelt's appeal. Unlike matters where "a party has haled the non-party into the proceeding against his will, and then has attempted to thwart the nonparty's right to appeal by arguing that he lacks standing," *Volkhoff*, 945 F.3d at 1242 (quoting *Hilao*, 393 F.3d at 992), Habelt willingly filed the initial complaint. And Defendants agreed at oral argument that Habelt is not bound by the district court's judgment.

The Supreme Court, moreover, has cautioned against reliance on exceptions to the rule that only parties can appeal. Instead, non-parties should follow the "better practice" of "seek[ing] intervention for purposes of appeal." *Marino*, 484 U.S. at 304; *see also United States v. City of Oakland*, 958 F.2d 300, 302 (9th Cir. 1992) ("[D]enial of intervention as of right is an appealable final order."). Habelt filed no motion to intervene.

\*          \*          \*

Habelt lacks standing to appeal. We therefore dismiss this appeal for lack of jurisdiction.

**DISMISSED.**

BENNETT, Circuit Judge, dissenting:

As the majority notes, the right to appeal generally extends only to parties.  Op. at 4 (citing *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002)).  Habelt was a party, so he has the right to appeal.  Moreover, in "exceptional circumstances," we even permit non-parties to appeal.  *Id.* at 3 (citing *Hilao v. Est. of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004)).  In my view, even were Habelt not a party, such exceptional circumstances are present here.  Thus, I respectfully dissent.

Because I would allow the appeal by Habelt, I would reach the merits.  On the merits, I would reverse the district court's dismissal as to three alleged misrepresentations.

I.

First, Habelt was a party.  "Party status does not depend on being present in the district court litigation from the moment it began or at the moment it ended.  All 'those that properly become parties may appeal an adverse judgment.'" *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (brackets removed) (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)).  "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'" *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (brackets in original) (quoting Black's Law Dictionary 1154 (8th ed. 2004)).  "[O]rdinarily the determination of whether or not a [party] is properly in the case hinges upon the allegations in the body of the complaint . . . ." *Hoffman v. Halden*, 268 F.2d 280, 304 (9th Cir. 1959),

*overruled in part on other grounds by Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir. 1962) (en banc).

Here, four factors show that Habelt is a party.  First, Habelt initiated the lawsuit by filing the first complaint. *Eisenstein*, 556 U.S. at 933.  Second, Habelt remained in the caption of the operative Second Amended Complaint (SAC) filed by the Public Employees' Retirement System of Mississippi (PERSM).  *See Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006).  Third, Habelt's claims are clearly covered by the substantive "allegations in the body of the" SAC.  *Hoffman*, 268 F.2d at 304.  And fourth, Habelt never evinced any intent to remove himself as a party, and the district court never provided notice that it was doing so.  *Cf. Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The majority insists that Habelt's party status was extinguished when PERSM was appointed lead Plaintiff and filed a series of amended complaints.[1]  But nothing in the Private Securities Litigation Reform Act (PSLRA) or otherwise provides that the appointment of a lead plaintiff automatically extinguishes the involvement of other plaintiffs in the suit.  *See* 15 U.S.C. § 78u-4(a)(3).[2]

---

[1] The majority does not aver, however, that any court order expressly removed Habelt as a party or informed him that he had lost his rights as a party.  Nor did any filing in the district court claim that Habelt's status as a party was extinguished.

[2] Some courts have held that appointment of a lead plaintiff under the PSLRA does not even require the filing of a new complaint. *See, e.g.*, *Billhofer v. Flamel Techs., S.A.*, No. 07 Civ. 9920, 2010 WL 3703838, at *2-3 (S.D.N.Y. Sept. 21, 2010) (collecting cases).  And as discussed in more detail below, we have suggested that filing a complaint is an

12                 HABELT V. IRHYTHM TECHNOLOGIES, INC.

Instead, the majority relies on the assertion that PERSM's amended complaints rendered Habelt's initial complaint nonexistent. Op. at 7 (citing *Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015)). But this view ignores that Habelt remains a party under the operative SAC because he is listed in the caption and covered by its substantive allegations. Though the mere inclusion of Habelt's name in the SAC's caption is not dispositive, Op. at 7 (citing *Hoffman*, 268 F.2d at 303), it is at least probative because, as the Eighth Circuit has explained, the caption "is entitled to considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints." *William*, 459 F.3d at 849.[3]

The majority discounts that Habelt's claims remain covered by substantive allegations in the SAC, suggesting that Habelt was no different from any *unnamed* putative

---

indicator of party status notwithstanding subsequent events. *See Emps.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors* ("*Anchor Capital*"), 498 F.3d 920, 922 (9th Cir. 2007) (finding would-be appellant was not a party below in part because they "never filed a complaint").

[3] *Hoffman* is factually distinct from this case. There, we found that two litigants were properly defendants in a case even though they were *not* listed in the caption of the amended complaint. 268 F.2d at 303–04. We relied on the principle that the substance of a complaint determines who the proper defendants are. *Id.* This rule—you may be a defendant even if you're *not* in the caption—however, doesn't inform the circumstance here, where Habelt initiated the lawsuit by filing the first complaint, was in the original caption, and always remained in the caption. Indeed, the first two words in the caption of the majority opinion are still "Mark Habelt." My view doesn't mean that form will triumph over substance, because here we have the form—Habelt was always part of the caption, *and* the substance—every complaint described putative wrongs that included Habelt among the putative victims.

member of the uncertified class because he was not specifically named in the body of the SAC. Op. at 6, 8. But this ignores that the SAC encompasses all the factual allegations and legal claims raised in the original complaint, *brought by Habelt*. Indeed, the "Parties" section of the SAC refers to PERSM as the "Lead Plaintiff," but nowhere claims PERSM is the *only* Plaintiff, nor gives any indication that Habelt is no longer a Plaintiff. And the SAC does not tie its substantive allegations to *PERSM's* claims in particular, rather the alleged injuries apply equally to all Plaintiffs and putative class members. When paired with Habelt's inclusion in the caption, the substance of the SAC clearly incorporates Habelt's claims. And nothing states anyone's intent to remove Habelt as *a* Plaintiff.

The majority cites no authority suggesting that a PSLRA litigant who files an original class-action complaint as the named plaintiff and remains in the caption of later complaints is indistinguishable from *unnamed* members of the putative class simply because that litigant/named plaintiff was not designated the lead plaintiff or named in the body of the operative complaint. Instead, the majority appears to create a new rule that a litigant's name must be specifically listed in the body of the operative complaint to be considered a party, regardless of the history of the litigation. We have never elevated form over substance to such an extent.

In one analogous case, a private company filed a class-action complaint under the PSLRA, alleging that a defendant pharmaceutical company committed securities fraud. *Empls.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors* ("*Anchor Capital*"), 498 F.3d 920, 922 (9th Cir. 2007). After the district court ultimately dismissed the suit, the lead plaintiff declined to amend its

complaint or file an appeal. *Id.* at 922–23. Instead, several unnamed members of the putative class attempted to appeal. *Id.* But in rejecting this attempt, we explained that the would-be appellants were not parties to the lawsuit because "[d]espite ample opportunity to do so, Appellants *never filed a complaint*, moved to intervene, objected to the requested dismissal, or filed an amended complaint after [lead plaintiff] notified the district court that it" would not further pursue its claims. *Id.* at 923 (emphasis added). Although we acknowledged that mere status as an *unnamed* putative class member was insufficient to confer standing to appeal, our holding implied that even unnamed members of a putative class can have standing to bring an appeal if they were sufficiently involved in the district court proceedings, including by filing a complaint. *Id.* Because Habelt filed the original complaint and remained covered by the substance of the eventual lead Plaintiff's SAC, our logic in *Anchor Capital* suggests that he remained a party below (there is, of course, no allegation he wasn't a party at the start, and there is similarly no allegation that any filing explicitly removed that status).

In another case, we explained that "a party may be properly in a case if the *allegations* in the body of the complaint make it plain that the party is *intended* as a defendant." *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) (emphasis added). There, we found that even though a pro se employment discrimination plaintiff failed to include the name or title of the proper defendant in his original filing, it was clear from the context of the filing that he intended to sue the proper defendant. *Id.* Although *Rice* involved a distinct issue— whether a complaint sufficiently named the proper

defendant—it reveals at least two relevant principles.[4]  First, that the substance of a complaint's allegations, rather than its form, controls whether a particular litigant is a party. *See id.*  Here, the SAC's failure to specifically name Habelt as plaintiff a second time[5]—like plaintiff's failure to name the proper defendant in *Rice*—is not dispositive of party status, particularly when the substance of the operative complaint clearly incorporates Habelt's original claims.  Second, the parties' intent is relevant to the question of whether a particular litigant is a party to the lawsuit. *See id.*; *see also Barsten v. Dep't of Interior*, 896 F.2d 422, 423 (9th Cir. 1990). [6]  Here, PERSM's inclusion of Habelt as a named Plaintiff in the caption of the SAC indicates that it did not intend to replace Habelt as the *sole* named Plaintiff when it

---

[4] *Rice* concerned the same issue as *Hoffman*, 268 F.2d at 303, which the majority relies on for the principle that inclusion of a litigant in the case caption is not dispositive of case status.  Op. at 7–8.

[5] As noted, every caption, including in this court, specifically lists Habelt as "plaintiff."

[6] Several other courts have expressly adopted an intent-based approach to determining party status. *See, e.g.*, *Jones v. Griffith*, 870 F.2d 1363, 1365–66 (7th Cir. 1989) ("The sensible approach, it strikes us, is to regard the pleading's caption, service of process, and perhaps other indications of intention to bring or not to bring a person into a lawsuit as evidence upon which the district court must decide, in cases of doubt, whether someone is a party."); *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F.Supp. 104, 109 (E.D.N.Y. 1995) (same); *Cooper v. Trs. of Coll. of Holy Cross*, 2014 WL 2738545, at *6–7 (S.D.N.Y. June 17, 2014) (same); *Deaville v. Capital One Bank*, 425 F.Supp.2d 744, 750 (W.D. La 2006) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." (internal quotation marks and citation omitted)).  The Seventh Circuit explained that an intent-based approach is consistent with Rule 17's requirement that "federal suits . . . be maintained in the name of the real party in interest." *Jones,* 870 F.2d at 1336 (citing Fed. R. Civ. P. 17(a)).

sought appointment as lead Plaintiff.  No party took any action in the district court to suggest a deliberate relinquishment by Habelt of his status as a Plaintiff in the case.  *Cf. United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1242 (9th Cir. 2020) (holding that appellant was a nonparty because it made a "strategic choice" to be "substituted out of the lawsuit" by a different plaintiff).[7]

Adding to Habelt's lack of intent to withdraw as a party is the lack of any notice that Habelt's party status was terminated.   The Supreme Court has explained that procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.  Habelt became a party when he filed the lawsuit, and he never subsequently expressed any intent to withdraw as a party.  Given that he was a named Plaintiff in the SAC and remained covered by its substantive allegations, it was reasonable for Habelt to assume that he was still a party to the district court proceeding even after PERSM's appointment as lead Plaintiff.  *Cf. Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (holding that procedural

---

[7] Even if the district court had found a lack of intent for Habelt to remain a party at the summary judgment stage, I would have no trouble reversing: In the light most favorable to Habelt, he initiated the lawsuit by filing the first complaint, remained a named Plaintiff in subsequent complaints, and remained covered by the substantive allegations in the operative SAC.  Moreover, he never filed anything suggesting an intent to withdraw as a party, his counsel never withdrew their appearance, and the district court never purported to end his involvement in the case.  At the very least, there would be a triable issue of fact as to whether Habelt intended to remain a party.

due process prevents a court from entering judgment against a party "without notice or service").

I believe due process likely required pre-termination notice, not post-termination notice. But even if I am incorrect, if the district court (or anyone else) had given Habelt post-termination notice that his party status may have been or was terminated, Habelt would have had the opportunity to move to intervene in the district court, individually oppose Defendants'[8] motion to dismiss, or even file a separate complaint. *See SEC v. McCarthy*, 322 F.3d 650, 659–60 (9th Cir. 2003) (explaining how proper notice could have allowed a party to avoid or at least respond to an application for judicial enforcement of an SEC order); *cf. Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" (footnote omitted)). The majority's holding post facto deprives Habelt of the opportunity to preserve his substantive claims for appellate review, in a manner I believe is inconsistent with due process.[9] *See Feuntes v. Shevin*, 407 U.S. 67, 81 (1972) ("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time

---

[8] "Defendants" refers to iRhythm and certain of its executives.

[9] Were we required to formulate a simple rule addressing *all* future factual scenarios, I might well adopt a rule that such "express removal" was the *sine qua non* of stripping a party of party status. But here, I would simply hold that lacking express removal, there must be notice of such nature as to reasonably convey the information that a party will henceforth no longer be a party. Such notice is lacking here. *See Wright v. Beck*, 981 F.3d 719, 728 (9th Cir. 2020) ("[O]utright failures to even attempt to provide notice violate due process.").

when the deprivation [of an opportunity to pursue claims] can still be prevented.").

Taken together, the facts that: (1) Habelt filed the initial complaint; (2) Habelt remained a named Plaintiff in the caption of later complaints, including the operative SAC; (3) the substantive allegations of the operative SAC cover Habelt's claims; and (4) Habelt never evinced intent to withdraw as a Plaintiff nor received notice of termination of his party status, all demonstrate that Habelt was sufficiently involved in the district court proceedings to remain a party.

## II.

But even if Habelt were not a party, he still qualifies for nonparty *appellate* standing under our caselaw. Generally, nonparties are allowed to appeal "when (1) [they] participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Hilao v. Est. of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (internal quotation marks and citation omitted). Although this rule applies "only in exceptional circumstances," *id.*, the dearth of caselaw addressing whether a litigant is properly a plaintiff under the circumstances of this case illustrates that Habelt's situation *is* exceptional.[10]

---

[10] *See generally Jones*, 870 F.2d at 1365 ("The question whether serving someone makes him a party, even when the complaint doesn't designate him as party . . . is one of those fundamental legal questions on which there is a curious dearth of authority or discussion."); *Steinmetz v. Danbury Visiting Nurse Ass'n*, No. 3:19-CV-01819 (JCH), 2021 WL 4193070 at *4 (D. Conn. Sept. 15, 2021) ("And in the anomalous circumstances where a Complaint does not clearly identify the defendant parties, there is scant legal authority on how courts should determine if a particular entity has been made a party to the action.").

The majority first concludes that Habelt was not sufficiently involved in the proceedings below to satisfy the first prong of this test.  Op. at 9.  The majority relies on the fact that Habelt "did not apply to be appointed lead plaintiff, challenge PERSM's motion for appointment as lead plaintiff, or otherwise participate in the suit after PERSM's appointment."  *Id.*  But they cite no authority requiring him to do any of those things to maintain sufficient involvement for purposes of appellate standing.  And again, we are not dealing with a putative class member; we are dealing with the named Plaintiff who initiated the lawsuit and who was never dismissed from the case.  When nothing in the PSLRA provides that appointment of a lead plaintiff extinguishes the involvement of other named plaintiffs (indeed the only one), there is no reason Habelt would think he had to do anything more than he did to remain in the suit.  But even if that were untrue, and the PSLRA *is* a trap for the unwary, Habelt wasn't unwary—he wasn't a silent voice who should have assumed his silence equaled non-party status.  He was *the* Plaintiff, who had the right to assume that a plaintiff (i.e., a party) who is never dismissed, remains a party absent something (like a statute, a court order, or a very clear binding case) telling him that some event or series of events stripped that status from him.  *Cf. Mullane*, 339 U.S. at 314.

In *SEC v. Wencke*, 783 F.2d 829 (9th Cir. 1986), we found that a nonparty had appellate standing in part because he "made a special appearance and raised all the . . . claims that he is now raising on appeal" before the district court.  *Id.* at 834.  "Throughout its proceedings, the district court treated [the appellant] as if he were a party."  *Id.*  Here, Habelt's counsel entered an appearance *that was never withdrawn* and raised the claims he now presents on appeal both in his original complaint and as a named Plaintiff in the

operative SAC.[11]   And although the district court may not have solicited input from Habelt when appointing the lead Plaintiff or at later stages of the litigation, *see id.* at 834–35 (district court solicited input of nonparty), nothing in the record suggests that Habelt was not adequately represented by PERSM's advocacy. *See Devlin v. Scardelletti*, 536 U.S. 1, 11 (2002) ("Although [the Supreme] Court has never addressed the issue, nonnamed parties in privity with a named party are often allowed by other courts to appeal from the order that affects them.").[12]

---

[11] The majority faults Habelt for not participating after the appointment of PERSM as lead Plaintiff.  Op. at 8–9.  But the district court's order appointing PERSM specifically provided that other than PERSM's counsel, "no other law firm shall work on this action for the putative class without prior approval of the Court."  "Motions for approval of additional Plaintiffs' counsel shall identify the additional Plaintiffs' counsel and their background, the specific proposed tasks, and why [PERSM's counsel] cannot perform these tasks."  Notably, no other Plaintiff or putative class member filed anything in the suit after PERSM's appointment as lead Plaintiff.  But the district court never indicated any intent to remove Habelt as a party from the action.  Thus, Habelt's failure to participate further is more an effort to comply with the district court's order to avoid unnecessarily delaying proceedings rather than a sign of intentionally abandoning his participation in the suit. But even if both of those alternatives were equally reasonable, it is not our role as an appellate court to choose between them in the first instance.

[12] *See also United States v. Osage Wind, LLC*, 871 F.3d 1078, 1085 (10th Cir. 2017) (finding that a nonparty Native American tribe had standing to appeal even though it "did not attempt to intervene below until the eleventh hour" in part "because the United States . . . was representing [the tribe's] interests all along.").  Indeed, the district court is not required to permit intervention by a nonparty whose interest is "adequately represent[ed]" by another party.  Fed. R. Civ. P. 24(a)(2). And in any event, Habelt was not required to seek intervention in order

By contrast, when we have declined to find nonparty standing to appeal, we have faulted would-be appellants for failing to take *basic steps* that Habelt took here.  *See, e.g.*, *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir. 1987) (noting nonparty's "prejudgment activity . . . was nonexistent"); *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002) ("Apart from their applications for intervention, the [nonparties] did not participate in the district court proceedings.").  And contrary to the majority's assertion, this case is easily distinguishable from *Volkhoff*. Op. at 9.  There, a nonparty's involvement in the district court "all but ceased with the filing of [a first amended complaint]," 954 F.3d at 1242, that expressly removed the nonparty from the litigation in favor of a substituted plaintiff, based on a "tactical decision aimed at avoiding . . . dismissal," *id*. at 1240.  Habelt wasn't expressly removed,[13] and Habelt didn't act tactically to avoid dismissal.

Second, the majority concludes that the equities weigh against allowing Habelt to appeal.  The majority points out that unlike some cases in which we have recognized nonparty standing, Habelt was not "haled . . . into the proceeding against his will."  Op. at 9 (quoting *Volkhoff*, 945 F.3d at 1242).  Putting aside that in the circumstances here, the most important "equity" is the lack of actual and clear notice to Habelt that, at some unknown point, he lost his party status and thus his right to appeal, we have never held that a nonparty *must* be brought into proceedings involuntarily in order to appeal.

---

to establish appellate standing.  *See Wencke*, 783 F.2d 829, 834-35 (motion for intervention was not necessary to establish nonparty appellate standing).

[13] And Habelt's attorneys never withdrew their appearance.

Next, the majority cites Defendants' concession at oral argument that Habelt is not bound by the district court's judgment, so he theoretically could pursue a separate lawsuit against Defendants.  Op. at 9.  But the preclusive effect of a prior judgment is a determination generally made by the subsequent court.  *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1304 (9th Cir. 2022).  Thus, a future court is not bound by Defendants' concession and may conclude that the district court's judgment bars Habelt from pursuing a separate suit.  Moreover, even if Habelt is not bound by the district court's judgment, Habelt notes that his claims may be time-barred by applicable statutes of limitation.  Oral Arg. at 20:10-20:22 (Defendants suggesting that they would move to dismiss claims barred by the statute of limitations)**.** So to the extent that Habelt relied on his belief that he remained a party in *this* case, he may have declined to timely file a second lawsuit because he thought he could continue asserting his claims here.  Because Habelt's claims are possibly precluded or time-barred, he could be effectively bound by the district court's judgment, resulting in further equities in his favor.  *Cf. Buffin v. California*, 23 F.4th 951, 958 n.3 (9th Cir. 2022) ("The equities weigh in favor of hearing an appeal 'when judgment has been entered against the nonparty.'" (quoting *Volkhoff*, 945 F.3d at 1242)); *Bank of Am. v. M/V Exec.*, 797 F.2d 772, 774 (9th Cir. 1986) ("[T]he equities weigh in favor of hearing [nonparty's] appeal because this is the only avenue to obtain appellate review of the issue.").

Other circuits have reached similar results.  For example, the Second Circuit allows nonparties to appeal when they have "a plausible affected interest" impacted by the judgment of the district court.  *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 78 (2d

Cir. 2006) (finding nonparty standing even though nonparty was not "bound by the district court's judgment"). The court discussed a previous decision in which it concluded a nonparty had standing when, as here, "it was possible, although not certain, that the nonparty's [claims] would be barred by" proceedings in the district court. *Id.* (discussing *SEC v. Certain Unknown Purchasers of the Common Stock of and Call Options for the Common Stock of Santa Fe Int'l Corp.*, 817 F.2d 1018, 1021 n.1 (2d Cir. 1987)). Other circuits also examine a nonparty's stake in the litigation when assessing standing to appeal. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 259–62 (4th Cir. 2014); *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 328–30 (5th Cir. 2001); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 349–50 (3d Cir. 1999). To the extent Habelt is time-barred or precluded from bringing a separate suit because he erroneously (but surely reasonably) believed he was a party, the district court's ruling had a similar substantial effect on his interests, counseling in favor of hearing his appeal.

Thus, whether or not Habelt was a party below, I would conclude that he has standing to bring this appeal.

### III.

Moving to the merits, the crux of the SAC's allegations is that Defendants deliberately misled investors about a rulemaking proceeding by the Centers for Medicare and Medicaid Services (CMS) to establish a uniform reimbursement rate for its core product, the Zio XT patch. On several calls with investors, iRhythm and its executives expressed optimism that CMS would adopt a proposed rule setting a reimbursement rate of about $380, with some variation to account for different specifications in the product line. During the rulemaking process, external

analysts and iRhythm's own investors expressed concerns that the company was not providing CMS with the usual types of cost data that the agency generally relies on when setting reimbursement rates. iRhythm attempted to dispel these concerns by noting that it was advocating for a novel reimbursement rate calculation methodology because—unlike the products of its competitors and other medical device manufacturers—its Zio XT patch represented a vertically integrated service. However, in part based on the methodological concerns raised by third parties, CMS declined to adopt a uniform national reimbursement rate. Instead, pricing authority reverted to a regional CMS contractor, Novitas, which slashed reimbursement rates for the Zio XT to about $115 (from the then-current rate of $311), causing a steep decline in iRhythm's share price and the resignation of several executives.

The SAC alleges that various statements made by iRhythm executives expressing confidence that CMS would adopt its preferred reimbursement rate amounted to securities fraud. The district court dismissed the SAC, primarily on two grounds. First, the district court found that some alleged misrepresentations fell within the PSLRA's safe harbor provision, which precludes liability for certain "forward-looking statement[s]." *See* 15 U.S.C. § 78u-5(c)(1). Second, relying on our decision in *Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1996), the district court ruled that some alleged misrepresentations were not actionable because they amounted to predictions about the outcome of a regulatory proceeding. *See id.* at 1141 ("[R]eliance on predictive statements in the context of

regulatory proceedings is inherently unreasonable.").[14]  We review dismissal of a complaint for failure to state a claim de novo, taking all facts in the light most favorable to plaintiffs.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021).     In   my   view,   three   of   the   alleged misrepresentations were improperly dismissed because they were neither forward-looking statements nor predictions about the outcome of the CMS rate setting process.

First, Habelt alleges that when answering a question on an earnings call about whether iRhythm had submitted traditional types of cost data to CMS to facilitate the rulemaking process, then Chief Executive Officer (CEO) King stated that CMS "ha[s] everything they can get from us."  While it is undisputed that iRhythm provided certain types of cost data to CMS, Habelt also alleges that iRhythm, with King's knowledge, deliberately withheld certain cost information that it feared might undercut its proposed rate. If true, this allegation supports Habelt's contention that King's statement that iRhythm had submitted all available cost data was factually false and a deliberate attempt to

---

[14] The district court appears to read *Epstein* as shielding all statements about a regulatory proceeding.  But *Epstein* held only that: (1) companies generally have no *affirmative duty* to disclose the progress of regulatory proceedings; and (2) PSLRA claims can't be based on mere predictions about the *outcome* of regulatory proceedings.   83 F.3d at 1141–42. Nothing in *Epstein* suggests that companies can lie about their cooperation with regulators or about concerns expressed by regulators. For the reasons discussed below, even if companies have no obligation to disclose the extent of their cooperation or known regulatory risks, *Epstein* does not displace the general rule that companies must speak truthfully when they choose to speak on voluntary matters, even on matters as to which they have no obligation to speak.

mislead investors about the company's cooperation with regulators.

King's alleged misrepresentation was not forward looking because it concerned cost data that iRhythm had previously submitted.   Thus, it is not covered by the PSLRA's safe harbor.  Moreover, King's statement was not merely a prediction about the outcome of the rate-setting process.  If Habelt's allegations are true, King may have intended to project false confidence that iRhythm's proposed rate would be adopted.   But in so doing, King not only implied a favorable prediction about the outcome of the proceeding, he also allegedly lied about a factual issue—the extent of iRhythm's cooperation with regulators and the information that iRhythm provided to regulators.  Even after *Epstein*, we have held that similar statements are actionable. In *Berson v. Applied Signal Technology., Inc.*, 527 F.3d 982 (9th Cir. 2008), we reversed dismissal of a securities fraud claim related to a government contractor's statement that its backlog of work favorably impacted revenue forecasts, even though much of the backlog was due to the agencies' decisions to stop work on government contracts that would likely never result in future revenue.   *Id.* at 985–87. Specifically, we held that "once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of." *Id.* at 987.  So too here, as alleged.  Although iRhythm may not have had a duty to affirmatively disclose the extent of its cooperation with CMS, once it chose to speak on that issue, it had an obligation to tell the truth.

Second, King stated on a separate investor call that "there [was not] really a basis" for CMS to "lower[ the proposed rate] if there isn't any new data that would suggest that the price of our service would be less."  In essence, King

claimed that in the absence of new data, there would be no reason for CMS to reject iRhythm's proposed rate for the Zio XT. But Habelt alleges that King knew this was factually untrue because: (1) an independent market research firm had submitted a comment to the CMS raising issues with iRhythm's cost methodology; and (2) iRhythm deliberately withheld data from CMS indicating that the true cost of the product was much lower than the proposed rate.

Taking these allegations in the light most favorable to Plaintiffs, King's statement can be read as an attempt to mislead investors about facts regarding existing evidence about the true cost of the Zio XT. Again, the alleged false statement is not forward looking because it concerned the state of market evidence that existed when King made the statement. And again, it is not merely a prediction about the outcome of the ratemaking process because King allegedly lied about a material component of the regulatory process. *See Berson*, 527 F.3d at 985–87.

Finally, then CEO Coyle stated on an investor call that Novitas had not "spoken to [iRhythm] about how pricing was being established" following CMS's decision not to adopt iRhythm's proposed rate in a nationwide final rule.[15] Habelt alleges this statement was untrue because Novitas had directly expressed concerns about iRhythm's pricing methodology to Coyle personally about two months before Coyle made this statement. If Habelt's allegations are true, then Coyle also may have deliberately attempted to mislead investors as to facts relevant to the state of the regulatory process.

---

[15] After CMS declined to adopt a national rate, pricing authority reverted back to Novitas.

This statement was not forward looking because it concerned conversations that iRhythm may or may not have had with the CMS contractor. And it is not protected by *Epstein*, because it is another alleged lie about facts relevant to a material component of the regulatory process. *See Berson*, 527 F.3d at 985–87. In that respect, this alleged misrepresentation is almost identical to another we confronted in *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698 (9th Cir. 2016). There, we reversed dismissal of a securities fraud claim against a company that represented that all available studies supported its application for approval of a new drug to the Food and Drug Administration (FDA). *Id.* at 702–03. Plaintiffs alleged, however, that the FDA had expressed concerns to the company that some of the underlying studies weighed in favor of rejecting the drug. *Id.* We explained that once the company chose to speak about the studies, it was "bound to do so in a manner that wouldn't mislead investors as to potentially negative information within their possession." *Id.* at 707–08 (brackets omitted) (quoting *Berson*, 527 F.3d at 987). The company "did more than just express its confidence in [the product's] future. It affirmatively represented that 'all the animal studies that had been completed' supported [the company's] case for approval" even though the company "knew that the animal studies were *the* sticking point with the FDA." *Id.* at 708 (brackets omitted). Although iRhythm had no duty to reference its discussions with Novitas, once it chose to, it could not misrepresent concerns expressed by Novitas.

I agree with the district court that all other alleged misrepresentations were properly dismissed as either forward-looking statements protected by the PSLRA's safe harbor or predictions about the outcome of the CMS rate-

making process that are properly shielded by our decision in *Epstein*.[16]

## IV.

For all these reasons, I would conclude that Habelt has standing to appeal and reverse the district court's dismissal as to the three alleged misrepresentations discussed above. Thus, I respectfully dissent.

---

[16] In the alternative, the district court dismissed the complaint for failure to allege scienter with the required particularity. In relevant part, this conclusion was based on the premise that "[t]he SAC contains no . . . allegations that Defendants 'affirmatively represented' information about studies, analyses, or other predicate requirements for regulatory approval that had not, in fact, been completed." But for the reasons explained above, I would find that portions of the alleged misrepresentations did exactly that. Thus, I would remand for the district court to reevaluate its scienter holding.