1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  DARREN J. ROBBINS (168593)
   ELLEN GUSIKOFF STEWART (144892)
3  DARRYL J. ALVARADO (253213)
   RACHEL A. COCALIS (312376)
4  T. ALEX B. FOLKERTH (338140)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   darrenr@rgrdlaw.com
7  elleng@rgrdlaw.com
   dalvarado@rgrdlaw.com
8  rcocalis@rgrdlaw.com
   afolkerth@rgrdlaw.com
9
   Lead Counsel for Lead Plaintiff Maryland Electrical
10 Industry Pension Fund and Named Plaintiff York County on
   behalf of the County of York Retirement Fund
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                          OAKLAND DIVISION
14

| | | |
|---|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No. 4:20-cv-07835-JSW (LJC) <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) ) | LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL |
| vs. | ) ) ) | OF PROPOSED SETTLEMENT AND MEMORANDUM OF POINTS AND |
| HP INC., et al., | ) ) ) | AUTHORITIES IN SUPPORT THEREOF |
| Defendants. | ) ) ) | DATE: September 26, 2025 <br> TIME: 9:00 a.m. (via Zoom) <br> JUDGE: Honorable Jeffrey S. White <br> CTRM: 5, 2nd Floor |

4936-6708-3870.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   OVERVIEW OF THE LITIGATION ................................................................. 2

III.  THE SETTLEMENT TERMS ............................................................................ 3

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 5

    A.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class ............... 7

    B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Action ......................................................................................... 8

    C.    The Relief Provided to the Class Is Adequate ....................................................... 8

        1.    The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval ...................................................................................... 8

        2.    The Proposed Method for Distributing Relief Is Effective ..................... 11

        3.    Attorneys' Fees ...................................................................................... 12

        4.    Other Agreements Made in Connection with the Resolution of the Case ....................................................................................................... 13

        5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably ............................................................................... 13

    D.    The Remaining Ninth Circuit Factors Are Satisfied ........................................... 14

        1.    Risk of Maintaining Class Action Status Through Trial ........................ 14

        2.    Experience and Views of Counsel ......................................................... 15

V.   CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE ........................................................................................... 15

    A.    The Requirements of Rule 23(a) Are Met ........................................................... 16

        1.    Numerosity Is Satisfied .......................................................................... 16

        2.    Commonality Is Satisfied ....................................................................... 17

        3.    Typicality Is Satisfied ............................................................................ 18

        4.    Lead Plaintiff and Lead Counsel Are Adequate .................................... 18

    B.    The Requirements of Rule 23(b)(3) Are Also Met .............................................. 19

                                                                                    **Page**

VI.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
        CLASS ARE APPROPRIATE AND SATISFY FEDERAL RULE OF CIVIL
        PROCEDURE 23, THE PSLRA, AND DUE PROCESS ..................................................20

VII.    NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE..................22

VIII.   CONCLUSION...........................................................................................................22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Akins v. Facebook, Inc.*,
    2025 WL 484621 (9th Cir. Feb. 13, 2025) ............................................................................5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).....................................................................................................16, 19

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024).......................................................................10

*Borteanu v. Nikola Corp.*,
    348 F.R.D. 239 (D. Ariz. 2025) ...........................................................................................16

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).......................................................................10

*Ciuffitelli v. Deloitte & Touche LLP*,
    2019 WL 1441634 (D. Or. Mar. 19, 2019)...........................................................................14

*Davis v. Yelp, Inc.*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) .....................................................................10

*Davis v. Yelp, Inc.*,
    2023 WL 3063823 (N.D. Cal. Jan. 27, 2023).......................................................................12

*Davy v. Paragon Coin, Inc.*,
    2020 WL 4460446 (N.D. Cal. June 24, 2020) .....................................................................16

*Destafano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .........................................................................4

*Ferreira v. Funko, Inc.*,
    2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) .....................................................................8

*Fleming v. Impax Lab'ys.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................................17, 19, 20

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022).................................................................12, 14

*Ford v. CEC Ent, Inc.*,
    2015 WL 11439032 (S.D. Cal. July 7, 2015) .......................................................................20

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ...............................................................................................6

**Page**

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................6, 7, 8, 18

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................................18

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).............................................................16, 19

*Hayes v. Magnachip Semiconductor Corp.*,
  2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) .....................................................................16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) ....................................................................4, 6

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ........................7, 9, 11, 13

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ...............................................................................................5

*In re Apple Inc. Sec. Litig.*,
  2024 WL 3297079 (N.D. Cal. June 3, 2024) ......................................................................11

*In re Bluetooth Headset Products Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................6

*In re Celera Corp. Sec. Litig.*,
  2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)....................................................................10

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................................17, 20

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  2023 WL 8443230 (N.D. Cal. Oct. 10, 2023)......................................................................5

*In re Hewlett-Packard Co. Sec. Litig.*,
  2015 WL 13917012 (C.D. Cal. Nov. 9, 2015).......................................................................4

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...........................................................................................5, 20

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................................9

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) .....................................................................18

LP'S NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIM APPROVAL OF
PROP SETTLEMENT & POINTS & AUTH IN SUPPORT THEREOF - 4:20-cv-07835-JSW (LJC)
4936-6708-3870.v1

- iv -

**Page**

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .................................................9

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009).................................................19

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................18

*In re LinkedIn User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015).................................................20

*In re MGM Mirage Sec. Litig.*,
  708 F. App'x 894 (9th Cir. 2017) .................................................21

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................15

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................13

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .................................................9

*In re Resistors Antitrust Litig.*,
  2020 WL 2791922 (N.D. Cal. Mar. 24, 2020).................................................14

*In re Splunk Inc. Sec. Litig.*,
  2024 WL 923777 (N.D. Cal. Mar. 4, 2024).................................................5

*In re Stable Rd. Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .................................................8

*In re Tesla Inc. Sec. Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023),
  *aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) .................................................9

*In re Tezos Sec. Litig.*,
  2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) .................................................12

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) .................................................10

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
  *amending order*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) .................................................17, 20

*In re Viropharma Inc. Sec Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .................................................4

**Page**

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.,*
    *& Prods. Liab. Litig.,*
    2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ................................................................8, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.,*
    *& Prods. Liab. Litig.,*
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .............................................................7, 8, 11

*In re Zynga Inc. Sec. Litig.,*
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .........................................................................13

*Jabbari v. Wells Fargo & Co.,*
    2017 WL 5157608 (N.D. Cal. July 8, 2017),
    *aff'd*, 183 F. App'x 259 (9th Cir. 2020)..................................................................................21

*Low v. Trump Univ., LLC,*
    246 F. Supp. 3d 1295 (S.D. Cal. 2017)...................................................................................11

*Luna v. Marvell Tech. Grp.,*
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........................................................................10

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.,*
    2017 WL 2257130 (E.D. Cal. May 23, 2017) ........................................................................16

*Millan v. Cascade Water Servs., Inc.,*
    310 F.R.D. 593 (E.D. Cal. 2015) ...........................................................................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950)................................................................................................................21

*Norris v. Mazzola,*
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) .......................................................................15

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ............................................................................................17, 18

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.,*
    2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ..........................................................................16

*Redwen v. Sino Clean Energy, Inc.,*
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) .......................................................................9

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ......................................................................................6, 11, 20

*Salazar v. Midwest Servicing Grp., Inc.,*
    2018 WL 3031503 (C.D. Cal. June 4, 2018) ...........................................................................9

Page

*Sayce v. Forescout Techs., Inc.*,
  754 F. Supp. 3d 878 (N.D. Cal. 2024) ....................................................................16

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020) ..........................................................................18

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
  2025 WL 1243818 (N.D. Cal. Apr. 25, 2025) .........................................................17

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ...................................................................13, 15

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993),
  *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ....................................................................11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ...................................................................................6

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ...........................................13, 14, 19

*Wicks v. Alphabet, Inc.*,
  2024 WL 5484607 (N.D. Cal. Apr. 2, 2024) .............................................................6

*Young v. LG Chem Ltd.*,
  2019 WL 4187396 (9th Cir. Sep. 4, 2019) ................................................................5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b).....................................................................................................................2
  §78t(a)......................................................................................................................2
  §78u-4 ......................................................................................................................1
  §78u-4(a)(4) .......................................................................................................4, 22

**Page**

Federal Rules of Civil Procedure

Rule 23 ................................................................................................................21

Rule 23(a) ....................................................................................................16, 20

Rule 23(a)(1) ......................................................................................................16

Rule 23(a)(2) ......................................................................................................17

Rule 23(a)(3) ......................................................................................................18

Rule 23(a)(4) ......................................................................................................18

Rule 23(b)(3) ......................................................................................16, 19, 20

Rule 23(c)(2)(B) ................................................................................................20

Rule 23(e) .........................................................................................................2, 6

Rule 23(e)(1) ................................................................................................6, 20

Rule 23(e)(1)(B) ................................................................................................15

Rule 23(e)(2) ..........................................................................................6, 7, 15

Rule 23(e)(2)(A) ..................................................................................................7

Rule 23(e)(2)(B) ..................................................................................................8

Rule 23(e)(2)(C)(i) ..............................................................................................8

Rule 23(e)(2)(C)(ii) ..........................................................................................11

Rule 23(e)(2)(C)(iii) ..........................................................................................12

Rule 23(e)(2)(C)(iv) ..........................................................................................13

Rule 23(e)(2)(D) ................................................................................................13

Rule 23(g) ..........................................................................................................20

Rule 23(h)(1) ......................................................................................................21

## SECONDARY AUTHORITIES

*Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review,*
Edward Flores and Svetlana Starykh (NERA Jan. 22, 2025) .................................................11

LP'S NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIM APPROVAL OF
PROP SETTLEMENT & POINTS & AUTH IN SUPPORT THEREOF - 4:20-cv-07835-JSW (LJC)
4936-6708-3870.v1

- viii -

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 26, 2025, at 9:00 a.m., lead plaintiff Maryland Electrical Industry Pension Fund ("Lead Plaintiff") will and hereby does move the Court for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned action ("Action" or "Litigation"); (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation[1]; (3) authorizing the retention of Verita Global as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Class; and (5) setting a hearing date for final approval of the Settlement ("Final Approval Hearing"), as well as the schedule for various deadlines in connection with the Settlement.

This unopposed motion is supported by the below memorandum of points and authorities and Appendix A thereto, the Alvarado Declaration and exhibits attached thereto, the Stipulation and exhibits thereto, and the Declaration of Ross D. Murray Regarding Notice and Administration ("Murray Declaration" or "Murray Decl."), filed herewith.

A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation of Settlement dated August 18, 2025 ("Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Darryl J. Alvarado in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement ("Alvarado Declaration" or "Alvarado Decl."), submitted herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court will likely be able to certify the Class for purposes of effectuating the Settlement.

2.      Whether the Court will likely be able to approve the proposed $39 million Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class ("Class Members").

3.      Whether the proposed form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Proof of Claim" or "Claim Form"), and Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), and the plan for disseminating notice to Class Members, should be approved.

4.      Whether the Court should schedule a Final Approval Hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Following arm's-length negotiations, including formal mediation, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for a payment of $39 million for the Class's benefit.  Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlement.

As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of David M. Murphy of Phillips ADR Enterprises ("Mr. Murphy"), a highly respected mediator with extensive experience in litigating and mediating complex securities litigation.  Lead Plaintiff reached the Settlement only after it had a thorough appreciation for the strengths and weaknesses of the case.  As detailed herein, the Settlement was not reached until Lead Counsel had: (i) thoroughly investigated the allegations; (ii) drafted and filed a detailed Consolidated Complaint for Violation of the Federal Securities Laws (ECF 37) ("Complaint"); (iii) opposed Defendants' motion to dismiss the Complaint; (iv) successfully obtained appellate reversal of the Court's motion to dismiss order; (v) successfully opposed Defendants' renewed motion to dismiss in large part; (vi) opposed Defendants' motion for interlocutory appeal and opposed Defendants' appeal; and (vii) prepared a detailed mediation statement and participated in a lengthy mediation process with Mr. Murphy, which ultimately resulted in the Settling Parties accepting a mediator's proposal.  As set forth below, the Settlement is a very strong result that falls well within the range of possible approval.

Lead Plaintiff also requests certification for settlement purposes of a Class of all Persons who purchased or otherwise acquired HP common stock between November 5, 2015, and June 21, 2016, inclusive ("Class Period"), and approval of the form and substance of the Notice, Proof of Claim, and Summary Notice, appended as Exhibits A-1, A-2, and A-3, respectively, to the Stipulation. Lead Plaintiff also seeks the Court's approval of Verita Global as Claims Administrator and the means and methods for disseminating notice of the Settlement, and a finding that such notice comports with due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*

The Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  Once the Court grants preliminary approval, Lead Plaintiff will be able to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

## II.    OVERVIEW OF THE LITIGATION

The Litigation is currently pending before Senior District Judge Jeffrey S. White in the United States District Court for the Northern District of California.[2]  The initial complaint in the Litigation was filed on November 5, 2020.  On February 11, 2021, the Court appointed Maryland Electrical as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On April 21, 2021, Lead Plaintiff filed the operative Complaint alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934.  On June 21, 2021, Defendants moved to dismiss the Complaint.  Lead Plaintiff filed its opposition to the motion on August 20, 2021, and Defendants filed their reply on October 4, 2021.  On March 3, 2022, the Court issued an order granting Defendants' motion to dismiss on statute of limitations grounds.

Lead Plaintiff timely appealed the motion to dismiss order to the Ninth Circuit Court of Appeals, and after full briefing, on April 11, 2023, the Ninth Circuit reversed the Court's holding, and remanded the case to this Court for further proceedings.

On July 21, 2023, Defendants filed a renewed motion to dismiss (the "Renewed Motion").  Lead Plaintiff opposed the Renewed Motion, and Defendants filed their reply.  On March 27, 2024, the Court granted in part and denied in part the Renewed Motion.

On April 26, 2024, Defendants filed a Motion to Certify Order for Interlocutory Appeal Under 28 U.S.C. §1292(b).  Lead Plaintiff opposed the motion; Defendants filed a reply.  The Court granted the Motion for Interlocutory Appeal on June 3, 2024.  On August 8, 2024, the Ninth Circuit granted Defendants' Petition to Appeal Under 28 U.S.C. §1292(b).  Defendants filed their opening brief in support of their appeal on October 28, 2024.  Lead Plaintiff filed an answering brief on

---

[2]    The case was initially assigned to Judge Lucy Koh, who recused herself on December 2, 2020.  The case was reassigned to Judge White on December 3, 2020.

1    December 27, 2024.  Defendants filed their reply on February 18, 2025.  No oral argument date had

2    been set when this Settlement was reached.

3        On April 30, 2025, Lead Plaintiff and Defendants participated in a confidential mediation

4    session with Mr. Murphy.  The mediation session was preceded by the submission and exchange of

5    mediation statements by both Lead Plaintiff and Defendants.  The Parties engaged in day-long,

6    good-faith negotiations, but the litigation did not settle.  The Parties continued their negotiations

7    through Mr. Murphy, and on July 12, 2025, Mr. Murphy issued a mediator's proposal to settle the

8    Litigation for $39 million, to be paid by Defendants and/or their insurers on behalf of Defendants for

9    the benefit of the Class, subject to the negotiation of the terms of a stipulation of settlement and

10    approval by the Court.  The Parties accepted the proposal on July 17, 2025.

11        The Parties' agreement to settle the Litigation was memorialized in a term sheet executed on

12    July 28, 2025.

13        The Stipulation (together with the Exhibits thereto and the Supplemental Agreement) reflects

14    the final and binding agreement among the Settling Parties.

15        In sum, the Settlement was reached only after extensive motion practice and arm's-length

16    settlement negotiations.  Accordingly, Lead Plaintiff and Lead Counsel were well informed of the

17    strengths and weaknesses of Lead Plaintiff's claims, as well as the risks of continued litigation, and

18    had a strong foundation for negotiating the Settlement.

19    **III.    THE SETTLEMENT TERMS**

20        This Settlement requires Defendants to pay, or cause to be paid, $39 million into the Escrow

21    Account, which amount, plus interest, comprises the Settlement Fund.  Stipulation, ¶2.2.  Notice to

22    the Class and the cost of settlement administration ("Notice and Administration Expenses") will be

23    funded by the Settlement Fund.  *Id.*, ¶2.11.  Lead Plaintiff proposes that Verita Global, a nationally

24    recognized class action settlement administrator, be retained subject to the Court's approval.  Verita

25    Global was chosen because of its experience and the quality of its work in prior engagements for

26    Lead Counsel, and thus is best suited to execute the claims administration in this Action.  Lead

27    Counsel respectfully requests that the Court approve its selection.  Based on the estimates provided

28    by the proposed Claims Administrator, and assuming that no unexpected or extraordinary issues

1    arise, Verita Global expects notice and claims administration costs to be approximately $1,854,000

2    through the initial distribution.  Murray Decl., ¶27.  The proposed notice plan and plan for claims

3    processing is discussed below in §§IV.C.5. and VI. and in the Murray Declaration.

4         The Notice and Summary Notice provide that Lead Counsel will move for: (a) final approval

5    of the Settlement; (b) an award of attorneys' fees in the amount not to exceed 30% of the Settlement

6    Amount; (c) payment of expenses or charges resulting from the prosecution of the Action not to

7    exceed $250,000; (d) interest on such fees and expenses at the same rate and for the same period as

8    is earned by the Settlement Fund; and (e) an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-

9    4(a)(4) not to exceed $7,500 in connection with its representation of the Class.  The Notice explains

10   that such fees, expenses, and any award shall be paid from the Settlement Fund.

11        Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

12   attorneys' fees and expenses and any award to Lead Plaintiff have been paid from the Settlement

13   Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-

14   approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a

15   distribution of at least $10.00.[3]  Any amount remaining following the distribution shall be

16   redistributed in an economically feasible manner until it is no longer feasible to do so, at which time

17   any *de minimis* residual will be donated, subject to Court approval, to the Council of Institutional

18   Investors, a non-profit "that advocates for corporate governance measures and shareowner rights."

19   *In re Hewlett-Packard Co. Sec. Litig.*, 2015 WL 13917012, at *2 (C.D. Cal. Nov. 9, 2015)

20   (approving Council of Institutional Investors as a cy pres recipient); *In re Viropharma Inc. Sec Litig.*,

21   2016 WL 312108, at *15 (E.D. Pa. Jan. 25, 2016) (same).  The Plan of Allocation treats all Class

22   Members equitably based on the timing and amount of their HP stock purchases, acquisitions, and

23   any sales.

24

25   _____

[3]   It is standard practice in securities class actions to utilize a $10 minimum check threshold.  *See,*

26   *e.g.*, *Destafano v. Zynga, Inc.*, 2016 WL 537946, at *4 (N.D. Cal. Feb. 11, 2016) ("[N]o Settlement
     Class Member will be issued a check for a Recognized Loss of less than $10.00 due to the expenses

27   associated with administering the claims."); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12
     (N.D. Cal. Sep. 4, 2018) ("*Wells Fargo I*") (approving $10 minimum and noting that "'numerous

28   cases . . . have approved similar or higher minimum thresholds'") (alteration in original).

The Settling Parties have also entered into a Supplemental Agreement, which provides that if requests for exclusion from the Class by Persons who would otherwise be Class Members but who timely and validly request exclusion from the Class exceed a certain threshold prior to the Final Approval Hearing, HP shall have the option (but not the obligation) to terminate the Settlement. Stipulation, ¶7.3.  This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement.  *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair.").

Next, in exchange for the benefits provided under the Stipulation, Class Members will release "all claims and causes of action of every nature and description, whether known or unknown, including Unknown Claims . . . that relate to (1) the purchase or acquisition of HP common stock during the Class Period; and (2) the conduct, acts, facts, statements, or omissions that were or could have been alleged by Lead Plaintiff in the Litigation."  Stipulation, ¶1.24.  This release is limited to claims that relate to both the Complaint's factual allegations and to the purchase or acquisition of HP common stock and therefore ensure that only claims "'based on the identical factual predicate as that underlying the claims in the settled class action'" are released.  *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 8443230, at *5 (N.D. Cal. Oct. 10, 2023) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)), *aff'd sub nom.*, *Akins v. Facebook, Inc.*, 2025 WL 484621 (9th Cir. Feb. 13, 2025)).

Lastly, under the terms of the Stipulation, there is no clear sailing agreement, and Defendants have no right to the return of the Settlement Fund for any reason upon the occurrence of the Effective Date.  Stipulation, ¶2.14; *see also* N.D. Cal. Guid. 1(g) (requiring the disclosure of any reversions).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Young v. LG Chem Ltd.*, 2019 WL 4187396, at *1 (9th Cir.

Sep. 4, 2019) (same). "'Settlement is the offspring of compromise; the question [that courts] address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Wells Fargo I*, 2018 WL 4207245, at *8; *Wicks v. Alphabet, Inc.*, 2024 WL 5484607, at *3 (N.D. Cal. Apr. 2, 2024) ("[A] court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class."). Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action. Approval is a two-step process. *Wells Fargo I*, 2018 WL 4207245, at *7. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court must consider whether Lead Plaintiff and Lead Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." *Id*. In addition, the Ninth Circuit uses the following factors for preliminary approval, several of which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and the factors identified in *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

As discussed below, the proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that notice of the proposed Settlement should be provided to the Class in advance of the Final Approval Hearing.

### A.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors "look[] . . . to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Rule 23(e)(2) Advisory Committee notes to 2018 amendment.  This Settlement bears all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the class.  This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery completed and the stage of the proceedings."  *Hanlon*, 150 F.3d at 1026.  As explained above, Lead Plaintiff and its counsel satisfy this factor because they have diligently prosecuted this Action for the last five years.  *See supra*, §§I.-II.  Given Lead Plaintiff's and Lead Counsel's demonstrated prosecution of the Action, it is indisputable that they have adequately represented the Class.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where the "[l]ead [c]ounsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) ("*Wells Fargo II*") (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel 'possessed "sufficient information to make an informed decision about settlement"'"), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

**B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Action**

The Rule 23(e)(2)(B) factor asks whether "the [settlement] proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Here, the Settlement was achieved only after the Parties engaged in a full-day mediation process before Mr. Murphy of Phillips ADR, as well as weeks of additional negotiations, which resulted in a $39 million mediator's proposal.  As part of the settlement discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their respective views on the merits of the Action.  *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead Counsel also attests that both sides engaged in a series of intensive, arm's-length negotiations before they reached an agreement in principle to settle. . . .  There is no reason to doubt the veracity of Lead Counsel's representations.").  The foregoing evinces that the Settlement is "the product of serious, informed, and noncollusive negotiations."  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *4-*5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*"); *see also In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. Apr. 23, 2024) ("The Ninth Circuit, as well as courts in this District, 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement."); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022) ("'The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'").

**C.    The Relief Provided to the Class Is Adequate**

**1.    The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval**

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement" (*Hanlon*, 150 F.3d at 1026) are also satisfied because the $39 million recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation.  Securities cases like the present one "'are highly complex and

1  . . . securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL

2  6619983, at *13.

3        While Lead Plaintiff remains confident in its ability to ultimately prove the claims that

4  survived the Renewed Motion, and that it would prevail on Defendants' pending appeal, further

5  litigation – including class certification, summary judgment, and trial – is always a risky proposition.

6  *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018)

7  (A "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of

8  approval.").  Further, complex securities fraud class actions such as this one present myriad risks that

9  a plaintiff must overcome in order to ultimately secure a recovery.  *See, e.g.*, *Redwen v. Sino Clean*

10  *Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Various issues would require

11  extensive discovery and motion and trial practice, including proof of material misrepresentations,

12  scienter and loss causation.  Courts experienced with securities fraud litigation "'routinely recognize

13  that securities class actions present hurdles to proving liability that are difficult for plaintiffs to

14  clear."'").[4]

15        While Lead Plaintiff would be required to prove all elements of its claims to prevail,

16  Defendants could potentially defeat the entire Action with only one successful defense.  Indeed,

17  Defendants made several credible arguments that the Court at summary judgment, a jury at trial, or

18  an appellate court could have accepted.  For example, had the Action continued, Defendants would

19  have continued to vigorously contest the core elements of falsity and scienter.  *See, e.g.*, *In re*

20  *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of

21  scienter . . . [is] complex and difficult to establish at trial.").  For example, Defendants would have

22  continued to argue at summary judgment or trial that their statements were forward-looking

23  statements protected by the safe harbor or were not false or misleading in light of Defendants'

24

25

---

26  [4]    *See also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary
      judgment in favor of defendants); *In re Tesla Inc. Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal.
27  June 14, 2023) (jury returned verdict for defendants despite grant of partial summary judgment in
      plaintiff's favor), *aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024); *In re JDS Uniphase Corp. Sec.*
28  *Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict in defendants' favor).

1   disclosures.  For similar reasons, Defendants would likely have argued that they had no scienter,

2   citing the SEC's scienter observations and the lack of any alleged insider sales.

3        Likewise, Defendants likely would have vigorously contested price impact, loss causation,

4   and damages at class certification, summary judgment, and trial.  *Baron v. HyreCar Inc.*, 2024 WL

5   3504234, at *8 (C.D. Cal. July 19, 2024) ("'In any securities litigation case, it is difficult for plaintiff

6   to prove loss causation and damages at trial.'").  For example, Defendants likely would have argued

7   that Lead Plaintiff would be unable to prove loss causation given the nature of the alleged corrective

8   disclosures and the stock price reactions following those disclosures.  Defendants also would likely

9   have presented evidence from a well-qualified expert who would opine that the Class's damages

10  were small or non-existent.  As such, the trial likely would involve "'a battle of experts,'" with "no

11  guarantee whom the jury would believe'" and the possibility of damages materially reduced or

12  eliminated.  *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022) ("*Yelp I*").  In

13  sum, Defendants had "plausible defenses that could have ultimately left class members with a

14  reduced or non-existent recovery" which weighs in favor of approving the Settlement.  *In re*

15  *TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).  Indeed, absent

16  settlement now, the Parties would face years of litigation to bring this Action to a final resolution,

17  including fact and expert discovery, contest class certification, dispositive motions, trial, and likely

18  post-trial appeals.  *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct.

19  10, 2019) (addressing another securities class action in which shareholders had still not received any

20  recovery "two years after jury verdict in plaintiffs' favor and ten years after the case was filed").

21       Thus, even assuming Lead Plaintiff prevailed on appeal, risks related to proving falsity,

22  materiality, scienter, loss causation, and damages present significant obstacles to Lead Plaintiff's

23  success at summary judgment and trial.  *See, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303,

24  at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead

25  Plaintiff to prove loss causation and damages at trial. . . .  Lead Plaintiff would risk recovering

26  nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal.

27  Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial).

28

1    Lead Plaintiff would also need to prevail at summary judgment, pretrial motions, trial, and

2    subsequent appeals, a process that could possibly extend for many years.  Settlement is favored

3    where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents

4    numerous risks beyond the "'inherent risks of litigation.'"  *Low v. Trump Univ., LLC*, 246 F. Supp.

5    3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec.*

6    *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *In re Apple Inc.*

7    *Sec. Litig.*, 2024 WL 3297079, at *3 (N.D. Cal. June 3, 2024) ("Further litigation, absent settlement

8    would likely be lengthy and would present several difficulties to resolve."); *Volkswagen II*, 2019 WL

9    2077847, at *2 ("[E]ven if Plaintiffs had prevailed, their recovery – after class certification, trial, and

10    appeals – would have come years in the future.  Taking $48 million now, instead of holding out for

11    the chance of $147 million at some point in the future, is a sensible decision.").

12    The $39 million Settlement is an exceptional result that balances the risks, costs, and delay

13    inherent in complex cases evenly with respect to all parties.  Lead Plaintiff negotiated a Settlement

14    that recovers approximately 25% of the estimated reasonably recoverable damages.  This result is

15    orders of magnitude larger than the median ratio of settlements to investor losses in securities cases

16    in 2024.  *See* Alvarado Decl., Ex. 2 (Edward Flores and Svetlana Starykh, *Recent Trends in*

17    *Securities Class Action Litigation: 2024 Full-Year Review* at 27, Fig. 24 (NERA Jan. 22, 2025)

18    (median ratio of settlement to investor losses was 1.2% in 2024)); *see Hefler*, 2018 WL 6619983, at

19    *6 ("[C]ounsel's preliminary approval motion included information regarding the settlement

20    outcomes of similar cases, further indicating that counsel 'had an adequate information base' when

21    negotiating the settlement.").

22    Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for

23    preliminary approval.  Considering the risks of continued litigation and the time and expense that

24    would be incurred to prosecute the Action through a trial, the $39 million Settlement is a strong

25    recovery that is in the Class's best interests.

26    ### 2.    The Proposed Method for Distributing Relief Is Effective

27    As demonstrated below in §VI. and in the Murray Declaration, the methods of proposed

28    notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan

includes direct mail notice to all those who can be identified with reasonable effort. In addition, a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Murray Decl., ¶¶6-18.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's estimation of the amount of artificial inflation in the prices of HP common stock during the Class Period. A thorough claim review process, including how deficiencies are addressed, is also explained in the Murray Declaration. *Id.*, ¶¶24-26.

### 3. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed above (*supra*, §III), Lead Counsel intends to seek an award of attorneys' fees not to exceed 30% of the Settlement Amount and expenses in an amount not to exceed $250,000, plus interest on both amounts. Lead Counsel's lodestar to date is approximately $5.4 million.[5] This fee request reflects the successful result achieved for the Class in light of the risks faced and overcome, and is consistent with awards in similar complex class action cases. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% fees on $33 million securities class action settlement); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ("*Yelp II*") (awarding 33.3% of $22.5 million and over $930,000 in litigation expenses); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund).

---

[5]   If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at the final approval stage, after further detailed review and adjustment of its contemporaneous daily time entries to account for billing judgment.

Approval of the requested attorneys' fee and expense application is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation, ¶6.4.

### 4.    Other Agreements Made in Connection with the Resolution of the Case

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement.  As detailed above, the Parties have entered into a standard confidential supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of requests for exclusion from the Class equals or exceeds an agreed-upon threshold, HP shall have the option to terminate the Settlement.  Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").  While the Supplemental Agreement is identified in the Stipulation, ¶7.3, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[6]

### 5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats class members equitably relative to each other.  Drafted with the assistance of Lead Plaintiff's damages consultant, the Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

The Plan, set forth in the Notice (Stipulation, Ex. A-1 at 12-16), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.18) to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  In developing the Plan, Lead Plaintiff's damages consultant calculated the potential amount of estimated alleged artificial inflation

---

[6]    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

1   in HP common stock proximately caused by Defendants' alleged false and misleading statements

2   and material omissions.  To do this, Lead Plaintiff's damages consultant considered, among other

3   things, the market and industry adjusted price changes in HP common stock prices following certain

4   corrective disclosures regarding HP and the allegations in the Complaint.  Based on the formula in

5   the Plan, a "Recognized Loss Amount" will be calculated for each transaction in HP common stock.

6   The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on

7   the relative size of their Recognized Loss Amount.  The amount of the payment will depend on,

8   among other factors, how many Class Members file valid claims, and the aggregate value of the

9   Recognized Loss Amounts represented by valid and acceptable Claim Forms.

10        Lead Plaintiff, just like all other Class Members, will be subject to the same formula for

11   distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18

12   (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to

13   Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class

14   Members and Class Representatives equally in that they will receive a *pro rata* distribution based of

15   the Settlement Fund based on their net losses").  Courts have previously found plans that award *pro

16   rata* shares to each class member to be fair and reasonable.  *See, e.g.*, *Vataj*, 2021 WL 1550478, at

17   *10 ("The Settlement Fund will thus be distributed on a *pro rata* basis according to each class

18   member's recognized loss."); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2-*3 (N.D. Cal.

19   Mar. 24, 2020) (approving plan of allocation using *pro rata* basis of distribution).  Accordingly, the

20   Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

21        **D.    The Remaining Ninth Circuit Factors Are Satisfied**

22             **1.    Risk of Maintaining Class Action Status Through Trial**

23        The issue of class certification had not yet been briefed when the Settlement was reached.

24   Even if the Class were initially certified, Defendants could have moved to decertify the Class or

25   shorten the Class Period.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *6 ("[T]here is always a risk of

26   decertification – especially when, as here, Plaintiffs must overcome causation and damages

27   defenses.").  Accordingly, this factor supports preliminary approval.

28

### 2.    Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017). "[I]ndeed a presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5. Lead Counsel here has significant experience in securities and other complex class action litigation and has negotiated scores of substantial class action settlements throughout the country. *See* www.rgrdlaw.com. And by the time settlement discussions began, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. *Supra*, §§I.-II. "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. Given the litigation risks involved, the complexity of the underlying issues, and the skill of Defendants' Counsel, the $39 million recovery is significant. It could not have been achieved without the full commitment of Lead Plaintiff and its counsel. The Settlement is fair, adequate, and reasonable, and notice should be sent to the Class.

## V.    CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to certification of the following Class: "all Persons who purchased or otherwise acquired HP common stock between November 5, 2015, and June 21, 2016, inclusive, and were allegedly damaged thereby." Stipulation, ¶1.4.[7] The Class is the same that is alleged in the Complaint. *See* Complaint, ¶¶11, 214.

At this stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Class at final approval. Fed. R. Civ. P. 23(e)(1)(B). As set forth below, the Class

---

[7]    Excluded from the Class are: "Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion." *Id.*

1  satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of

2  representation) as well as the requirements of Rule 23(b)(3).  *See Amchem Prods., Inc. v. Windsor*,

3  521 U.S. 591, 614 (1997).

4      **A.**    **The Requirements of Rule 23(a) Are Met**

5          **1.**    **Numerosity Is Satisfied**

6        The numerosity requirement is met where the party seeking certification shows the class is

7  "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  This does not

8  mean that joinder is impossible, but rather "'only that the court must find that the difficulty or

9  inconvenience of joining all members of the class makes class litigation desirable.'"  *McCulloch v.*

10  *Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 2257130, at *7 (E.D. Cal. May 23, 2017)

11  (quoting *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015)).  "While no

12  specific minimum number of potential class members exists, a 'proposed class of at least forty

13  members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro*

14  *Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016); *see Davy v. Paragon Coin, Inc.*,

15  2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020) ("Although '[t]here is no absolute minimum

16  number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render

17  joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25

18  class members[.]'") (alterations in original).  In assessing this requirement here, "'[t]he Court

19  certainly may infer that, when a corporation has millions of shares trading on a national exchange,'

20  the numerosity requirement is met." *Hayes v. Magnachip Semiconductor Corp.*, 2016 WL 7406418,

21  at *3 (N.D. Cal. Dec. 22, 2016).  "'In cases involving securities traded on national stock exchanges,

22  numerosity is practically a given.'"  *Sayce v. Forescout Techs., Inc.*, 754 F. Supp. 3d 878, 900 (N.D.

23  Cal. 2024).

24        HP common stock trades globally on the New York Stock Exchange market, and had more

25  than 1.8 billion shares outstanding during the Class Period.  Complaint, ¶215.  This easily establishes

26  numerosity.  *See Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 251 (D. Ariz. 2025) (noting that

27  millions of outstanding shares traded on a national exchange sufficient to show numerosity); *Police*

28  *Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *4 (N.D. Cal. Jan. 21, 2021)

1   (between 40 and 49 million shares outstanding); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628,

2   634 (C.D. Cal. 2009) (36 million shares outstanding).

### 2.    Commonality Is Satisfied

4           Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the

5   class." Fed. R. Civ. P. 23(a)(2). "Plaintiffs need not show . . . that 'every question in the case, or

6   even a preponderance of questions, is capable of class wide resolution. So long as there is "even a

7   single common question," a would-be class can satisfy the commonality requirement of Rule

8   23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *SEB Inv. Mgmt. AB v. Wells Fargo

9   & Co.*, 2025 WL 1243818, at *3 (N.D. Cal. Apr. 25, 2025). "Commonality exists where 'the

10  circumstances of each particular class member vary but retain a common core of factual or legal

11  issues with the rest of the class.'" *Fleming v. Impax Lab'ys.*, 2021 WL 5447008, at *6 (N.D. Cal.

12  Nov. 22, 2021). "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and

13  which plaintiffs here, satisfy very easily." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5

14  (N.D. Cal. Jan. 13, 2005), *amending order*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005).

15          Class Members have allegedly suffered a common injury – losses on their investments in HP

16  common stock – and their claims depend upon numerous common issues capable of class-wide

17  resolution, including: (i) whether Defendants' public statements during the Class Period contained

18  material misrepresentations and omissions concerning the Company's supplies business; (ii) whether

19  Defendants engaged in a scheme to defraud investors; (iii) whether Defendants' misrepresentations

20  and omissions concerning the state of the Company were material; (iv) whether Defendants acted

21  knowingly or recklessly (*i.e.*, with scienter); (v) whether the Individual Defendants controlled HP

22  and its alleged violations of the securities laws; (vi) whether the market price of HP common stock

23  was artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vii)

24  whether Defendants' alleged misrepresentations and omissions caused Class Members to suffer a

25  compensable loss; and (viii) whether Class Members have sustained damages, and the proper

26  measure of damages. "Although the amount to which each class member is entitled will differ, the

27  issues described above are common to the proposed Settlement Class. Accordingly, the Court finds

28  that the commonality requirement is met in this case." *Fleming*, 2021 WL 5447008, at *6.

1

### 3. Typicality Is Satisfied

2    Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the

3    claims of the class. The typicality requirement "imposes only a modest burden." *In re Lendingclub*

4    *Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). "The test of typicality is 'whether other

5    members have the same or similar injury, whether the action is based on conduct which is not unique

6    to the named plaintiffs, and whether other class members have been injured by the same course of

7    conduct.'" *Parsons*, 754 F.3d at 685. "The purpose of the typicality requirement is to 'assure that

8    the interest of the named representative aligns with the interests of the class.'" *In re Intuitive*

9    *Surgical Sec. Litig.*, 2016 WL 7425926, at \*5 (N.D. Cal. Dec. 22, 2016) (quoting *Hanon v.*

10   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "'Under the rule's permissive standards,

11   representative claims are "typical" if they are reasonably coextensive with those of absent class

12   members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

13   Here, Lead Plaintiff's claims are "typical" of other Class Members' claims because they arise

14   out of the same alleged course of conduct, and Lead Plaintiff and all other Class Members allege that

15   they purchased HP common stock during the Class Period at prices artificially inflated due to

16   Defendants' material misstatements and omissions, and were damaged when the truth emerged.

17   Thus, Lead Plaintiff and the Class assert the same legal claims and will rely on the same facts and

18   legal theories to establish liability.

19

### 4. Lead Plaintiff and Lead Counsel Are Adequate

20   Under Rule 23(a)(4), the class representative must "fairly and adequately protect the interests

21   of the class." The adequacy prerequisite is concerned with two questions: "'(1) do the named

22   plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the

23   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *SEB Inv.*

24   *Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284-85 (N.D. Cal. 2020) (alteration in original)

25   (quoting *Hanlon*, 150 F.3d at 1020).

26   Lead Plaintiff and Lead Counsel readily satisfy adequacy. First, based upon its purchase of

27   HP common stock during the Class Period and the losses suffered as a result of Defendants' alleged

28   misconduct, Lead Plaintiff's interests are directly aligned with – rather than antagonistic to – the

1  interests of other Class Members, who were injured by the same alleged materially false and

2  misleading statements and omissions as Lead Plaintiff.  Second, there is no evidence of conflicts

3  between Lead Plaintiff and the Class.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584,

4  590 (N.D. Cal. 2009) (finding that the class representatives were adequate because there was no

5  evidence of conflicts of interest with the class).

6      Lead Plaintiff has also retained counsel who satisfy the adequacy requirement.  "[Robbins

7  Geller] have extensive experience with complex securities litigation, including as lead counsel in

8  PSLRA cases litigated in this district, and have been praised by numerous judges for the quality of

9  the firm's representation in class action litigation."  *Fleming*, 2021 WL 5447008, at *7.  As its

10  actions in this case and others demonstrate, Lead Plaintiff's chosen counsel has committed, and is

11  willing to commit, considerable resources to prosecuting this Action, and has vigorously represented

12  the Class's interests.  Thus, the adequacy requirement is satisfied.

13      **B.      The Requirements of Rule 23(b)(3) Are Also Met**

14      Lead Plaintiff seeks to certify the Class pursuant to Rule 23(b)(3), under which certification

15  is appropriate where: (1) questions of law or fact common to class members predominate over

16  questions affecting only individual members; and (2) a class action is superior to other available

17  methods for the fair and efficient adjudication of the controversy.  These requirements are readily

18  satisfied here.

19      The predominance inquiry of Rule 23(b)(3) asks whether "'proposed classes are sufficiently

20  cohesive to warrant adjudication by representation.'"  *Hatamian*, 2016 WL 1042502, at *3.  As the

21  Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging

22  consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625.

23      Here, the common questions identified above clearly predominate over individual questions

24  because Defendants' alleged fraudulent statements and omissions affected all Class Members in the

25  same manner (*i.e.*, through public statements made to the market and documents publicly filed with

26  the United States Securities and Exchange Commission).  *Vataj*, 2021 WL 1550478, at *6 (finding

27  common questions predominate where same operative facts apply to each class member).  Moreover,

28  virtually all of the elements under §10(b) involve common questions of law and fact that

1  predominate over individualized issues.  *Fleming*, 2021 WL 5447008, at *6; *Cooper*, 254 F.R.D. at

2  640.

3       Finally, the superiority element of Rule 23(b)(3) tests whether class treatment is "superior to

4  other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

5  23(b)(3).  In cases like this one, where "'recovery on an individual basis would be dwarfed by the

6  cost of litigating on an individual basis,'" a class action is the superior method of adjudication.[8]  *In*

7  *re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *see also VeriSign*, 2005 WL

8  7877645, at *9 ("Class actions are particularly well-suited in the context of securities litigation,

9  wherein geographically dispersed shareholders with relatively small holdings would otherwise have

10  difficulty in challenging wealthy corporate defendants.").  Moreover, Lead Plaintiff is not aware of

11  any other pending actions seeking similar relief.

12       In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues

13  that would prevent the Court from certifying the Class for settlement purposes, appointing Lead

14  Plaintiff as class representative, and appointing Lead Counsel as class counsel pursuant to Rule

15  23(g).

16  **VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO**
   **THE CLASS ARE APPROPRIATE AND SATISFY FEDERAL RULE OF**
17  **CIVIL PROCEDURE 23, THE PSLRA, AND DUE PROCESS**

18       Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable

19  under the circumstances, including individual notice to all members who can be identified through

20  reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  Courts evaluating

21  proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the

22  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

23  come forward and be heard."'"  *Rodriguez*, 563 F.3d at 962.

24

---

25  [8]    When a class is seeking certification for purposes of settlement, "the superiority inquiry focuses
26  "'on the efficiency and economy elements of the class action so that cases allowed under [Rule
   23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'"'  *Ford v. CEC*
27  *Ent., Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (alteration in original); *Hyundai*, 926
   F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and
28  settlement classes" and "manageability is not a concern in certifying a settlement class.").

Here, Lead Plaintiff proposes to send, by email or first class mail, postage prepaid, individual copies of the Summary Notice to all potential Class Members who can reasonably be identified and located. Murray Decl., ¶¶6-7; Preliminary Approval Order, ¶10. The Summary Notice will also be published in *The Wall Street Journal* and over a national newswire service. Preliminary Approval Order, ¶10. The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *see also Jabbari v. Wells Fargo & Co.*, 2017 WL 5157608, at *6 (N.D. Cal. July 8, 2017) (finding notice and notice plan which "adequately advise the Settlement Class about: A. The class action; B. The terms of the proposed Settlement, the benefits available to each Settlement Class Member, and proposed fees and costs to Class Counsel; C. Each Settlement Class Member's right to object or opt out of the settlement, and the timing and procedures for doing so; D. Preliminary court approval of the proposed Settlement; and E. The date of the Fairness Hearing as well as the rights of Settlement Class Members to file documentation in support of or in opposition to and appear in connection with said hearing" fully satisfied Rule 23 and due process requirements), *aff'd*, 183 F. App'x 259 (9th Cir. 2020).

The proposed full-length Notice, which will be placed on the Settlement website, provides detailed information in plain English.[9] The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Also, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed plan satisfies this requirement. Class Members will be

---

[9] The Notice describes the proposed Settlement and sets forth, among other things: (i) the nature, history, and status of the Action; (ii) the definition of the Class and who is excluded; (iii) the reasons the Parties have proposed the Settlement; (iv) the amount of the Settlement Fund; (v) the estimated average distribution per damaged share; (vi) the Class's claims and issues; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and place of the Final Approval Hearing.

1  informed that Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed

2  30% of the Settlement Amount and litigation expenses not to exceed $250,000, to be paid from the

3  Settlement Fund, plus the interest earned on both amounts.  Class Members will also be advised that

4  Lead Plaintiff may seek an award not to exceed $7,500 pursuant to 15 U.S.C. §78u-4(a)(4) in

5  connection with its representations of the Class.

6        In sum, the notice program proposed in connection with the Settlement and the form and

7  content of the notices satisfy all applicable requirements of the Federal Rules of Civil Procedure, due

8  process, and the PSLRA.  Accordingly, the Court should also approve the proposed form and

9  method of giving notice to the Class.

10  **VII.  NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE**

11        The *Procedural Guidance* for class action settlements has been satisfied and weighs in favor

12  of approving the Settlement.  *See* Appendix A.

13  **VIII.  CONCLUSION**

14        For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily

15  Approving Settlement and Providing for Notice, which will: (i) preliminarily approve the Settlement;

16  (ii) preliminarily certify the Class for settlement purposes; (iii) approve the form and manner of

17  providing notice to the Class; and (iv) set a Final Approval Hearing date to consider final approval of

18  the Settlement and related matters.

19  DATED:  August 19, 2025          Respectfully submitted,

20                    ROBBINS GELLER RUDMAN
                    & DOWD LLP

21                    DARREN J. ROBBINS
                  ELLEN GUSIKOFF STEWART

22                    DARRYL J. ALVARADO
                  RACHEL A. COCALIS

23                    T. ALEX B. FOLKERTH

24

25                         *s/ Darryl J. Alvarado*

26                      DARRYL J. ALVARADO

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland
Electrical Industry Pension Fund and Named
Plaintiff York County on behalf of the County of
York Retirement Fund

# APPENDIX A

## (Compliance with *Procedural Guidance* of Northern District of California)

**A.    Guidance 1: Information about the Settlement**

    **1.    Guidance 1(a): Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.**

None.

    **2.    Guidance 1(b): Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.**

The claims being released closely track the claims alleged. The Complaint alleges federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of HP common stock during the Class Period. The definition of "Released Plaintiff's Claims" is properly limited to claims "that relate to (1) the purchase or acquisition of HP common stock during the Class Period; and (2) the conduct, acts, facts, statements, or omissions that were or could have been alleged by Lead Plaintiff in the Litigation." Stipulation, ¶1.24. Accordingly, the release is carefully tailored to the claims alleged. This release is substantially similar to that included in *Hayden v. Portola Pharms. Inc.*, 2023 WL 2376940, at *4 (N.D. Cal. Mar. 6, 2023).

    **3.    Guidance 1(c): The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.**

The Class will receive $39 million in cash, less approved fees and expenses, through the Settlement. As set forth in the attached supporting memorandum ("Preliminary Approval Memorandum"), had Lead Plaintiff fully prevailed on its claims estimated reasonably recoverable damages at trial, consistent with the methodology in the Plan of Allocation, would have been approximately $155.5 million. There are many factors that contributed to Lead Plaintiff's acceptance of a discount to that damages value, which are more fully explained in §IV.C.1 of the Preliminary Approval Memorandum.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**4.    Guidance 1(d): Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state.**

Counsel believes there are no other cases that will be affected by the Settlement.

**5.    Guidance 1(e): The proposed allocation plan for the settlement fund.**

The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 12-16).

**6.    Guidance 1(f): If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.**

This is a non-reversionary settlement in which the entire Settlement Fund will be paid out. Stipulation, ¶2.14.  Once the Settlement becomes final, nothing is returned to Defendants.  With respect to the number of class members, as well as their identities, these are unknown in securities cases.  *See Vataj*, 2021 WL 1550478, at *11 ("The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser.").  Because the number and identity of class members is unknown, both the number and percentage of class members expected to file claims is unknown.  Indeed, the number of claims varies widely from case to case as does the size of each claim.  In a securities class action settlement, class member participation is determined by the number of damaged shares (shares affected by the inflation caused by the alleged misrepresentations and omissions) represented by the claims submitted.  This more accurately reflects how much of the Class is seeking to participate in the Settlement.  Consistent with its experience in securities class actions, and based on the

effectiveness of the proposed notice plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in this Action.

      **7.    Guidance 1(g): In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.**

The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶2.14.

**B.    Guidance 2: Settlement Administration**

      **1.    Guidance 2(a): Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.**

Lead Plaintiff's request to appoint Verita Global to serve as the Claims Administrator, including the reasons for Lead Counsel's selection of Verita Global, is addressed in §III of the Preliminary Approval Memorandum.  Lead Counsel states that Verita Global and affiliated entities have been appointed as the notice or claims administrator in 45 matters where Robbins Geller was lead or co-lead counsel in the past two years.  Murray Decl., ¶5.  The proposed methods of notice are addressed in §IV.C.2 of the Preliminary Approval Memorandum.

      **2.    Guidance 2(b): Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.**

Verita Global's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.  Murray Decl., ¶29.  Verita Global maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct. These policies are available on Verita Global's website.  *Id.*, ¶30.

### C.    Guidance 3: The Proposed Notices to the Class Are Adequate

As set forth in §IV.C.2. of the Preliminary Approval Memorandum, Lead Counsel believes that both the form of notice, which incorporates the suggested language from the *Procedural Guidance* (Stipulation, Ex. A-1 at 10), and the plan for disseminating the notice, satisfy Rule 23, the PSLRA, and due process.

### D.    Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement.  The proposed Notice includes information on a Class Member's right to: (i) request exclusion and the manner for submitting such a request; (ii) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Claims Administrator.  *See* Stipulation, Ex. A-1 at 6, 8-10.  With respect to exclusion requests, the Notice requires only the information needed to opt out – the common stock purchased, acquired, or sold during the Class Period, including the dates and the number of shares of HP common stock purchased or acquired.  The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court.  Finally, the Notice incorporates the suggested language regarding objections from the *Procedural Guidance*.  *Id.*, at 10.

### E.    Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3. of the Preliminary Approval Memorandum.

### F.    Guidance 7: Service Awards

Lead Plaintiff may seek an award not to exceed $7,500, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.  This amount is fully supported by the work undertaken throughout the Litigation, which will be supported by a declaration from the Lead Plaintiff in connection with Lead Counsel's forthcoming fee and expense motion.

### G.    Guidance 8: *Cy Pres* Awardees

The Settling Parties propose the Council of Institutional Investors ("CII") as the designated recipient for any *de minimis* balance remaining after all reallocations are completed.  *See* Stipulation,

¶5.10.  CII satisfies the "substantial nexus" test, since it "bears a substantial nexus to the interests of the class members," *In re Google Location Hist. Litig.*, 2024 WL 1975462, at *12 (N.D. Cal. May 3, 2024), and complements the objectives of the federal securities laws.  H.R. Conf. Rep. No. 104-369, at 31 (1995) (Congress noted that the broader purpose of the federal securities laws is "to protect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans.").  "CII is a leading voice for effective corporate governance, strong shareowner rights and sensible financial regulations that foster fair, vibrant capital markets."  *See* cii.org/about.

### H.    Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Final Approval Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Summary Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶10) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 21 calendar days prior to the objection and opt-out deadline (Preliminary Approval Order, ¶21) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶¶17, 19) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶14(a)) |
| Date for the Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

### I.    Guidance 10: Class Action Fairness Act

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants have indicated that they will provide such notice.

4936-6708-3870.v1

### J.     Guidance 11: Comparable Outcomes

| |
|---|
| Case name and citation: *Fleming v. Impax Laboratories, Inc.*, No. 4:16-cv-06557-HSG (N.D. Cal.) |
| Claims Asserted: Securities Exchange Act §§10(b) and 20(a) |
| Total Settlement Amount: $33 million |
| Notices Mailed: 49,620 |
| Total Claims Submitted: 13,863 <br> Response Rate: 28% |
| Total Valid Claims: 5,398 |
| Average Recovery per Claimant: $4,236.68 <br> Median Recovery per Claimant: $81.71 |
| Method of Notice:  Direct Mail; Published in *The Wall Street Journal* and *PR Newswire*; posted on the settlement website; DTC LENS notice posting |
| Administrative Costs: $311,213.89 |
| Litigation Expenses Reimbursed: $176,501.78 |
| Attorneys' Fees Awarded <br> % of Settlement Fund: 30% <br> Multiplier: 2.59 |
| Cy-Pres Designee: Investor Protection Trust <br> Cy-Pres Distribution: $0 |
| Total Amount Distributed: $22,869,617.96 |

| |
|---|
| Case name and citation: *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS (N.D. Cal.) |
| Claims Asserted: Securities Act of 1933 under §§5, 12(a)(1), 15 |
| Total Settlement Amount: $25,000,000 |
| Notices Sent: 59,498 sent (52,036 successfully delivered) |
| Total Claims Submitted: 2,137 <br> Response Rate: 4% |
| Total Valid Claims: $11,851,974.71 |
| Average Recovery per Claimant: Unknown <br> Median Recovery per Claimant: Unknown |
| Method of Notice:  E-notice, publication on cryptocurrency associated websites |
| Administrative Costs: $271,363.39 |
| Litigation Expenses Reimbursed: $203,017.93 |
| Attorneys' Fees Awarded: $8,333,333.33 <br> % of Settlement Fund: 33.3% <br> Multiplier: 0.88 |
| Cy-Pres Designee: San Francisco Food Bank <br> Cy-Pres Distribution: Unknown |
| Total Amount Distributed: Unknown |