ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ELLEN GUSIKOFF STEWART (144892)
DARRYL J. ALVARADO (253213)
RACHEL A. COCALIS (312376)
T. ALEX B. FOLKERTH (338140)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland Electrical
Industry Pension Fund and Named Plaintiff York County on
behalf of the County of York Retirement Fund

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>HP INC., et al.,<br><br>                              Defendants. | Case No. 4:20-cv-07835-JSW (LJC)<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:    February 13, 2026<br>TIME:    9:00 a.m. (VIA ZOOM)<br>CTRM:   5, 2nd Floor<br>JUDGE:  Hon. Jeffrey S. White |

4937-5961-3050.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS................................................................................................................5

        A.      Class Certification Remains Appropriate ..............................................................5

        B.      The Settlement Warrants Final Approval ...............................................................5

        C.      The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)..................7

                1.      Rule 23(e)(2)(A): Lead Plaintiff and its Counsel Have Adequately
                        Represented the Class ................................................................................7

                2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                        Arm's Length After Mediation with an Experienced Mediator.................8

                3.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
                        Considering the Costs, Risk, and Delay of Trial and Appeal ....................8

                        a.      The Costs and Risks of Trial and Appeal Support Approval
                                of the Settlement ...........................................................................9

                        b.      The Proposed Settlement Eliminates the Additional Cost
                                and Delay of Continued Litigation ...............................................10

                4.      Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
                        Is Effective ..............................................................................................11

                5.      Rule 23(e)(2)(C)(iii): Attorneys' Fees .....................................................12

                6.      Rule 23(e)(2)(C)(iv): Other Agreements ..................................................12

                7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                        Members Equitably....................................................................................13

        D.      The Remaining Ninth Circuit Factors Are Satisfied............................................14

                1.      Lead Counsel Views This Good-Faith Settlement as Fair,
                        Reasonable, and Adequate ........................................................................14

                2.      The Absence of Collusion Supports Final Approval .................................14

**Page**

        3.     The Positive Reaction of Class Members to the Settlement ......................15

        4.     The Settlement Amount .........................................................................16

        5.     The Risk of Maintaining Class Certification ..............................................16

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...........................17

V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS ................................................17

VI.    CONCLUSION............................................................................................................18

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal Jul 19, 2024)........................................................11

5

6

*Barrett v. Apple Inc.*,
   2024 WL 5339480 (N.D. Cal. Dec. 19, 2024)....................................................16

7

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ...........................................................................5, 6

8

9

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................................................7

10

11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................6, 8

12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..............................................................................17

13

14

*Davis v. Yelp, Inc.*,
   2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ...................................................10

15

16

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......................................................10

17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................9

18

19

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................5, 15, 16

20

21

*Gudimetla v. Ambow Educ. Holding*,
   2015 WL 12752443 (C.D. Cal. Mar. 16, 2015)....................................................11

22

*Hampton v. Aqua Metals, Inc.*,
   2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)........................................................13

23

24

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom.*, *Hefler v. Pekoc*,
   802 F. App'x 285 (9th Cir. 2020) ....................................................................9, 10

25

26

27

*Heid v. Cyracom Int'l, Inc.*,
   2024 WL 4008650 (S.D. Cal. Aug. 30, 2024) ....................................................14

28

**Page**

*Hessefort v. Sup Micro Computer, Inc.*,
2023 WL 7185778 (N.D. Cal. May 5, 2023) ............................................................9

*Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-DOC-SHK,
ECF 913 (C.D. Cal. Aug. 3, 2022) ........................................................................11

*In re Alphabet, Inc. Sec. Litig.*,
2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) .......................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..........................................................................14, 15

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .......................................................13

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ..........................................................6

*In re Hewlett-Packard Co. Sec. Litig.*,
2015 WL 13917012 (C.D. Cal. Nov. 9, 2015) ......................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .................................................................................7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................9

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) .........................................................8

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ....................................................12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................13, 14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................................13

*In re Splunk Inc. Sec. Litig.*,
2024 WL 923777 (N.D. Cal. Mar. 4, 2024)......................................................10, 18

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ..................................................14, 16

**Page**

*In re Veritas Software Corp. Sec. Litig.,*
496 F.3d 962 (9th Cir. 2007) ...................................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
895 F.3d 597 (9th Cir. 2018) ....................................................................................5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
2020 WL 4212811 (N.D. Cal. July 22, 2020),
*aff'd,* 2022 WL 2304236 (9th Cir. June 27, 2022) .................................................11

*Khoja v. Orexigen Therapeutics, Inc.,*
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ....................................................14, 15

*Longo v. OSI Sys., Inc.,*
2022 WL 22995096 (C.D. Cal. Aug. 31, 2022)....................................................8, 13

*Mauss v. NuVasive, Inc.,*
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018).........................................................17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.,*
688 F.2d 615 (9th Cir. 1982) ...........................................................................5, 6, 8

*Patel v. Axesstel, Inc.,*
2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .......................................................15

*Redwen v. Sino Clean Energy, Inc.,*
2013 WL 12303367 (C.D. Cal. July 9, 2013) ........................................................9

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ..................................................................8, 9, 14, 17

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ...............................................................................6, 11

*Vataj v. Johnson,*
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......................................................17

*Vinh Nguyen v. Radient Pharms. Corp.,*
2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................................10

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)..................................................................................................................3, 9
§78t(a)...................................................................................................................3

**Page**

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................2, 18
    Rule 23(c)(1) ...............................................................................................16
    Rule 23(c)(2)(B) .........................................................................................17
    Rule 23(e) ................................................................................................1, 5
    Rule 23(e)(1)(B) .........................................................................................17
    Rule 23(e)(2) .......................................................................................5, 6, 7
    Rule 23(e)(2)(A) ...........................................................................................7
    Rule 23(e)(2)(B) ...........................................................................................8
    Rule 23(e)(2)(C) ...........................................................................................8
    Rule 23(e)(2)(C)(i) ........................................................................................8
    Rule 23(e)(2)(C)(ii) .....................................................................................11
    Rule 23(e)(2)(C)(iii) ....................................................................................12
    Rule 23(e)(2)(C)(iv) ....................................................................................12
    Rule 23(e)(2)(D) .........................................................................................13

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements; 2024 Review & Analysis*
    Laarni Bulan and Eric Tam (Cornerstone 2025)........................................................1

## NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on February 13, 2026, at 9:00 a.m., via Zoom videoconference, before the Honorable Jeffrey S. White of the United States District Court, Northern District of California, Maryland Electrical Industry Pension Fund ("Lead Plaintiff") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Darryl J. Alvarado in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and an Award of Attorneys' Fees and Expenses ("Alvarado Declaration" or "Alvarado Decl."), with attached exhibits, the Stipulation of Settlement, all prior pleadings and papers in this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on January 5, 2026, after the December 22, 2025 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the Settlement.

2.      Whether the Court should approve the Plan of Allocation.

3.      Whether the notice provided to the Class satisfied Rule 23 of the Federal Rules of Civil Procedure and due process.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

4

5

6

7

8

9

10

After nearly five years of hard-fought litigation, the $39 million all-cash Settlement before the Court for approval is an excellent result for the Class.[1]  The Settlement is nearly four times the median settlement amount for securities class action cases settled in the Ninth Circuit in the past decade, avoids the substantial risks and delays of continued litigation through resolution of the pending appeal, class certification, summary judgment and trial, and falls well within the range of settlements that courts in this Circuit regularly approve.[2]  Given the risks of proceeding and the result obtained, the Settlement secures a highly favorable recovery for the Class and warrants the Court's approval.

11

12

13

14

15

16

17

18

19

20

21

22

The Settlement was reached only after the proceedings had reached a stage where a careful evaluation of the Litigation and the propriety of Settlement could be (and was) made to resolve the Litigation.   For example, Lead Plaintiff had, among other things: (i) conducted an extensive investigation that included reviewing available public information about HP; (ii) filed a detailed consolidated complaint (the "Consolidated Complaint"); (iii) opposed Defendants' motion to dismiss the Consolidated Complaint; (iv) successfully obtained appellate reversal of the Court's motion to dismiss order; (v) successfully opposed Defendants' renewed motion to dismiss in large part; (vi) opposed Defendants' motion for interlocutory appeal and opposed Defendants' appeal; (vii) prepared detailed mediation statements; and (viii) participated in a lengthy mediation process, first with Greg Danilow and thereafter with David M. Murphy, both with Phillips ADR, culminating in a "mediator's proposal" accepted by the Parties.   As a result of these substantial litigation and

23

24

25

[1]   The terms of the Settlement are set forth in the Stipulation of Settlement dated August 18, 2025 (ECF 103-2) (the "Stipulation").  All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation, in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof (ECF 103), and in the Alvarado Declaration.  Unless otherwise noted, all emphasis is added and all internal citations are omitted.

26

27

28

[2]   *See* Ex. 4 to the Alvarado Decl. (Laarni Bulan and Eric Tam, *Securities Class Action Settlements; 2024 Review & Analysis*, at 20 (Cornerstone 2025), and also available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (the "Cornerstone Report")).

1    settlement efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative

2    strengths and weaknesses of the Class's claims and the propriety of the Settlement.

3         While Lead Counsel believes the Class's claims are meritorious, from the outset and

4    throughout the Litigation, Defendants adamantly denied liability and asserted they possessed

5    absolute defenses to the Class's claims.   Defendants initially and successfully argued that Lead

6    Plaintiff's claims were time barred.  They also argued that their alleged misstatements were forward-

7    looking statements protected by the PSLRA's safe harbor provision, or were not false or misleading

8    in light of Defendants' disclosures.  *See* ECF 45.  Defendants also argued that Lead Plaintiff could

9    not establish scienter, relying upon the SEC's scienter findings and absence of stock sales.  *Id.*

10   Defendants would likely continue to argue that Lead Plaintiff could not establish loss causation or

11   damages given the nature of the alleged corrective disclosures and the stock price reactions

12   following those disclosures.  Even prevailing against Defendants' pending appeal and at summary

13   judgment and trial would not have assured recovery, as Defendants would have likely again appealed

14   any favorable ruling for the Class.  Moreover, even if Lead Plaintiff had prevailed, in full or in part,

15   there was a significant risk that any recovery achieved would not be meaningfully larger than the

16   Settlement.  Thus, the Settlement is an excellent result that Lead Plaintiff and Lead Counsel firmly

17   believe is very favorable to the Class and in its best interest.

18        Additionally, Lead Plaintiff – an exemplar of the type of institutional investor Congress

19   envisioned serving in that role when passing the PSLRA – fully supports the Settlement and

20   considers it fair and reasonable.[3]  The Class's reaction to date similarly reflects approval of the

21   Settlement.  Notice was provided to over 187,780 potential Class Members and nominees pursuant

22   to the Preliminary Approval Order, commencing October 10, 2025.  *See* Declaration of Ross D.

23   Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center

24   Services and Website; and (D) Report on Exclusions and Objections ("Murray Decl."), ¶¶4-11,

25   attached as Ex. 2 to the Alvarado Decl.  While the December 22, 2025 deadline to object to the

26

27   [3]   *See* Declaration of Jessica Morrison on Behalf of Maryland Electrical Industry Pension Fund
28   ("Morrison Decl."), attached as Ex. 1 to the Alvarado Declaration.

Settlement and Plan of Allocation has not yet passed, no objections have been received to date.[4] Only two invalid requests for exclusion from the Class have been submitted.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was detailed in the long-form Notice.  The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants.  The Plan of Allocation is based on the analysis of Lead Plaintiff's damages consultant and subjects all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their HP common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made.

In short, the $39 million Settlement and the Plan of Allocation are fair and reasonable and should be approved by the Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Litigation brings claims against HP and its executive officers, Dion J. Weisler, Catherine A. Lesjak, Enrique Lores, and Richard Bailey (together, "Defendants"), for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Lead Plaintiff alleges that between November 5, 2015, and June 21, 2016, both dates inclusive, Defendants made materially false and misleading statements and engaged in a scheme relating to HP's Supplies division's channel inventory management and sales practices.

On April 21, 2021, Lead Plaintiff filed the Consolidated Complaint.  On June 21, 2021, Defendants moved to dismiss, which was opposed by Lead Plaintiff.  On March 3, 2022, the Court issued an order granting Defendants' motion to dismiss on statute of limitations grounds.

Lead Plaintiff timely appealed the motion to dismiss order to the Ninth Circuit Court of Appeals, and after full briefing and oral argument, on April 11, 2023, the Ninth Circuit reversed the Court's holding, and remanded the case to the Court for further proceedings.

---

[4]    Lead Counsel will address any timely objections in its reply brief, which is due on January 5, 2026.

1   On July 21, 2023, Defendants filed a renewed motion to dismiss (the "Renewed Motion").

2   Lead Plaintiff opposed the Renewed Motion, and Defendants filed their reply.  On March 27, 2024,

3   the Court granted in part and denied in part the Renewed Motion.

4   On April 26, 2024, Defendants filed a Motion to Certify Order for Interlocutory Appeal

5   Under 28 U.S.C. §1292(b).  Lead Plaintiff opposed the motion, and Defendants filed a reply.  The

6   Court granted the Motion for Interlocutory Appeal on June 3, 2024.  On August 8, 2024, the Ninth

7   Circuit granted Defendants' Petition to Appeal Under 28 U.S.C. §1292(b).  Defendants filed their

8   opening brief in support of their appeal on October 28, 2024.  Lead Plaintiff filed an answering brief

9   on December 27, 2024, and Defendants filed their reply on February 18, 2025.  No oral argument

10  date had been set when this Settlement was reached.

11  The Parties participated in an initial mediation session before Mr. Danilow in January 2023.

12  That mediation was preceded by the exchange and submission to Mr. Danilow of mediation

13  statements.  Although the Parties negotiated in good faith, no agreement was reached and litigation

14  efforts continued.  The Parties participated in a mediation session with Mr. Murphy on April 30,

15  2025.  In advance of that mediation, the Parties exchanged and submitted to Mr. Murphy additional

16  materials to update him on the status of the litigation and their respective positions.  Again the

17  Parties negotiated in good faith, but no agreement was reached.  The Parties continued their litigation

18  efforts and also continued their negotiations through Mr. Murphy.  On July 12, 2025, Mr. Murphy

19  made a mediator's proposal to settle the case for $39 million that was ultimately accepted by the

20  Parties.  Following additional negotiations, the Parties executed the Stipulation on August 18, 2025,

21  and Lead Plaintiff moved for preliminary approval of the Settlement the next day.  On September 22,

22  2025, the Court granted Lead Plaintiff's unopposed motion for preliminary approval of the

23  Settlement.  ECF 108.  Notice was provided to the Class beginning on October 10, 2025.  *See*

24  Murray Decl., ¶5.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    Class Certification Remains Appropriate

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Lead Plaintiff as class representative and Lead Counsel as class counsel.  ECF 108, ¶¶4-6.  Because nothing has changed since preliminary approval that would undermine the Court's conclusion, class certification for settlement purposes remains appropriate.  *See In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *4 (N.D. Cal. Sept. 30, 2024); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

### B.    The Settlement Warrants Final Approval

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation modified).  "Deciding whether a settlement is fair is . . . best left to the district judge."  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).  Courts, however, should not convert settlement approval into an inquiry into the merits, as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Alphabet*, 2024 WL 4354988, at *3 ("In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.").

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement is "fair, reasonable, and adequate," the Court must

consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[5]

"The relative degree of importance to be attached to any particular factor will defend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Just.*, 688 F.2d at 625. "This list [of factors] is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Campbell*, 951 F.3d at 1121 ("District courts may consider some or all of these factors.").

The Court's Preliminary Approval Order assessed the Settlement and found, after a preliminary review, that it was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. *See* ECF 108, ¶1. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between September 22, 2025 and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D.

---

[5]     The Northern District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), Final Approval, §1, states that the motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and objections, and address any objections. The number of undeliverable notices is addressed in the Murray Decl., ¶10, as is the number of opt outs. *Id.*, ¶16. Lead Counsel will address any objections, requests for exclusion, and provide the number of claims received in its reply brief to be filed on January 5, 2026.

1    Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in

2    favor of final approval now.").

3        Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement

4    represents a fair, reasonable, and adequate resolution of the Litigation and warrants the Court's final

5    approval.

6        **C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

7            **1.    Rule 23(e)(2)(A): Lead Plaintiff and its Counsel Have
                Adequately Represented the Class**

8

9        Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule

10   23(e)(2)(A).   Lead Counsel is highly qualified and experienced in securities litigation, *see*

11   accompanying Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman &

12   Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller

13   Decl."), Ex. F, and both it and Lead Plaintiff actively pursued the claims of HP investors in this

14   Court and in the Ninth Circuit Court of Appeals, and zealously advocated for the Class's best

15   interests throughout the Litigation. *See generally* Morrison Decl.; *Cheng Jiangchen v. Rentech, Inc.*,

16   2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel

17   "has significant experience in securities class action lawsuits"). The Settlement is the result of Lead

18   Counsel's diligent prosecution of this Litigation. *See, e.g.*, *Rentech*, 2019 WL 5173771, at *5

19   (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through

20   multiple rounds of motions to dismiss and amended complaints).

21       In addition, Lead Plaintiff and Lead Counsel have no interests antagonistic to those of other

22   Class Members; rather, Lead Plaintiff's claims "arise from the same alleged conduct: the purchase of

23   [HP] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.*  Accordingly,

24   Lead Plaintiff shares the common interest in obtaining the largest possible recovery for itself and the

25   Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine

26   legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any

27   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

28

1    prosecute the action vigorously on behalf of the class?'"). This factor weighs in favor of final

2    approval.

3         **2.        Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at**
               **Arm's Length After Mediation with an Experienced Mediator**
4

5         Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.

6    23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-

7    collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

8    The Parties here reached the Settlement only after two full-day mediation sessions and extensive,

9    hard-fought litigation, including briefing on Defendants' motions to dismiss and litigating appeals

10   related thereto. The case was ultimately resolved only when the Parties accepted the mediator's

11   proposal. *See* Alvarado Decl., ¶32. *See also In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263,

12   at *7 (S.D. Cal. June 16, 2025) (settlement negotiations included an in-person mediation and

13   mediator's proposal, "evincing that the settlement was reached via non-collusive means").

14   Moreover, given Lead Plaintiff's significant efforts to pursue the Litigation against an adversary

15   determined to defeat it, there can be no question that counsel "'had a sound basis for measuring the

16   terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 WL 22995096, at *4 (C.D. Cal. Aug. 31,

17   2022). These facts demonstrate that the Settlement is the result of arm's-length negotiations and

18   "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers*

19   *for Just.*, 688 F.2d at 625.

20        **3.        Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate**
               **Considering the Costs, Risk, and Delay of Trial and Appeal**
21

22        Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and

23   appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs'

24   case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P.

25   23(e)(2)(C); *Churchill*, 361 F.3d at 575. While Lead Plaintiff believes its claims have merit and that

26   it would prevail on its claims on appeal, at class certification and against Defendants' anticipated

27   motion for summary judgment, it nevertheless recognizes the numerous risks and uncertainties in

28   proceeding to trial in a case that has been pending for nearly five years, and in which the motion to

1    dismiss is still being litigated.  In fact, securities class actions "'are highly complex and [litigating]

2    securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo &*

3    *Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F.

4    App'x 285 (9th Cir. 2020).  As discussed below, the benefits conferred on Class Members by the

5    Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy

6    and reasonableness of the Settlement.

7                    **a.    The Costs and Risks of Trial and Appeal Support**
                           **Approval of the Settlement**
8

9              To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of

10   the claim, including that the defendants knowingly or recklessly made the materially false and

11   misleading statements and that the material misrepresentations caused investors' losses.  *See Dura*

12   *Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Plaintiff would be required to prove

13   each of these elements to prevail, whereas Defendants needed only to succeed on one defense to

14   defeat the entire action.  Although Lead Plaintiff is confident that Lead Counsel would be able to

15   prove its allegations, the risk of an unfavorable judgment or verdict was still real.  *See Redwen v.*

16   *Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced

17   with securities fraud litigation routinely recognize that securities class actions present hurdles to

18   proving liability that are difficult for plaintiffs to clear.") (citation modified).  Moreover,

19   "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for

20   years." *Rodriguez*, 563 F.3d at 966.

21             Defendants advanced several plausible arguments disputing both liability and damages,

22   including Lead Plaintiff's standing to bring its claims.  Alvarado Decl., ¶¶40, 66.  They also

23   maintained that Lead Plaintiff's scheme allegations are not cognizable.  *Id.*, ¶40.

24             In disputing the requisite element of scienter, *i.e.*, that the statements were knowingly or

25   recklessly false, Defendants would have relied upon the SEC's findings that HP's executives did not

26   become aware of the pull-in scheme until months after the fact.  *Id.*  Scienter is "complex and

27   difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D.

28   Cal. 2007).  *See also Hessefort v. Sup Micro Computer, Inc.*, 2023 WL 7185778 at *13 (N.D. Cal.

1  May 5, 2023); *Hefler*, 2018 WL 6619983, at \*7, which acknowledged the "difficulties of scienter" at

2  trial.

3      To challenge loss causation, Defendants would continue to argue that the alleged corrective

4  disclosures did not reveal anything new about the alleged misstatements, and that HP's stock price

5  failed to react to substantially similar disclosures.  Alvarado Decl., ¶42.  "[I]n any securities

6  litigation case, it is difficult for plaintiff to prove loss causation and damages at trial."  *Destefano v.*

7  *Zynga, Inc.*, 2016 WL 537946, at \*9 (N.D. Cal. Feb. 11, 2016) (citation modified).

8      Having asserted some variation of each of these substantive arguments in their motions to

9  dismiss, there is little doubt that Defendants would re-assert such arguments and seek to assemble

10  supporting evidence at class certification, summary judgment, and trial.  Although Lead Plaintiff was

11  pursuing its own evidence to oppose Defendants' anticipated defenses, even if Lead Plaintiff

12  successfully defeated summary judgment, establishing each element would be difficult.

13      Finally, to prove and calculate damages involves "complex analysis, requiring [a] jury to

14  parse divergent positions of expert witnesses in a complex area of the law," rendering "[t]he

15  outcome of that analysis . . . inherently difficult to predict and risky."  *Vinh Nguyen v. Radient*

16  *Pharms. Corp.*, 2014 WL 1802293, at \*2 (C.D. Cal. May 6, 2014).  Defendants certainly would have

17  challenged Lead Plaintiff's expert's damages calculation, and there is no guarantee that Lead

18  Plaintiff would have successfully proven all or even a part of its claimed damages.  The winner of a

19  "'battle of [the] experts'" is unpredictable.  *Davis v. Yelp, Inc.*, 2022 WL 21748777, at \*4 (N.D. Cal.

20  Aug. 1, 2022).  Settlement at this stage eliminates all of these risks.  *See Splunk*, 2024 WL 9237777,

21  at \*13 (risks in establishing falsity, materiality, scienter, and loss causation and damages weigh in

22  favor of approving settlement).

23              **b.**    **The Proposed Settlement Eliminates the Additional**

24                    **Cost and Delay of Continued Litigation**

25      There remained much work for Lead Plaintiff in the Litigation had the Parties not reached the

26  Settlement.  The case has already been pending for nearly five years, and the Parties are still

27  litigating Defendants' motion to dismiss.  Thus, if the Settlement was not reached, the Parties still

28  faced resolution of Defendants' appeal and, if Lead Plaintiff prevailed, completing document

discovery, taking and/or defending many fact and expert depositions, litigating any discovery disputes that may arise, briefing on class certification, summary judgment, motions to exclude experts, motions *in limine*, and trying the case before a jury.  And even if Lead Plaintiff had prevailed at trial, it would have taken potentially many more years to resolve any resulting appeals. *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).

"By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).  The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *4 (C.D. Cal. Mar. 16, 2015) ("Although the Parties have engaged in multiple motions to dismiss and have amended their Complaint multiple times, Plaintiffs predict that discovery in preparation for potential motions for summary judgment and trial would prove to be risky, costly, and reduce the possible recovery for the Class[,]" while the settlement, by contrast, conferred an immediate and valuable cash benefit to the Class.).  Thus, the Settlement is a far better option for the Class.

### 4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement satisfying Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, over 187,780 Summary Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for this Litigation contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.  *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *9

(C.D. Cal Jul 19, 2024) ("The Court finds that the effectiveness of the proposed method of distribution, involving a claims administrator and *pro rata* relief based on a claimant's demonstrable injury, weighs in favor of approving the Proposed Settlement Agreement.") (italics in original). The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[6]

### 5. Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Memorandum of Points and Authorities in Support Thereof ("Fee Memorandum"), submitted herewith, Lead Counsel seeks an award of attorneys' fees of 30% of the Settlement Amount and expenses of $130,243.61, plus interest on both amounts. This is the sole fee and expense request being made in connection with resolving the Litigation, and the first and only time Lead Counsel will be compensated for its efforts. The fee requested is approved by Lead Plaintiff (Morrison Decl., ¶5), and is justified by the time and diligence expended on prosecuting the Litigation. *See* Fee Memorandum, §III.B.

### 6. Rule 23(e)(2)(C)(iv): Other Agreements

As stated in Lead Plaintiff's motion for preliminary approval (ECF 103), the Parties have entered into a standard supplemental agreement, which provides that if Class Members opt out of the Settlement such that opt outs from the Class equals or exceeds a certain threshold, HP shall have the option to terminate the Settlement. Stipulation, ¶7.3. Again, such agreements are common and do not undermine the propriety of the Settlement. *See, e.g., In re Lyft, Inc. Sec. Litig.*, 2022 WL

---

[6] Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.2. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.10. If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiff proposes that such funds be donated to the Council of Institutional Investors, a nonprofit, nonpartisan association that advocates for effective corporate governance and shareholder rights. ECF 103 at 4 and App'x A. *See In re Hewlett-Packard Co. Sec. Litig.*, 2015 WL 13917012, at *2 (C.D. Cal. Nov. 9, 2015) (approving Council of Institutional Investors as *cy pres* recipient in securities settlement).

17740302, at *6 (N.D. Cal. Dec. 16, 2022) ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair."); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (same). While the Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.3), and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[7]

### 7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of Allocation "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation, developed in consultation with Lead Plaintiff's damages consultant, details how the Settlement proceeds will be distributed among Authorized Claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases or acquisitions of HP common stock during the Class Period and if, or when, they sold.  Alvarado Decl., ¶¶52-57.  It is fair, reasonable, and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive his, her, or its *pro rata* share of the distribution.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("[N]o indication that the distribution and allocation methods proposed . . . will result in unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a *pro rata* basis."); *Longo*, 2022 WL 22995096, at *7 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities.  Accordingly, this factor also weighs in favor of final approval.").

---

[7]    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that the settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

**D.      The Remaining Ninth Circuit Factors Are Satisfied**

> **1.      Lead Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate**

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967.  Thus, courts accord great weight to the recommendations and opinions of experienced counsel.  *See In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024) ("'The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.'"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30, 2021) ("Given Lead Counsel's experience with the case and expertise with securities class actions, the Court presumes reasonable Lead Counsel's recommendation to approve the Settlement.").

Lead Counsel has extensive experience representing plaintiffs in securities and other complex class action litigation, and has negotiated numerous substantial class action settlements across the country.  Robbins Geller Decl., Ex. F.  As a result of this experience, and with the assistance of sophisticated experts when appropriate, Lead Counsel possessed a clear understanding of Lead Plaintiff's claims by the time the Settlement was reached.  Based thereon, Lead Counsel concluded that the Settlement is an outstanding result for the Class.  Therefore, here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

> **2.      The Absence of Collusion Supports Final Approval**

Where a settlement agreement is reached prior to class certification, "courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest[s] and that of certain class members to infect the negotiations.'" *Heid v. Cyracom Int'l, Inc.*, 2024 WL 4008650, at *7 (S.D. Cal. Aug. 30, 2024) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  Such subtle collusion includes, *inter alia*, instances where: (1) counsel receives a disproportionate distribution of the settlement; (2) the class receives no monetary distribution; (3) an agreement exists

1   wherein attorneys' fees are paid separate and apart from class funds; or (4) fees not awarded revert

2   back to the defendants. *Bluetooth*, 654, F.3d at 947. Here, no such circumstances exist.

3      Lead Counsel is not "'receiv[ing] a disproportionate [share] of the settlement.'" *Patel v.*

4   *Axesstel, Inc.*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015). Rather Lead Counsel is

5   requesting an award of attorneys' fees within a range of fees awarded in this District and within this

6   Circuit. Fee Memorandum at 11-12. *See also Khoja*, 2021 WL 5632673, at *9-*10 (collecting cases

7   and awarding 33% of common fund as fees to class counsel, higher than the 30% requested here).

8   There is also no risk that the Class will not receive a monetary distribution. The Settlement provides

9   a **cash** Settlement Fund of $39 million for the benefit of the Class, with no reversion to Defendants.

10  The $39 million has already been deposited into the Escrow Account and is earning interest for the

11  benefit of the Class. The Net Settlement Fund will be distributed to eligible Class Members who

12  submit valid Proofs of Claim, with subsequent distributions of unclaimed funds being made until it is

13  no longer feasible to distribute them. At that point, any remaining funds will be donated to the

14  Council of Institutional Investors. *See* Stipulation, ¶5.10.

15     Finally, the Settlement does not contain a "clear sailing" provision. *See Bluetooth*, 654 F.3d

16  at 947-48. Any fees and expenses awarded to Lead Counsel are at the sole discretion of the Court.

17     For these reasons, Lead Plaintiff respectfully submits that the Settlement is free from

18  collusion, and is fair, reasonable, and adequate.

19       **3.  The Positive Reaction of Class Members to the Settlement**

20     While the deadline to object to the Settlement is December 22, 2025, to date, no objections

21  have been received, and only two, invalid requests for exclusion have been submitted. Should any

22  objection or valid requests to be excluded from the Class be received, Lead Plaintiff will address

23  them in its reply papers. "'[T]he absence of a large number of objections to a proposed class action

24  settlement raises a strong presumption that the terms of a proposed class settlement action are

25  favorable to the class members.'" *Id*. The Class's overwhelmingly positive reaction to the

26  Settlement to date supports final approval. *See Impax*, 2022 WL 2789496, at *7 ("[T]he absence of

27  objections indicates strong support among the Class Members and weighs in favor of approval.").

28

### 4.    The Settlement Amount

The $39 million Settlement is a significant result for the Class reflecting the persistent diligence applied in pursuing the claims.  The Settlement significantly and vastly exceeds the $14 million median settlement amount for securities class actions in 2024.[8]  It is also far exceeds the $11.3 million median settlement amount for federal securities class actions from 2015-2023, and is significantly greater than the median settlement amount for securities class actions in the Ninth Circuit from 2015-2024.[9]  Moreover, the Settlement recovers approximately 25% of the estimated maximum recoverable damages (Alvarado Decl., ¶61), and exceeds the 7.5% median recovery in the Ninth Circuit during the same time period as a percentage of plaintiff-style damages.[10]

### 5.    The Risk of Maintaining Class Certification

Although at the time of the Settlement Lead Plaintiff had not yet moved for class certification, there is always the risk that the Class would not be certified.  *See Stable Rd.*, 2024 WL 3643393, at *6.  Certification of a litigation class is never guaranteed, and even if the Court certified a litigation class here, Defendants may have succeeded in convincing the Court to shorten the class period, and may later have moved to decertify the Class.  Alvarado Decl., ¶42.  Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.  *See Barrett v. Apple Inc.*, 2024 WL 5339480, at *17 (N.D. Cal. Dec. 19, 2024) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").  This factor weighs in favor of approval.

In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that the Settlement is fair, reasonable, and adequate, and should grant final approval.

---

[8]    Cornerstone Report at 1, 19.

[9]    *Id*. at 1, 20.

[10]    *Id.* at 20.

**IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of the Plan of Allocation.  The Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless governed by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'") (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation of $10.00 or more).  Individual claimants' recoveries will depend on when they bought HP common stock during the Class Period and whether and when they sold their shares. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund. This is the traditional and reasonable approach to allocating securities settlements.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'").  To date, there has been no objection to the Plan of Allocation.  As a result, the Plan of Allocation is fair and reasonable and should be approved.

**V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962 (citation modified).  The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

1    The substance of the Summary Notice and the Notice, which the Court preliminarily

2  approved, satisfies Rule 23 and due process.  The Claims Administrator has emailed or mailed over

3  187,780 copies of the Court-approved Summary Notice to potential Class Members and their

4  nominees who could be identified with reasonable effort.  *See* Murray Decl., ¶11.  In addition, the

5  Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*,

6  ¶12.  The Claims Administrator also provided all information regarding the Settlement online

7  through the Settlement Website. *Id.*, ¶14.  The Notice provides the necessary information for Class

8  Members to make an informed decision regarding the proposed Settlement, as required by the

9  PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed to eligible

10  Class Members who submit valid and timely Proofs of Claim under the Plan as described in the

11  Notice.  The notice plan here fairly apprises Class Members of their rights with respect to the

12  Settlement, is the best notice practicable under the circumstances, and complies with the Court's

13  Preliminary Approval Order, Rule 23, the PSLRA, and due process. *See, e.g.*, *In re Splunk Inc. Sec.*

14  *Litig.*, 2024 WL 923777, at \*11-\*12 (N.D. Cal. Mar. 4, 2024) (finding notice procedures which

15  "adhere to the previously approved notice plan . . . sufficiently provide[s] notice to the settlement

16  class members.").

## VI.    CONCLUSION

18    Lead Plaintiff and Lead Counsel achieved an excellent settlement for the Class.  Lead

19  Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

20  DATED:  December 1, 2025                Respectfully submitted,

21                                                ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
22                                            DARREN J. ROBBINS
                                                ELLEN GUSIKOFF STEWART
23                                            DARRYL J. ALVARADO
                                                RACHEL A. COCALIS
24                                            T. ALEX B. FOLKERTH

25

26                                                    *s/ Darryl J. Alvarado*
                                            _____
27                                                DARRYL J. ALVARADO

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland
Electrical Industry Pension Fund and Named
Plaintiff York County on behalf of the County of
York Retirement Fund