ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ELLEN GUSIKOFF STEWART (144892)
DARRYL J. ALVARADO (253213)
RACHEL A. COCALIS (312376)
T. ALEX B. FOLKERTH (338140)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland Electrical
Industry Pension Fund and Named Plaintiff York County on
behalf of the County of York Retirement Fund

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 4:20-cv-07835-JSW (LJC) |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) ) | LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, |
| vs. | ) ) | AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| HP INC., et al., | ) ) | |
| Defendants. | ) ) ) | DATE:    February 13, 2026 TIME:    9:00 a.m. (VIA ZOOM) CTRM:   5, 2nd Floor |
| | ) | JUDGE:   Hon. Jeffrey S. White |

4930-1161-2284.v1

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      INTRODUCTION ..........................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND.....................................................2

III.    THE REQUESTED FEE IS FAIR AND REASONABLE...............................................3

        A.      A Reasonable Percentage of the Fund Is the Appropriate Method for
                Awarding Attorneys' Fees in Common Fund Cases................................................3

        B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the
                Requested Fee ........................................................................................................4

                1.      Lead Counsel Achieved an Exceptional Result for the Class......................5

                2.      The Litigation Was Uncertain and Highly Complex ..................................6

                3.      The Skill Required and Quality of Work.....................................................8

                4.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Lead Counsel ...........................................................................9

                5.      Awards Made in Similar Cases Support the Fee Request..........................11

                6.      The Class's Reaction to Date Supports the Fee Request ..........................12

                7.      A Lodestar Cross-Check Confirms that the Requested Fee Is
                        Reasonable ...............................................................................................13

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED .................................................................................................................16

V.      CONCLUSION.............................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ........................................................................5

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ....................................................................6, 7

*Barrett v. Apple, Inc.*,
2025 WL 1002786 (N.D. Cal. Apr. 3, 2025) ......................................................................11

*Bickley v. Schneider Nat'l Carriers, Inc.*,
2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) .....................................................................12

*Blum v. Stenson*,
465 U.S. 886 (1984) ...............................................................................................................3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...............................................................................................................3

*Chang v. Wells Fargo Bank, N.A.*,
2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) .....................................................................11

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .........................................................6, 9, 10, 14

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .....................................................................12

*Destefano v. Zynga*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...............................................................6, 9, 11

*Dicker v. TuSimple Holdings, Inc.*,
2024 WL 5181968 (S.D. Cal. Dec. 18, 2024) .....................................................................15

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) ........................................................................................14

*Fleming v. Impax Laby's, Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................................................ *passim*

*Fosbre v. L.V. Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom.*
*Pompano Beach Police & Firefighters' Ret. Sys. v. L.V. Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018) ........................................................................................10

**Page**

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...................................................................................................16

*Hatamian v. Advanced Micro Devices*,
  2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)..........................................................................13

*Hayden v. Portola Pharms. Inc.*,
  2023 WL 2375242 (N.D. Cal. Mar. 6, 2023)......................................................................13, 16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ..................................................................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..................................................................................................................5

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................................11

*In re Alphabet, Inc. Sec. Litig.*,
  2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ...............................................................9, 10, 15

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................................14

*In re Amkor Tech. Inc. Sec. Litig.*,
  2009 WL 10708030 (D. Ariz. Nov. 19, 2009).........................................................................4

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
  *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp., Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..................................................................................................8

*In re Broiler Chicken Antitrust Litig.*,
  2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)..............................................................................5

*In re Capacitors Antitrust Litig.*,
  2017 WL 9613950 (N.D. Cal. June 27, 2017) ..........................................................................3

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2025) .........................................................................12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .........................................................................10

**Page**

*In re Immune Response Corp. Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................................8

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) ..........................................................................................3

*In re: NFL "Sunday Ticket" Antitrust Litig.*,
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024)..........................................................................8

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................................4, 6, 11

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010).....................................................................................10

*In re Robinhood Outage Litig.*,
2023 WL 5321525 (N.D. Cal. July 28, 2023).........................................................................3

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......................................................................4

*In re Tesla Inc., Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023),
*aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024)..................................................................8

*In re Tezos Sec. Litig.*,
2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ...................................................................12

*In re Twitter Inc. Sec. Litig.*,
2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ...................................................................15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)......................................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).........................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)............................................................. *passim*

**Page**

*In re Wash. Mut., Inc. Sec. Litig.*,
 2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ....................................................................12

*Jiminez v. O'Reilly Automotive Inc.*,
 2018 WL 6137591 (C.D. Cal. June 18, 2018) ......................................................................11

*Kang v. Wells Fargo Bank, N.A.*,
 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021),
 *aff'd sub nom. Kang v. Fyson*,
 2022 WL 6943174 (9th Cir. Oct. 12, 2022)..........................................................................15

*Kendall v. Odonate Therapeutics, Inc.*,
 2022 WL 1997530 (S.D. Cal. June 6, 2022)...........................................................................7

*McKnight v. Uber Techs., Inc.*,
 2021 WL 4205055 (N.D. Cal. Sept. 2, 2021),
 *aff'd sub nom. McKnight v. Hinojosa*,
 54 F.4th 1069 (9th Cir. 2022) ...............................................................................................15

*Morgan v. Childtime Childcare, Inc.*,
 2020 WL 218515 (C.D. Cal. Jan. 6, 2020) ...........................................................................11

*Morris v. Lifescan Inc.*,
 54 F. App'x 663 (9th Cir. 2003) ..............................................................................................5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004)..........................................................................................12

*Robbins v. Kroger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ..............................................................................................8

*Savani v. URS Pro. Sols. LLC*,
 2014 WL 172503 (D.S.C. Jan. 15, 2014) ..............................................................................10

*Stanger v. China Elec. Motor, Inc.*,
 812 F.3d 734 (9th Cir. 2016) ................................................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007)...............................................................................................................10

*Thomas v. MagnaChip Semiconductor Corp.*,
 2018 WL 2234598 (N.D. Cal. May 15, 2018).......................................................................16

*Thompson v. Transamerica Life Ins. Co.*,
 2020 WL 6145104 (C.D. Cal. Sept. 16, 2020) ......................................................................15

**Page**

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................................................14

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...............................................................................................3

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .......................................................................16

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .....................................................................4, 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................................................4, 5

*Wong v. Arlo Techs.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .......................................................................6

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*,
    2022 WL 624439 (N.D. Cal. Mar. 3, 2022)...........................................................................7

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023) .................................................................................................7

*Zaidi v. Adamas Pharms.*,
    2024 WL 4342186 (N.D. Cal. Sept. 27, 2024) ....................................................................11

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(6) ...........................................................................................................................4

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements; 2024 Review & Analysis*
    Laarni Bulan and Eric Tam (Cornerstone Research 2025).....................................................5

## NOTICE OF MOTION AND MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on February 13, 2026, at 9:00 a.m., via Zoom videoconference, before the Honorable Jeffrey S. White of the United States District Court, Northern District of California, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") will and hereby does respectfully move the Court for entry of an order awarding attorneys' fees and providing for payment of litigation expenses.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Darryl J. Alvarado in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and an Award of Attorneys' Fees and Expenses ("Alvarado Declaration" or "Alvarado Decl."), with attached exhibits, the Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Declaration" or "Robbins Geller Decl."), all prior pleadings and papers in this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on January 5, 2026, after the December 22, 2025 deadline for Class Members to object to the motion for attorneys' fees and expenses has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 30% of the Settlement Fund (the Settlement Amount, plus the interest accrued thereon).

2.     Whether the Court should approve Lead Counsel's request for payment of $130,243.61 in litigation costs and expenses incurred by Lead Counsel in the Litigation, plus the interest accrued thereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After nearly five years of hard-fought litigation, working on a fully contingent basis, and with no guarantee of ever being paid, Court-appointed Lead Counsel secured an outstanding Settlement of $39 million on behalf of the Class.[1]  As compensation for its efforts, Lead Counsel respectfully requests that the Court approve an award of attorneys' fees in the amount of 30% of the Settlement Fund.

Lead Counsel's fee request is reasonable, particularly considering counsel's substantial efforts, significant achievement, and the considerable risks it faced in prosecuting this case.  During the time this case was pending prior to settlement, Lead Counsel: (a) conducted an extensive investigation, including the review of voluminous public information concerning HP resulting in the filing of the initial complaint filed in this matter; (b) drafted a detailed consolidated complaint (the "Consolidated Complaint") following its appointment as Lead Counsel; (c) opposed Defendants' motion to dismiss the Consolidated Complaint; (d) successfully obtained appellate reversal of the Court's motion to dismiss order; (e) successfully opposed Defendants' renewed motion to dismiss in large part; (f) opposed Defendants' motion for interlocutory appeal and opposed Defendants' appeal; (g) exchanged comprehensive mediation statements with Defendants; and (h) engaged a lengthy mediation process overseen first by Greg Danilow and later by David M. Murphy, both of Phillips ADR.  Alvarado Decl., ¶63.

From the outset, Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class's claims.  In fact, the Court initially dismissed the Consolidated Complaint as being time-barred, which Lead Counsel successfully appealed.  An interlocutory appeal of the Court's order on Defendants' second attempt to dismiss the Litigation was pending at the time the

---

[1]    Unless otherwise noted, all capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement, dated August 18, 2025 (ECF 103-2), in Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof (the "Final Approval Memorandum"), and in the Alvarado Declaration, filed herewith.  All citations and internal quotations are omitted, and all emphasis is added, unless otherwise noted.

Settlement was reached. Lead Counsel nevertheless achieved a significant settlement that is in the Class's best interests.

Considering the outstanding recovery and the significant efforts undertaken in achieving it, Lead Counsel's fee request of 30% of the Settlement Fund is fair and reasonable. The requested award is warranted under the circumstances. *See Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496 (N.D. Cal. July 15, 2022) (awarding fee of 30% of $33 million settlement, plus interest).

Likewise, Lead Counsel's litigation expenses of $130,243.61 (plus interest accrued thereon) should be awarded in full, as they were reasonably and necessarily incurred in the prosecution of the Action. Robbins Geller Decl., Ex. C.

In accordance with the Preliminary Approval Order, more than 187,780 Summary Notices have been provided to potential Class Members and nominees. *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Report on Exclusions and Objections ("Murray Decl."), ¶11, attached as Ex. 2 to the Alvarado Declaration. The Summary Notice, as well as the Notice posted on the case-designated website, advised potential Class Members that Lead Counsel would apply for: (i) an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, plus the interest earned thereon; and (ii) payment of litigation expenses in an amount not to exceed $250,000, together with interest earned thereon. *See* Murray Decl., Ex. A (Summary Notice); Ex. B (Notice). The deadline set by the Court to object to the requested attorneys' fees and expenses has not yet passed, but to date, no objections have been received.[2]

Lead Counsel respectfully submits that the requested fee, approved by the Lead Plaintiff, is fair and reasonable and should be granted.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Lead Counsel has invested substantial time and expenses in the prosecution of the Litigation, all in furtherance of, and resulting in, the $39 million Settlement now before the Court. Consistent with this District's Procedural Guidance for Class Action Settlements ("Northern District

---

[2]   The deadline for submitting objections is December 22, 2025. Should any objections be received, Lead Counsel will address them in its reply papers, due on January 5, 2026.

Guidelines"), the relevant history and facts are set out in Lead Plaintiff's Preliminary Approval and Final Approval Memoranda and the Alvarado Declaration and are not repeated here. *See* Northern District Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions."). This motion simply "refer[s] to the history and facts set out in the motion for final approval." *Id.*

## III.     THE REQUESTED FEE IS FAIR AND REASONABLE

### A.     A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *Fleming*, 2022 WL 2789496, at *7 ("'[T]hose who benefit from the creation of the fund [should] share the wealth with the lawyers whose skill and effort helped create it.'").

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id.* at 900 n.16. Although courts have discretion to employ either the percentage of recovery or lodestar method, "'[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'" *In re Robinhood Outage Litig.*, 2023 WL 5321525, at *1 (N.D. Cal. July 28, 2023); *see also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) ("The

percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class actions); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant").

As courts in this Circuit have explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). Further, the PSLRA contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (citing 15 U.S.C. §78u-4(a)(6)) (noting "'the near-universal adoption of the percentage method in securities cases'"). Thus, the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

**B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee**

Courts in this Circuit consider 25% of the common fund the benchmark or "starting point" for the award of fees in a common fund settlement and consider several factors to determine whether to adjust a fee award from the benchmark:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) (citing *Vizcaino*, 290 F.3d at 1048-52); *see also Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021).[3]

As discussed below, the various factors to be considered by the Court, including the outstanding result achieved and the substantial risks support the reasonableness of the requested 30% fee award in this case.

### 1.      Lead Counsel Achieved an Exceptional Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Fleming*, 2022 WL 2789496, at *8; *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *see also Morris v. Lifescan Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action).  In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar.").

Here, against substantial risks, Lead Counsel obtained an exceptional recovery for the Class, $39 million.  The Settlement is nearly three times higher than the $14 million median settlement amount for securities class action settlements in 2024.[4]  It is also multiples of the $11.3 million median settlement amount for federal securities class action settlements from 2015-2023, and close to four times the $10 million median settlement amount for securities class actions in the Ninth

---

[3]    The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50.

[4]    *See* Ex. 3 to the Alvarado Decl. (Laarni Bulan and Eric Tam, *Securities Class Action Settlements; 2024 Review & Analysis*, at 19 (Cornerstone Research 2025), and also available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf).

Circuit from 2015-2024.[5] Lead Counsel also recovered approximately 25% of the estimated maximum recoverable damages. Alvarado Decl., ¶61. This far exceeds the average recovery for securities class action settlements as a percentage of plaintiff-style damages in 2024 of 11.1%. *Id.*, at 21, App'x 5. *Compare Fleming*, 2022 WL 2789496, at *26 (awarding 30% of $33 million settlement, finding 12.5% recovery a "significant recovery in the securities class action context"), *with Wong v. Arlo Techs.*, 2021 WL 1531171 at *11 (N.D. Cal. Apr. 19, 2021) (describing a 2.35% recovery as an "exceptional result[]").

In the end, the Class cares most about getting a great result. Lead Counsel accomplished that goal, and this Settlement merits an appropriate fee that encourages counsel to achieve excellent results.

### 2. The Litigation Was Uncertain and Highly Complex

"'The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.'" *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019). "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13; *see also Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) ("'Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'"). For these reasons, in securities class actions, fee awards often exceed the 25% benchmark. *See Omnivision*, 559 F. Supp. 2d at 1047.

Despite its ultimate success, Lead Counsel assumed significant risk. In fact, throughout the Litigation, Defendants raised numerous challenges regarding the timeliness of the action, the standing of Lead Plaintiff to pursue the Litigation, and disputing the falsity and materiality of their alleged misstatements, their scienter, and loss causation. *See In re Immune Response Corp. Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial."); *Destefano v. Zynga*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11,

---

[5] *Id*. at 1, 20.

2016) ("[T]he risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation.").

Defendants moved to dismiss the Consolidated Complaint as time barred under the two-year statute of limitations and five-year statute of repose. ECF 45. The Court granted the motion on statute of limitation grounds. *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*, 2022 WL 624439, at *4 (N.D. Cal. Mar. 3, 2022). Following Lead Plaintiff's appeal, the Ninth Circuit reversed this Court's statute of limitations decision and remanded the case to address Defendants' additional grounds for dismissal. *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459 (9th Cir. 2023). Defendants again moved to dismiss the Consolidated Complaint (the "Renewed Motion"). In response to the Renewed Motion, the Court found that Maryland Electrical's complaint was timely, and granted in part, and denied in part, the Renewed Motion on falsity and scienter grounds. ECF 80. Defendants' interlocutory appeal of that order is pending in the Ninth Circuit.

Defendants have maintained that even if the Ninth Circuit remands the case, Lead Plaintiff would be unable to establish Defendants' scienter or that the remaining statements were materially misleading. *See Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *4 (S.D. Cal. June 6, 2022) ("Plaintiff may have also faced difficulty establishing necessary elements of falsity or scienter at the summary judgment and trial stage. '[C]ourts have recognized that a defendant's state of mind in a securities case is the most difficult element of proof and one that is rarely supported by direct evidence.'"). Likewise, Defendants likely would have vigorously contested loss causation, price impact, and damages at summary judgment. *HyreCar*, 2024 WL 3504234, at *8 ("'In any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial.'").

At trial, the case would have turned largely on expert testimony concerning highly technical materiality, falsity, scienter, loss causation and damages matters, as well as the credibility of fact witnesses – many of whom would likely be represented by defense counsel and/or still employed at HP. Moreover, the events giving rise to this Litigation occurred a decade ago, which would further complicate discovery. Defendants needed only to defeat one element of Lead Plaintiff's claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Lead Plaintiff sought to recover. *See, e.g.*, *Radient*,

2014 WL 1802293, at *2 (Noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to predict and risky."); *see also, e.g.*, *In re Tesla Inc.*, *Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (detailing how jury returned verdict for defendants despite grant of partial summary judgment in plaintiff's favor), *aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after lengthy trial involving securities claims, the jury reached a verdict in defendants' favor).  And even if Lead Plaintiff survived summary judgment and obtained a favorable verdict at the liability phase of trial, it would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re: NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at *1 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion as a matter of law after class action plaintiffs obtained a jury verdict for more than $4.6 billion after nearly nine years of litigation); *Robbins v. Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713 (11th Cir. 2012).

Thus, there existed a significant risk that class-wide recoverable damages could have been far less than $39 million, including the risk of no recovery at all.  *Volkswagen*, 2017 WL 1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]'  It is possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . .'") (first alteration in original).  And any recovery absent the Settlement "'would come years in the future and at far greater expense to the . . . Class.'"  *Id.*  The $39 million Settlement, achieved after nearly five years of litigation in the face of these significant risks, amply supports the requested 30% fee award.

### 3.    The Skill Required and Quality of Work

In determining a reasonable fee, courts often consider the quality of the work performed and the skill required in the action.  "'The prosecution and management of a complex national class

LC'S NOT OF MOT, MOT FOR AWARD OF ATTYS' FEES/EXPENSES & TO PLTFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) & MEMO OF POINTS & AUTH - 4:20-cv-07835-JSW (LJC)    - 8 -
4930-1161-2284.v1

action requires unique legal skills and abilities.  This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'"  *Rentech*, 2019 WL 5173771, at *10.

Here, the quality of Lead Counsel's representation further supports the reasonableness of the requested fee.  Without Lead Counsel's efforts, the Settlement would not have been possible.  Lead Counsel successfully and thoroughly litigated the case, vigorously pursuing it for nearly five years in this Court and in the Ninth Circuit.  Following the exchange of detailed mediation briefs, the Parties participated in mediation sessions in January 2023 and in April 2025.  Here, Lead Counsel's skill and experience brought about an exceptional result, further supporting the requested fee award.  *See Zynga*, 2016 WL 537946, at *17 ("Here, Lead Counsel engaged in significant pre-filing investigation, shepherded this case past . . . motions to dismiss . . . and reached a settlement quickly before expending resources that would otherwise have gone to the Class after further litigation," finding "the skill required and quality of work performed supports the fee award sought.").

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Lead Counsel.  *See id.*; *see also Rentech*, 2019 WL 5173771, at *10 (finding "requested fee" supported because "Lead Counsel faced a vigorous defense" from "a respected national law firm").  Lead Counsel was opposed by Gibson, Dunn & Crutcher LLP, Sidley Austin LLP, and Wilson Sonsini Goodrich & Rosati, all law firms with well-deserved reputations for vigorous advocacy in the defense of complex civil litigation.  Lead Plaintiff's ability to obtain a favorable result for the Class while litigating against these formidable defense firms further evidences the quality of Lead Counsel's work and weighs in favor of approving the requested fee.

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen*, 2017 WL 1047834, at *3.  Indeed, as Judge Thompson recently recognized in *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988 (N.D. Cal. Sept. 30, 2024), the fact that "Plaintiffs' counsel handled the case on a contingency fee basis and has received no compensation thus far . . .

weighs in favor of granting higher attorney fees." *Id.* at \*6. Further, the "'importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.'" *Rentech*, 2019 WL 5173771, at \*10. "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).[6]

Unlike counsel for defendants, who are typically paid and reimbursed for their fees and expenses on an ongoing basis, Lead Counsel has not received any compensation for its efforts over the nearly five-year course of the Litigation. "The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at \*5 (D.S.C. Jan. 15, 2014). There have been many class actions in which counsel for plaintiffs, including Lead Counsel here, took on the risk of pursuing claims on a contingency basis, expended thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (court granted summary judgment to defendants after eight years of litigation, and after Robbins Geller incurred over \$6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately \$40 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *Fosbre v. L.V. Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017) (Robbins Geller case in which summary judgment was granted to defendants after more than six years of litigation where plaintiff's counsel incurred over \$2.3 million in expenses and worked over 38,600 hours, representing lodestar of approximately \$21.4 million), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. L.V. Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).

---

[6] Courts have "'recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.'" *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*17 n.15 (S.D.N.Y. Dec. 19, 2014). Indeed, the Supreme Court has stated that securities class actions such as this one are "an essential supplement to . . . civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

Here, Lead Counsel has received no compensation throughout the course of the Litigation, despite investing over 6,055 hours and incurring substantial expenses in prosecuting this case. *See Zynga*, 2016 WL 537946, at *17.  Additional (uncompensated) work already has been undertaken in connection with the Settlement and tens of thousands of dollars in additional uncompensated time will likely be required going forward in connection with the Settlement and claims administration.

Any fee award has always been contingent on the result achieved.  Indeed, the only certainty was that there would be no fee without a successful result.  Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously prosecute this Litigation, and notwithstanding the serious risk of no recovery at all, successfully brought it to a highly favorable conclusion for the Class's benefit.  The contingent nature of counsel's representation thus supports approval of the requested fee.  *Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *7 (N.D. Cal. Oct. 19, 2023) ("The risk that counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award.").

### 5.    Awards Made in Similar Cases Support the Fee Request

Lead Counsel's fee request is also supported by awards made in other cases, including by this Court, where courts have adjusted the fee above the 25% benchmark based on appropriate factors. *See, e.g.*, *Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *4 (C.D. Cal. Jan. 6, 2020) (adjusting fee award to "just under 33.3% of the total settlement amount"); *Jiminez v. O'Reilly Automotive Inc.*, 2018 WL 6137591, at *3 (C.D. Cal. June 18, 2018) (upward departure from the 25% benchmark to 33.33% award was justified because of "complicated nature" of the case).  In fact, "in most common fund cases, the award exceeds th[e] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047-48 (quoting *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989)) (surveying securities cases nationwide and noting, "'This court's review of recent reported cases discloses that nearly all common fund awards range around 30%. . . .'") (alteration in original).

Numerous district courts in this Circuit have approved awards of fees in excess of 25% in securities and other complex class action cases.  *See, e.g.*, *Barrett v. Apple, Inc.*, 2025 WL 1002786 at *2-*3 (N.D. Cal. Apr. 3, 2025) (awarding one-third fee, finding it "consistent with other awards in the Ninth Circuit"); *Zaidi v. Adamas Pharms.*, 2024 WL 4342186, at *1 (N.D. Cal. Sept. 27, 2024)

(White, J.) (awarding one-third fee, plus expenses); *Fleming*, 2022 WL 2789496, at *9 (awarding 30% fee on $33 million securities class action settlement); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding 33.3% of $22.5 million settlement and over $930,000 in litigation expenses); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement fund); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (White, J.) (awarding 33-1/3% of $28 million settlement fund in wage and hour case); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2025) (awarding fee of 33.33% of $27,783,000 settlement fund and noting that "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions").

Here, Lead Counsel obtained the $39 million Settlement despite very long odds in a complex case that was at risk of being dismissed for a second time. The Settlement is a truly outstanding result, recovering approximately 25% of the estimated maximum recoverable damages, and was obtained through the skill and determination of Lead Counsel and the quality of its work. The fee award Lead Counsel seeks is consistent with the exceptional result and in line with percentages awarded in many similar securities class action cases in the Ninth Circuit.

### 6. The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen*, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig.*, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of

objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Summary Notice and the Notice, that Lead Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, and for payment of litigation expenses not to exceed $250,000 (nearly $120,000 above Lead Counsel's current request), plus interest earned thereon. Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be submitted to the Court no later than December 22, 2025. While this deadline has not yet passed, to date, not a *single* objection has been received.

Lead Plaintiff's endorsement of the fee request further supports its approval. *See* Declaration of Jessica Morrison on Behalf of Lead Plaintiff, ¶5, attached as Ex. 1 to the Alvarado Decl.; *see also Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *2 (N.D. Cal. Mar. 6, 2023) (approving fee request supported by lead plaintiffs and noting that "institutional investors that have been directly involved in the prosecution and resolution of the Action . . . have substantial interests in ensuring that any fees and expenses paid to counsel are duly earned and not excessive"); *Hatamian v. Advanced Micro Devices*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request was "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors"); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("Since passage of the PSLRA, courts . . . have found that in a PSLRA case, a fee request which has been approved and endorsed by a properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor.").

In sum, each of the relevant factors supports the award of attorneys' fees of 30% of the Settlement Fund. Accordingly, this fee request is reasonable and should be approved.

### 7. A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable

To assess the reasonableness of a fee awarded under the percentage-of-recovery method, courts may (but are not required to) cross check the proposed award against counsel's lodestar. *See*

*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (noting that "'trial courts have discretion to conduct a lodestar cross-check on a percentage fee'" but "'also retain . . . discretion to forgo a lodestar cross-check'"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Rentech*, 2019 WL 5173771, at *10 (second alteration in original). As detailed here, and in the Robbins Geller Declaration, over 6,055 hours of attorney and para-professional time were expended prosecuting the Litigation for the benefit of the Class. The hours spent to obtain the results are more than reasonable. As detailed in the Alvarado Declaration, there is no question that the hours expended were necessary. Notably, the lodestar does not include time for additional services to be provided by Lead Counsel to the Class, including preparation of final approval briefing, attending the final settlement hearing, responding to Class Members' inquiries, supervising the Claims Administrator in the review and processing of claims, and overseeing the distribution of checks to Class Members.

Lead Counsel's hourly rates, too, are reasonable. In fact, Lead Counsel's rates have recent judicial approval in this District. *See Alphabet*, 2024 WL 4354988, at *7 (Judge Thompson approving Robbins Geller's hourly rates ranging from $110 to $1,400); *see Wells Fargo*, 2023 WL 11872699, at *5 (Judge Donato approving Robbins Geller's fee request based on its prevailing hourly rates); *Fleming*, 2022 WL 2789496, at *9 (Judge Gilliam approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation").

The last piece of the cross-check analysis is the risk multiplier. Lead Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney and litigation professional by their current hourly rates, is $5,444,119.50. The requested fee of 30% represents a modest multiplier of 2.15 on Lead Counsel's lodestar, which is within the range of lodestar multipliers that courts in this Circuit regularly approve.[7] *See, e.g.*, *Dicker v. TuSimple Holdings, Inc.*, 2024 WL 5181968, at *2 (S.D. Cal. Dec. 18, 2024) (awarding 25% fee of $189 million settlement which represented a 7.92 multiplier to the aggregate lodestar); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *2 (N.D. Cal. Nov. 21, 2022) (awarding fee representing a 4.14 multiplier); *McKnight v. Uber Techs., Inc.*, 2021 WL 4205055, at *7 (N.D. Cal. Sept. 2, 2021) (noting that a "fee award [that] results in a multiplier of 4.14" is not "remarkable" when "the settlement represented an 'excellent result' for the class"), *aff'd sub nom. McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022); *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021) (awarding class counsel fee representing multiplier of 5.2), *aff'd sub nom. Kang v. Fyson*, 2022 WL 6943174 (9th Cir. Oct. 12, 2022); *Thompson v. Transamerica Life Ins. Co.*, 2020 WL 6145104, at *4 (C.D. Cal. Sept. 16, 2020) ("The Court's lodestar cross-check analysis of the fee award yields a current multiplier of 4.2, which is within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."). As fully explained in the Alvarado

---

[7] The actual realized multiplier has already, and will continue to, decline over time as Lead Counsel expends additional time through distribution of the Net Settlement Fund to Class Members. No additional counsel fees will be sought for such work.

Declaration, given the risk undertaken by Lead Counsel and the results achieved for the Class, a multiplier of 2.15 is reasonable here.

Each of the relevant factors supports an award of attorneys' fees of 30% of the Settlement Fund.  Accordingly, this fee request is reasonable and should be approved.

## IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel further requests an award of its litigation expenses in the amount of $130,243.61 (less than the $250,000 contained in the Summary Notice and Notice).  These expenses were incurred in prosecuting and resolving the Litigation on behalf of the Class.  Robbins Geller Decl., Ex. C.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).  In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are the type of "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Hefler*, 2018 WL 6619983, at *16.  Here, the expenses sought by Lead Counsel, *i.e.*, those associated with, among other things, experts, consultants and investigators, travel, mediation, and online legal and financial research – are of the type that are routinely charged to hourly paying clients and, therefore, should be paid out of the common fund.  *See, e.g.*, *Hayden*, 2023 WL 2375242, at *2 (awarding $750,612.54 in costs in $17.5 million settlement, principally for consultant/expert fees, online research charges, mediation fees, and travel); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (approving award of $795,401.42 for expert costs, "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").

Because these costs, charges, and expenses were reasonable and necessary, Lead Counsel respectfully requests an award in the amount of $130,243.61, plus the interest earned thereon.  To date, no objections to this request have been filed.

## V. CONCLUSION

Lead Counsel's efforts on behalf of the Class resulted in an outstanding result under any measure. Based on the foregoing and upon the entire record herein, Lead Plaintiff and Lead Counsel respectfully request that the Court award Lead Counsel attorneys' fees of 30% of the Settlement Amount and payment of $130,243.61 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund.

DATED: December 1, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
RACHEL A. COCALIS
T. ALEX B. FOLKERTH

*s/ Darryl J. Alvarado*
DARRYL J. ALVARADO

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland Electrical Industry Pension Fund and Named Plaintiff York County on behalf of the County of York Retirement Fund