ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS (168593)
ELLEN GUSIKOFF STEWART (144892)
DARRYL J. ALVARADO (253213)
RACHEL A. COCALIS (312376)
T. ALEX B. FOLKERTH (338140)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
rcocalis@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff Maryland Electrical
Industry Pension Fund and Named Plaintiff York County on
behalf of the County of York Retirement Fund

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                                Plaintiff,<br><br>        vs.<br><br>HP INC., et al.,<br><br>                                Defendants. | Case No. 4:20-cv-07835-JSW (LJC)<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF DARRYL J. ALVARADO IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES<br><br>DATE:    February 13, 2026<br>TIME:     9:00 a.m. (VIA ZOOM)<br>CTRM:   5, 2nd Floor<br>JUDGE:  Hon. Jeffrey S. White |

4909-4618-3293.v1

I, DARRYL J. ALVARADO, declare as follows:

1.      I am an attorney duly licensed to practice in the State of California and before this Court.  I am a partner of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), counsel of record for Lead Plaintiff Maryland Electrical Industry Pension Fund ("Lead Plaintiff" or "Maryland Electrical") in the above-captioned action ("Action" or "Litigation").[1]  I have been actively involved in the prosecution and resolution of this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based on my active participation and supervision of all material aspects of the Action.

2.      Robbins Geller was appointed Lead Counsel for the Class.

3.      I submit this declaration in support of Lead Plaintiff's motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the Settlement, which provides for a cash recovery of $39,000,000 (the "Settlement Amount"), and for approval of the proposed plan for allocating the net proceeds of the Settlement to eligible Class Members (the "Plan of Allocation").  I also submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees and expenses in connection with its representation of the Class.[2]

4.      This declaration is submitted in support of the Settlement and I believe it is inadmissible in any subsequent proceedings, other than in connection with the approval of the Settlement.  If the Settlement is not approved by the Court, I believe that this declaration and the statements contained herein are without prejudice to Lead Plaintiff's position on the merits of this Action.

---

[1]      All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation of Settlement dated August 18, 2025 (ECF 103-2) (the "Stipulation" or the "Settlement Agreement").

[2]      In conjunction with this declaration, Lead Plaintiff and Lead Counsel are submitting: (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof (the "Settlement Memorandum"); and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Memorandum of Points and Authorities in Support Thereof (the "Fee Memorandum").

## I.    PRELIMINARY STATEMENT

5.    The $39,000,000 proposed Settlement is the culmination of hard-fought litigation.  As detailed below, Lead Plaintiff, through Lead Counsel, zealously prosecuted the Class's claims at every stage of this Action, successfully defending its claims against Defendants' multiple dismissal attempts, even after the Court granted Defendants' initial motion to dismiss.  The Settlement, which represents approximately 25% of the estimated maximum recoverable damages (as calculated by Lead Plaintiff's consultant and assuming success by Lead Plaintiff on all liability and loss causation issues and depending on certain assumptions used to calculate the number of damaged shares), is a tremendous result for the Class under the circumstances.  The Settlement is *over six times* greater than the amount the SEC obtained from HP to resolve non-fraud based claims.[3]

6.    The Settlement was achieved after nearly five years of litigation, during which Lead Counsel, *inter alia*:

- Prepared and filed the initial Complaint for Violations of the Federal Securities Laws (ECF 1) based on a preliminary investigation;

- Conducted an additional thorough and wide-ranging investigation concerning Defendants' alleged fraudulent scheme and misrepresentations, which included an extensive review of publicly available information concerning HP's sales practices during the Class Period;

- Prepared and filed the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 37) (the "Consolidated Complaint");

- Opposed Defendants' initial motion to dismiss the Consolidated Complaint;

- Successfully appealed the Court's order granting Defendants' initial motion to dismiss the Consolidated Complaint;

- Opposed and defeated in substantial part Defendants' renewed motion to dismiss the Consolidated Complaint;

- Opposed Defendants' request for interlocutory review of the motion to dismiss order and Defendants' interlocutory appeal; and

---

[3]    *See In the Matter of HP Inc.*, Securities Act Release No. 10868, 2020 WL 5820418 (Sept. 30, 2020) ("SEC Order").

- Exchanged mediation briefs laying out the Parties' views of the strengths and weaknesses of the allegations, attended two separate mediation sessions with experienced, well-regarded mediators, and engaged in post-mediation negotiation efforts, in an attempt to resolve the Action.

7.     As further detailed herein, given Lead Counsel's comprehensive prosecution of this Action, Lead Plaintiff fully understood the strengths of its case as well as the substantial risks it faced in proceeding with the Litigation at the time the Settlement was reached.  And, while Lead Plaintiff is confident that its claims will find support in both the documentary evidence and deposition testimony developed through fact discovery, Lead Plaintiff understood the real risks in proving its claims at summary judgment and trial.

8.     Lead Plaintiff alleged that, in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), Defendants engaged in a fraudulent scheme to artificially inflate HP common stock by accelerating or "pulling in" sales to artificially inflate the results of HP's most important business segment.  ¶¶24-72.[4]  In addition, Lead Plaintiff alleged that Defendants' pull-in scheme rendered their Class Period statements regarding profit margins, channel inventory levels, and revenues materially misleading.  ¶¶90-149.  Defendants, conversely, have argued consistently that they made no false or misleading statements or omissions during the Class Period, that Lead Plaintiff's scheme allegations are not cognizable, and that even if Lead Plaintiff adequately alleged falsity, Defendants lacked scienter. *See, e.g.*, ECF 69 at 14-25.  Defendants often argued that the SEC Order actually undermined Lead Plaintiff's scienter allegations. *E.g.*, *id.* at 4. Defendants further maintained that Lead Plaintiff's loss causation allegations were deficient. *See, e.g.*, *id.* at 25-26.

---

[4]     All "¶_" or "¶¶_" references are to the Consolidated Complaint, unless otherwise stated.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)                                    - 4 -
4909-4618-3293.v1

9. Accordingly, the proposed Settlement avoids the substantial risks of further litigation on these issues and others. Indeed, Lead Plaintiff faced the substantial possibility that even if it prevailed on the pending appeal, the Court at summary judgment or a jury at trial would adopt Defendants' views regarding the showing necessary to establish falsity, scienter, and/or loss causation, which could have potentially resulted in a substantially reduced recovery, or no recovery whatsoever for the Class. Given the significant risks as well as the additional costs and delay associated with bringing this Action, which has already been pending for nearly five years, to trial, Lead Plaintiff and Lead Counsel concluded that the $39,000,000 Settlement was in the best interest of the Class. The Court preliminarily approved the Settlement by Order dated September 22, 2025 (the "Preliminary Approval Order") (ECF 108).

10. Lead Counsel has prosecuted this Action on a wholly contingent basis and, thus, has advanced or incurred all the litigation expenses, charges, and costs associated with that prosecution. Lead Counsel shouldered substantial risk in doing so and, to date, has not received any compensation for its efforts. Accordingly, in consideration of Lead Counsel's extensive efforts on behalf of the Class, Lead Counsel is applying for an award of attorneys' fees in an amount of 30% of the Settlement Fund (which amount includes interest). Such a fee award is fair and reasonable and is within the range of fee percentages frequently awarded in this type of case. Further, Lead Counsel's fee request is more than justified by the particular facts of this case, including the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, the nature and extent of the legal services performed, and the fact that the Parties settled after mediation and with Defendants' appeal pending.

11. Lead Counsel also seeks payment of $130,243.61 for the expenses, costs, and charges that were reasonably and necessarily incurred by Lead Counsel in its prosecution of this Action, plus the interest earned thereon. These expenses, charges, and costs include: (i) the costs associated with

Lead Plaintiff's experts and consultants; (ii) online factual and legal research; and (iii) mediation fees. As will be evident from the discussion below regarding Lead Counsel's efforts in achieving this outstanding result for the Class, these expenses were reasonable and necessary.

12.    Lead Plaintiff Maryland Electrical, an institutional investor with significant financial interests in the outcome of this case and which remained actively engaged in its progress, supports both the Settlement and Lead Counsel's request for attorneys' fees and expenses. *See* Declaration of Jessica Morrison ("Morrison Decl."), submitted on behalf of Maryland Electrical, attached as Exhibit 1 hereto. Because Lead Plaintiff's involvement in this Action is the type of involvement envisioned by Congress in enacting the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq.* (the "PSLRA"), Lead Plaintiff's approval of the relief sought here is entitled to significant weight by the Court in approving the Settlement and awarding attorneys' fees and expenses to counsel. Further, although the December 22, 2025 deadline for exclusions/objections has not yet passed, the reaction of the Class thus far has been positive. To date, there have been no objections to any aspect of the Settlement, including Lead Counsel's request for attorneys' fees and expenses, and there have been only two invalid requests for exclusion from the Class – these by individuals who did not provide information establishing that they qualify for membership in the Class.[5]

13.    The following section summarizes the primary events that occurred during the course of the Litigation and the extensive legal services provided by Lead Counsel.

---

[5]    *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Report on Exclusions and Objections ("Murray Decl."), ¶¶15-17, attached hereto as Exhibit 2. Should any objections or additional requests for exclusion be received after the date of this submission, Lead Counsel will address them in its reply papers to be filed with the Court on January 5, 2026.

## II.    THE LITIGATION

### A.    York County Files the Initial Complaint, Maryland Electrical Is Appointed Lead Plaintiff, and Robbins Geller Is Appointed Lead Counsel

14.    On November 5, 2020, plaintiff York County on behalf of the County of York Retirement Fund (represented by Robbins Geller) filed the initial complaint in this Action against Defendants alleging that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading statements and omitting material information.  ECF 1.

15.    On January 4, 2021, Maryland Electrical moved to be appointed as lead plaintiff and for approval of Robbins Geller as lead counsel.  ECF 19.  The Court granted the motion, and appointed Maryland Electrical as lead plaintiff and Robbins Geller as lead counsel on February 11, 2021.  ECF 30.

### B.    Lead Plaintiff Files the Consolidated Complaint and Opposes Defendants' Initial Motion to Dismiss

16.    Following its appointment, Lead Counsel continued its extensive factual investigation, analyzing HP's public filings with the SEC, the SEC Order, media reports, analyst reports, and trading data.  Thereafter, Lead Plaintiff filed the Consolidated Complaint on April 21, 2021.  ECF 37.

17.    The Consolidated Complaint alleged violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of all purchasers of HP common stock during the Class Period.  ¶11.  More specifically, the Consolidated Complaint alleged that, during the relevant time period, Defendants engaged in a fraudulent acceleration, or "pull-in" scheme, to artificially inflate the results of HP's most important business segment.  ¶¶24-72.  The Consolidated Complaint further alleged that in the course of the scheme, Defendants issued materially false and misleading statements concerning HP's profit margins, channel inventory levels, and revenues.  ¶¶90-149.  The Consolidated Complaint alleged that HP's stock price was artificially

inflated due to the alleged scheme and false and misleading statements, and declined when the alleged corrective disclosures occurred, causing the Class to suffer damages. ¶¶199-208.

18. On June 21, 2021, Defendants moved to dismiss the Consolidated Complaint. ECF 45. Among other things, Defendants asserted that: (i) Lead Plaintiff's claims were time-barred by the statute of limitations, statute of repose, and/or Lead Plaintiff lacked standing to pursue any other claims; and (ii) Lead Plaintiff failed to adequately plead falsity, scienter, and loss causation. *Id*. Lead Plaintiff opposed Defendants' motion on August 20, 2021. ECF 50. Defendants filed their reply on October 4, 2021. ECF 53.

19. By Order dated March 3, 2022, the Court granted Defendants' initial motion to dismiss, without leave to amend, on statute of limitations grounds. ECF 58. The Court also determined that Lead Plaintiff lacked standing to challenge statements made after it sold its HP shares. *Id*. The Court entered Judgment on March 3, 2022. ECF 59.

**C.    Lead Plaintiff Prevails on Appeal**

20. On April 1, 2022, Lead Plaintiff filed a notice of appeal with the Court. ECF 60. Lead Plaintiff filed its opening appellate brief on July 7, 2022. Defendants responded on September 7, 2022, and Lead Plaintiff filed its reply brief on October 28, 2022.

21. On February 6, 2023, the Ninth Circuit heard oral argument on Lead Plaintiff's appeal.

22. On April 11, 2023, the Ninth Circuit issued an opinion and mandate order reversing the Court's order granting Defendants' initial motion to dismiss. *York Cnty. on behalf of Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459 (9th Cir. 2023). The Ninth Circuit held that Lead Plaintiff could not have discovered the facts necessary to plead its claims until after the SEC Order was published in September 2020, so the statute of limitations did not bar Lead Plaintiff's claims. *Id.* at

466-68.  The Ninth Circuit also held that the Court's finding that Lead Plaintiff lacked standing to challenge statements made after it sold its HP shares was dicta.  *Id.* at 468 n.4.

**D.    Lead Plaintiff Substantially Defeats Defendants' Renewed Motion to Dismiss**

23.    On remand, the Court ordered the parties to file a joint case management statement. ECF 64.  On June 23, 2023, the Parties filed a joint case management statement.  ECF 66. Defendants pressed for additional briefing on their motion to dismiss and Lead Plaintiff opposed.  *Id.* On June 27, 2023, the Court ordered Defendants to file a renewed motion to dismiss.  ECF 67.

24.    Defendants filed their renewed motion to dismiss the Consolidated Complaint on July 21, 2023.  ECF 69.  Among other things, Defendants reasserted that: (i) Lead Plaintiff's claims were time-barred by the statute of repose, and/or Lead Plaintiff lacked standing to pursue any other claims; and (ii) Lead Plaintiff failed to adequately plead falsity, scienter, and loss causation.  *Id*. Lead Plaintiff opposed Defendants' motion on August 18, 2023.  ECF 74.  Defendants filed their reply on September 1, 2023.  ECF 75.  Defendants filed a statement of recent decision regarding the Ninth Circuit's opinion in *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162 (9th Cir. 2023) on October 12, 2023.  ECF 76.  On February 27, 2024, the Court ordered additional briefing on *Habelt*'s application to Defendants' renewed motion to dismiss.  ECF 77.  The Parties filed additional briefing on March 8, 2024.  ECF 78, 79.

25.    By Order dated March 27, 2024 (the "Motion to Dismiss Order"), the Court largely denied Defendants' motion to dismiss.  ECF 80.  While the Court determined that the statute of repose barred Lead Plaintiff's claims against certain defendants added for the first time in the Consolidated Complaint and found that certain statements were not misleading as alleged, the Court denied the motion to dismiss with respect to all other claims alleged in the Consolidated Complaint. *Id.*

26. Defendants answered the Consolidated Complaint on May 17, 2024. ECF 86. In their answer, Defendants denied all of Lead Plaintiff's material allegations and asserted ten affirmative defenses. *Id.*

**E.      Defendants' Motion for Interlocutory Review**

27. Shortly after entry of the Motion to Dismiss Order, but before answering the Consolidated Complaint, Defendants filed a motion to certify the Motion to Dismiss Order for interlocutory appeal. ECF 83. Defendants principally argued that there were substantial grounds for difference of opinion regarding the Court's statute of repose analysis. *Id.* Lead Plaintiff opposed the motion on May 10, 2024. ECF 84. Defendants filed their reply on May 17, 2024. ECF 85.

28. On June 3, 2024, the Court granted Defendants' motion and certified its Motion to Dismiss Order for interlocutory appeal. ECF 94. The Court reasoned that "[g]uidance from the Ninth Circuit would resolve this novel legal issue [regarding the interaction between the statute of repose and the PSLRA's lead-plaintiff provisions] on which there is substantial ground for difference of opinion." *Id.* at 4.

**F.      Lead Plaintiff Opposes Defendants' Interlocutory Appeal**

29. Defendants filed a petition for permission to appeal in the Ninth Circuit on June 13, 2024. Lead Plaintiff answered on June 24, 2024, and Defendants filed a reply on July 1, 2024. The Ninth Circuit granted Defendants' petition on August 8, 2024.

30. Defendants filed their opening appellate brief on the merits on October 28, 2024. Lead Plaintiff responded on December 27, 2024, and Defendants filed their reply brief on February 18, 2025. No oral argument had been scheduled at the time this proposed Settlement was reached.

## III.    MEDIATION AND SETTLEMENT EFFORTS

31.    The Settlement is the product of hard-fought, arm's-length negotiations.  The Parties first conducted a virtual mediation session with Greg Danilow of Phillips ADR in January 2023. This mediation was unsuccessful.  On April 30, 2025, Lead Counsel participated in an all-day mediation session with David M. Murphy of Phillips ADR, while Defendants' second appeal to the Ninth Circuit remained pending.  In advance of this mediation session, the Parties prepared and exchanged detailed mediation statements and reply mediation statements.  The case, however, did not settle at this mediation session.

32.    Following continued settlement discussion with Mr. Murphy's assistance, on July 12, 2025, Mr. Murphy issued a mediator's proposal to settle the Litigation in return for a cash payment of $39 million, subject to Court approval.  The Parties accepted Mr. Murphy's proposal on July 17, 2025.  On July 30, 2025, the Parties jointly moved the Ninth Circuit to hold the appeal in abeyance pending finalization of settlement.  The Ninth Circuit granted the motion.  Thereafter, Lead Counsel worked diligently to negotiate the terms of the Stipulation with Defendants' Counsel and prepare preliminary approval papers.  The Parties executed the Stipulation on August 18, 2025.[6]

33.    On August 19, 2025, Lead Plaintiff filed an unopposed motion seeking preliminary approval of the proposed Settlement.  ECF 103.  The Court granted Lead Plaintiff's motion for preliminary approval on September 22, 2025. ECF 108.  The final settlement hearing is currently set for February 13, 2026, at 9:00 a.m.  ECF 110.

---

[6]    The Parties also entered into a confidential Supplemental Agreement, under which HP may exercise a right to withdraw from the Settlement in the event that valid requests for exclusion from the Class exceed an agreed-upon threshold.  Pursuant to its terms, the Supplemental Agreement is not being made public but may be submitted to the Court *in camera* so as to preserve the confidentiality of the Supplemental Agreement, and particularly the agreed-upon termination threshold.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)                    - 11 -
4909-4618-3293.v1

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

34.   The Settlement of $39,000,000 is the result of extensive, arm's-length negotiations among the Parties that reflects the strengths and weaknesses of the case, and would not have been achieved without Lead Counsel's extensive efforts described herein.

35.   Lead Counsel's reputation as attorneys who will zealously prosecute a case through the trial and appellate levels, as well as their aggressive litigation of this Action, put the Class in a strong position with Defendants and their insurance carriers and led to the superior result achieved here.

36.   As set forth below and in the Settlement Memorandum, the Settlement is a favorable result for the Class when evaluated in light of the risks of continued litigation and all of the other circumstances that courts consider when determining whether to grant final approval of a proposed class action settlement under Rule 23(e).

37.   At the time the Settlement was reached, Lead Counsel had a comprehensive understanding of the strengths and weaknesses of Lead Plaintiff's claims as well as the risks of further litigation.  While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they also recognize that there were considerable challenges to continued litigation, including, but not limited to, proving that the claims alleged were not time barred, Defendants engaged in a fraudulent scheme and made misleading statements, that these alleged misrepresentations were made with scienter, and that when the truth was revealed, the Class suffered compensable damages.  Thus, the Settlement results from a realistic assessment by both sides of the strengths and weaknesses of their respective claims and defenses as well as the risks of further litigation, and is a fair, reasonable, and adequate resolution of the Action for the Class.

## A.     Reasons for the Settlement

38.     As set forth in the Settlement Memorandum, filed contemporaneously herewith, the Settlement is fair, reasonable, and adequate in light of the exceptional recovery; the unique risks and difficulties that the Litigation presented to Lead Plaintiff; the extensive litigation efforts undertaken by Lead Plaintiff and Lead Counsel; the complexity and expense of further litigation; the arm's-length settlement negotiations conducted by the Settling Parties; and the overwhelmingly positive reaction from the Class.

39.     The Settlement value of $39,000,000 in cash plus the interest which has accrued, is an exceptional result that provides an immediate and certain benefit to the Class.  The Settlement represents approximately 25% of the estimated maximum recoverable damages, assuming Lead Plaintiff prevailed on all elements at summary judgment and trial.  This recovery is orders of magnitude larger than the median settlement value as a percentage of estimated damages in cases of this size.[7]  Notably, the Settlement is over six times greater than the amount the SEC obtained for resolving non-fraud-based claims.  *See* SEC Order.

40.     Although Lead Plaintiff and Lead Counsel believe that their claims are meritorious, continued litigation against Defendants posed significant risks that made recovery in any amount uncertain.  Lead Plaintiff's ability to achieve a successful result was by no means assured, as both sides claimed the law and evidence supported their positions.  Lead Counsel believe that Lead Plaintiff would have prevailed on the pending appeal and on the merits at summary judgment and trial.  Defendants were just as adamant that Lead Plaintiff would have failed.  Any future recovery for the Class, had the Settlement not been reached, would necessarily have depended on Lead Plaintiff's ability to win challenging arguments on appeal, certify the class, and subsequently prevail

---

[7]     *See* E. Flores & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22-23, Figures 21-22 (NERA Jan. 22, 2025), attached hereto as Exhibit 3.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)                    - 13 -
4909-4618-3293.v1

on each element of its claims at summary judgment and trial. Defendants have steadfastly denied liability – arguing strenuously that Lead Plaintiff's claims were untimely and unmeritorious – and have been represented by some of the most capable defense counsel in this District and across the United States. Defendants argued throughout this Litigation that the statute of repose barred Lead Plaintiff's claims, a complicated and unsettled area of the law. Further, Defendants maintained that Lead Plaintiff's scheme claim was not cognizable, and that the alleged fraudulent statements were not actionable or misleading.

41.     There was also a very real risk that Lead Plaintiff would not have convinced a jury (or the Court, at summary judgment) that Defendants acted with scienter. Indeed, the SEC charged Defendants with securities law violations that did not require a heightened mental state, and, as Defendants repeatedly argued, the SEC Order found that HP's executives did not become aware of the pull-in scheme until months after the fact.

42.     This case also posed significant risks to recovery concerning the damages suffered by the Class. As argued in Defendants' motion(s) to dismiss, Defendants maintained that the corrective disclosures did not reveal anything new about the alleged misstatements, and that HP's stock price failed to react to substantially similar disclosures. ECF 45, 69. Defendants likely would have used these arguments to oppose class certification on the grounds that the alleged fraud had no "price impact," and continued to challenge loss causation, reliance, and damages at summary judgment and trial. While Lead Counsel and Lead Plaintiff believe that the alleged false statements were corrected by the alleged disclosures, proving damages would require the opinions of experts, with Defendants no doubt contending that certain extraneous market factors should be excluded from damages calculations. The likelihood that Lead Plaintiff's damages would be significantly impacted by complex calculations argued over by experts presented a significant risk to Lead Plaintiff's recoverable damages.

43. Had any of Defendants' arguments been accepted in whole or in part – at class certification, summary judgment, trial, or on appeal – any potential recovery would have been dramatically reduced or eliminated altogether. The Settlement removes these substantial risks and guarantees the Class a favorable, certain cash recovery. Settling the action with Defendants at this stage of the litigation is in the best interest of the Class.

44. And were this Settlement not achieved at this time and on the terms set forth in the Stipulation, Lead Plaintiff potentially faced additional years of risky litigation against Defendants, with ultimate success at trial being far from certain.

45. Lead Plaintiff fully endorses the Settlement. *See* Morrison Decl., ¶4. Lead Plaintiff is a sophisticated institutional investor that has actively overseen the prosecution of this Litigation for nearly five years and which understands and has executed its fiduciary duties to act in the best interest of the Class. *Id.*, ¶¶2-3. Lead Counsel specializes in complex securities class action litigation, and is highly experienced in such litigation. *See* accompanying Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. F (Robbins Geller firm résumé). Based on their experience and knowledge of the facts and applicable law in this Litigation, Lead Plaintiff and Lead Counsel have determined that the Settlement is in the best interest of the Class.

**B.    Notice to the Class Meets the Requirements of Due Process and Federal Rule of Civil Procedure 23**

46. In accordance with the Court's September 22, 2025 Preliminary Approval Order (ECF 108), beginning on October 10, 2025, the Claims Administrator, Verita Global ("Verita"), caused a copy of the Summary Notice, substantially in the form annexed to the Stipulation, to be emailed or mailed by First-Class Mail to all Class Members who could be identified with reasonable

effort. *See* Murray Decl., ¶¶5-8. In total, the Claims Administrator has disseminated over 187,780 copies of the Summary Notice to potential Class Members and their nominees. *Id.*, ¶11.

47. On October 20, 2025, Verita caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12.

48. In addition, Verita caused a copy of the Notice and Proof of Claim to be posted on the case-designated website, www.hpqsecuritiessettlement.com. *Id.*, ¶14. This multi-faceted method of providing the Class notice, previously approved by the Court, is wholly appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

49. Among other things, the Notice advises Class Members of the essential terms of the Settlement, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, the procedure for objecting to the Settlement, and specifics on the date, time, and place of the Settlement Hearing.

50. As set forth in the accompanying Settlement Memorandum, the Notice fairly apprises Class Members of their rights and options with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order (ECF 108), Federal Rule of Civil Procedure 23, the PSLRA, and due process.

51. Pursuant to the Court's Preliminary Approval Order and as set forth in the notices, the deadline for Class Members to object to any aspect of the Settlement, including the Plan of Allocation and request for fees and expenses, or to request exclusion from the Class, is December 22, 2025. To date, there have been no objections to any aspect of the Settlement and only two invalid requests for exclusion from the Class – these by individuals who did not submit information sufficient to establish they actually qualify for membership in the Class.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)

4909-4618-3293.v1

- 16 -

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

52.    The Plan of Allocation proposed by Lead Plaintiff and set forth in the Notice (*see* Murray Decl., Ex. B (Notice) at 8-11), provides the manner in which the Net Settlement Fund will be distributed to Class Members who submit timely, valid Proofs of Claim and whose claims for recovery are accepted for payment pursuant to the terms of the Settlement Agreement, including the Plan of Allocation ("Authorized Claimants").  The Plan of Allocation provides that Class Members will only be eligible to participate in the distribution of the Net Settlement Fund if they purchased or otherwise acquired HP common stock during the Class Period and were damaged thereby and their *pro rata* share of the Net Settlement Fund is $10.00 or greater.  *See id.*

53.    The Plan of Allocation reflects the estimated amount of alleged artificial inflation in the per share price of HP common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions during the Class Period.

54.    Lead Counsel conferred with Lead Plaintiff's damages consultant to develop the Plan of Allocation.

55.    In calculating the estimated artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiff's damages consultant considered price changes in HP common stock in reaction to the public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price changes for factors that were attributable to market or industry forces, and for non-fraud related Company-specific information.

56.    Under the Plan of Allocation, for each Class Period purchase/acquisition of HP common stock that is properly documented, a "Recognized Loss Amount" will be calculated

according to the formulas described in the Notice.[8]  As set forth in greater detail in the Notice, the calculation of a claimant's Recognized Loss Amount is based on a formula that takes into account such information as: (a) when a claimant's share(s) of HP common stock were purchased/acquired and whether they sold their stock during the Class Period, or retained their stock thereafter; (b) the amount of the alleged artificial inflation per share; (c) the purchase/acquisition price per share; and (d) the purchase price minus the average closing price for HP common stock during the 90-day look-back period described in §21(D)(e)(1) of the Exchange Act.

57.     In sum, the Plan of Allocation, which is similar to plans routinely approved by courts, represents a reliable method by which to weigh, in a fair and equitable manner, the claims of Authorized Claimants.  To date, not a single Class Member has objected to the Plan of Allocation.

## VI.   LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

58.     Lead Counsel has zealously and diligently litigated this Action on behalf of the Class for nearly five years.  We undertook this effort on a contingency basis, and expended over 6,055 hours of professional and paraprofessional time litigating this Action.  In addition, Robbins Geller has incurred a total of $130,243.61 in litigation expenses, costs, and charges.  Accordingly, Lead Counsel respectfully requests an award of attorneys' fees in the amount of 30% of the Settlement Amount and payment of $130,243.61 in costs and expenses, plus the interest earned on both amounts.  Lead Counsel has submitted a declaration that provides additional support for the requested fees and expenses.  *See* Robbins Geller Declaration, submitted herewith.  Counsel's fee

---

[8]     If, however, as expected, the amount of the Net Settlement Fund is not sufficient to permit payment of the total Recognized Loss Amount of each claimant, then each claimant shall be paid the percentage of the Net Settlement Fund that each claimant's Recognized Loss Amount bears to the total Recognized Loss Amount of all claimants – *i.e.*, the claimant's *pro rata* share of the Net Settlement Fund.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)                - 18 -
4909-4618-3293.v1

and expense request is also supported by Lead Plaintiff.  Morrison Decl., ¶5.  To date, no objections to the maximum amount of attorneys' fees and expenses set forth in the notices have been received.[9]

### A.   Lead Counsel's Fee Request Is Reasonable

59.   Based on, among other things, the favorable result achieved in the face of considerable litigation risk, the time expended on behalf of the Class, and the fully contingent nature of the representation, Lead Counsel's request for an award of attorneys' fees equal to 30% of the Settlement Fund is fair and reasonable, and should be approved.

60.   The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum.  The primary factual bases for the requested fees and expenses under the Ninth Circuit's factors are briefly summarized below.

### 1.   The Amount Involved and the Results Obtained

61.   The requested attorneys' fee is reasonable given the significant, all-cash $39 million recovery obtained by Lead Counsel for the Class.  Considering that damages in this Action are estimated by Lead Counsel's damages consultant to be approximately $150 million depending on certain assumptions used to calculate the number of damaged shares, this recovery represents approximately 25% of the estimated maximum recoverable damages.  This is orders of magnitude larger than the median settlement value as a percentage of estimated damages in cases of this size. *See supra*, at ¶39.  Notably, the Settlement is over six times greater than the amount the SEC obtained for resolving non-fraud-based claims.  *Id.*

### 2.   Awards in Similar Cases

62.   As further detailed in the Fee Memorandum, the requested fee award is also consistent with attorneys' fees awarded in connection with other similar class action settlements in this District and other Districts in the Ninth Circuit and throughout the country.

---

[9]   Lead Counsel will address any objections received after this submission in its reply to be filed with the Court on January 5, 2026.

### 3.    The Considerable Time and Labor Expended by Lead Counsel

63.    As detailed above, Lead Counsel expended significant time and effort litigating this Action.  This Action was settled only after Lead Counsel, among other things: (i) commenced a preliminary investigation and filed the initial complaint; (ii) continued its extensive investigation and filed the Consolidated Complaint; (iii) identified, retained, and consulted with damages consultants; (iv) opposed a comprehensive motion to dismiss; (v) successfully obtained appellate reversal of the Court's order granting Defendants' initial motion to dismiss; (vi) successfully opposed Defendants' renewed motion to dismiss in large part; (vii) opposed Defendants' motion to certify the motion to dismiss order for interlocutory review; (viii) opposed Defendants' interlocutory appeal; (ix) engaged in vigorous and protracted settlement negotiations with Defendants' Counsel; and (x) secured preliminary approval of the Settlement.

64.    Moreover, the requested fee would also be reasonable if the Court performed a lodestar cross-check.  As set forth in the Robbins Geller Declaration at Exhibits A and B, Lead Counsel has devoted a total of over 6,055 hours of work on this matter, with a combined total lodestar value of $5,444,119.50.[10]  This report was prepared from contemporaneous time records regularly prepared and maintained by Lead Counsel.  The hourly rates for the attorneys and professional support staff included in the schedule are commensurate with the hourly rates submitted by our firm to courts in connection with fee applications that we have submitted (and that courts have approved) in other fully-contingent securities class action cases.  As set forth in the Robbins Geller Declaration, the firm's lodestar figures are based upon the firm's current billing rates (subject to annual increases) and do not include charges for expense items.  *See also Missouri v. Jenkins by*

---

[10]    These total hour and total lodestar figures include time incurred through September 2, 2025. The additional time that Lead Counsel have spent since that date – as well as all the additional time that Lead Counsel expect to incur in connection with supervising the administration of the Settlement going forward – are all therefore excluded from counsel's time and lodestar calculations and no additional compensation will be sought for this time.

*Agyei*, 491 U.S. 274, 283-86 (1989) (courts may use either current rates or past rates with interest when calculating the lodestar amount because either method provides "[a]n adjustment for delay in payment [which] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee").

65. Thus, the requested 30% fee would equate to a modest 2.15 multiple on the "lodestar" value of $5,444,119.50 for the more than 6,055 hours that Lead Counsel has dedicated to the investigation, prosecution, and resolution of the claims against Defendants. As detailed in the Fee Memorandum, this multiplier is well within the range of multipliers approved in settlements in this District and this Circuit.

**4.      The Novelty and Difficulty of the Legal and Factual Questions**

66. This Action involved novel and difficult legal and factual questions, including procedural issues concerning the statutes of limitation and repose, constitutional and statutory standing issues, and the propriety of Lead Plaintiff's relying in part on the SEC Order as a basis for its claims.

**5.      The Skill Required and the Experience, Reputation, and Ability of Counsel**

67. The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award. Lead Counsel is among the nation's preeminent law firms in securities litigation and for many years has successfully litigated securities actions on behalf of large classes of investors. *See* Robbins Geller Decl., Ex. F (attaching firm resume).

68. The Settlement of $39 million resulted from Lead Counsel's litigation efforts and contentious, arm's-length settlement negotiations, as detailed herein. The Settlement is a favorable recovery to the Class, especially in light of the risks of continued litigation.

69. The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Lead Counsel. Here, defense counsel – Gibson, Dunn & Crutcher LLP, Sidley Austin

LLP, and Wilson Sonsini Goodrich & Rosati – are recognized as preeminent defense firms in the securities class action field.

### 6.    The Contingent Nature of the Fee Further Supports Lead Counsel's Request

70.    The Action was undertaken by Lead Counsel on a wholly contingent basis. From the outset, we understood that we were embarking on complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money this Action would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and pay the considerable expenses that cases such as this entail. Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. With a typical lag time of many years for these cases to conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis. Here, Lead Counsel has received no compensation (or even any payment of our litigation expenses) in the nearly five years that this Action has been pending.

71.    Lead Counsel also bore the substantial risk that no recovery would be achieved. There have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by contingent-litigation counsel produced no recovery, and hence no attorneys' fees whatsoever.

72.    Accordingly, Lead Counsel's hard work and success in achieving this highly favorable result in the face of significant challenges and risks merits the requested 30% fee.

**7.    The Reaction of the Class**

73.    As noted above, the deadline set by the Court for Class Members to object to the attorneys' fees and expenses has not yet passed; however, to date, I am not aware of any objections. If any objections are timely received, Lead Counsel will address them in its reply papers to be filed with the Court on January 5, 2026.

**B.    Lead Counsel's Request for Payment of Litigation Expenses Is Fair and Reasonable**

74.    Lead Counsel also seeks payment for its reasonable and necessary litigation expenses in the amount of $130,243.61 (plus interest on such amount at the same rate as has been earned by the Settlement Fund).  The expenses for which payment is sought are reflected in the books and records of Lead Counsel which are maintained in the ordinary course of business, and prepared from expense vouchers, invoices, checking account ledgers, and similar documents that are accurate records of the expenses incurred.  *See* Robbins Geller Decl., Ex. C.

75.    The categories of expenses for which payment is sought were reasonably necessary to the prosecution and resolution of this Action, and are all of a type that counsel typically incur in securities litigation of this type.  Lead Counsel's expenses include: (i) the costs of Lead Plaintiff's experts, consultants, and investigators; (ii) online legal and financial research costs; and (iii) the costs associated with the Parties' mediation and settlement negotiations with Mr. Danilow and Mr. Murphy.

76.    The remaining expenses relate primarily to filing fees, travel, and delivery service fees.

77.    The Notice and Summary Notice advise potential Class Members that Lead Counsel would seek an award of expenses not to exceed $250,000 – which is significantly more than Lead Counsel's expenses.  As noted above, there have also been no objections to the expense request.

DECL OF DARRYL J. ALVARADO IN SUPP OF MOTS FOR FINAL APPROVAL OF STLMT, PLAN OF ALLOC, & AWARD OF ATTYS' FEES & EXPS - 4:20-cv-07835-JSW (LJC)    - 23 -
4909-4618-3293.v1

## VII.    MISCELLANEOUS

78.    Attached hereto as Exhibit 4 is a true and correct copy of Laarni Bulan and Eric Tam, *Securities Class Action Settlements; 2024 Review & Analysis* (Cornerstone Research 2025).

## VIII.    CONCLUSION

79.    For the reasons set forth above, Lead Counsel respectfully submits that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  Lead Counsel further submits that the requested attorneys' fees in the amount of 30% of the Settlement Fund should be approved as fair and reasonable, and the request for Lead Counsel's expenses in the amount of $130,243.61 should also be approved.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of December, 2025 at San Diego, California.

*s/ Darryl J. Alvarado*
DARRYL J. ALVARADO
